```
 1                                      Volume:  I
                                        Pages:  1-232
 2                                      Exhibits:  None

 3
                      COMMONWEALTH OF MASSACHUSETTS
 4    BERKSHIRE, SS                      SUPERIOR COURT DEPARTMENT
                                         OF THE TRIAL COURT
 5

 6    *******************************
      COMMONWEALTH OF MASSACHUSETTS
 7
      vs.                               Docket No:
 8                                      2011-0140
      DAVID T. CHALUE,
 9    *******************************

10
          JURY IMPANELMENT - IMPANELMENT
11        BEFORE THE HONORABLE C. JEFFREY KINDER

12

13
      APPEARANCES:
14    For the Commonwealth:
      Berkshire County District Attorney's Office
15    7 North Street, P.O. Box 1969, Pittsfield, MA  01202
      By:  DAVID F. CAPELESS, ASSISTANT DISTRICT ATTORNEY
16         PAUL CACCAVIELLO, FIRST ASSISTANT DISTRICT ATTORNEY
           GREGORY BARRY, ASSISTANT DISTRICT ATTORNEY
17
      For the Defendant DAVID T. CHALUE (2011-0140):
18    By:  DONALD W. FRANK, ESQUIRE, FRANK LAW OFFICES, 95 State
      Street, Suite 918, Springfield, MA  01103
19         BONNIE G. ALLEN, ESQUIRE, 39 Main Street, Suite 8,
      Northampton, MA  01060
20         and MEREDITH RYAN, ESQUIRE

21

22                                      Hampden Superior Court
                                        50 State Street
23                                      Springfield, Massachusetts
                                        April 22, 2014
24
                     ALICIA  CAYODE  KYLES
25                  Official Court Stenographer
                    Registered Merit Reporter
```

1                              I N D E X

2    Impanelment...........................................9

3

4

5

6

7

8

9

10   EXHIBITS                                          PAGE

11

12                    (No exhibits were marked.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The Court entered at 9:00 a.m.)

2          THE CLERK:  This is the matter of Commonwealth vs.

3     David T. Chalue, Docket 2011-140.

4          THE COURT:  Counsel, good morning.

5          MR. CAPELESS:  Good morning.

6          THE COURT:  I am mindful of the fact we have the jurors

7     waiting in fairly cramped quarters.  I would like to start

8     the selection process as quickly as we can.

9          I have a -- I have a couple of motions I received from

10    Mr. Frank.  I will act on the ex parte motions for funds at

11    the break.  There's also a motion to continue the trial

12    which looks identical -- let me wait for Mr. Chalue.

13         MR. FRANK:  Okay.  I think I can tell you now, it is

14    the same motion.  It's just the hand-delivered copy.  I have

15    your decision on that.

16         (Pause)

17         (The defendant was present at 9:03 a.m.)

18         THE COURT:  The record should reflect the defendant is

19    now present.

20         We are here to address preliminary matters of --

21    regarding commencement of jury selection and trial.

22         I have received from the defendant a motion to continue

23    the trial, which is a hard-copy original of a motion filed

24    last week.  The motion is denied for the same reasons

25    articulated in my April 18 memorandum of decision.

1          As I said earlier, I will act on the ex parte motions

2     for funds at the break.  There's also a motion for

3     statements of Commonwealth witness referring specifically to

4     Mr. Cashman.

5          Is that something you wish to be heard on, Mr. Frank?

6          MR. FRANK:  Yes, Your Honor.  It only refers to the --

7     you know that we have recently come into information about

8     Mr. Cashman having been subjected to a polygraph test.  And

9     in the report that's attached, which I think you reviewed

10    with regard to the other report, it indicates there is some

11    conversation between an officer from -- I believe from the

12    State Trooper or somebody and the witness Mr. Cashman.  And

13    really that is designed for that -- it is designed for that,

14    whatever conversation happened between Mr. Cashman and that

15    person regarding to the polygraph.  I think we are entitled

16    to that information.

17         THE COURT:  By "that person" you mean a representative

18    of the Commonwealth?

19         MR. FRANK:  Yes.

20         THE COURT:  Mr. Capeless has earlier suggested that

21    beyond the polygraph report itself, the Commonwealth is not

22    in possession of any statements and that no statements were

23    made to any Commonwealth representative.

24         Is that accurate, Mr. Capeless?

25         MR. CAPELESS:  It is, Your Honor.  I also have not been

1    provided with this motion.

2         MR. FRANK:  I apologize.

3         THE COURT:  All right.  Well, then, let's defer on this

4    until such time as Mr. Capeless has had an opportunity to

5    read it.

6         Are there any preliminary matters to address before we

7    bring the jurors into the room for purposes of my

8    introduction of the case to them?

9         MR. FRANK:  Yes, Your Honor.  I think that I would like

10   to have some discussion about the nature of the questions

11   that are going to be asked regarding the jury and what I am

12   particularly concerned with is an examination in regard to

13   the -- in regard to the exposure to the media.

14        And I do have your individual question, your individual

15   voir dire.  I don't believe I have received the questions

16   that you would be asking to the general group.

17        THE COURT:  Well, they are statutory and I assumed that

18   you didn't need to receive those from me.

19        MR. FRANK:  No, not at all.  Not at all.  And so, I

20   would ask then that the questions that have been listed as

21   motion for jury voir dire, written questions, be asked to

22   the jury pool, asked for them in a written fashion.

23        I had frankly borrowed them -- somewhat -- from

24   Attorney -- from Mr. Hall's trial.  I knew that you denied

25   that.  It's truncated.  It's much shorter and it's more

1   pointed to flesh out any exposure that any juror might have,

2   given an opportunity to think about the kind of exposure.

3   And it's a real and big issue in this case.  And I would ask

4   that this be asked to the jury generally.

5       THE COURT:  All right.  I have previously reviewed your

6   motion for written questions and for the same reasons that I

7   denied the motion in the trial of Mr. Hall, I'm going to

8   deny the motion in this case.  I'm satisfied in between the

9   statutory questions which, as you know, are mandatory, and

10  the nine individual questions that I will ask of each

11  prospective juror that the necessary issues regarding

12  publicity and other issues particular to this case will be

13  adequately addressed.

14      Anything further, Mr. Frank?

15      MR. FRANK:  Only, Your Honor, and I'm sorry, I'm not

16  finding the nine questions; but I don't recall that there's

17  a question regarding would you believe the testimony of an

18  officer more or less than that of a civilian.

19      THE COURT:  That is a statutory question.  I will ask

20  that of the entire group.

21      MR. FRANK:  Thank you.

22      THE COURT:  Mr. Capeless, anything on behalf of the

23  Commonwealth?

24      MR. CAPELESS:  I do want to alert the Court to a

25  situation just because it's our anticipated schedule, over

1    the weekend Willie Haywood who you may recall is the partner

2    of Robert Chadwell passed away.

3          THE COURT:  Sorry to hear that.

4          MR. CAPELESS:  And the services are scheduled for

5    Thursday morning at 11:00 a.m. and I expect that, obviously,

6    family and friends will be wanting to attend that may impact

7    the situation with a number of our, what we would anticipate

8    to be our initial witnesses.  You know, we're going to have

9    to wait and see where we are and whether we are still on

10   that schedule, but I want to alert the Court to that.

11         THE COURT:  All right.  So you're suggesting that

12   witnesses that you would normally be calling at or about

13   that time would want to attend the services?

14         MR. CAPELESS:  I expect so, because they've -- they're

15   family and friends.

16         If you may recall, the beginning of the case I had

17   those people who were directly associated with the victims

18   and talking about them missing, including Mr. Chadwell's

19   brother, close friends and the like.

20         THE COURT:  All right.  Thank you for bringing that to

21   my attention.

22         What I'm going to do then is recess, have the jurors

23   brought into the courtroom, then I will come out and

24   introduce them to the case, give them my introductory

25   remarks.  Explain the process of selecting a jury rather.

1  That will be in two phases.  And then I will excuse them
2  from the courtroom and we will bring them in one at a time.

3      I will then ask a series of nine individual questions,
4  including a question as to whether or not they have reviewed
5  the list of potential witnesses that could be called to
6  testify.  I assume that this is a joint list and it is
7  complete.

8      If I find the witness or the juror, rather,
9  indifferent, I will turn first to the Commonwealth for the
10 exercise of a challenge, then to Mr. Frank.

11     If there is no challenge and the juror is seated, then
12 I will explain to the juror that we anticipate beginning the
13 presentation of the evidence in the case on Thursday
14 morning.

15     So, with that understanding, I'm prepared to recess and
16 bring the jurors into the courtroom.

17     Anything further?

18     MR. FRANK:  Yes, before the jurors come in, we've just
19 gotten clothing for Mr. Chalue.  We would need enough
20 time -- seven minutes, perhaps, before they file in, if I
21 could get him changed so that he can be present when they
22 come in, that would be helpful.

23     THE COURT:  He's going to change from the clothes he
24 has on now?

25     MR. FRANK:  Yes.

1        THE COURT:  All right.  We will give you time to do

2    that.

3        Ms. Allen, just as a reminder so we can get off on the

4    right foot, we are stating at 9 o'clock.

5        MS. ALLEN:  I was here, Judge, I ran across the street

6    for the clothing.

7        (The Court exited at 9:11 a.m.)

8        (* * * * *)

9        (The Court entered at 9:36 a.m.)

10       (The defendant was present.)

11       (The venire was present.)

12       COURT OFFICER:  Hear Ye, Hear Ye, Hear Ye:  All persons

13   having anything to do before the Honorable Jeffrey Kinder,

14   Justice of the Superior Court, at the criminal session

15   thereof, now sitting in Springfield for the transaction of

16   criminal business, within and for the County of Hampden,

17   draw near, give your attendance, and you shall be heard.

18       God save the Commonwealth of Massachusetts and this

19   Honorable Court.

20       This Court is now open.

21       You may be seated.

22       THE COURT:  Thank you, Mr. Curtis.

23       And good morning, ladies and gentlemen.

24       Ms. Capeless, you may proceed.

25       THE CLERK:  Yes, Your Honor.

1          The Court will now be impaneling a criminal case

2    reached for trial being the Commonwealth vs. David T.

3    Chalue, Indictments 2011-140 Counts 10, 11 and 12.  Each of

4    those indictments charging the defendant with murder.

5          Indictments 2011-140, Count 13, 14 and 15, each of

6    those indictments charging the defendant with kidnapping.

7          Indictments 2011-140 Counts 16, 17 and 18, each of

8    those indictments charging the defendant with intimidation

9    of a witness or other person.

10         Will all of the jurors please stand and raise your

11   right hands.

12         (The venire was sworn.)

13         THE COURT:  Good morning again, ladies and gentlemen.

14         My name is Jeffrey Kinder.  I'm a Superior Court Judge

15   and I want to welcome all of you to Courtroom Number 2 in

16   the Hampden County Hall of Justice.

17         For some of you it may be welcome back.  How many of

18   you have participated in the jury selection process before

19   by way of show of hands?

20         (Pause)

21         THE COURT:  And of that number, how many have actually

22   been selected to sit on a jury?

23         (Pause)

24         THE COURT:  And how many of you are here for the very

25   first time having never participated in this process?

1        (Pause)

2        THE COURT:  To those of you in category three, if you

3   are anxious, having never done this before, you can relax.

4   As long as you understand English, your life experience and

5   common sense make you a perfect candidate to be a juror.

6   And if, as I gather from some of your faces, you are feeling

7   generally inconvenienced by having to be here today, I get

8   that.  Unfortunately, that is not an uncommon reaction to

9   receipt of your summons; but let me offer a slightly

10  different prospective, did you know that in our country,

11  there are only two times when our government calls upon us

12  as citizens to come forward and serve in some affirmative

13  capacity?  One is the military draft, which, as you probably

14  know, has not existed since the days of the Vietnam War.

15       The only other time our government calls upon its

16  citizens to come forward and serve is jury service.  And in

17  this Commonwealth that happens only once every three years

18  and then only for one day or one trial, whichever is longer.

19       If you can take a step back from your personal and

20  professional concerns, and think about it from that

21  prospective, I suggest it is a small sacrifice that we all

22  make once every three years to ensure that all of us are

23  afforded the protection of the jury system.

24       A protection which, by the way, is guaranteed by our

25  Massachusetts Constitution called the Declaration of Rights,

1   which happens to be the oldest written constitution still in

2   continuous effect in the world, older even than our United

3   States Constitution.

4        And in that document there is a phrase that states that

5   no person will be deprived of their liberty or their

6   property but by judgment of their peers.  That is the phrase

7   that guarantees all of us a right to a jury trial.  Today,

8   ladies and gentlemen, you are those peers.

9        We are about to select a jury in a criminal case.  As

10  you now know it is known as the Commonwealth of

11  Massachusetts vs. David Chalue.  And in a moment I'm going

12  to tell you more about the case and I'm also going to tell

13  you about the system we're going to use to select a jury in

14  the case.  But before I do that, I want to introduce to you

15  some of the important people that will be helping me

16  throughout jury selection and the trial.

17       Now, first of all, Debbie Capeless is seated directly

18  in front of me.  She is the elected Clerk in Berkshire

19  County.  Her responsibility will be to assist me with

20  various administrative matters, record-keeping issues

21  throughout the course of jury selection and trial.

22       To Ms. Capeless' right, to your left, is Alicia Cayode

23  Kyles.  As you can see, she is the stenographer, and is

24  taking down everything that I say by way of keystrokes and

25  she will do that same thing throughout the course of jury

1    selection and trial, whether I'm speaking or the attorneys

2    might be speaking or one of you might be speaking.

3         The Court Officers, you already have had some contact

4    with.  Let me, in no particular order, name them for you:

5    Bill Curtis, Heath Joseph, Jerry McBride, Larry Roberson,

6    Chip Kerr, Paul Dunn, and Lewis Garced might also be helping

7    us at some time during the day.

8         Their responsibility is courtroom decorum and

9    responsibility and they will also coordinate your movements

10   as jurors, both during the jury selection process and once

11   the trial commences.

12        Now let me take a moment and explain to you the process

13   of jury selection so there's no mystery in what your

14   responsibility is.

15        Each of you has been handed a card, and that card has a

16   number on it, we're going to use that card in the jury

17   selection in the following way, I'm going to ask a series of

18   questions to all of you.  No verbal response is required.

19   They are yes or no questions.  If your answer to one of my

20   questions is yes, I want you to raise your card in the air

21   high enough so that we can see it, and hold it there long

22   enough so that the Court Officers have an opportunity to

23   report the number on it to me.

24        So let me go over that again.

25        If your answer to one of my questions is no, you're

1    going to do nothing.  If your answer is yes, you're going to

2    hold your card in the air high enough so that I can see it.

3    And by that I mean like this, not like this, because often

4    we can't see beyond the person seated in front of you.

5    (Indicating)

6        And hold it there nice and high until such time as you

7    hear the number on your card reported to me.

8        Then I want you to put your card back in your lap.

9        Now, this is not a test.  These are not difficult

10   questions.  They are designed to determine whether or not

11   you are capable of listening to the evidence in this case

12   with an open mind and make a decision fairly and impartially

13   about what the facts are in this case based only on what you

14   see and hear in the courtroom.

15       Now, let me say this, I sometimes find that jurors are

16   uncertain as to whether or not their answer should be yes or

17   no to a particular question.

18       And in their uncertainty, they fail to raise their

19   card, only to learn later in the proceedings that the

20   information they were uncertain about would have been

21   important for the lawyers, and for me, to know during the

22   jury selection process.

23       So, in an abundance of caution, if you are uncertain as

24   to whether or not you should raise your card, please do so

25   anyway.  There is no penalty for bringing something to our

1    attention that later turns out to be a matter of no
2    consequence.

3          So that will be the first phase of the jury selection
4    process.  It will happen here in the courtroom.  I'm going
5    to ask the questions as I'm speaking to you now of the
6    entire group, and we will record your responses and then
7    move on to the next question.

8          Again, there is no verbal requirement in you answering
9    any of these questions.  You do nothing if your answer is
10   no.  If your answer is yes, you simply raise your card.

11         Now, the fact that you raise your card doesn't mean
12   that you're not a perfectly good juror in this case.  It
13   just means that there's something that we need to discuss
14   further with you.

15         For example, one of the things we will be doing is
16   introducing you to the lawyers in this case to determine
17   whether or not any of you know the lawyers, and if so,
18   whether or not that might affect in any way your ability to
19   be fair to both sides.

20         So, now, after that first phase is complete, that is
21   after you have answered the short number of questions I will
22   have for all of you, I'm going to take a brief recess, we're
23   going to remove all of you from the courtroom, and then
24   we're going to bring you back into the courtroom one at a
25   time and I'm going to ask some additional questions in open

1   court, but without all of the other jurors here.

2        I have determined that it's appropriate to do that

3   because I have some follow-up questions that I think are

4   best asked privately.

5        When I call you back into the courtroom one by one, the

6   first thing I will probably ask you is whether or not you

7   responded to any of my earlier questions by raising your

8   card.  Try to bear those in mind if you did.  If you happen

9   to forget, that's not a crisis.  We will keep a record of

10  what response you made.

11       I will also have with me your biographical form that

12  each of you has filled out, which addresses things like your

13  occupation, whether or not you've been a juror before, those

14  sorts of things.  It may be that there is some questions on

15  that biographical form that pop up and that I ask about when

16  you come back into the courtroom.  And finally, I will have

17  a short list of additional questions that I will ask of you.

18       Now, I'm sure you are all wondering how long this case

19  will take and what imposition on your time and personal and

20  professional schedules it would mean.

21       One of the first things that I do, when I bring you

22  back into the courtroom is inform you exactly how long we

23  anticipate this case will take and then I will ask you a

24  question related to that schedule.

25       That concludes my preliminary remarks with one

1    exception.  First, I want to thank you all for your patience

2    here this morning.  I know you've been waiting in cramped

3    quarters and we understand that and we're going to try to do

4    this as efficiently as we can.  The process of selecting a

5    jury, for reasons that are important, can be tedious at

6    times.  So we will get through this as quickly as we can.

7         First phase will go quite quickly, but when we bring

8    you back into the courtroom one at a time, that will slow

9    the process down somewhat, and I ask for your patience in

10   advance and apologize for any inconvenience the waiting

11   might bring.

12        However, it's an important process and I ask you to

13   bear with us.

14        One of the things I want to tell you is after I excuse

15   you, after I've asked all of the questions in that first

16   phase and we place you in another room to wait, you should

17   feel free to discuss among yourselves anything you'd like

18   except this case.  Please do not discuss any aspect of this

19   case that you have learned about in the courtroom or

20   previously with your fellow jurors.

21        Now, that concludes my initial remarks.

22        Let me, first, now turn to the lawyers and ask them to

23   introduce themselves to you.  One of the questions I will

24   ask you will relate to your knowledge of the attorneys.

25        Mr. Capeless, could you start by introducing yourself

1   and your colleagues, please.

2        MR. CAPELESS:  Thank you, Your Honor.

3        Ladies and gentlemen, good morning.  I'm Berkshire

4   District Attorney David Capeless and I will be prosecuting

5   this case on behalf of the Commonwealth, assisted by First

6   Assistant District Attorney Paul Caccaviello.

7        MR. CACCAVIELLO:  Good morning.

8        MR. CAPELESS:  And Assistant District Attorney Gregory

9   Barry.

10       MR. BARRY:  Good morning.

11       THE COURT:  Mr. Frank, would you introduce yourself,

12   your client, and your colleagues please.

13       MR. FRANK:  Thank you.

14       Good morning, ladies and gentlemen.  I'm Attorney

15   Donald Frank with Offices in Springfield.  I will be

16   assisted by Attorney Meredith Ryan who will be in and out

17   during course of the trial and Bonnie Allen, who will be

18   seated next to me.

19       And to the far side of me is David Chalue the

20   defendant, and my client, in this matter.

21       MS. ALLEN:  Good morning.

22       MS. RYAN:  Good morning.

23       THE COURT:  Thank you.

24       Ladies and gentlemen, I mentioned that I would tell you

25   a little bit more about the case before we begin, so let me

1  do that now.

2       In this criminal case, the Commonwealth alleges that on

3  or about August 28 of 2011, David Chalue and two other men,

4  Adam Hall and Caius Veiovis, kidnapped and murdered David

5  Glasser, Edward Frampton and Robert Chadwell in the area of,

6  Pittsfield Massachusetts by shooting and stabbing them.

7       It is further alleged that the bodies of Glasser,

8  Frampton, and Chadwell were buried in Becket, Massachusetts

9  with the assistance of David Casey.

10       The Commonwealth alleges that these murders were

11  committed to eliminate Glasser, Frampton and Chadwell as

12  witnesses against Mr. Hall.

13       It is important for you to remember that these charges,

14  which Mr. Chalue denies, are mere allegations.

15       Mr. Chalue is presumed to be innocent, the Commonwealth

16  has the burden of proving his guilt beyond a reasonable

17  doubt.  Mr. Chalue has no obligation to present any evidence

18  at this trial.

19       Now, ladies and gentlemen, I'm going to begin to ask

20  the questions of you as a group.  Remember, if your answer

21  is no, you do nothing.  If your answer is yes, you raise

22  your card nice and high so we can see it and hold it there

23  until the Court Officers have a chance to report it to me.

24       The first question is, Do you know, are you related to

25  the defendant, David Chalue, or any member of his family?

1        (Pause)

2        THE COURT:  No cards have been raised in response to

3   that question.

4        Are you employed by or related to any member of the

5   Berkshire County District Attorney's Office?

6        (Pause)

7        THE COURT:  Again, no cards have been raised.

8        Have you or any close relatives or family members ever

9   been employed by any federal, state or local law enforcement

10  agency?

11       (Pause)

12       COURT OFFICER:  Juror Number 65, 48, 61, 20, 15, 37,

13  80, 81, 111, 90, 28, 20.

14       COURT OFFICER:  Juror Number 66, Number 1, Number 95,

15  91, 68, 19, 14, 10, 13, 35, 3, 50, 60.

16       COURT OFFICER:  Jurors Number 94 and 8, Your Honor.

17       THE COURT:  Thank you.

18       COURT OFFICER:  Also Juror Number 48.

19       THE COURT:  Thank you.

20       Would you tend to believe or disbelieve the testimony

21  of a police officer as opposed to the testimony of any other

22  witness simply because that witness is employed as a police

23  officer?

24       (Pause)

25       THE COURT:  No cards have been raised in response to

1    that question.

2        Do you know or are you related to any of the court

3    personnel, any of the attorneys in this case, or anyone

4    associated with any of the attorneys?

5        (Pause)

6        COURT OFFICER:  Jurors Number 91 and 66, Your Honor.

7        THE COURT:  Thank you.

8        The alleged victims in this case are David Glasser,

9    Edward Frampton, and Robert Chadwell.

10       Do any of you know any of the victims or any of the

11   members of their immediate families?

12       (Pause)

13       THE COURT:  No cards have been raised.

14       Do you have any interest or stake whatsoever in this

15   case or its outcome?

16       (Pause)

17       THE COURT:  No cards have been raised.

18       Have you expressed or formed any judgment or opinion in

19   this case?

20       (Pause)

21       COURT OFFICER:  Jurors Number 94, 91, 51, 55, and 25

22   Your Honor.

23       COURT OFFICER:  Juror Number 98, 89, 90.

24       COURT OFFICER:  And also Juror Number 56.

25       Are you aware of any bias or prejudice you may have

1    either for or against the Commonwealth or the defendant?

2        (Pause)

3        COURT OFFICER:  Juror Number 81.

4        COURT OFFICER:  Your Honor, we have one juror

5    expressing he could not hear that specific question.

6        THE COURT:  All right.  I will re-ask that question,

7    sir.  If it will be easier, you can move closer, but let me

8    ask the question again.

9        Are you aware of any bias or prejudice that you might

10   have either for or against the Commonwealth or the

11   defendant?

12       (Pause)

13       COURT OFFICER:  Juror Number 64, 43, 81.

14       COURT OFFICER:  And also Juror Number 94, Your Honor.

15       THE COURT:  Is there any reason such as physical

16   ailment, language difficulties, religious beliefs, hearing

17   impairment, medical problems or the like, that might prevent

18   you from serving as a juror in this case?

19       (Pause)

20       COURT OFFICER:  Juror 107.

21       THE COURT:  Nice and high.

22       COURT OFFICER:  65, 34, 20, 98, 89.

23       COURT OFFICER:  Jurors Number 95, 68, 11, 33, and 55

24   Your Honor.

25       THE COURT:  Thank you.

1        Ladies and gentlemen, there are certain fundamental

2   constitutional principles that govern this and every other

3   criminal case.  Some of them I have alluded to already.  I

4   want to mention them again and then ask you a question about

5   them.

6        First, the defendant, Mr. Chalue, is presumed to be

7   innocent of the charges against him.  And he remains

8   innocent unless and until proven guilty by the Commonwealth.

9   The Commonwealth has the burden of proving him guilty beyond

10  a reasonable doubt.

11       The failure to meet that burden of proof must result in

12  a finding of not guilty.

13       The defendant is not required to present any evidence

14  on his behalf and is under absolutely no obligation to

15  testify himself at this trial.

16       If any prospective juror has any difficulty at all in

17  understanding or accepting these principles, please raise

18  your card.

19       (Pause)

20       THE COURT:  No cards have been raised in response to

21  that question.

22       Ladies and gentlemen, as you wait to be brought back

23  into the courtroom, to -- for those individual questions the

24  Court Officers are going to provide you with a list of

25  witnesses that may be called in the trial.  And I'm going to

1    ask you to review that list carefully.

2        One of the first questions I will ask you when you

3    return to the courtroom is whether or not you know any of

4    the potential witnesses, and if the answer is yes, I will

5    have some follow-up questions about how you know them.

6        That concludes my group questions, ladies and

7    gentlemen.  I'm going to take a brief recess.  We are going

8    to remove you from the courtroom and then bring you back

9    into the courtroom individually for the next phase of jury

10   selection.

11       We are in recess.

12       (The Court exited at 9:58 a.m.)

13       (* * * * *)

14       (The Court entered at 10:06 a.m.)

15       (The defendant was present.)

16       THE COURT:  Mr. Frank.

17       MR. FRANK:  Thank you, Judge.

18       Your Honor, I was a little concerned that none of the

19   jurors raised their hands when asked if they would tend to

20   believe an officer more or less than a civilian witness, and

21   I suggest that there may have been some uncomfortableness.

22   I'm not sure why.  It's my first experience where nobody has

23   raised their hand.  In a large jury, I would ask that we add

24   that question to the to list of the individual voir dires.

25   It may be simply that people were uncomfortable as nobody

1   else did it.

2         (Pause)

3         THE COURT:  Mr. Capeless, do you wish to respond to

4   that?

5         MR. CAPELESS:  It's not the first time that I've

6   experienced that, Judge.

7         THE COURT:  Nor is it the first time I've experienced

8   it.  And, I'm satisfied that the jurors understood the

9   questioning, which was in fairly straightforward English and

10   I'm also satisfied that -- my observation, that none of them

11   responded, so I don't see a need to ask it again in a

12   private setting.

13         But your objection is noted for the record.

14         MR. FRANK:  Thank you.

15         THE COURT:  All right.  I elected to save the question

16   of pretrial publicity as an individual question, so I will

17   add that to the list of nine questions that I earlier

18   provided to you.

19         All right.  We can bring in the first potential --

20         We have to set Mr. Chalue to the Bar.  Thank you.

21         THE CLERK:  Will you please stand.

22         You are now set to the bar to be tried and these

23   persons whom I shall call are to pass between the

24   Commonwealth and you upon your trial.

25         If you would object to any of them, you must do so as

1    they are called and before they are sworn.

2         You have a right to challenge any 16 of their number

3    without assigning any reason therefor and as many others as

4    you have good cause to challenge.

5         You may be seated.

6         THE DEFENDANT:  Thank you.

7         THE CLERK:  Thank you.

8         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 1

9         THE COURT:  Ms. Colson, good morning.

10        THE JUROR:  Good morning.

11        THE COURT:  Do I have the name correct, do I not?

12        THE JUROR:  Miss Colson.

13        THE COURT:  Yes.  Ms. Colson, we anticipate this case

14   will take us roughly four weeks to complete proceeding from

15   9:00 in the morning to 4:00 in the afternoon most days with

16   some days off along the way.

17        Bearing in mind that schedule, the importance of this

18   case and our need for good jurors like you, are you

19   available to help us?

20        THE JUROR:  (Indicating)

21        THE COURT:  You have to say yes or no.

22        THE JUROR:  Yes.

23        THE COURT:  Have you reviewed the list of potential

24   witnesses while you've been waiting?

25        THE JUROR:  Yes, I have.

1          THE COURT:  Did you raise the names of any of those

2     witnesses?

3          THE JUROR:  I recognize one name.

4          THE COURT:  And what name was that?

5          THE JUROR:  Sergeant Christopher Sanchez.

6          THE COURT:  How do you know Mr. Sanchez?

7          THE JUROR:  I went to nursing school with his wife.

8     You know, back then, gotten together a few times.

9          THE COURT:  Did you know him on a social basis at that

10    time?

11         THE JUROR:  No.

12         THE COURT:  All right.  If Mr. Sanchez were called to

13    testify in this case, do you think that you would tend to

14    place any greater significance on his testimony as a result

15    of your relationship?

16         THE JUROR:  No, I don't believe so, no.

17         THE COURT:  Do you have a current relationship with him

18    of any kind?

19         THE JUROR:  No.

20         THE COURT:  Thank you.

21         Do you think that -- well -- strike that.

22         Have you seen or heard anything about this case in the

23    media or have you discussed it with anyone?

24         THE JUROR:  I have not.

25         THE COURT:  Did you respond in the affirmative to any

1  of my earlier questions that I asked of the entire group?

2       THE JUROR:  I did.

3       THE COURT:  Do you remember which ones?

4       THE JUROR:  The law enforcement family members.

5       THE COURT:  Friends or family in law enforcement?

6       THE JUROR:  Uh-huh.

7       THE COURT:  And who is that family member and what

8  capacity do they work or did they work?

9       THE JUROR:  Well, they did.  My father was auxiliary

10  police in Westfield but he's been gone for 20 something

11  years.

12       THE COURT:  Is there anything about his line of work or

13  your relationship with him that you think could affect your

14  ability to be a fair and impartial juror in this case?

15       THE JUROR:  No.

16       THE COURT:  Have you or any family member ever been the

17  victim of a crime of violence?

18       THE JUROR:  No.

19       THE COURT:  There may be evidence in this case that one

20  of the defendants, Mr. Hall, had some affiliation with the

21  Hells Angels Motorcycle Club and Mr. Chalue, the defendant

22  in this case, had some affiliation with an organization

23  known as the Aryan Brotherhood.  If you were to hear such

24  evidence would that prevent you from acting as a fair and

25  impartial juror?

1          THE JUROR:  No.

2          THE COURT:  Robert Chadwell, one of the victims in this

3     case, was an African American male.  Mr. Chalue is

4     Caucasian.  Would those facts alone affect your ability to

5     be a fair to both sides in this case?

6          THE JUROR:  No.

7          THE COURT:  The defendant, Mr. Chalue, has an absolute

8     right to remain silent.  If he exercises that right and does

9     not testify in this case, would you hold that against him in

10    any way?

11         THE JUROR:  No.

12         THE COURT:  There may be evidence in this case that the

13    victims' bodies were dismembered.  If you were to hear such

14    evidence would that prevent you from acting as a fair and

15    impartial juror?

16         THE JUROR:  No.

17         THE COURT:  The evidence may also include photographs

18    that might be graphic in nature.  If you were to see such

19    photographs, would that alone prevent you from acting as a

20    fair and impartial juror?

21         THE JUROR:  No.

22         THE COURT:  Is there any other reason, whether I have

23    asked about it or not, why you think you could not be a fair

24    and impartial juror?

25         THE JUROR:  No.

1        THE COURT:  All right.  Thank you.  I'm going to ask

2   you to step into the hallway for just a moment.

3        THE JUROR:  Okay.

4        (The juror exited.)

5        THE COURT:  I find her indifferent.

6        MR. CAPELESS:  Commonwealth is content with this juror,

7   Your Honor.

8        MR. FRANK:  Judge, there are two areas that you

9   inquired with -- I'm waiting for the door to shut.

10       There are two areas that you inquired with that I think

11  need a little further inquiry.  One is, you asked about --

12  she mentioned her father who had long passed, her brother is

13  currently an auxiliary police officer.  There is no query as

14  to whether or not his relationship would affect her.

15       And second of all, you asked regarding whether or not

16  she had a relationship with Chris Sanchez, if there was a

17  social relationship.  And I'm not clear whether or not you

18  asked if that was currently, if there was a current reason

19  for her to -- if that would currently affect her ability to

20  look at him dispassionately.

21       THE COURT:  I thought that I did, but I will inquire.

22       MR. FRANK:  Thank you.

23       (The juror entered.)

24       THE COURT:  Ms. Colson, a couple of follow-up

25  questions.  I'm not sure if I asked you about your brother's

 1  police employment.  Do I understand he's an auxiliary police
 2  officer?
 3       THE JUROR:  He was a long time ago, I neglected to say
 4  him too.  They were at the same time.
 5       THE COURT:  All right.  Is there anything about your
 6  brother's line of work that you think could influence your
 7  ability to be fair and impartial in this case?
 8       THE JUROR:  No.
 9       THE COURT:  And getting back to Mr. Sanchez for just a
10  moment, I think you said you don't have any current
11  relationship with him; is that correct?
12       THE JUROR:  No -- yes, that's correct.
13       THE COURT:  And there was nothing about your
14  relationship at any time that might affect your ability to
15  be fair and impartial?
16       THE JUROR:  No.
17       THE COURT:  Thank you.  I'm going to ask you to step
18  out again.
19       THE JUROR:  Maybe I need to ask one question.
20       THE COURT:  You may do so.
21       THE JUROR:  Is that okay?
22       The question about the family history of crime.
23       THE COURT:  Yes.
24       THE JUROR:  In 2002 my brother and his wife were -- it
25  was a murder/suicide.  They were both gone at the same time,

1    so, you know, I don't know.

2         THE COURT:  Well, first, thank you for bringing that to

3    our attention.  I'm sorry to hear about that.  The question

4    is whether or not having lived through that experience with

5    other members of your family might affect in some way your

6    ability to act as a fair and impartial juror in this case

7    based on what you now know about it?

8         THE JUROR:  No, I don't think it would.

9         THE COURT:  Thank you very much.

10        Again, if you could step out in the hallway for just a

11   minute.

12        THE JUROR:  Okay.

13        (The juror exited.)

14        THE COURT:  I find her indifferent.

15        MR. CAPELESS:  Commonwealth remains content, Your

16   Honor.

17        THE COURT:  Mr. Frank?

18        MR. FRANK:  Your Honor, I'm concerned about the

19   murder/suicide.  I think that -- first of all, while I think

20   her voice cracked a little bit --

21        THE COURT:  Is there a challenge for cause or

22   peremptory challenge?

23        MR. FRANK:  There's a challenge for cause, Your Honor.

24        THE COURT:  On what basis?

25        MR. FRANK:  On the basis she neglected to answer the

1    question initially that she was involved with a

2    murder/suicide of a close family member.  And I think that

3    the way she presented herself indicates that there is still

4    lingering issues regarding that that may very well come up

5    during the course of this trial.

6         THE COURT:  Well, to the extent there was any emotion

7    in her voice when she responded, I think it's fair to

8    anticipate disclosure of that kind of information in a

9    public setting would cause that reaction in anyone.  She did

10   bring it to our attention without further probing.

11        I am satisfied, based on her response, that she can act

12   as a fair and impartial juror.

13        Do you wish to exercise a peremptory challenge?

14        (Pause)

15        MR. FRANK:  We do.  Thank you.

16        (The juror entered.)

17        THE COURT:  Ms. Colson, thank you for your service.

18   You are excused.

19        THE JUROR:  Thank you.

20        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 3

21        COURT OFFICER:  Mr. Driscoll, good morning.

22        THE JUROR:  Good morning, Your Honor.

23        THE COURT:  Mr. Driscoll, I can see you were previously

24   employed for or perhaps employed as an East Longmeadow

25   Police Officer.  Is that past or present?

1          THE JUROR:  Retired, Your Honor.

2          THE COURT:  All right.  Is there anything about your

3     past experience as a law enforcement officer that you think

4     might affect your ability to be a fair juror in this case?

5          THE JUROR:  I would hope not, Your Honor, but I have

6     worked with prosecutors in the past.

7          THE COURT:  All right.  If I were to instruct you that

8     you need to put aside your past experience and judge this

9     case based only on its facts, do you think you could do that

10    or do you think your past experience has so influenced you,

11    you would not be able to be fair?

12         THE JUROR:  To be honest, Your Honor, I think my past

13    influence will.

14         THE COURT:  I'm sorry to hear that.  You're excused.

15         THE JUROR:  Thank you.

16         (The juror exited.)

17         MR. FRANK:  While we are waiting, I notice Number 5,

18    the next, has questions about the system.  I would ask that

19    you inquire.

20         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 5

21         COURT OFFICER:  Juror Number 5, Your Honor.

22         THE COURT:  Mr. Reopel, good morning.

23         THE JUROR:  Good morning.

24         Have a seat?

25         THE COURT:  No, just stand right there.

 1        Let me start again.  Good morning.

 2        THE JUROR:  Good morning.

 3        THE COURT:  I understand from your biographical form

 4  that you have questions about the system.  To what were you

 5  referring?

 6        THE JUROR:  Well, I had a situation where I felt like I

 7  was treated unfairly.

 8        THE COURT:  All right.  Let me ask a follow-up question

 9  without getting into the details.  Were you a criminal

10  defendant in that case?

11        THE JUROR:  Yes.

12        THE COURT:  All right.  And do you think the fact that

13  you feel as if you were treated unfairly might carry over

14  into your deliberations in this case if you were selected as

15  a juror?

16        THE JUROR:  Possibly, so.

17        THE COURT:  You are excused.

18        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 6

19        COURT OFFICER:  Juror Number 6, Your Honor.

20        THE COURT:  Ms. Duquette, good morning.

21        THE JUROR:  Good morning.

22        THE COURT:  Ms. Duquette, we anticipate this case will

23  take us four weeks to try, proceeding from 9:00 in the

24  morning until 4:00 in the afternoon most days with some

25  exceptions.

1              Bearing in mind that schedule, the importance of this

2      case, and our need for good jurors like you, are you

3      available to help us?

4              THE JUROR:  Yes.

5              THE COURT:  Have you -- did you get a chance to review

6      the witness list?

7              THE JUROR:  I did.

8              THE COURT:  Did you recognize any names?

9              THE JUROR:  No.

10             THE COURT:  Have you read or seen or heard anything

11     about this case in the media or have you discussed it with

12     anyone?

13             THE JUROR:  No.

14             THE COURT:  Did you respond to any of the earlier

15     questions that I asked of the entire group?

16             THE JUROR:  No.

17             THE COURT:  I see that you twice sat on a jury before.

18     Were those criminal cases, do you recall?

19             THE JUROR:  Nothing to this extent.

20             THE COURT:  All right.  But were they criminal cases?

21             THE JUROR:  I don't remember.  It was quite awhile ago.

22             THE COURT:  Do you remember if the jury reached a

23     verdict?

24             THE JUROR:  We did.

25             THE COURT:  Do you remember what the verdict was?

1        Guilty or not guilty.

2        THE JUROR:  Guilty in one and not guilty in another.

3        THE COURT:  All right.  And you don't remember the

4    subject matter of the cases?

5        THE JUROR:  The last one that I served on was somebody

6    had gotten hit by a car.  I don't remember everything

7    though.

8        THE COURT:  Have you or any family member ever been the

9    victim of a crime of violence?

10       THE JUROR:  No.

11       THE COURT:  There may be evidence in this case that one

12   of the defendants, Mr. Hall, had some affiliation with the

13   Hells Angels motorcycle gang, rather, and that this

14   defendant, Mr. Chalue, had some affiliation with an

15   organization known as the Aryan Brotherhood.

16       If you were to hear such evidence, would that prevent

17   you from being fair to both sides?

18       THE JUROR:  No.

19       THE COURT:  Robert Chadwell, one of the victims in this

20   case, was an African American male.  Mr. Chalue is

21   Caucasian.  Would those facts alone affect your ability to

22   act as a fair and impartial juror?

23       THE JUROR:  No.

24       THE COURT:  The defendant has the absolute right to

25   remain silent at this trial.  If he exercises that right and

1    does not testify, would you hold that against him in any

2    way?

3        THE JUROR:  No.

4        THE COURT:  There may be evidence in this case that the

5    victims' bodies were dismembered.  If you were to hear that

6    kind of evidence, would that alone prevent you from being

7    fair and impartial?

8        THE JUROR:  No.

9        THE COURT:  There may also be photographs of the bodies

10   introduced that may be graphic in nature.  If you were to

11   see such photographs would that alone prevent you from being

12   a fair juror?

13       THE JUROR:  No.

14       THE COURT:  Is there any other reason, whether I have

15   asked about it or not, why you think you could not be fair

16   if selected as a juror in this case?

17       THE JUROR:  No, I see no reason.

18       THE COURT:  All right.  Thank you.  I'm going to ask

19   you to step into the hallway for just a moment.

20       THE JUROR:  Okay.

21       (The juror exited.)

22       THE COURT:  I find her indifferent.

23       MR. CAPELESS:  Commonwealth is content with this juror,

24   Your Honor.

25       THE COURT:  Mr. Frank.

1      MR. FRANK:  Content, Your Honor.

2      THE COURT:  All right.

3      (The juror entered.)

4      THE COURT:  Ms. Duquette, you have been selected to sit

5  as juror in this case.  You are going to be the juror in

6  seat number one.

7      THE JUROR:  Okay.

8      THE COURT:  We are not going to actually start the

9  trial today.  We are going to proceed to pick the jury, so I

10  am going to excuse you for the day and ask you to return on

11  Thursday, not tomorrow, but Thursday morning at 9:30.

12      THE JUROR:  Okay.

13      THE COURT:  It's important that during the time you are

14  outside of the courtroom between now and then, that you not

15  discuss the case with anyone, including friends or family

16  members.  You can certainly explain that you've been

17  selected to sit as a juror in a criminal case.  Beyond that,

18  I ask that you say no more.

19      Also, don't view any media reports of the case should

20  there be any.

21      THE JUROR:  Okay.

22      THE COURT:  And don't conduct any independent

23  investigation of the case in any way.

24      THE JUROR:  Okay.

25      THE COURT:  I will see you Thursday at 9:30.

1          THE JUROR:  9:30, okay.

2          VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 7

3          COURT OFFICER:  Juror Number 7.

4          THE COURT:  Ms. Diaz, good morning.

5          THE JUROR:  Good morning.

6          THE COURT:  Ms. Diaz, we expect this case will take us

7   four weeks to complete beginning at 9:00 in the morning and

8   going until 4:00 in the afternoon on most days.

9          Bearing in mind that schedule, the importance of this

10  case, and our need for good jurors like you, are you

11  available to help us?

12         THE JUROR:  Yes.

13         THE COURT:  Did you respond to any of my earlier

14  questions by raising your hand?

15         THE JUROR:  Yes.

16         THE COURT:  Do you remember which ones?

17         THE JUROR:  No.

18         THE COURT:  All right.  Ms. Capeless, if you could take

19  a look at that list while I'm asking the next question.

20         THE CLERK:  Yes, Your Honor.

21         THE COURT:  Did you review the list of potential

22  witnesses?

23         THE JUROR:  Yes.

24         THE COURT:  Did you know any of them?

25         THE JUROR:  No.

1          THE COURT:  Have you seen, read or heard anything about
2     this case in the media or have you discussed it with anyone?
3          THE JUROR:  I've heard it in the media.
4          THE COURT:  All right.  About how long ago was that?
5          THE JUROR:  Last night.
6          THE COURT:  All right.  And in what form, that is what
7     media did you review information about the case?
8          THE JUROR:  22 News.
9          THE COURT:  22 News, all right.  And was -- do you
10    recall the content of it at all?
11         THE JUROR:  No, they were going to pick jurors today.
12         THE COURT:  And was that the only media exposure you
13    had to the case?
14         THE JUROR:  Yes.
15         THE COURT:  Is there anything about what you heard that
16    you think would affect your ability to be fair and
17    impartial?
18         THE JUROR:  No.
19         THE COURT:  Ms. Capeless?
20         THE CLERK:  Your Honor, I do not have any indication
21    she answered in the affirmative.
22         THE COURT:  All right.  We didn't write down that you
23    responded by raising your card.  Did you raise your card
24    earlier?
25         THE JUROR:  My card, yes, when have I done jury duty

1    before.

2        THE COURT:  Oh, I see, you raised your hand at the very

3    beginning?

4        All right.  Thank you.  Well, let me ask you about

5    that, was that a criminal case?

6        THE JUROR:  No.

7        THE COURT:  Was there anything about your prior jury

8    service that you think would affect your ability to be fair

9    and impartial in this case?

10        THE JUROR:  No.

11        THE COURT:  Have you or any close family member or

12    friends ever been the victim of a crime of violence?

13        THE JUROR:  No.

14        THE COURT:  There may be evidence in this case that one

15    of the co-defendants Mr. Hall had some affiliation with the

16    Hells Angels Motorcycle Club and that Mr. Chalue the

17    defendant in this case had some affiliation with an

18    organization known as the Aryan Brotherhood, if you were to

19    hear such evidence, would that evidence alone affect your

20    ability to be fair and impartial?

21        THE JUROR:  No.

22        THE COURT:  Robert Chadwell one of the victims in this

23    case was an African American.  The defendant is Caucasian

24    would those facts alone affect your ability to act fairly

25    and impartially?

1          THE JUROR:  Yes.

2          THE COURT:  Let me ask that question again.

3     Mr. Chadwell, one of the victims was African American.

4     Mr. Chalue is Caucasian.  Do those facts alone, affect your

5     ability to be fair and impartial?

6          THE JUROR:  No.  No.

7          THE COURT:  All right.  The defendant has an absolute

8     right to remain silent.  If he exercises that right and does

9     not testify would you hold that against him in any way?

10          THE JUROR:  No.

11          THE COURT:  The answer was?

12          THE JUROR:  No.

13          THE COURT:  Sorry.

14          There may be evidence in this case that the victims'

15     bodies were dismembered.  If you were to hear that kind of

16     evidence, would that alone prevent you from being a fair and

17     impartial juror?

18          THE JUROR:  No.

19          THE COURT:  There may also be graphic photographs of

20     the bodies introduced into evidence.  If you were to see

21     such photographs, would that prevent you from acting fairily

22     and impartially?

23          THE JUROR:  No.

24          THE COURT:  Is there any other reason, whether I asked

25     about it or not, whether you think you could not be fair if

1   selected as a juror?

2        THE JUROR:  No.

3        THE COURT:  Bear we me for just a moment.

4        (Pause)

5        THE COURT:  I see from your biographical form that you

6   had some experience with the criminal justice system before?

7        THE JUROR:  Yes.

8        THE COURT:  How long ago was that experience?

9        THE JUROR:  August -- last year, 2013.

10       THE COURT:  And did a criminal case result from that?

11       THE JUROR:  No.

12       THE COURT:  Was there anything about that experience

13   that you think might affect your ability to be fair to both

14   sides?

15       THE JUROR:  No.

16       THE COURT:  Thank you.  I'm going to excuse you.  If

17   you could step out in the hallway for just a moment.

18       (The juror exited.)

19       THE COURT:  I find her indifferent.

20       MR. CAPELESS:  Commonwealth challenges, Your Honor.

21       THE COURT:  Very well.

22       (The juror entered.)

23       THE COURT:  Ms. Diaz, thank you for your service.  You

24   are excused.

25       THE JUROR:  Thank you.

1      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 8

2      COURT OFFICER:  Juror Number 8.

3      THE COURT:  Good morning, ma'am.  Is it Miss Pastore;

4  is that how you pronounce your name?

5      THE JUROR:  Yes.

6      THE COURT:  Ms. Pastore, we anticipate this case will

7  take us four weeks to complete, proceeding from 9:00 in the

8  morning to 4:00 in the afternoon most days.

9      Bearing in mind that schedule, the importance of this

10  case and our need for good jurors like you, are you

11  available to help us?

12     THE JUROR:  Yes.

13     THE COURT:  All right.  Did you get a chance to review

14  the list of potential witnesses?

15     THE JUROR:  Yes.

16     THE COURT:  Did you recognize any names?

17     THE JUROR:  (Indicating)

18     THE COURT:  Have you read, seen or heard anything about

19  this case in the media or have you discussed it with anyone?

20     THE JUROR:  Not really.  I heard about it, but not

21  much.

22     THE COURT:  Do you know what the source of the

23  information you heard was?  Was it on the media or some

24  person?

25     THE JUROR:  A person.

 1          THE COURT:  All right.  And how long ago was it that

 2    you heard something about the case?

 3          THE JUROR:  About a month ago.

 4          THE COURT:  All right.  And what was it that you heard?

 5    Can you recall?

 6          THE JUROR:  Not much really.  I wasn't really

 7    interested -- telling you the truth, so I didn't -- I don't

 8    know much.  I don't.

 9          THE COURT:  And do you know what -- was it a social

10    setting or business setting?  In what circumstance did you

11    hear something about the case?

12          THE JUROR:  Well, because actually -- co-worker, she

13    got picked in the jury for the first one.

14          THE COURT:  I see, and has she discussed her jury

15    service with you?

16          THE JUROR:  No, not really, she just -- yeah.

17          THE COURT:  And did she tell you anything about the

18    case other than the fact that she was selected as a juror?

19          THE JUROR:  No.

20          THE COURT:  How did you know she was selected as a

21    juror?

22          THE JUROR:  Because we work together.

23          THE COURT:  Did she tell you that?  Did she tell you

24    she had been chosen?

25          THE JUROR:  Yes.  Yes.

1      THE COURT:  And did she tell you anything about the

2  evidence that was introduced in the case?

3      THE JUROR:  No.  No.

4      THE COURT:  Was there anything at all about what she

5  told you that you think might affect your ability to be fair

6  and impartial?

7      THE JUROR:  No.

8      THE COURT:  Did you answer any of the earlier questions

9  that I asked by answering, raising your card?

10     THE JUROR:  Yes.

11     THE COURT:  Do you recall what question?

12     THE JUROR:  If I know anybody.

13     THE COURT:  Law enforcement?

14     THE JUROR:  Right.

15     THE COURT:  Who do you know?

16     THE JUROR:  My fiancé's cousin.  He's a state trooper.

17     THE COURT:  Your fiance?

18     THE JUROR:  My fiancé's cousin.

19     THE COURT:  Cousin?

20     THE JUROR:  Yeah.

21     THE COURT:  All right.  Is there anything about your

22  relationship with that state trooper that you think might

23  cause you to favor one side over the other?

24     THE JUROR:  No, I don't think so.

25     THE COURT:  Have you or any close friend or family

1   member ever been the victim of a crime of violence?

2        THE JUROR:  I don't know if you would call it -- yes.

3        THE COURT:  All right.  Was that you or some other

4   member of your family?

5        THE JUROR:  Another member of my family.

6        THE COURT:  All right.  Did a criminal case result from

7   that?

8        THE JUROR:  No.

9        THE COURT:  And if you don't -- I don't mean to pry,

10  but what was your relationship to that person?

11       THE JUROR:  My son.

12       THE COURT:  Your son?

13       THE JUROR:  Yes.

14       THE COURT:  Was there anything about your son's

15  experience that you think might cause you to favor one side

16  over the other in this case?

17       THE JUROR:  No, no.

18       THE COURT:  There may be evidence in this case that one

19  of the co-defendants, Mr. Hall, had some affiliation with

20  the Hells Angels Motorcycle Club; and that Mr. Chalue, the

21  defendant in this trial, had some affiliation with the Aryan

22  Brotherhood.  If you were to hear such evidence, would that

23  evidence alone prevent you from being fair to both sides?

24       THE JUROR:  No.

25       THE COURT:  Robert Chadwell, one of the victims in this

1  case was an African American.  Mr. Chalue is Caucasian.

2  Would those facts alone prevent you from being fair to both

3  sides?

4       THE JUROR:  No.

5       THE COURT:  The defendant has an absolute right to

6  remain silent.  If he exercises that right and does not

7  testify, would you hold that against him in any way?

8       THE JUROR:  Of course not.

9       THE COURT:  There may be evidence in this case that the

10 victims' bodies were dismembered.  If you were to hear such

11 evidence would that prevent you from being fair and

12 impartial?

13      THE JUROR:  No.

14      THE COURT:  There may also be photographs of the bodies

15 introduced in evidence that are graphic in nature.  If you

16 were to see such evidence, would that prevent you from being

17 fair to both sides?

18      THE JUROR:  No.

19      THE COURT:  Is there any other reason, whether I've ask

20 about it or not, why you could not be fair and impartial?

21      THE JUROR:  No.

22      THE COURT:  I'm looking at your biographical form and I

23 see that you mention a prior arrest and you refer to your

24 son?

25      THE JUROR:  Yes.

1       THE COURT:  And did a criminal case result from that?

2       THE JUROR:  No.

3       THE COURT:  All right.  And how long ago was that

4  arrest, do you know?

5       THE JUROR:  Recently actually.

6       THE COURT:  And can you tell us what he was arrested

7  for?

8       THE JUROR:  Violated his probation.

9       THE COURT:  All right.  So --

10       THE JUROR:  He's not in the area.

11       THE COURT:  All right.  And where is he on probation?

12       THE JUROR:  Down Georgia.

13       THE COURT:  All right.  And can you tell us what he's

14  on probation for?

15       THE JUROR:  Drugs.

16       THE COURT:  And is there anything about your son's

17  experience as a defendant in that case that you think might

18  cause you to favor one side over the other?

19       THE JUROR:  No.

20       THE COURT:  Thank you, Ms. Pastore.

21       I'm going to ask you to stand in hallway for just a

22  minute.

23       (The juror exited.)

24       THE COURT:  I find her indifferent.

25       MR. CAPELESS:  Commonwealth is content, Your Honor.

1          MR. FRANK:  Content.

2          THE COURT:  All right.  Seat number two.

3          (The juror entered.)

4          THE COURT:  Ms. Pastore, you have been selected to sit

5    as a juror in this case.  You're going to be in seat number

6    two.  We're not actually going to begin the trial today, so

7    I'm going to excuse you --

8          THE JUROR:  Okay.

9          THE COURT:  -- and ask you to come back on Thursday

10   morning at 9:30.  Not tomorrow morning.

11         THE JUROR:  Yes.

12         THE COURT:  Thursday morning at 9:30.

13         THE JUROR:  Okay.

14         THE COURT:  Please do not discuss the fact that you --

15   well, do not discuss any aspect of this case with anyone.

16   You can certainly explain to your family and your friends

17   and your co-workers that you've been selected to sit on a

18   jury in a criminal case.  Beyond that, I ask that you say no

19   more to them.

20         Also don't read any media reports, should there be any,

21   and don't make any effort to investigate any aspect of this

22   case yourself.

23         THE JUROR:  Okay.

24         THE COURT:  Thank you.

25         We will see you Thursday morning at 9:30.

1          THE JUROR:  Thank you.

2          VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 10

3          COURT OFFICER:  Juror Number 10.

4          THE COURT:  Ms. Nawrocki, good morning.

5          THE JUROR:  Good morning.

6          THE COURT:  Ms. Nawrocki, we anticipate this case will

7    take us four weeks to complete beginning at 9:00 in the

8    morning and proceeding from 1:00 or proceeding until 4:00 in

9    the afternoon, five days a week.

10         Bearing in mind that schedule, the importance of this

11   case, and our need for good jurors like you, are you

12   available to help us?

13         THE JUROR:  On Wednesday and Thursday I babysit

14   grandchildren, 9, 10 and 5.

15         THE COURT:  All right.  Obviously this would interfere

16   with that schedule.  Are there other people that can

17   accommodate the children's needs?

18         THE JUROR:  No.  My son works in Natick.  The other

19   grandmother is incapacitated.

20         THE COURT:  Would it be a hardship for your family if

21   you were unable to attend to their needs?

22         THE JUROR:  It would.

23         THE COURT:  You are excused.

24         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 11

25         COURT OFFICER:  Juror Number 11.

1     THE COURT:  Good morning.  Is it Mr. Elton?

2     THE JUROR:  Yes.

3     THE COURT:  Mr. Elton, I see you have had some past

4  experience with the criminal justice system.  Is there

5  anything about those experiences that you think would

6  prevent you from acting fairly and impartially if selected

7  as a juror?

8     THE JUROR:  No.

9     THE COURT:  I don't mean to pry, but can you tell us,

10 this says whether it was you or someone else in your family,

11 was the person you referred to in your response you or

12 someone else in your family?

13    THE JUROR:  Me.

14    THE COURT:  All right.  Can you tell us what the nature

15 of the crime was with which you were charged?

16    THE JUROR:  Some assault and batteries, resisting

17 arrest.

18    THE COURT:  Were you prosecuted here in this building?

19    THE JUROR:  No, Westfield.

20    THE COURT:  In Westfield, all right.

21    And was there anything about -- you already answered

22 this question, I think.  Was there anything about those

23 experiences that you think would affect your ability to be

24 fair and impartial?

25    THE JUROR:  No.

1        THE COURT:  We anticipate this case will take us four

2   weeks to complete proceeding from 9:00 in the morning to

3   4:00 in the afternoon.  Bearing in mind that schedule and

4   the importance of this case, and our need for good jurors

5   like you, are you available to help us?

6        THE JUROR:  Yes.

7        THE COURT:  Have you read, seen or heard anything about

8   this case in the media or have you discussed it with anyone?

9        THE JUROR:  Yes.

10        THE COURT:  And can you tell me whether or not you've

11   discussed it or seen or heard about it in the media?

12        THE JUROR:  Both.

13        THE COURT:  All right.  And what media reports do you

14   recall seeing or hearing?

15        THE JUROR:  Television news, newspaper.

16        THE COURT:  And how recent?

17        THE JUROR:  I can't recall exactly.

18        THE COURT:  All right.  Was there anything about the

19   content of the reports that you think would interfere with

20   your ability to be fair to both sides as a fair and

21   impartial juror?

22        THE JUROR:  No.

23        THE COURT:  And how about the discussions, with whom

24   did you discuss the case?

25        THE JUROR:  Co-workers.

1          THE COURT:  All right.  And can you tell us just in a
2    general sense the nature of those conversations?
3          THE JUROR:  I can't recall to be honest.
4          THE COURT:  Was there anything about those
5    conversations that you think might affect your ability to be
6    fair to both sides?
7          THE JUROR:  I don't believe so.
8          THE COURT:  Did you see the list of witnesses that
9    might be called in the case?
10          THE JUROR:  I did.
11          THE COURT:  Did you recognize any names?
12          THE JUROR:  I didn't.
13          THE COURT:  Did you respond to any of my earlier
14    questions about raising your hand or your card?
15          THE JUROR:  I did.
16          THE COURT:  Do you recall which questions?
17          THE JUROR:  I am almost completely deaf in one ear and
18    very hard of hearing in the other.  I have trouble.
19          THE COURT:  All right.  Were you able to hear all of my
20    questions?
21          THE JUROR:  I believe so.
22          THE COURT:  Ms. Capeless.
23          THE JUROR:  It was the law enforcement question, Your
24    Honor.
25          THE COURT:  There was one question related to whether

1   or not you know or have any friends or family members

2   involved in law enforcement or in the past.

3        THE JUROR:  My father was a police officer.

4        THE COURT:  Is there anything about your relationship

5   with your father or his line of work that you think could

6   affect a your ability to be fair?

7        THE JUROR:  No.

8        THE COURT:  Is there any other reason why you think you

9   might not be able to be fair, whether I asked about it or

10  not?

11       THE JUROR:  No.

12       THE COURT:  Have you or any member of your family ever

13  been the victim of a crime of violence?

14       THE JUROR:  No.

15       THE COURT:  There may be evidence in this case that

16  Mr. Hall, a co-defendant, had some affiliation with the

17  Hells Angels Motorcycle Club and this defendant, Mr. Chalue,

18  has some affiliation with the Aryan Brotherhood.  If you

19  were to hear such evidence, would that evidence alone affect

20  your ability to be fair and impartial?

21       THE JUROR:  No.

22       THE COURT:  There may be evidence in this case, or will

23  be evidence that Robert Chadwell, one of the victims in this

24  case was African American.  The defendant is Caucasian.

25  Would those facts alone affect your ability to be fair and

1  impartial?

2       THE JUROR:  No.

3       THE COURT:  The defendant has an absolute right to

4  remain silent if he exercises that right and does not

5  testify in this trial would you hold that against him in any

6  way?

7       THE JUROR:  No.

8       THE COURT:  There may be evidence in this case that the

9  victims' bodies were dismembered.  If you were to hear that

10 evidence, would it affect your ability to be fair?

11      THE JUROR:  No.

12      THE COURT:  There may be evidence of -- graphic in

13 nature of the photographs of the bodies.  Would you be able

14 to be fair if you were able to see that kind of evidence?

15      THE JUROR:  Yes.

16      THE COURT:  Again, there's -- can you think of any

17 reason, whether I asked about it or not, why you would not

18 be fair if selected?

19      THE JUROR:  No.

20      THE COURT:  Bear with me for just a moment.

21      Thank you.  I'm going to ask you to step into the

22 hallway for just a moment.

23      (The juror exited.)

24      THE COURT:  I find him indifferent.

25      MR. CAPELESS:  The Commonwealth challenges this juror,

1    Your Honor.

2         THE COURT:  Very well.

3         Mr. Elton, thank you for your service this morning.

4    You have been excused.

5         THE JUROR:  Thank you.

6         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 13

7         COURT OFFICER:  Juror Number 13.

8         THE COURT:  Is it Ms. Murca; is that correct?

9         THE JUROR:  Yes.

10        THE COURT:  Good morning.

11        THE JUROR:  Good morning.

12        THE COURT:  Ms. Murca, we anticipate this case will

13   take us four weeks to complete proceeding from 9:00 in the

14   morning to 4:00 in the afternoon on most days.  Bearing in

15   mind that schedule, and the importance of this case, and our

16   need for good jurors like you, are you available to help us?

17        THE JUROR:  I do have a scheduled vacation tomorrow.

18        THE COURT:  All right.

19        THE JUROR:  I'm supposed to be leaving in the morning.

20        THE COURT:  And how long will that vacation last?

21        THE JUROR:  I come back Sunday.

22        THE COURT:  All right.  And that's a prepaid vacation?

23        THE JUROR:  Yeah.

24        THE COURT:  You are excused.

25        THE JUROR:  Okay.

1        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 14

2        COURT OFFICER:  Juror Number 14.

3        THE COURT:  Mr. Cortez, good morning.

4        THE JUROR:  Good morning.

5        THE COURT:  Mr. Cortez, I see from your biographical

6   form that you had a family member involved in the criminal

7   justice system.  Was there anything about that, your uncle's

8   experience as a defendant, that you think might affect your

9   ability to be fair in this case?

10        THE JUROR:  No.

11        THE COURT:  All right.  Was it the same or a different

12   uncle that had law enforcement experience?

13        THE JUROR:  Same uncle.

14        THE COURT:  All right.  Is there anything about your

15   relationship with that uncle that you think might cause you

16   to favor one side over the other?

17        THE JUROR:  No.

18        THE COURT:  Did you raise your card in response to any

19   of my other questions?

20        THE JUROR:  No.

21        THE COURT:  We expect this case will take us four weeks

22   to complete, proceeding from 9:00 in the morning —— 9:30 in

23   the morning until 4:00 in the afternoon.  Bearing in mind

24   that schedule, the importance of this case, and our need for

25   good jurors like you, are you available to help us?

 1           THE JUROR:  I will have to say no.

 2           THE COURT:  All right.  Tell me a little bit about your

 3      conflict.

 4           THE JUROR:  Due to military service, that's what I do

 5      full-time.  I mean, I am sure I could be excused, but --

 6           THE COURT:  All right.  So you're concerned about your

 7      service in the military?

 8           THE JUROR:  Yes.

 9           THE COURT:  And not allowing you to serve as a juror?

10           THE JUROR:  Yes.

11           THE COURT:  That, I think we can get around.  Is there

12      anything else?

13           THE JUROR:  No.

14           THE COURT:  All right.  Then, let me ask a couple of

15      follow-up questions.  Have you seen or heard anything about

16      this case in the media or have you discussed it with anyone?

17           THE JUROR:  No.

18           THE COURT:  Did you review the list of potential

19      witnesses that might be called?

20           THE JUROR:  Yes, I did.

21           THE COURT:  Did you recognize any names?

22           THE JUROR:  No.

23           THE COURT:  Have you or any family member ever been the

24      victim of a crime of violence?

25           THE JUROR:  No.

1        THE COURT:  There may be evidence in this case that one

2   of the co-defendants, Mr. Hall, was affiliated with the

3   Hells Angels Motorcycle Club and this defendant, Mr. Chalue,

4   has some affiliation with the Aryan Brotherhood.  If you

5   were to hear such evidence, would that alone prevent you

6   from being a fair juror?

7        THE JUROR:  No.

8        THE COURT:  Robert Chadwell, one of the victims in this

9   case was African American, Mr. Chalue is Caucasian.  Would

10  those facts alone interfere with your ability to be fair and

11  impartial?

12       THE JUROR:  No.

13       THE COURT:  The defendant has an absolute right to

14  remain silent.  If he excises that right and were not to

15  testify in this trial, would you hold that against him in

16  any way?

17       THE JUROR:  Yes.

18       THE COURT:  You are excused.

19       THE JUROR:  Thank you.

20       MR. FRANK:  Judge, before the next potential --

21       THE COURT:  Yes.

22       MR. FRANK:  In several places you've questioned about

23  whether those facts alone would affect their ability to be

24  impartial.  And as I think about it, I think that may be too

25  restrictive.  While I understand they may end up considering

1    that a potential fact, particular facts about the Aryan

2    Brothers, and we can certainly inquire further, but I think

3    that alone is too narrow a category, specifically the Aryan

4    Brotherhood in regards to this case.

5        THE COURT:  The question is specific to membership in

6    those organizations so that is all I'm asking about, those

7    facts alone.

8        But, is your preference that I not use that term?  I

9    don't think it's misleading because there are other

10   questions designed to address other issues.

11       I will try to refrain from using the word "alone" if it

12   troubles you.

13       MR. FRANK:  Thank you very much, Your Honor.

14   VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 15

15   COURT OFFICER:  Juror Number 15, Your Honor.

16   THE COURT:  Good morning, ma'am.

17   THE JUROR:  Good morning.

18   THE COURT:  Is it Ms. Larivee; is that correct?

19   THE JUROR:  Larivee.

20   THE COURT:  Ms. Larivee, we anticipate this case will

21   take approximately four weeks to complete, proceeding from

22   9:00 in the morn -- 9:30 in the morning until 4:00 in the

23   afternoon.

24       Bearing in mind that schedule, the importance of this

25   case and our need for good jurors like you have, are you

1   available to help us?

2       THE JUROR:  I'm going through a divorce right now.  I

3   have court case of my own next week.  I don't know if that

4   is --

5       THE COURT:  I understand that and sympathize with your

6   desire to participate in that process.  If your concern is

7   whether or not you can adjust that date, based on your

8   participation in this case, I'm confident that the answer is

9   yes.  Beyond that, is there any other reason based on your

10  schedule that you think would make it difficult for you to

11  participate?

12      THE JUROR:  No more than normal, I would guess.

13      THE COURT:  All right.  Let me ask a couple of

14  follow-up questions.  Did you have a chance to look at the

15  list of potential witnesses that might be called?

16      THE JUROR:  I did.

17      THE COURT:  Did you recognize any names?

18      THE JUROR:  One, yes.

19      THE COURT:  Who's name was that.

20      THE JUROR:  Eric Fox.

21      THE COURT:  And how do you know Mr. Fox?

22      THE JUROR:  He was a friend of someone I dated for

23  awhile.

24      THE COURT:  All right.  And do you have an ongoing

25  social relationship with him?

1          THE JUROR:  No.

2          THE COURT:  And was your relationship at that point in

3    time social in nature?

4          THE JUROR:  Yes.

5          THE COURT:  How long ago was it?

6          THE JUROR:  About 10 years.

7          THE COURT:  And would you say that you knew him well?

8          THE JUROR:  We hung out.

9          THE COURT:  All right.  I'm sorry, I don't mean to pry.

10         Assume for the moment that Mr. Fox does in fact

11   testify.  Would your past relationship with Mr. Fox case you

12   to view his testimony in a way that might be different than

13   anyone else?

14         THE JUROR:  I would think so.

15         THE COURT:  You are excused.

16         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 17

17         COURT OFFICER:  Juror Number 17.

18         THE COURT:  Mr. Crawford, good morning.

19         THE JUROR:  Hello.

20         THE COURT:  Mr. Crawford, we anticipate this case will

21   take four weeks to complete, proceeding from 9:30 in the

22   morning until 4:00 in the afternoon.

23         Bearing in mind that schedule and the importance of

24   this case and our need for good jurors like you, are you

25   available to help us?

1        THE JUROR:  Not really.

2        THE COURT:  Why not?

3        THE JUROR:  I work.

4        THE COURT:  All right.  I'm sure you can imagine that

5   most of the people seated here today work.  All right.

6        And your job, is it Premier Transportation?

7        THE JUROR:  Yeah.

8        THE COURT:  And what do you do there?

9        THE JUROR:  It's shipping and receiving, unload and

10   load trailers.

11        THE COURT:  Beyond the fact that you work, is there any

12   other reason why serving as a juror for that particular time

13   would create a substantial hardship?

14        THE JUROR:  I just don't feel comfortable.

15        THE COURT:  What is it that you don't feel comfortable?

16        THE JUROR:  Someone being in trouble again that did bad

17   things.

18        THE COURT:  All right.  Well, let me ask you a question

19   related to that.  No one, of course, likes to hear that

20   someone has been accused of doing bad things.  Is there

21   anything about the accusations against the defendant in this

22   case that you think might prevent you from being a fair

23   juror?

24        THE JUROR:  No.

25        THE COURT:  You're just uncomfortable hearing about

1    those accusations?

2        THE JUROR:  Yeah.

3        THE COURT:  Do you think you could you follow my

4    instructions as to how you should treat the evidence despite

5    the fact you're uncomfortable?

6        THE JUROR:  I don't think so.

7        THE COURT:  You're excused.

8        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 18

9        THE JUROR:  Your Honor.

10       THE COURT:  Mr. Ilnicki, good morning.

11       THE JUROR:  Hi.

12       THE COURT:  Mr. Ilnicki we anticipate this case will

13   take four weeks to complete, proceeding from 9:30 in the

14   morning until 4 o'clock in the afternoon most days.

15       Bearing in mind that schedule, the importance of the

16   case and our need for good jurors like you, are you

17   available to help us?

18       THE JUROR:  Yes.

19       THE COURT:  All right.  I see from your biographical

20   form that you or someone in your family has had experience

21   with the criminal justice system before.  Was that you or

22   someone else in your family?

23       THE JUROR:  Both.

24       THE COURT:  Let's start with you.  I don't mean to pry

25   here but it's important that we all understand this.  What

1  were the charges against you that you were convicted of?

2      THE JUROR:  Driving without a license three or four

3  times.

4      THE COURT:  All right.  And with respect to other

5  family members, what was the nature of that charge and your

6  relationship?

7      THE JUROR:  My brother Frank has been -- spent a little

8  time in jail.  My brother Paul spent a few years in jail.

9  My brother John spent a few years in jail.

10     THE COURT:  All right do you recall the nature of the

11 charges?

12     THE JUROR:  Drugs, a gun.

13     THE COURT:  All right.  Did you review the list of

14 potential witnesses?

15     THE JUROR:  Yes, I did.

16     THE COURT:  And did you know any of them?

17     THE JUROR:  No.

18     THE COURT:  Was there anything about the experiences

19 that you or your brothers have had with the criminal justice

20 system that you think might cause you to favor one side over

21 the other?

22     THE JUROR:  Possibly.

23     THE COURT:  You are excused.

24     THE JUROR:  Thank you.

25     VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 19

```
 1          COURT OFFICER:  Juror Number 19.
 2          THE COURT:  Is it Mr. Dygon?
 3          THE JUROR:  Yes.
 4          THE COURT:  Good morning.
 5          THE JUROR:  Good morning.
 6          THE COURT:  Mr. Dygon we expect this case will take
 7  four weeks to complete proceeding from 9:30 in the morning
 8  until 4 o'clock most days.
 9          Bearing in mind that schedule, the importance of this
10  case and our need for good jurors like you, are available to
11  help us?
12          THE JUROR:  Yes.
13          THE COURT:  Did you look at that list of potential
14  witnesses?
15          THE JUROR:  Yes.
16          THE COURT:  Did you recognize any of the names?
17          THE JUROR:  No.
18          THE COURT:  Have you read, seen or heard anything about
19  the case in the media or have you discussed it with anybody?
20          THE JUROR:  No.
21          THE COURT:  Have you or any family member ever been the
22  victim of a crime of violence?
23          THE JUROR:  No.
24          THE COURT:  There may be evidence in this case that one
25  of the co-defendants Mr. Hall was affiliated with the Hells
```

1  Angels Motorcycle Club and this defendant, Mr. Chalue, has

2  some affiliation with the Aryan Brotherhood.

3      Would those facts affect your ability to act as a fair

4  and impartial juror?

5      THE JUROR:  No.

6      THE COURT:  There will also likely be evidence that

7  Mr. Robert Chadwell, one of the victims, was African

8  American.  Mr. Chalue is Caucasian.  Would those facts

9  affect your ability to be fair to both sides?

10      THE JUROR:  No.

11      THE COURT:  The defendant has an absolute right to

12  remain silent.  If he exercises that right and chooses not

13  to testify at this trial, would you hold that against him in

14  any way?

15      THE JUROR:  No.

16      THE COURT:  There may be evidence in this case that the

17  victims' bodies were dismembered.  If you were to hear that

18  kind of evidence, would that affect your ability to be fair

19  and impartial?

20      THE JUROR:  No.

21      THE COURT:  There may also be photographs of the bodies

22  introduced into evidence.  If those photographs were viewed

23  by you and if they are graphic in nature, would that affect

24  your ability to be fair?

25      THE JUROR:  No.

1      THE COURT:  Can you think of any reason, whether I have

2  asked about it or not, why you would not be fair if

3  selected?

4      THE JUROR:  No reason.

5      THE COURT:  All right.  Thank you.  I'm going to ask

6  you to step back in the hallway for just a minute.

7      (The juror exited.)

8      THE COURT:  Did I ask whether or not he had responded

9  to any of my earlier questions?

10     MR. CAPELESS:  I don't -- I have that he answered about

11  law enforcement and also impediment or other problem.

12     MR. FRANK:  We have that too.

13     THE COURT:  I'm sorry.  What was the second one,

14  Mr. Capeless?

15     MR. CAPELESS:  Whether he had some sort of impediment

16  that would prevent service, physical problem or something.

17     THE COURT:  Thank you.

18     (The juror entered.)

19     THE COURT:  Mr. Dygon, I'm sorry, I forgot to ask you a

20  couple of questions.

21     THE JUROR:  Okay.

22     THE COURT:  When you responded earlier by raising your

23  card in response to my questions, you recall which questions

24  those were?

25     THE JUROR:  I think it was having something to do with

1    law enforcement.

2         THE COURT:  Do you have a friend or family member?

3         THE JUROR:  Yeah, my brother-in-law.

4         THE COURT:  What does he do?

5         THE JUROR:  He's a detective in Chicopee.

6         THE COURT:  Does your relationship with him or his line

7    of work, is that something that you think might cause you to

8    favor one side over the other in this case?

9         THE JUROR:  No.

10         THE COURT:  Did you respond to any other questions that

11    I asked earlier?

12         THE JUROR:  No.

13         THE COURT:  All right.  Thank you.  I'm going to ask

14    you to step back.

15         (The juror exited.)

16         THE COURT:  I find him indifferent.

17         MR. CAPELESS:  Commonwealth is content with this juror.

18         MR. FRANK:  May I just have one moment?

19         THE COURT:  You may.

20         (Off the record discussion with Defense Counsel and The

21    Defendant.)

22         MR. FRANK:  We exercise a peremptory.

23         THE COURT:  Very well.

24         (The juror entered.)

25         THE COURT:  Mr. Dygon, you have been excused.  Thank

1    you for your service.

2         THE JUROR:  Thank you.

3         (The juror exited.)

4         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 20

5         COURT OFFICER:  Juror Number 20.

6         THE COURT:  Mr. Anderson, good morning.

7         THE JUROR:  Good morning.

8         THE COURT:  Mr. Anderson, we expect this case will take

9    four weeks to complete, roughly speaking, proceeding from

10   9:30 in the morning until 4:00 in the afternoon.

11        Bearing in mind that schedule, the importance of the

12   case, and our need for good jurors like you, are you

13   available to help us?

14        THE JUROR:  No.

15        THE COURT:  Why not?

16        THE JUROR:  I'm a foreman of a trucking company -- for

17   a construction company, and on-call firefighter for training

18   in Town of West Brookfield and arson investigator so I have

19   to be on call.

20        THE COURT:  Well, I'm sure you understand that most of

21   the people who are here have jobs as well.  Is there

22   something about your line of work that would cause you a

23   particular hardship?

24        THE JUROR:  Yes.  I have very few workers for me in the

25   construction company and we work lengthy hours already, so.

 1        THE COURT:  And do you think that if you were selected

 2   as a juror, your responsibilities would distract you from --

 3        THE JUROR:  Very much so.

 4        THE COURT:  You're excused.

 5        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 21

 6        THE COURT:  Good morning.  I am trying to read your

 7   writing.

 8        THE JUROR:  Good morning.

 9        THE COURT:  Is it -- I'm trying to read your writing

10   here.  Is it Ms. Ganhao?

11        THE JUROR:  Ganhao.

12        THE COURT:  Ms. Ganhao, good morning again.  We

13   anticipate this case will take approximately four weeks to

14   complete proceeding from 9:30 in the morning until 4:00 in

15   the afternoon.

16        Bearing in mind that schedule, the importance of this

17   case and our need for good jurors like you, are you

18   available to help us?

19        THE JUROR:  Yes.

20        THE COURT:  Did you get a chance to look at that list

21   of potential witnesses?

22        THE JUROR:  I did.

23        THE COURT:  Did you recognize any of the names?

24        THE JUROR:  Not one.

25        THE COURT:  Did you respond to any of my earlier

1    questions by raising your card?

2         THE JUROR:  No.

3         THE COURT:  Have you heard, seen -- or have you heard

4    or seen anything about this case in the media reports or

5    have you discussed it with anyone?

6         THE JUROR:  On the media.

7         THE COURT:  All right.  Can you tell me whether that

8    was print or broadcast media?

9         THE JUROR:  Broadcast.

10        THE COURT:  How long ago was the report that you saw,

11   roughly?

12        THE JUROR:  Probably when it first came out.

13        THE COURT:  All right.

14        THE JUROR:  And this morning on 22 News.

15        THE COURT:  All right.  And what was the, roughly

16   speaking, the content of what you heard this morning?

17        THE JUROR:  That they were selecting jurors for this

18   case.

19        THE COURT:  Was there anything about the media report

20   you heard today or when it first came out that you think

21   might interfere with your ability to be a fair and impartial

22   juror?

23        THE JUROR:  No.

24        THE COURT:  Have you or any close family members ever

25   been the victim of a crime of violence?

1      THE JUROR:  No.

2      THE COURT:  There may be evidence in this case that one

3  of the co-defendants, Mr. Hall, had some affiliation with

4  the Hells Angels Motorcycle Club and that this defendant,

5  Mr. Chalue, had some affiliation with the Aryan Brotherhood.

6  If you were to hear such evidence, would that prevent you

7  from being a fair and impartial juror?

8      THE JUROR:  No.

9      THE COURT:  Robert Chadwell, one of the victims in this

10 case was African American.  Mr. Chalue was Caucasian.

11     Would those facts prevent you from acting fairly and

12 impartially?

13     THE JUROR:  No.

14     THE COURT:  The defendant has an absolute right to

15 remain silent.  If he were to exercise that right in this

16 trial and chose not to testify, would you hold that against

17 him?

18     THE JUROR:  No.

19     THE COURT:  There may be evidence in this case that the

20 victims' bodies were dismembered.  There may be also graphic

21 photographs of the bodies introduced.  If you were to see

22 and hear that kind of evidence, would that prevent you from

23 acting fairly and impartially?

24     THE JUROR:  Maybe.

25     THE COURT:  Let me ask you this question as a

1  follow-up.  No one, of course, likes to be exposed to that

2  kind of information, and in some people it evokes an

3  emotional response, one of disgust or something similar.  If

4  I were to instruct you that you could not allow your

5  emotional reaction to any evidence, including those

6  photographs dictate your decision regarding the facts in

7  this case, do you think you could follow that instruction?

8       THE JUROR:  Yes.

9       THE COURT:  All right.  And bearing that in mind, do

10  you think that simply being exposed to that kind of evidence

11  would prevent you from being fair and impartial?

12       THE JUROR:  No.

13       THE COURT:  Is there any other reason, whether I ask

14  about it or not, why you think you could not be fair if

15  selected as a juror?

16       THE JUROR:  No.

17       THE COURT:  Thank you.  I'm going to ask you to step

18  back into the hallway for just a minute.

19       THE JUROR:  Okay.

20       (The juror exited.)

21       THE COURT:  I find her indifferent.

22       MR. CAPELESS:  Commonwealth is content with this juror,

23  Your Honor.

24       MR. FRANK:  Content.

25       THE COURT:  Very well.

1          (The juror entered.)

2          THE COURT:  Ms. Ganhao --

3          THE JUROR:  Yes.

4          THE COURT:  -- you have been selected to sit as a juror

5     in this case.  You're going to be in seat number three.

6          We're actually not going to start the trial today.

7          THE JUROR:  Okay.

8          THE COURT:  So I'm going to excuse you and ask you to

9     return on Thursday morning, not tomorrow, but Thursday

10    morning at 9:30.  The Court Officers will explain to you

11    where you report.  It is important between now and then you

12    not discuss the case with anyone.

13         You can feel free to explain to friends or co-workers

14    or family that you have been selected to sit on a jury for

15    your own scheduling purposes, but beyond the fact that it is

16    a criminal case, I ask that you say no more.

17         Please don't make any effort to personally investigate

18    any aspect of this case.  And also, do not view any media

19    reports of any kind, should there be any.

20         Thank you for your time this morning and we will see

21    you Thursday morning at 9:30.

22         THE JUROR:  Okay.  Thank you.

23         (The juror exited.)

24         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 23

25         COURT OFFICER:  Juror Number 23, Your Honor.

1        THE COURT:  Ms. Barklow, good morning.

2        THE JUROR:  Good morning.

3        THE COURT:  Ms. Barklow, did you respond to any of my

4   earlier questions by raising your card?

5        THE JUROR:  No.

6        THE COURT:  We expect this case will take four weeks to

7   complete, proceeding from 9:30 each morning until 4:00 in

8   the afternoon.

9        Bearing in mind that schedule, the importance of this

10   case, and our need for good jurors like you, are you

11   available to help us?

12        THE JUROR:  Yes.

13        THE COURT:  Did you get a chance to look at that list

14   of potential witnesses?

15        THE JUROR:  Yes.

16        THE COURT:  Did you recognize any names?

17        THE JUROR:  No.

18        THE COURT:  Have you read, seen, or heard anything

19   about this case on the media or have you discussed it with

20   anyone?

21        THE JUROR:  No.

22        THE COURT:  Have you or any member of your family ever

23   been the victim of a crime of violence?

24        THE JUROR:  No.

25        THE COURT:  There may be evidence in this case that one

1  of the co-defendants, Mr. Hall, has some affiliation with

2  the Hells Angels Motorcycle Club and this defendant,

3  Mr. Chalue, has some affiliation with the Aryan Brotherhood.

4  Would that kind of evidence, should you hear it, interfere

5  with your ability to be a fair juror?

6      THE JUROR:  No.

7      THE COURT:  Robert Chadwell, one of the victims in this

8  case was African American.  Mr. Chalue is Caucasian.  Would

9  those facts alone prevent you from acting as a fair and

10  impartial juror?

11      THE JUROR:  No.

12      THE COURT:  The defendant in this case has an absolute

13  right to remain silent.  If he exercises that right and does

14  not testify, would you hold that against him in any way?

15      THE JUROR:  No.

16      THE COURT:  There may be evidence in this case that the

17  victims' bodies were dismembered and you may see graphic

18  photographs regarding the condition of the body.  If you

19  were to see and hear such evidence, would that prevent you

20  from acting fairly and impartially?

21      THE JUROR:  No.

22      THE COURT:  Is there any other reason, whether I asked

23  about it or not, why you don't think you would be able to be

24  fair?

25      THE JUROR:  No.

1          THE COURT:  All right.  Thank you.

2          I'm going to ask you to step back into the hallway for

3     just a moment.

4          (The juror exited.)

5          THE COURT:  I find her indifferent.

6          MR. CAPELESS:  The Commonwealth is content with this

7     juror, Your Honor.

8          THE COURT:  Very well.

9          MR. FRANK:  Content.

10         THE COURT:  Very well.

11         (The juror entered.)

12         THE COURT:  Ms. Barklow, you have been selected to sit

13    as a juror in this case.  You're going to be in seat number

14    four.  We're actually not going to start the trial today.

15    We're going to start it on Thursday, so I'm going to excuse

16    you and ask you to return on Thursday at 9:30.

17         The Court Officers will explain where you would report.

18         During the time between now and Thursday, please don't

19    discuss the case with anyone.

20         You can certainly explain you have been selected to sit

21    as a juror in a criminal case, but beyond that, I ask that

22    you say no more except the anticipated duration of the case.

23         Also, please don't read any media reports or observe

24    any media reports should there be any and don't make any

25    effort to personally investigate the case in any way.

1        Thank you for your time this morning and I will see you

2   on Thursday.

3        THE JUROR:  The only thing I'm concerned about now is

4   my job.

5        THE COURT:  Well, you are a personal care attendant?

6        THE JUROR:  Yes.

7        THE COURT:  And what is the concern you have about your

8   job?

9        Obviously, anyone that has a job that is selected to

10  sit as a juror in this case for four weeks would have some

11  adjustments to make.  And so, I hear your general concern

12  but I'm not going to excuse you for that reason.

13       THE JUROR:  Okay.

14       THE COURT:  Thank you for bringing that to my

15  attention.

16       THE JUROR:  Okay.  Thank you.

17       THE COURT:  See you Thursday morning.

18       (The juror exited.)

19       THE COURT:  You look puzzled, Mr. Capeless.

20       Could we ask that juror to hold for just a moment?

21       MR. CAPELESS:  I only just request if jurors raise the

22  issue about their job, some of them raise the issue that,

23  you know, people need me at work or things of this nature,

24  but I think people at times might be afraid to say this is

25  going to cause a financial hardship I'm not going to get

1   paid, and I think that should be asked of the jurors.

2        THE COURT:  All right.

3        Mr. Frank, you wish to weigh in on this?

4        MR. FRANK:  I think that's actually a good point.

5        THE COURT:  All right.  If you could have that last

6   juror come in.

7        (The juror entered.)

8        THE COURT:  Ms. Barklow, I want to ask a followup

9   question that -- on the last question you raised regarding

10  your employment.

11       Would you suffer a financial hardship if you were

12  unable to work for four weeks?

13       THE JUROR:  Yeah, without no income I would suffer.

14       THE COURT:  And do you believe that that hardship would

15  potentially distract you if you were seated as a juror?

16       THE JUROR:  Yes.

17       THE COURT:  You are excused.

18       THE JUROR:  Okay.  Thank you.

19       (The juror exited.)

20  VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 24

21       COURT OFFICER:  Juror Number 24, Your Honor.

22       THE COURT:  Mr. Cosgrove, good morning.

23       THE JUROR:  Hi, good morning.

24       COURT OFFICER:  Right there.

25       THE COURT:  You could just stand there, if you would.

1          THE JUROR:  Oh.

2          THE COURT:  It's okay.

3          Mr. Cosgrove, we anticipate this case will take four

4     weeks to complete proceeding from 9:30 in the morning until

5     4:00 in the evening most days.

6          Bearing in mind that schedule, the importance of the

7     case and our need for good jurors like you, are you

8     available to help us?

9          THE JUROR:  I can.  I am a supervisor at a group home

10    with four mentally challenged guys.  They get medicated four

11    times a day.  I know if I'm not there, the behavior issues

12    really reflects that.

13         THE COURT:  Is there someone else that would operate in

14    your stead if you were not there?

15         THE JUROR:  Yeah, I mean, these guys go on a -- routine

16    is major part of their deal.  If I'm not there, even a week

17    vacation can be chaos when I come back; but there is

18    staffing there.

19         THE COURT:  All right.  And from time to time, do you

20    to take vacations?

21         THE JUROR:  Yeah, yeah.

22         THE COURT:  So the concern you're expressing is really

23    for the people that live at the group home as opposed to

24    yourself?

25         THE JUROR:  Right.

1        THE COURT:  All right.  Did you get a chance to look at

2   the list of witnesses?

3        THE JUROR:  Yes.

4        THE COURT:  Did you recognize any names?

5        THE JUROR:  Kate Crowley.  I may have worked with in

6   the past.

7        THE COURT:  All right.  And is your -- how long ago

8   would that have been?

9        THE JUROR:  Probably years, probably a few years.

10       THE COURT:  If Kate Crowley were to testify in this

11  case, as a result of the relationship that you used to have,

12  do you think you would place that witness' testimony on a

13  different level than any other witness?

14       THE JUROR:  No.

15       THE COURT:  Have you read seen or heard anything about

16  this case from the media or have you discussed it with

17  anyone?

18       THE JUROR:  No.

19       THE COURT:  Have you or any close family members ever

20  been the victim of a crime of violence?

21       THE JUROR:  No.

22       THE COURT:  Did you respond to any of my earlier

23  questions by raising your card?

24       THE JUROR:  Just about the one about being dismissed

25  before at another jury.

1      THE COURT:  Previously sat?

2      THE JUROR:  Yeah.

3      THE COURT:  All right.  And what kind of case was that?

4      THE JUROR:  I don't remember.

5      THE COURT:  All right.

6      THE JUROR:  It was years ago.

7      THE COURT:  You actually did not serve?

8      THE JUROR:  Right.

9      THE COURT:  I see.

10     The evidence in this case may include some evidence

11 that a co-defendant, Mr. Hall, had some affiliation with the

12 Hells Angels Motorcycle Club and that this defendant had

13 some affiliation with the Aryan Brotherhood.  Would that

14 kind of evidence prevent you from acting fairly and

15 impartially as a juror?

16     THE JUROR:  No.

17     THE COURT:  Robert Chadwell, one of the victims in the

18 case was African American and the defendant, Mr. Chalue, is

19 Caucasian.  Would these facts prevent you from acting fairly

20 and impartially if selected as a juror?

21     THE JUROR:  No.

22     THE COURT:  The defendant has a right to remain silent

23 in this trial.  If he exercises that right and doesn't

24 testify, would you hold that against him in any way?

25     THE JUROR:  No.

1        THE COURT:  There may be evidence in this case that the

2   victims' bodies were dismembered and you may see photographs

3   that some might consider to be graphic.  If you're selected

4   as a juror, would that kind of evidence prevent you from

5   acting fairly and impartially if selected as a juror?

6        THE JUROR:  No.

7        THE COURT:  Is there some other reason that I have not

8   asked that would prevent you from acting fairly and

9   impartially if selected?

10       THE JUROR:  No.

11       THE COURT:  Thank you.  I am going to ask you to step

12  out into the hallway for just a moment.

13       (The juror exited.)

14       THE COURT:  I find him indifferent.

15       MR. CAPELESS:  The Commonwealth is content with this

16  juror, Your Honor.

17       MR. FRANK:  Defense is content.

18       THE COURT:  Very well.

19       (The juror entered.)

20       THE COURT:  Mr. Cosgrove, you have been selected to sit

21  as a juror.  You are going to be in seat number four.

22       We're actually not going to start the trial today, so

23  I'm going to excuse you and ask you to return not tomorrow

24  morning, but Thursday morning, when the trial will begin.

25       Please, during the time that you are free, from now

1    until then, don't discuss the case with anyone other than

2    the fact that you have been selected as a juror, don't

3    observe any media reports of this case should there be any

4    and don't make any effort to independently investigate any

5    aspects of this case.

6         We will see you Thursday morning at 9:30.

7         THE JUROR:  9:30 Okay.

8         (The juror exited.)

9         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 25

10        COURT OFFICER:  Juror Number 25.

11        THE COURT:  Ms. Restivo, good morning.

12        THE JUROR:  Hi.

13        THE COURT:  I just read your biographical form and I

14   see you have some strong feelings about particular kinds of

15   criminal activity.

16        THE JUROR:  Uh-huh.

17        THE COURT:  Based on what you've now heard about this

18   case, are those feelings such that you feel you could not be

19   fair and impartial if selected?

20        THE JUROR:  Probably not.

21        THE COURT:  Can you articulate that for me so I can

22   make an informed decision?

23        THE JUROR:  When I hear those words -- stabbing,

24   shooting and kidnapping, I pretty much closed my mind to it.

25   No, you know, fault of any people but that's just how I

1  feel.  I teach school with kids, so automatically I --

2       THE COURT:  Sorry to hear that you are not able to keep

3  an open mind.  You are excused.

4       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 26

5       COURT OFFICER:  Juror Number 26.

6       THE COURT:  Mr. Bates, good morning.

7       THE JUROR:  Hello.

8       THE COURT:  Mr. Bates, we anticipate -- you may stop

9  right there.

10      Mr. Bates we anticipate this case will take four weeks

11  to complete, proceeding from 9:30 in the morning until 4:00

12  in the afternoon most days.

13      Bearing in mind that schedule, the importance of this

14  case and our need for good jurors like you, are you

15  available to help us?

16      THE JUROR:  No.

17      THE COURT:  Why is that?

18      THE JUROR:  Because where my work is right now we're

19  sort of short a couple of guys, and we just got a new bailer

20  at my work and we're installing it and we're really short

21  right now and they really need me.

22      THE COURT:  And do you think your absence from work

23  would create a financial hardship for you?

24      THE JUROR:  For that long, yes.

25      THE COURT:  You are excused.

1        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 28

2        COURT OFFICER:  Juror Number 28.

3        THE COURT:  Good morning, is it Mr. Quiles?

4        THE JUROR:  Yes.

5        THE COURT:  Mr. Quiles, we anticipate this case will

6   take us four weeks to complete proceeding from 9:30 in the

7   morning until 4:00 in the afternoon.

8        Bearing in mind that schedule, the importance of this

9   case, and our need for good jurors like you, are you

10  available to help us?

11       THE JUROR:  I drive a school bus so I'm on vacation

12  this week.  I start back to work next week.  Unless I can

13  take time off, I have to talk to my supervisor.  I would be

14  more than willing to.

15       THE COURT:  All right.  And do you think that

16  adjustment in what will be your typical schedule is

17  something that is possible?

18       THE JUROR:  Yes, it is.

19       THE COURT:  All right.  Did you get a chance to look at

20  the list of potential witnesses?

21       THE JUROR:  I did.

22       THE COURT:  Did you recognize any names?

23       THE JUROR:  Nobody.

24       THE COURT:  Have you seen or heard anything about this

25  case on the media or have you discussed it with anyone?

1           THE JUROR:  I don't think so.

2           THE COURT:  Did you respond to any of my earlier

3     questions about raising your card?

4           THE JUROR:  Yes.

5           THE COURT:  Do you recall which ones?

6           THE JUROR:  I wasn't sure.  That's why I raised it.

7           THE COURT:  And what was the nature of the question?

8           THE JUROR:  Its was the second question you asked.

9           THE COURT:  All right.  Miss Capeless, perhaps you can

10    help me on that.

11          THE CLERK:  I think, I believe it was the law

12    enforcement.

13          THE JUROR:  Law enforcement question, Your Honor.

14          THE COURT:  Do you know some friends or family members

15    that work for law enforcement?

16          THE JUROR:  Yes, I do.

17          THE COURT:  What's the nature of your relationship to

18    that person?

19          THE JUROR:  Close friend.

20          THE COURT:  Is it -- is the person related to you?

21          THE JUROR:  No, not blood, no.

22          THE COURT:  Close friends you said?

23          THE JUROR:  Yes.

24          THE COURT:  I'm sorry.  And where does that person

25    work?

 1          THE JUROR:  He's a State Trooper.

 2          THE COURT:  What is his name?

 3          THE JUROR:  Nelson Jay Zayas, Z-A-Y-A-S.

 4          THE COURT:  Is there anything about your relationship

 5    with Mr. Zayas or his line of work that you think might

 6    cause you to favor one side over the other in this case?

 7          THE JUROR:  No.

 8          THE COURT:  Have you or any family ever been the victim

 9    of a crime of violence?

10          THE JUROR:  No.

11          THE COURT:  There may be evidence in this case that one

12    of the co-defendant's, Mr. Hall, had some affiliation with

13    the Hells Angels Motorcycle Club and that Mr. Chalue, the

14    defendant in this action, has some affiliation with the

15    Aryan Brotherhood.

16          If you were to hear such evidence, would that evidence

17    prevent you from acting fairly and impartially?

18          THE JUROR:  No.

19          THE COURT:  Robert Chadwell, one of the victims in this

20    case, was African American and Mr. Chalue was Caucasian.

21    Would those facts prevent you from acting fairly and

22    impartially?

23          THE JUROR:  No.

24          THE COURT:  The defendant in this case has an

25    absolutely right to remain silent.  If he exercises that

1    right and does not testify, would you hold that against him?

2         THE JUROR:  No.

3         THE COURT:  There may be evidence in this case that the

4    victims' bodies were dismembered and you may see photographs

5    of -- that might be considered graphic in nature.  Would

6    that kind of evidence prevent you from acting as a fair and

7    impartial juror?

8         THE JUROR:  No.

9         THE COURT:  Can you think of any other reason, whether

10   I asked about it or not, why you would not be fair if you

11   were selected so sit as a juror?

12        THE JUROR:  No, I cannot.

13        THE COURT:  All right.  Thank you Mr. Quiles, I'm going

14   to ask you to step back in the hallway just for just a

15   minute.

16        THE JUROR:  You're welcome, sir.

17        (The juror exited.)

18        THE COURT:  I find him indifferent.

19        MR. CAPELESS:  Commonwealth is content with this juror,

20   Your Honor.

21        (Pause)

22        MR. FRANK:  We'd exercise a peremptory, Your Honor.

23        THE COURT:  Very well.  Mr. Quiles, thank you for your

24   service.  You have been excused.

25        THE JUROR:  Thank you very much, sir.

1        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 32

2        COURT OFFICER:  Juror Number 32.

3        THE COURT:  Mr. Williams, good morning.

4        THE JUROR:  Good morning.

5        THE COURT:  We expect, Mr. Williams, that this case

6   will take roughly four weeks to complete, proceeding from

7   9:30 in the morning until 4:00 in the afternoon most days.

8        Bearing in mind that schedule, the importance of this

9   case, and our need for good jurors like you, are you

10  available to help us?

11       THE JUROR:  Yes.

12       THE COURT:  Did you get a chance to look at that list

13  of potential witnesses?

14       THE JUROR:  Yes, I did.

15       THE COURT:  Did you recognize any names?

16       THE JUROR:  No one.

17       THE COURT:  Have you read, seen or heard anything about

18  this case in the media or discussed it with anyone?

19       THE JUROR:  I heard things maybe a month or so again,

20  but I never really discussed anything with anyone.

21       THE COURT:  All right.  Can you tell me what the source

22  of the information -- was it print media, broadcast media,

23  or what was it?

24       THE JUROR:  Broadcast.

25       THE COURT:  Do you recall generally the content of what

1    it was that you heard?

2         THE JUROR:  I had heard that three people were killed.

3    That was about it.

4         THE COURT:  All right.  And is there anything about

5    what you recall hearing that you think might interfere with

6    your ability to act as a fair and impartial juror?

7         THE JUROR:  No.

8         THE COURT:  Did you raise your card in response to any

9    of the questions I asked earlier?

10        THE JUROR:  No.

11        THE COURT:  Have you or any family member ever been the

12   victim of a crime of violence?

13        THE JUROR:  No -- I want to rephrase that.  Yes.

14        THE COURT:  All right.  Can you tell me if it was you

15   or a family --

16        THE JUROR:  It was my daughter.

17        THE COURT:  All right.  And did a criminal prosecution

18   result from that victimization?

19        THE JUROR:  No.

20        THE COURT:  And was there anything about that

21   experience that you shared with your daughter that you think

22   might affect your ability to act as a fair and impartial

23   juror in this case?

24        THE JUROR:  No.

25        THE COURT:  There may be evidence in this case that a

1    co-defendant, Mr. Hall, had some affiliation with the Hells

2    Angels Motorcycle Club and that this defendant, Mr. Chalue,

3    had some affiliation with the Aryan Brotherhood

4    organization.  If you were to hear such evidence, would that

5    evidence prevent you from being a fair and impartial juror?

6         THE JUROR:  If it was actual evidence, it is just what

7    it is.

8         THE COURT:  All right.  Well, let's assume that you

9    hear some evidence in the form of testimony or documents

10   that in fact those memberships or familiarities did exist.

11   If you were to hear that kind of evidence, would that

12   evidence affect your ability to be fair to both sides in

13   this case?

14        THE JUROR:  No, it wouldn't affect my ability.

15        THE COURT:  All right.  Robert Chadwell, one of the

16   victims in this case was African American.  The defendant,

17   Mr. Chalue, is Caucasian.  Would those facts prevent you

18   from acting fairly and impartially as a juror?

19        THE JUROR:  No.

20        THE COURT:  The defendant has a right to remain silent

21   at his trial.  If he exercises that right and chooses not to

22   testify, would you hold that against him?

23        THE JUROR:  No.

24        THE COURT:  There may be evidence in this case that the

25   victims' bodies were dismembered and you may see photographs

1    that are graphic in nature.  Would that kind of evidence

2    prevent you from acting as a fair and impartial juror?

3          THE JUROR:  No.

4          THE COURT:  Can you think of any reason, whether I

5    asked about it or not, why you would not be fare if

6    selected?

7          THE JUROR:  Not really.

8          THE COURT:  All right.  You're confident of that?

9          THE JUROR:  Yes.

10         THE COURT:  All right.  Thank you.  I'm going to ask

11   you to step out in the hallway for just a moment.

12         (The juror exited.)

13         THE COURT:  I find him indifferent.

14         MR. CAPELESS:  Commonwealth is content with this juror,

15   Your Honor.

16         MR. FRANK:  Judge, I'm only concerned his daughter was

17   a victim.  We don't know of what, if there is similarity of

18   crime in some fashion; obviously, it might be relevant to

19   our consideration.  We ask for further questioning.

20         THE COURT:  All right.  I will inquire.

21         (The juror entered.)

22         THE COURT:  Mr. Williams, I have a followup question

23   and I apologize in advance because I really don't want to

24   pry into your personal family matters.

25         Can you tell us the nature of the crime, if it was --

1    the nature of the victimization of your daughter?

2         THE JUROR:  My daughter was working at a, like, not a

3    CVS, a variety store.  She went in at 7 o'clock in morning

4    to fill in for someone else and was cleaning up when someone

5    came in and put a knife to her throat and forced her to open

6    a cash register.  And before he left, he did cut her, but

7    she was fine and they never found him.  You know, so that's

8    all I can say.

9         THE COURT:  All right.  Thank you very much.

10        THE JUROR:  Thank you.

11        (The juror exited.)

12        THE COURT:  I still find him indifferent.

13        MR. CAPELESS:  The Commonwealth remains content, Your

14   Honor.

15        MR. FRANK:  I hate to be a nuisance, Judge, but the

16   knifing incident is a concern of ours given the allegation

17   against my client.  And I would ask the Judge to inquire one

18   more time if he were to hear evidence along the lines that,

19   an allegation -- there are allegations of dismemberment, how

20   might your daughter's experience affect your ability to be

21   impartial?  I think it's reasonable under the circumstances.

22        THE COURT:  I have already advised all of the jurors

23   that the nature of the crime was a shooting and a stabbing.

24   I have already described potential dismemberment.  He has

25   already answered all of my questions, including whether or

1   not his daughter's experience would affect his ability to be

2   fair and impartial.  I am satisfied.

3        Do you wish to exercise a preemptory challenge?

4        MR. FRANK:  Judge, I would first ask you do this for

5   cause.  I don't think -- I do think the experience is

6   similar.  And if that is declined, we will ask for a

7   peremptory.

8        THE COURT:  The challenge for cause is denied as for

9   the reasons that I stated.  And you may bring Mr. Williams

10  in, he has been challenged with a peremptory challenge.

11       (The juror entered.)

12       THE COURT:  Mr. Williams, thank you for your service

13  here this morning.  You have been excused.

14       THE JUROR:  Okay.  Thank you.

15  VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 33

16  COURT OFFICER:  Juror Number 33.

17       THE COURT:  Good morning, ma'am.  Is it Ms. Hunter?

18       THE JUROR:  Yes.

19       THE COURT:  Ms. Hunter, good morning.

20       We expect this case will take approximately four weeks

21  to complete, proceeding from 9:30 in the morning until 4:00

22  in the afternoon.  Bearing in mind the importance of this

23  case, and our need for good jurors like you, are you

24  available to help us?

25       (Pause)

1       THE JUROR:  Yes.

2       THE COURT:  You have hesitated and I understand, of

3   course, that an imposition on your time of that duration, as

4   for everybody here, would be a matter of some inconvenience.

5   Is there something in particular that is causing you stress

6   at the moment?

7       THE JUROR:  Well, I'm just going through something

8   going on with my lower abdomen.  I've had pain since Sunday

9   morning so I'm going in and out of the hospital getting

10  tests done for it, so.

11      THE COURT:  Do you have tests scheduled?

12      THE JUROR:  I do.  Actually, I have to go back to the

13  hospital tonight at 6:00 to get more tests done.

14      THE COURT:  All right.  Well, do you think that your

15  physical condition is such that you could not sit as a juror

16  in this case?

17      THE JUROR:  I think it depends because my pain comes

18  and goes.  Right now it's tolerable, but at times it's

19  painful.

20      THE COURT:  All right.  So your hesitation moments ago

21  was based primarily on your physical condition and your

22  concern about that?

23      THE JUROR:  It is, yes.

24      THE COURT:  All right.  And, of course, I don't know

25  whether you will be selected as a juror or not, but if you

1    were and suffered any sort of discomfort, would you simply

2    let me know by raising your hand?

3        THE JUROR:  Yes.

4        THE COURT:  Let me ask you some additional follow-up

5    questions.  First, did you have a chance to look at that

6    list of potential witnesses?

7        THE JUROR:  Yes.

8        THE COURT:  Did you recognize any names?

9        THE JUROR:  No.

10       THE COURT:  Second, have you seen or heard anything

11   about this case in the media or have you discussed it with

12   anyone?

13       THE JUROR:  No.

14       THE COURT:  Have you or any close family members ever

15   been the victim of a crime of violence?

16       THE JUROR:  No.

17       THE COURT:  Did you respond to any of my earlier

18   questions by raising your cared?

19       THE JUROR:  Yes.

20       THE COURT:  Do you recall which ones?

21       THE JUROR:  The one about the medical condition.

22       THE COURT:  All right.  And that's the condition we've

23   already discussed?

24       THE JUROR:  Uh-huh.

25       THE COURT:  There may be evidence in this case that one

1    of the co-defendants, Mr. Hall, had some affiliation with

2    the Hells Angels Motorcycle Club and that this defendant,

3    Mr. Chalue, had some affiliation with the Aryan Brotherhood.

4         If you were to hear such evidence, would that prevent

5    you from acting as a fair and impartial juror?

6         THE JUROR:  Yes.

7         THE COURT:  You are excused.

8         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 34

9         COURT OFFICER:  Juror Number 34.

10        THE COURT:  Ms. Gleason, good morning.

11        THE JUROR:  Good morning.

12        THE COURT:  You may stand right there.

13        THE JUROR:  Okay.

14        THE COURT:  I don't want you to fall off.

15    You want to step down?

16        THE JUROR:  Sorry.

17        THE COURT:  That's all right.  Let me ask you some

18    questions.

19        First, our anticipated schedule in this case is that it

20    will last for four weeks proceeding 9:30 in the morning

21    until 4:00 in the evening.

22        Bearing in mind that schedule and the importance of

23    this case and our need for good jurors like you, are you

24    available to help us?

25        THE JUROR:  No, based on the fact that both of my

1  parents are dealing with cancer right now and I have been

2  dealing with the caregiving.

3       THE COURT:  I'm sorry to hear about your personal

4  situation.  You are excused.

5       THE JUROR:  Thank you.

6       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 35

7       COURT OFFICER:  Juror Number 35.

8       THE COURT:  Mr. Feltenberger, good morning.

9       THE JUROR:  Good morning.

10       THE COURT:  Did you respond any of my earlier questions

11  by raising your card?

12       THE JUROR:  Yes.

13       THE COURT:  I see that your uncle Brian is a

14  Connecticut State Trooper?

15       THE JUROR:  Yup.

16       THE COURT:  Is there anything about your relationship

17  with him that you think might cause you to favor one side

18  over the other?

19       THE JUROR:  Well, generally, I usually think the police

20  do a good job.

21       THE COURT:  All right.

22       THE JUROR:  Not saying I automatically assume you're

23  guilty, sir.

24       THE COURT:  Well, why don't you direct your comments to

25  me.  Can you do that?

1        THE JUROR:  Sorry, yup.

2        THE COURT:  Is your sense that the police usually try

3   to do a good job such that you might elevate the testimony

4   of police officers over the testimony of other witnesses?

5        THE JUROR:  For police officers, yeah.

6        THE COURT:  You are excused.

7        THE JUROR:  I would believe them over --

8        THE COURT:  You are excused.

9   VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 37

10   COURT OFFICER:  Juror Number 37.

11        THE COURT:  Good morning, ma'am.

12        THE JUROR:  Good morning.

13        THE COURT:  Is it Ms. Giebutowski?

14        THE JUROR:  Giebutowski.

15        THE COURT:  Giebutowski.

16        We anticipate that this case will take approximately

17   four weeks to complete, proceeding 9:30 in the morning until

18   4:00 in the afternoon on most days.

19        Bearing in mind that schedule, the importance of this

20   case and our need for good jurors like you, are you

21   available to help us?

22        THE JUROR:  I am working.

23        THE COURT:  As are most of the people here.

24        THE JUROR:  Yes, so I don't know what things are

25   considered to be --

```
 1        THE COURT:  Let me ask it this way, is there anything
 2   about your line of work in particular that you think if you
 3   were to miss it for a period of time that it would create
 4   any kind of hardship such that you would be distracted from
 5   your responsibilities as a juror?
 6        THE JUROR:  No.
 7        THE COURT:  All right.  I see that you have disclosed
 8   that someone in your family worked for the Monson Police
 9   Department.  Can you tell me who that was?
10        THE JUROR:  My father.
11        THE COURT:  And is there anything about your
12   father's -- is he still there?
13        THE JUROR:  No.
14        THE COURT:  Is there anything about his former line of
15   work or your relationship with him that you think might
16   cause you to favor one side over the other?
17        THE JUROR:  It might.  I'm not positive.
18        THE COURT:  All right.  So you think your father's line
19   of work might cause you to favor the police side of this
20   case?
21        THE JUROR:  Possibly.
22        THE COURT:  You are excused.
23        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 38
24        COURT OFFICER:  Juror Number 38.
25        THE COURT:  Ms. Mackean, good morning.
```

1      THE JUROR:  Hi.

2      THE COURT:  Did you respond to any of my earlier

3  questions?

4      THE JUROR:  No, I didn't.

5      THE COURT:  All right.  We expect this case will take

6  us approximately four weeks to complete proceeding from 9:30

7  in the morning until 4:00 in the afternoon.

8      Bearing in mind that schedule, the importance of this

9  case, and our need for good jurors like you, are you

10  available to help us?

11      THE JUROR:  (Indicating)

12      THE COURT:  You have to say yes or no.

13      THE JUROR:  Yes.

14      THE COURT:  All right.  Thank you.

15      Ms. Mackean, did you get a chance to look at that list

16  of witnesses?

17      THE JUROR:  Yes, I did.

18      THE COURT:  Did you recognize any names?

19      THE JUROR:  No, I didn't.

20      THE COURT:  Have you seen or heard anything about this

21  case in the media or have you discussed it with anyone?

22      THE JUROR:  No, I haven't.

23      THE COURT:  All right.  Has any member of your family

24  ever been the victim of a crime of violence?

25      THE JUROR:  No, they haven't.

1        THE COURT:  There may be evidence in this case that one

2   of the co-defendant's, Mr. Hall, had some affiliation with

3   the Hells Angels Motorcycle Club and that this defendant,

4   Mr. Chalue, had some affiliation with an organization known

5   as the Aryan Brotherhood.

6        If you were to hear that evidence, would that prevent

7   you from acting fairly and impartially as a juror?

8        THE JUROR:  No, it wouldn't.

9        THE COURT:  Robert Chadwell one of the victims in this

10  case was African American.  Mr. Chalue is Caucasian.  Would

11  those facts prevent you from acting fairly and impartially?

12       THE JUROR:  No, it wouldn't.

13       THE COURT:  Now, there may be evidence in this case

14  that the victims' bodies were dismembered and the jurors may

15  see photographs that some may consider graphic in nature.

16       If you were to see and hear such evidence, would that

17  prevent you from acting fairly?

18       (Pause)

19       THE COURT:  Take your time, Ms. Mackean.

20       (Pause)

21       THE COURT:  I can only assume, Ms. Mackean, from your

22  emotional reaction that your answer to that question would

23  be yes that it might have some affect on your ability to

24  fairly listen to evidence; is that correct?

25       THE JUROR:  To be able to listen to everything.

1        THE COURT:  You think it would be difficult for you to

2   do that?

3        THE JUROR:  (Indicating)

4        THE COURT:  I appreciate your honesty.  You are

5   excused.

6        THE JUROR:  Thank you.

7        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 39

8        COURT OFFICER:  Juror Number 39, Your Honor.

9        THE COURT:  Good morning.  Is it Ms. Kalita?

10       THE JUROR:  Yes.

11       THE COURT:  Ms. Kalita, we anticipate this case will

12   take four weeks to complete proceeding from 9:30 in the

13   morning until 4:00 most days.

14       Bearing in mind that schedule, the importance of the

15   case, and our need for good jurors like you, are you

16   available to help us?

17       THE JUROR:  Yes.

18       THE COURT:  All right.  Did you get a chance to look at

19   that list of potential witnesses --

20       THE JUROR:  Yes.

21       THE COURT:  Potential witnesses?

22       THE JUROR:  Yes.

23       THE COURT:  Did you recognize any names?

24       THE JUROR:  No.

25       THE COURT:  Have you seen or heard anything about this

1    case in the media or have you discussed it with anyone?

2        THE JUROR:  Just when it happened in 2011 it was in the

3    newspaper.

4        THE COURT:  All right.  Do you recall, generally

5    speaking, the content of what you saw or heard?

6        THE JUROR:  No.  I don't really remember it too well.

7        THE COURT:  Let me ask you this, was there anything

8    about the content of the media that you heard or observed

9    that you think might affect your ability to act as a fair

10   and impartial juror?

11       THE JUROR:  No.

12       THE COURT:  Have you or any family member ever been the

13   victim of a crime of violence?

14       THE JUROR:  No.

15       THE COURT:  Did you respond to any of my earlier

16   questions by raising your card?

17       THE JUROR:  No.

18       THE COURT:  There may be evidence in this case that a

19   co-defendant, Mr. Hall, had some affiliation with the Hells

20   Angels Motorcycle Club and that this defendant, Mr. Chalue,

21   had some affiliation with an organization known as the Aryan

22   Brotherhood.

23       If you were to hear such evidence, would that evidence

24   prevent you from acting fairly and impartially?

25       THE JUROR:  I guess not.

1        THE COURT:  Well, are you confident of that?

2        THE JUROR:  Yes.

3        THE COURT:  All right.  Of course, our concern is that

4   jurors be able to make a decision based on their objective

5   view of the evidence presented.  If that -- those

6   memberships or affiliations were part of the evidence

7   presented, do you think you could still render a fair and

8   objective decision?

9        THE JUROR:  Yes.

10       THE COURT:  The defendant -- I'm sorry.  One of the

11  victims, Robert Chadwell, was an African American.  The

12  defendant, Mr. Chalue, is Caucasian.

13       Would those facts prevent you from acting fairly and

14  impartially?

15       THE JUROR:  No.

16       THE COURT:  I get the sense that you are somehow

17  bothered by my questions or perhaps even your presence here.

18  Is there something wrong?

19       THE JUROR:  No, I guess not.  I mean, I don't know who

20  wants to be here.

21       THE COURT:  Well, I understand that many people don't

22  wish to honor their civic commitment and I guess my overall

23  question for you is your feeling in that regard such that

24  you feel that you could not fairly and impartially act as a

25  juror for a period that might be as long as four weeks?

1        THE JUROR:  I guess it's okay.  I don't know.

2        THE COURT:  The evidence might include some testimony

3   regarding dismemberment of the victims' bodies and graphic

4   photographs.  Would that prevent you from acting fairly and

5   impartially?

6        THE JUROR:  No.

7        THE COURT:  The defendant has a right to remain silent.

8   If he exercises that right in this trial and chooses not to

9   testify, would you hold that against him in any way?

10       THE JUROR:  No.

11       THE COURT:  Can you think of any other reason, whether

12  I have asked about it or not, why you would not be fair and

13  impartial if you were selected?

14       THE JUROR:  No.

15       THE COURT:  Thank you.  I'm going to ask to you step

16  into the hallway for just a minute, please.

17       (The juror exited.)

18       THE COURT:  I find her indifferent.

19       MR. CAPELESS:  Your Honor, considering what I think

20  Your Honor detected was a feeling certainly of her not

21  wanting to be here, although she answered she could be fair

22  and impartial, I think it would be important to ask her

23  whether or not she would be distracted by the idea she

24  doesn't want to be here.

25       THE COURT:  All right.  I will ask the question.

1      (The juror entered.)

2      THE COURT:  Ms. Kalita, I have one follow-up question.

3  Given your earlier responses, I wanted to ask you if you

4  were selected to sit on the jury, would your feeling of

5  inconvenience be such that they -- that you would feel

6  distracted from the evidence presented?

7      (Pause)

8      THE JUROR:  Distracted -- could you reword that in some

9  other way?

10      THE COURT:  Yes.  You have expressed a concern about

11  being here and having to participate, and I'm wondering

12  whether or not that rises to the level that it might cause

13  you your level of concentration.

14      THE JUROR:  I guess I would do the best I could, let's

15  put it that way.

16      THE COURT:  All right.  And let me ask, point blank, do

17  you think you would be distracted?

18      THE JUROR:  No.

19      THE COURT:  All right.  Thank you.

20      (The juror exited.)

21      THE COURT:  I find her indifferent.

22      MR. CAPELESS:  I would ask to challenge her for cause.

23  She said she would try the best she could.  I don't think

24  that is quite good enough, Your Honor.

25      THE COURT:  Challenge for cause is denied.  I'm

1    satisfied with the -- even though she comes with a certain

2    attitude that I understand, I don't believe it rises to the

3    level for a challenge for cause.  I believe she has heard my

4    questions, understood them and answered them, so --

5         MR. CAPELESS:  Commonwealth challenges, Your Honor.

6         THE COURT:  Very well, peremptory challenge.

7         (The juror entered.)

8         THE COURT:  Ms. Kalita, thank you for your service here

9    this morning.  You have been excused.

10        Please bear in mind next time you receive your summons

11   we all go through this.

12        THE JUROR:  Okay.  Thank you.

13        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 40

14        COURT OFFICER:  Juror Number 40.

15        THE COURT:  Mr. Croteau, good morning.

16        THE JUROR:  Hi.

17        THE COURT:  Mr. Croteau, we expect this case will take

18   us four weeks to complete proceeding from 9:30 in the

19   morning until 4:00 in the afternoon.

20        Bearing in mind that schedule, the importance of this

21   case, and our need for good jurors like you, are you

22   available to help us?

23        THE JUROR:  I do have a vacation scheduled for May 2

24   through -- for a week with my wife.

25        THE COURT:  And is that a vacation that's been planned

1    for some time?

2         THE JUROR:  Yeah, we have airline tickets and such.

3         THE COURT:  You are excused.  Have a nice time.

4         THE JUROR:  Thank you.

5         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 42

6         COURT OFFICER:  Juror Number 42.

7         THE COURT:  Good morning.  Is it Mr. Major?

8         THE JUROR:  Hello, sir.

9         THE COURT:  Mr. Major, we expect this case will take

10   four weeks to complete proceeding from 9:30 in the morning

11   until 4:00 most afternoons.

12        Bearing in mind that schedule, the importance of this

13   case and our need for good jurors like you, are you

14   available to help us?

15        THE JUROR:  Yes.

16        THE COURT:  All right.  Did you get a chance to look at

17   that list of potential witnesses?

18        THE JUROR:  Yes.

19        THE COURT:  Did you recognize any names?

20        THE JUROR:  There is one name I did recognize, Caroline

21   Tatro, but I don't know if it's the same one I know.  I just

22   know her in passing.

23        THE COURT:  All right.  Let's assume for a moment it is

24   the same one that you know and she testifies.  Is your

25   relationship with her such that you think you would place

1     her testimony on a different level than any other witness?

2          THE JUROR:  I don't believe so.

3          THE COURT:  All right.  Have you read or seen anything

4     about or heard anything about this case on any media reports

5     or have you discussed it with anyone?

6          THE JUROR:  I heard it on the radio last Fall, but not

7     since then.  I really didn't think about it.

8          THE COURT:  And was there anything about the content of

9     what you overheard that you think might interfere with your

10    ability to act as a fair and impartial juror?

11         THE JUROR:  No.

12         THE COURT:  Have you or any family member ever been the

13    victim of a crime of violence?

14         THE JUROR:  No.

15         THE COURT:  Did you respond to any of my earlier

16    questions by raising your card?

17         THE JUROR:  No.

18         THE COURT:  There may be evidence in this case that

19    Mr. Hall, one of the co-defendants in this case had some

20    affiliation with the Hells Angels motorcycle gang or club

21    and that the defendant in this action, Mr. Chalue, had some

22    affiliation with an organization known as the Aryan

23    Brotherhood.  If you were to hear that kind of evidence,

24    would that prevent you from acting fairly and impartially?

25         THE JUROR:  I don't believe so.

1    THE COURT:  All right.  Robert Chadwell, one of the

2    victims in this case, was African American.  The defendant

3    is Caucasian.  Would those facts affect your ability to be

4    fair and impartial if selected?

5    THE JUROR:  No.

6    THE COURT:  The defendant has an absolute right to

7    remain silent.  If he exercises that right and does not

8    testify in this trial, would you hold that against him?

9    THE JUROR:  No.

10   THE COURT:  There may be evidence in this case that the

11   victims' bodies were dismembered and you may see graphic

12   evidence in graphic form regarding that.  If you were to see

13   and hear such evidence, would that prevent you from acting

14   as a fair and impartial juror?

15   THE JUROR:  I don't believe so.

16   THE COURT:  Is there any other reason, whether I ask

17   about it or not, why you might not be a fair and impartial

18   juror?

19   THE JUROR:  I don't know of any.

20   THE COURT:  All right.  I want to ask one follow-up

21   question, because you hesitated just a bit when I asked the

22   question about the Hells Angels and the Aryan Brotherhood.

23   Assuming, for a moment, that you hear that kind of

24   evidence, are you confident that you could view the evidence

25   in its entirety, fairly, objectively, and impartially, and

1    make a decision based on the facts of the case?

2         THE JUROR:  I believe so.

3         THE COURT:  All right.  Thank you.

4         I'm going to ask you to step out into the hallway for

5    just a moment.

6         (The juror exited.)

7         THE COURT:  I find him indifferent.

8         MR. CAPELESS:  The Commonwealth is content with this

9    juror.

10        MR. FRANK:  Content.

11        THE COURT:  All right.  Is that seat number five?

12        THE CLERK:  Yes, Your Honor.

13        THE COURT:  All right.

14        (The juror entered.)

15        THE COURT:  Mr. Major, you have been selected to sit as

16   a juror in this case, seat number five.

17        We're not actually going to begin the trial today.  I'm

18   going to excuse you and ask you to return Thursday morning

19   at 9:30.  The Court Officers will explain to you where to

20   come once you arrive at the courthouse.

21        You should not discuss the case with anyone between now

22   and then, and when you arrive on Thursday morning, you

23   should not discuss it with any of the other jurors.

24        You should not observe any media reports, should there

25   be any; and you should not make any effort to independently

1    investigate the case in any way.

2         With that understanding -- first of all, do you

3    understand that?

4         THE JUROR:  Yes, I do.

5         THE COURT:  With that understanding, you are excused

6    until Thursday morning.

7         THE JUROR:  Thank you.

8         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 43

9         COURT OFFICER:  Juror Number 43.

10        THE COURT:  Good morning, ma'am.

11        THE JUROR:  Good morning.

12        THE COURT:  Is it Ms. Peters?

13        THE JUROR:  Yes, correct.

14        THE COURT:  Ms. Acton-Peters?

15        THE JUROR:  Yes.

16        THE COURT:  Ma'am, we anticipate this case will take us

17   four weeks to complete proceeding from 9:30 in the morning

18   until 4:00 in the afternoon on most days.

19        Bearing in mind that schedule, the importance of this

20   case and our need for good jurors like you, are you

21   available to help us?

22        THE JUROR:  I'm putting my house up for sale in the

23   next couple of weeks.  It's tricky but -- (Indicating)

24        THE COURT:  All right.  I understand that real estate

25   transactions can be tricky and they, that you will have some

1   responsibilities during that time frame.

2       THE JUROR:  Right.

3       THE COURT:  Other than that, do you think that those

4   responsibilities are such that it would work a substantial

5   hardship on you?

6       THE JUROR:  Substantial hardship, no.

7       THE COURT:  All right.  Now, did you get a chance to

8   look at that list of witnesses?

9       THE JUROR:  I did.

10      THE COURT:  Did any you know of any names?

11      THE JUROR:  I do not.

12      THE COURT:  Have you seen or heard anything about the

13  case on the media?  Have you discussed it with anyone?

14      THE JUROR:  No, I have not.

15      THE COURT:  Did you respond to any of my questions

16  earlier by raising your card?

17      THE JUROR:  Yes, I did.

18      THE COURT:  Do you recall which ones?

19      THE JUROR:  Yes, about being biased.

20      THE COURT:  All right.  And can you articulate for me

21  the nature of your bias?

22      THE JUROR:  I have kind of a deep distrust -- almost

23  scary to say, distrust of the judicial system in a sense I

24  feel that because it's an elected position, District

25  Attorneys, I feel like -- I'm sorry, I am inarticulate when

1  I'm nervous.

2      THE COURT:  Well, Mr. Capeless happens to be an elected

3  District Attorney.

4      THE JUROR:  Right.

5      THE COURT:  And is your feeling about the process and

6  the role of the District Attorney or the Judge or the

7  Defense Attorney in it such that you think you could not

8  fairly and impartially weight the evidence in this case?

9      THE JUROR:  I feel like I would always lean to the

10  other side.

11      THE COURT:  The other seed being?

12      THE JUROR:  The defense.

13      THE COURT:  You are excused.

14      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 47

15      COURT OFFICER:  Juror Number 47.

16      THE COURT:  Is it Mr. Bosquet; is that correct?

17      THE JUROR:  Bosquet, yes.

18      THE COURT:  Mr. Bosquet, good morning.

19      Did you get a chance to look at that list of witnesses?

20      THE JUROR:  Yes, I did.

21      THE COURT:  Did you recognize any names?

22      THE JUROR:  No names.

23      THE COURT:  We anticipate this case will take us

24  approximately four weeks to complete, proceeding from 9:30

25  in the morning until 4:00 in the afternoon most days.

1        Bearing in mind that schedule, the importance of this

2   case and our need for good jurors like you, are you

3   available to help us?

4        THE JUROR:  Yes.

5        THE COURT:  Have you seen or heard anything about this

6   case on the media or have you discussed it with anyone?

7        THE JUROR:  I am aware of the case just based on media

8   reports.

9        THE COURT:  All right.  And can you tell us whether

10  those were print or broadcast media or both?

11       THE JUROR:  Both.

12       THE COURT:  And when was the, if you can estimate for

13  us, your most recent observation of any media report?

14       THE JUROR:  It would have been some time during the --

15  one of the trials, the last trial.

16       THE COURT:  All right.  And was there anything about

17  the content of what you remember seeing or hearing that you

18  think might prevent you from acting as a fair and impartial

19  juror in this case?

20       THE JUROR:  I didn't follow it.  I didn't read it or

21  follow it.

22       THE COURT:  Is it fair for me to take that as a no?

23       THE JUROR:  Yeah, that's a no.

24       THE COURT:  All right.  Have you or any family member

25  ever been the victim of a crime of violence?

1      THE JUROR:  No.

2      THE COURT:  Did you raise your card in response to any

3  of my earlier questions?

4      THE JUROR:  No.

5      THE COURT:  There may be evidence in this case that one

6  of the co-defendants, Mr. Hall, was affiliated with the

7  Hells Angels Motorcycle Club and this defendant, Mr. Chalue,

8  has some affiliation with the Aryan Brotherhood.  Bearing in

9  mind -- if you were to hear those facts at trial, would

10  those facts prevent you from acting as a fair and impartial

11  juror?

12      THE JUROR:  No.

13      THE COURT:  The -- one of the victims in this case,

14  Robert Chadwell, was African American.  Mr. Chalue is

15  Caucasian.

16      Would these facts prevent you from acting fairly and

17  impartially?

18      THE JUROR:  No.

19      THE COURT:  The defendant has an absolute right to

20  remain silent in this trial.  If he exercises that right and

21  does not testify, would you hold that against him in any

22  way?

23      THE JUROR:  I would not, no.

24      THE COURT:  There may be evidence in this case that the

25  victims' bodies were dismembered and the jurors may be

1  exposed to graphic photographs of that.

2       Would that kind of evidence prevent you from acting

3  fairly and impartially?

4       THE JUROR:  It would not.

5       THE COURT:  Can you think of any reason, whether I

6  asked you about it or not, why you could not be a fair and

7  impartial juror if selected?

8       THE JUROR:  No, I can't.

9       THE COURT:  Thank you.

10      I'm going to ask you to step back in the hallway for

11 just a minute.

12      (The juror exited.)

13      THE COURT:  I find him indifferent.

14      MR. CAPELESS:  Commonwealth is content with this juror.

15      MR. FRANK:  Defense is content.

16      THE COURT:  All right.  Seat number six.

17      (The juror entered.)

18      THE COURT:  Mr. Bosquet, you have been selected to sit

19 as a juror in this case.  You are going to be in seat number

20 six.

21      We're actually not going to start the trial today.  We

22 are going to start on Thursday; not tomorrow, but Thursday.

23 So I'm going to excuse you, ask you to return on Thursday

24 morning at 9:30.

25      The Court Officers will show you where you report.

1          In the interim, please don't conduct any independent

2     investigation of the case, don't discuss the case with

3     anyone other than the fact you have been selected to sit on

4     a jury; that includes when you return on Thursday morning

5     don't discuss it with other jurors, and also don't observe

6     any media reports should there be any.

7          Thank you for your service this morning.

8          We will see you Thursday morning.

9          THE JUROR:  Thank you.

10     VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 48

11     COURT OFFICER:  Juror Number 48.

12     THE COURT:  Ms. Ferry, good morning.

13     THE JUROR:  Good morning.

14     THE COURT:  Ms. Ferry, can I ask -- have a seat.

15          Let me ask you, Ms. Ferry, did you get a chance to look

16     at that list of witnesses?

17     THE JUROR:  Yes, I did.

18     THE COURT:  Did you recognize any names?

19     THE JUROR:  Only one, Michael Hill, Sergeant Michael

20     Hill.

21     THE COURT:  All right.  And how do you know Mr. Hill?

22     THE JUROR:  If it's the same Michael Hill, I grew up

23     with him.

24     THE COURT:  All right.  Let's assume -- well, do you

25     know, as you sit here today, whether or not your person you

1    grew up with, Michael Hill, is a law enforcement officer?

2         THE JUROR:  Yes, he is for the State of Massachusetts.

3         THE COURT:  All right.  Let's assume for the moment

4    that he testifies in this case.  Do you think that you would

5    tend to place his testimony on a different level than other

6    potential witnesses?

7         THE JUROR:  Probably not.

8         THE COURT:  We expect this case will take us four weeks

9    to complete, beginning at 9:30 in the morning and proceeding

10   to 4:00 in the afternoon most days.

11        Bearing in mind that schedule, the importance of this

12   case, and our need for good jurors like you, are you

13   available to help us?

14        THE JUROR:  Absolutely not.

15        THE COURT:  Why is that?

16        THE JUROR:  Because I work in the emergency room and we

17   have two nurses, full-time nurses that are out already --

18   one on maternity leave and one on medical, so taking a third

19   one out would not be good for the emergency room.

20        THE COURT:  All right.  So your concern -- well, you

21   are excused.

22        THE JUROR:  Thank you.

23        (The juror exited.)

24        THE COURT:  Counsel, I'm going to a take a five-minute

25   break.

1          Mr. Curtis, we are going to take a five-minute recess.

2     I'm sorry not five, let's make it fifteen minutes and give

3     everybody some time.

4          (The Court exited at 11:54 a.m.)

5          (* * * * *)

6          (The Court entered at 12:10 p.m.)

7          (The defendant was present.)

8          THE COURT:  Bring the next juror in, please.

9          VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 49

10         COURT OFFICER:  Juror Number 49.

11         THE COURT:  Mr. Mills, good morning --

12         THE JUROR:  Good morning.

13         THE COURT:  -- or good afternoon, it is now.

14         Thank you for your patience.

15         The first thing I want to tell you, we anticipate this

16    case is going to take us four weeks to complete, proceeding

17    from 9:30 in the morning until 4:00 in the afternoon most

18    days.

19         Bearing in mind that schedule, the importance of this

20    case and our need for good jurors like you, are you

21    available to help us?

22         THE JUROR:  Yes, I am available, but I was thinking

23    over that witness list and I think I know one of the

24    witnesses.

25         THE COURT:  All right.  Tell me who it is you know.

1      THE JUROR:  Meredith Ryan.  I was her school teacher

2  and I am not sure if it was the same one.

3      THE COURT:  Well, let's assume that it is and that

4  witness is called and offers testimony in the case, the

5  question is whether or not you could treat the testimony of

6  that witness in the same way that you would treat the

7  testimony of other witnesses, that is in judging the

8  credibility of the witnesses.

9      Do you think you could do that?

10     THE JUROR:  Yes.

11     THE COURT:  All right.

12     THE JUROR:  I have heard about this case in the news

13  last night too.

14     THE COURT:  All right.  Well, you're anticipating my

15  questions quite well.

16     Let me ask you, what it was that you heard about it?

17     THE JUROR:  Well, that the three people were hurt.

18     THE COURT:  All right.

19     THE JUROR:  And that's it.

20     THE COURT:  Was there anything about the content of the

21  story that you think might prevent you from acting as a fair

22  and impartial juror?

23     THE JUROR:  No.

24     THE COURT:  All right.  Was that the first time that

25  you had heard about the case?

1          THE JUROR:  I believe so.

2          THE COURT:  All right.  Have you or any -- let me ask

3    you, did you respond to any of my earlier questions by

4    raising your card?

5          THE JUROR:  No.

6          THE COURT:  Have you or any member of your family ever

7    been the victim of a crime of violence?

8          THE JUROR:  No.  I was in high school.  A student

9    punched me in the eye.

10         THE COURT:  Is there anything about that experience you

11   think might interfere with your ability to be fair to both

12   sides?

13         THE JUROR:  No.

14         THE COURT:  I cut you off, you did mention that you had

15   heard something about this case last night.  Have you heard

16   anything about it from any other source?

17         THE JUROR:  No.

18         THE COURT:  All right.  There may be evidence in this

19   case that one of the co-defendants Mr. Hall had some

20   affiliation with the Hells Angels Motorcycle Club, and this

21   defendant, Mr. Chalue, had some affiliation with the Aryan

22   Brotherhood organization.  If you were to hear such

23   evidence, would that prevent you from being fair to both

24   sides.

25         THE JUROR:  No.

1        THE COURT:  The -- one of the victims, Robert Chadwell,

2   was an African American.  The defendant, Mr. Chalue, is

3   Caucasian.  Would those facts alone prevent you from acting

4   fairly and impartially?

5        THE JUROR:  No.

6        THE COURT:  The defendant has an absolute right to

7   remain silent, if he exercises that right and does not

8   testify, would you hold that against him in any way?

9        THE JUROR:  No.

10       THE COURT:  There may be evidence in this case that the

11  victims' bodies were dismembered and the jury may be exposed

12  to photographs of that, that might be considered graphic in

13  nature.  If you were to be exposed to such evidence would

14  that prevent you from being fair and impartial?

15       THE JUROR:  No.

16       THE COURT:  Can you think of any other reason, whether

17  I have asked you about it or not, why you would not be fair

18  if selected?

19       THE JUROR:  No.

20       THE COURT:  Thank you.  I also see that you sat on a

21  jury once before.  Can you tell me if that was a criminal or

22  civil case?

23       THE JUROR:  Well, yeah, it was a criminal case.

24       THE COURT:  All right.  Do you remember the nature of

25  the charge?

1     THE JUROR:  From what I can remember, he was a sexual

2  predator.

3     THE COURT:  All right.  Did the jury reach a verdict in

4  the case?

5     THE JUROR:  Yes, we did.

6     THE COURT:  What was the verdict?

7     THE JUROR:  Innocent.

8     THE COURT:  Innocent.

9     And was there anything about your experience as a juror

10 in that regard that you think might interfere with your

11 ability to act fairly and impartially in this case?

12    THE JUROR:  No.

13    THE COURT:  All right.  Thank you.  I'm going to ask

14 you to step back in the hallway for just a minute.

15    Thank you.

16    THE JUROR:  Okay.

17    (The juror exited.)

18    THE COURT:  I find Mr. Mills to be indifferent.

19    MR. CAPELESS:  Commonwealth challenges this juror, Your

20 Honor.

21    THE COURT:  All right.

22    (The juror entered.)

23    THE COURT:  Mr. Mills, you are excused.

24    Thank you for your service this morning.

25    THE JUROR:  Thank you.

1        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 50

2        COURT OFFICER:  Juror Number 50.

3        THE COURT:  Is it Ms. Roso?

4        THE JUROR:  Yes.

5        THE COURT:  Good morning, rather good afternoon.

6        Miss Roso, did get a chance to look at that list of

7    witnesses?

8        THE JUROR:  Yes, I did.

9        THE COURT:  Did you recognize any names?

10        THE JUROR:  No, I didn't.

11        THE COURT:  We anticipate this case will last

12    approximately four weeks, proceeding 9:30 in morning until

13    4:00 in the afternoon most days.

14        Bearing in mind that schedule and the importance of

15    this case and our need for good jurors like you, are you

16    available to help us?

17        THE JUROR:  I run a daycare out of my home, so I'm not

18    available for that type of period of time.  I am

19    inconveniencing other families as well.

20        THE COURT:  And would the loss of that income for that

21    period be a financial hardship for you?

22        THE JUROR:  Yes, it would.

23        THE COURT:  You are excused.

24        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 51

25        COURT OFFICER:  Juror Number 51.

1        THE COURT:  Good afternoon.  Is it Mr. Dumais?

2        THE JUROR:  Dumas.

3        THE COURT:  Mr. Dumais, we anticipate this case is

4   going to take approximately four weeks to complete

5   proceeding from 9:30 in morning until 4:00 in the afternoon.

6        Bearing in mind that schedule, the importance of this

7   case and our need for good jurors like you, are you

8   available to help us?

9        THE JUROR:  I'm not.

10        THE COURT:  Can you explain why?

11        THE JUROR:  I'm part of a race team for the nationals

12   and we go away every two weeks and we race.  There is a race

13   this weekend.

14        THE COURT:  All right.

15        THE JUROR:  We leave on Thursday and we come back like

16   Monday, Tuesday.  We go all over the country.

17        THE COURT:  That sounds to me like a recreational

18   pursuit, is it?

19        THE JUROR:  It's a job.

20        THE COURT:  It's a job.  That's what you do for a

21   living?

22        THE JUROR:  Yes.

23        THE COURT:  And missing that opportunity, would be a

24   financial hardship for you?

25        THE JUROR:  Yes.

 1        THE COURT:  You are excused.

 2        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 52

 3        COURT OFFICER:  Juror Number 52.

 4        THE COURT:  Good afternoon, ma'am.

 5        THE JUROR:  Hi.

 6        THE COURT:  Is it Miss Maceyka?

 7        THE JUROR:  Yes, that's correct.

 8        THE COURT:  Ms. Maceyka, we anticipate this case will

 9   last approximately four weeks proceeding from 9:30 in the

10   morning until 4:00 in the afternoon on most days.

11        Bearing in mind that schedule, the importance of the

12   case and our need for good jurors like you, are you

13   available to help us?

14        THE JUROR:  Not really.

15        THE COURT:  All right.

16        THE JUROR:  I'm finishing a master's program.

17        THE COURT:  You are finishing a master's program, and

18   are you missing class today?

19        THE JUROR:  Not today, no.

20        THE COURT:  How often do you have classes during the

21   week?

22        THE JUROR:  I have an internship on Thursdays and I

23   have classes at night.

24        THE COURT:  All right.  So you would be -- your

25   internship is during the day?

1          THE JUROR:  Yes.

2          THE COURT:  And would missing that internship on

3   Thursdays pose an academic hardship for you?

4          THE JUROR:  Yes, it would.

5          THE COURT:  You are excused.  Thank you.

6          (The juror exited.)

7          VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 54

8          COURT OFFICER:  Juror Number 54.

9          THE COURT:  Ms. Crowley, good morning.

10         THE JUROR:  Hi.

11         THE COURT:  Did you respond to any of my earlier

12  questions by raising your card?

13         THE JUROR:  No.

14         THE COURT:  We expect this case is going to take us

15  approximately four weeks to complete, proceeding from 9:30

16  in the morning until 4:00 in the afternoon on most days.

17         Bearing in mind that schedule, the importance of this

18  case and our need for good jurors like you, are you

19  available to help us?

20         THE JUROR:  No.

21         THE COURT:  Why is that?

22         THE JUROR:  I have finals.  I'm graduating in two

23  weeks.

24         THE COURT:  All right.  You're currently a student in

25  your junior year of college?

1       THE JUROR:  Senior.

2       THE COURT:  Oh, I see, highest grade completed, junior

3  year.  You are a senior now, thank you.

4       You are excused.

5       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 55

6       COURT OFFICER:  Juror Number 55.

7       THE COURT:  Ms. Langevin; is that correct?

8       THE JUROR:  Yes.

9       THE COURT:  Good afternoon.

10      THE JUROR:  Hi.

11      THE COURT:  We anticipate this trial is going to last

12  approximately four weeks, proceeding from 9:30 in the

13  morning until 4:00 in the afternoon.

14      Bearing in mind that schedule, the importance of this

15  case and our need for good jurors like you, are you

16  available to help us?

17      THE JUROR:  No, I cannot.

18      THE COURT:  Why is that?

19      THE JUROR:  I am a sole proprietor.  I own my own

20  business and I have a 17 year old girl from Pioneer

21  Collaborative who works for me and if she doesn't continue

22  working with me until she graduates high school, she will

23  not graduate.

24      THE COURT:  So it would be a hardship for your

25  employee?

1        THE JUROR:  Yes.

2        THE COURT:  Would it also be a financial hardship for

3   you?

4        THE JUROR:  Yes.

5        THE COURT:  You are excused.

6        THE JUROR:  Thank you.

7        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 56

8        COURT OFFICER:  Juror Number 56.

9        THE COURT:  Ms. Vershon; is that correct?

10       THE JUROR:  Yes.

11       THE COURT:  Good afternoon.

12       THE JUROR:  Good afternoon.

13       THE COURT:  Ms. Vershon, we anticipate this case is

14  going to last approximately four weeks, proceeding from 9:30

15  in the morning until 4:00 in the afternoon on most days.

16       Bearing in mind that schedule, the importance of this

17  case and our need for good jurors like you, are you

18  available to help us?

19       THE JUROR:  Yes.

20       THE COURT:  Did you get a chance to look at that list

21  of witnesses?

22       THE JUROR:  I did.

23       THE COURT:  Did you recognize any names?

24       THE JUROR:  I did not.

25       THE COURT:  Have you seen or heard anything about this

1    case on the media or have you discussed it with anyone?

2        THE JUROR:  I have.

3        THE COURT:  All right.  And was it observing it on the

4    media or discussing it or both?

5        THE JUROR:  Actually, it was both.

6        THE COURT:  Can you tell me how long ago you observed

7    the last media report?

8        THE JUROR:  Actually today, I think.

9        THE COURT:  Oh, all right.  And what was the content of

10   that?

11       THE JUROR:  Just that they're picking jurors for this

12   case.

13       THE COURT:  And had you observed other media reports

14   previously?

15       THE JUROR:  Yes, in the newspaper.

16       THE COURT:  And can you tell me, generally, what they

17   communicated?

18       THE JUROR:  Just information about the trial, you know,

19   that it was going on, some details.

20       THE COURT:  All right.  And was it -- were the reports

21   that you observed related to this trial or a previous trial?

22       THE JUROR:  A previous trial.

23       THE COURT:  And would you say that you followed that

24   previous trial in the media reports?

25       THE JUROR:  No.

1      THE COURT:  All right.  And you also said you discussed

2   it with someone?

3      THE JUROR:  Yes.  Actually, a very close friend of mine

4   was the foreperson in the Hall trial.

5      THE COURT:  All right.  And did she communicate to you

6   this -- well, did she communicate to you at any time

7   anything about the evidence presented in the case?

8      THE JUROR:  Yes, we did speak about her experience.

9      THE COURT:  All right.  And was there anything about

10   the content of your discussions with that person or the

11   media reports that you observed that you think might prevent

12   you from acting as a fair and impartial juror?

13      THE JUROR:  I think I might have some problems with

14   being impartial.

15      THE COURT:  All right.  Thank you for your honesty.

16   You are excused.

17      THE JUROR:  Thank you.

18      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 57

19      THE COURT:  Ms. Gonzalez, good afternoon.

20      THE JUROR:  Good afternoon.

21      THE COURT:  Ms. Gonzalez, we anticipate that this case

22   is going to last approximately four weeks beginning at 9:30

23   in the morning and proceeding until 4:00 in the afternoon.

24      Bearing in mind that schedule, the importance of this

25   case and our need for good jurors like you, are you

1    available to help us?

2         THE JUROR:  Yes.

3         THE COURT:  All right.  Did you get a chance to look at

4    that list of potential witnesses?

5         THE JUROR:  Yes.

6         THE COURT:  Did you recognize any names?

7         THE JUROR:  No.

8         THE COURT:  Have you seen or heard anything about this

9    case in media reports or have you discussed it with anyone?

10        THE JUROR:  Not at all.

11        THE COURT:  Did you respond to any of my earlier

12   questions by raising your card?

13        THE JUROR:  No.

14        THE COURT:  Have you or anyone in your family ever been

15   the victim of a crime of violence?

16        THE JUROR:  No.

17        THE COURT:  There may be evidence in this case that one

18   of the co-defendants, Mr. Hall, had some affiliation with

19   the Hells Angels Motorcycle Club and that the defendant in

20   this case, Mr. Chalue, had some affiliation with the Aryan

21   Brotherhood organization.

22        If you were to hear such evidence, would that prevent

23   you from acting as a fair and impartial juror in this case?

24        THE JUROR:  No.

25        THE COURT:  One of the victims in this case, Robert

1  Chadwell, was African American.  Mr. Chalue is Caucasian.

2  Would those facts prevent you from acting as a fair and

3  impartial juror?

4          THE JUROR:  No.

5          THE COURT:  The defendant in this case has an absolute

6  right to remain silent.  If he exercises that right and does

7  not testify, would you hold that against him in any way?

8          THE JUROR:  No.

9          THE COURT:  There may be evidence in this case that the

10  bodies of the victims were dismembered and the jury may be

11  exposed to graphic photographic evidence.  If you were to

12  see and hear about such evidence, would that prevent you

13  from acting fairly and impartially?

14          THE JUROR:  No.

15          THE COURT:  Can you think of any reason, whether I

16  asked you about it or not, why you would not be fair if you

17  were selected?

18          THE JUROR:  No.

19          THE COURT:  I notice from your biographical form you or

20  someone in your family was previously on probation.

21          Was that you or anyone else?

22          THE JUROR:  That was me.

23          THE COURT:  And I don't mean to pry, but can you tell

24  us what you were on probation for?

25          THE JUROR:  Yes.

1      THE COURT:  All right.

2      THE JUROR:  2005 I was convicted or pled out to

3  possession of a firearm without an FID card.

4      THE COURT:  All right.  And did your probationary term

5  successfully terminate?

6      THE JUROR:  I never was in trouble before or after.

7      THE COURT:  All right.  So is your probation over now?

8      THE JUROR:  It was over in 08.

9      THE COURT:  Was there anything about that experience

10  that you think might interfere with your ability to be fair

11  to both sides in this case?

12      THE JUROR:  No, I feel that everybody deserves a

13  chance.

14      THE COURT:  Thank you.  And I'm going to ask to you

15  step back into the hallway for just a just minute.

16      THE JUROR:  Okay.

17      (The juror exited.)

18      THE COURT:  I find her indifferent.

19      MR. CAPELESS:  The Commonwealth challenges this juror,

20  Your Honor.

21      THE COURT:  All right.

22      (The juror entered.)

23      THE COURT:  Ms. Gonzalez, thank you for your service

24  here today.  You have been excused.

25      THE JUROR:  Thank you.

1        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 60

2        COURT OFFICER:  Juror Number 60.

3        THE COURT:  Mr. Therrien, good afternoon.

4        THE JUROR:  Good afternoon, Your Honor.

5        THE COURT:  Mr. Therrien, we anticipate that this case

6   is going to last approximately four weeks proceeding from

7   9:30 in the morning until 4:00 in the afternoon.

8        Bearing in mind that schedule, the importance of this

9   case and our need for good jurors like you, are you

10  available to help us?

11       THE JUROR:  Well, Your Honor, the only thing that could

12  interfere, my 45th wedding anniversary.  We got a cruise

13  planned on May 12.

14       THE COURT:  Well, I think that would be a conflict, so

15  I'm certainly going to -- I'm not going to interfere with

16  your prepaid cruise plans.

17       Have a good time.  You are excused.

18       THE JUROR:  Thank you, Your Honor.

19       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 61

20       COURT OFFICER:  Juror Number 61.

21       THE COURT:  Mr. Decoteau, good afternoon.

22       THE JUROR:  How are you?

23       THE COURT:  Fine, thank you.

24       We anticipate this trial is going to last approximately

25  four weeks, proceeding from 9:30 in the morning until 4:00

1    in the afternoon.

2         Bearing in mind that schedule, the importance of this

3    case and our need for good jurors like you, are you

4    available to help us?

5         THE JUROR:  I believe so.

6         THE COURT:  Did you get a chance to look at that list

7    of potential witnesses?

8         THE JUROR:  Yes.

9         THE COURT:  Did you recognize any names?

10        THE JUROR:  I did not.

11        THE COURT:  I see that your father used to be on the

12   Springfield Police Department and then the fire department.

13   Is there anything about your relationship with your father

14   and his line of work that might cause you to favor one side

15   over the other?

16        THE JUROR:  Not that I know of.

17        THE COURT:  Did you respond to any other questions I

18   asked earlier by raising your card?

19        THE JUROR:  I think the only one was about law

20   enforcement.

21        THE COURT:  All right.  And that was your father's

22   employment?

23        THE JUROR:  Yup.

24        THE COURT:  All right.  Have you read or heard anything

25   about this case in the media or have you discussed it with

1    anyone?

2        THE JUROR:  Not really discussed, but just read what's

3    in the paper.

4        THE COURT:  All right.  Can you recall approximately

5    how long ago it was that you read the last media report?

6        THE JUROR:  Couldn't be -- couldn't tell you.

7        THE COURT:  And do you recall the content in any way?

8        THE JUROR:  Vaguely, yeah.  Yeah.

9        THE COURT:  All right.  And can you tell me whether or

10   not the article that you read related to this case or some

11   prior proceeding?

12       THE JUROR:  I think it was the -- yeah, it was this

13   case, the overall incident.

14       THE COURT:  All right.  And was there anything about

15   the content that you read or heard that you think might

16   affect your ability to be fair and impartial?

17       THE JUROR:  No, I don't think so.

18       THE COURT:  All right.  Have you or any family member

19   ever been the victim of a crime of violence?

20       THE JUROR:  No.

21       THE COURT:  There may be evidence in this case that one

22   of the co-defendant's, Mr. Hall, was affiliated with the

23   Hells Angels Motorcycle Club and that the defendant in this

24   action, Mr. Chalue, was affiliated with the Aryan

25   Brotherhood organization.

1          Would that kind of evidence prevent you from being a

2     fair and impartial juror?

3          THE JUROR:  Potentially.

4          THE COURT:  All right.  You think you might not be able

5     to follow my instruction to -- after hearing such evidence

6     that you should fairly and objectively evaluate the

7     evidence?  Do you think that's a possibility?

8          THE JUROR:  I'm sorry?

9          THE COURT:  That was a poor question.

10         THE JUROR:  Okay.

11         THE COURT:  Do I understand from your earlier

12    response --

13         THE JUROR:  Yes.

14         THE COURT:  -- if you were to hear evidence about the

15    defendant's affiliations with those organizations that I

16    mentioned earlier --

17         THE JUROR:  Yes.

18         THE COURT:  -- if you think that kind of evidence could

19    affect your ability to be fair to both sides?

20         THE JUROR:  I think it could.

21         THE COURT:  You are excused.  Thank you.

22         THE JUROR:  Okay.

23         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 62

24         COURT OFFICER:  Juror Number 62.

25         THE COURT:  Ms. Haskins, good afternoon.

1      THE JUROR:  Hello.

2      THE COURT:  Ms. Haskins, we anticipate that this trial

3  may take four weeks to complete proceeding 9:30 in the

4  morning until 4:00 in the afternoon on most days.

5      Bearing in mind that schedule, the importance of this

6  case and our need for good jurors like you, are you

7  available to help us?

8      THE JUROR:  I can be.  I am going to school, but it's

9  almost over in like a week or so.

10     THE COURT:  All right.  Well, let me just tell you, if

11  you were selected as a juror, the trial would start on

12  Thursday and your obligation would be from 9:30 until 4:00

13  on the succeeding days.  With that understanding do you

14  still think that you could be available as a juror?

15     THE JUROR:  I do, yes.

16     THE COURT:  Have you seen or heard anything about this

17  case, media reports or have you discussed it with anyone?

18     THE JUROR:  I have not.

19     THE COURT:  Did you get a chance to look at that list

20  of potential witnesses?

21     THE JUROR:  Yes.

22     THE COURT:  Did you recognize any names?

23     THE JUROR:  I didn't.

24     THE COURT:  All right.  Have you or any family member

25  ever been the victim of any crime of violence?

1        THE JUROR:  No.

2        THE COURT:  Did you respond to any of my earlier

3    questions by raising your card?

4        THE JUROR:  No.

5        THE COURT:  There may be evidence in this case one of

6    the co-defendant's, Mr. Hall, had some affiliation with the

7    Hells Angels Motorcycle Club and that this defendant,

8    Mr. Chalue, had some affiliation with the Aryan Brotherhood.

9        If you were to hear such evidence, would that prevent

10   you from acting as a fair and impartial juror?

11       THE JUROR:  No.

12       THE COURT:  One of the victims in this case, Robert

13   Chadwell, was African American.  The defendant, Mr. Chalue,

14   is Caucasian.

15       Would that evidence prevent you from acting fairly and

16   impartially?

17       THE JUROR:  No.

18       THE COURT:  The defendant has an absolute right to

19   remain silent at his trial.  If he elects not to testify,

20   would you hold that against him in any way?

21       THE JUROR:  No.

22       THE COURT:  There may be evidence in this case that the

23   victims' bodies were dismembered and the jury may be exposed

24   to graphic evidence that some would consider graphic.

25       If you were to hear and see such evidence would that

1    prevent you from acting fairly and impartially?

2        THE JUROR:  No.

3        THE COURT:  Can you think of any reason, whether I

4    asked about it or not, whether you could not be a fair and

5    impartial juror if selected?

6        THE JUROR:  I cannot.

7        THE COURT:  Thank you.  I'm going to ask you to step in

8    the hallway for just a minute.

9        (The juror exited.)

10       THE COURT:  I find her indifferent.

11       MR. CAPELESS:  Commonwealth is content with this juror.

12       MR. FRANK:  Defense is content.

13       (The juror entered.)

14       THE COURT:  Ms. Haskins, you have been selected to sit

15   as juror in this case.  However, we're not going to start

16   the trial today.  We're going to start not tomorrow morning,

17   but Thursday morning at 9:30.  The Court Officers will

18   explain to you where you should report on Thursday morning.

19       In the interim, please don't discuss the case with

20   anyone or anything you have heard about it.  You can

21   certainly explain to friends, family members or co-workers

22   that you've been selected to sit as a juror in a criminal

23   case, and the anticipated duration.  Beyond that, please say

24   nothing further.

25       Don't observe any media reports of the case.  Don't

1    discuss it with your co-jurors when you arrive first thing

2    Thursday morning and don't independently investigate the

3    case in any way.

4         With that, Ms. Haskins, you are excused.

5         We will see you Thursday morning.

6         THE JUROR:  Thank you.

7         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 64

8         COURT OFFICER:   Juror Number 64.

9         THE COURT:  Ms. Arnett, good afternoon.

10        THE JUROR:  Hello.  Good afternoon.

11        THE COURT:  Ms. Arnett, did you get a chance to look at

12   that list of witnesses?

13        THE JUROR:  Yes, I did.

14        THE COURT:  Did you recognize any names?

15        THE JUROR:  Absolutely not, nobody.

16        THE COURT:  Ms. Arnett, we anticipate this trial may

17   last four weeks, proceeding 9:30 in the morning until 4:00

18   on most days.

19        Bearing in mind that schedule, the importance of this

20   case and our need for good jurors like you, are you

21   available to help us?

22        THE JUROR:  Yes.

23        THE COURT:  All right.

24        THE JUROR:  I do have an opinion.

25        THE COURT:  All right.  Well, let me hear what that

1   opinion is.

2       THE JUROR:  I -- my heart, I feel if somebody comes to

3   court, in my eyes, I feel they're automatically guilty.

4       THE COURT:  All right.  So you do not believe then in

5   the presumption of innocence?

6       THE JUROR:  No.

7       THE COURT:  All right.  Well, I certainly hope you're

8   never charged with a crime.

9       You are excused.

10      THE JUROR:  Thank you.

11      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 65

12      COURT OFFICER:  Juror Number 65.

13      THE COURT:  Ms. Ramos, good afternoon.

14      THE JUROR:  Hi, good afternoon.

15      THE COURT:  Ms. Ramos, did you get a chance to look at

16  that list of witnesses?

17      THE JUROR:  Yes.

18      THE COURT:  Did you recognize any names?

19      THE JUROR:  (Indicating)

20      THE COURT:  Ms. Ramos, we're recording what you

21  respond, so you have to actually verbalize your response.

22      THE JUROR:  Okay.  No.

23      THE COURT:  Ms. Ramos, we anticipate that this trial

24  will take approximately four weeks to complete, proceeding

25  from 9:30 in the morning until 4:00 in the afternoon.

1          Bearing in mind that schedule, the importance of the

2    case, and our need for good jurors like you, are you

3    available to help us?

4          THE JUROR:  No.

5          THE COURT:  Can you explain why?

6          THE JUROR:  I have three kids and my husband is in the

7    military, so -- he's active duty.

8          THE COURT:  And you made arrangements for day care

9    today?

10         THE JUROR:  My husband took a day off, but he's

11   actually working at home.

12         THE COURT:  So it would be a personal childcare

13   hardship for you to sit for four weeks?

14         THE JUROR:  Yes.

15         THE COURT:  You are excused.

16         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 66

17         COURT OFFICER:  66.

18         THE COURT:  Ms. McCarthy, good afternoon.

19         THE JUROR:  Hi.

20         THE COURT:  Ms. McCarthy, did you get a chance to look

21   at that list of witnesses?

22         THE JUROR:  Yes, I did.

23         THE COURT:  Did you recognize any names?

24         THE JUROR:  No, I didn't.

25         THE COURT:  We anticipate this case will last

1   approximately four weeks proceeding from 9:30 in the morning

2   until 4:00 in the afternoon.  Bearing in mind the importance

3   of this case and our need for good jurors like you, are you

4   available to help us?

5        THE JUROR:  Yes.

6        THE COURT:  Did you respond to any of my earlier

7   questions by raising your card?

8        THE JUROR:  I did.

9        THE COURT:  Can you -- do you recall which ones?

10        THE JUROR:  Yes, members of the family in law

11   enforcement.

12        THE COURT:  I see your father-in-law is a Ludlow Police

13   Officer and your niece and husband are both corrections

14   officers?

15        THE JUROR:  Correct.

16        THE COURT:  Is there anything about those relationships

17   or your knowledge of their lines of work that you think

18   might interfere with your ability to be fair to both sides?

19        THE JUROR:  No.

20        THE COURT:  Was there any other question that you

21   responded to?

22        THE JUROR:  Yes, about knowing one of the attorneys.

23        THE COURT:  All right.  Who is it that you know?

24        THE JUROR:  Attorney Frank, I believe.  I work for a

25   local bank and I would see him occasionally come in and

1    conduct business.  We haven't interacted in probably two

2    years.

3        THE COURT:  All right.  And when you did interact, it

4    was on a professional as opposed to personal basis?

5        THE JUROR:  Correct.

6        THE COURT:  And Mr. Frank was there conducting banking

7    business?

8        THE JUROR:  Correct.

9        THE COURT:  Is there anything about Mr. Frank's

10   involvement, as an attorney in this trial, that you thank

11   might affect your ability to fairly and impartially evaluate

12   the evidence?

13       THE JUROR:  No.

14       THE COURT:  Would it be awkward for you, in any way, to

15   sit in judgment in a case for which Mr. Frank is involved?

16       MR. FRANK:  No.

17       THE COURT:  Did you respond to any other questions that

18   I asked?

19       THE JUROR:  No, I don't think so.

20       THE COURT:  All right.  Have you or any family member

21   ever been the victim of a crime of violence?

22       THE JUROR:  I don't think so, no.

23       THE COURT:  Have you seen or heard anything about this

24   case in the media or have you discussed it with anyone?

25       THE JUROR:  I haven't discussed it with anyone.  I have

1   just seen briefly in the news.

2       THE COURT:  All right.  And do you -- did the reports

3   that you observed relate to this case or was it some prior

4   proceeding?

5       THE JUROR:  It could have been a prior proceeding.  I

6   don't know.

7       THE COURT:  All right.  Was there anything about the

8   content of what you read or heard that you think might

9   prevent you from acting fairly and impartially as a juror?

10      THE JUROR:  I don't think so.

11      THE COURT:  There may be evidence in this case that one

12  of the co-defendants, Mr. Hall, was affiliated with the

13  Hells Angels Motorcycle Club and this defendant, Mr. Chalue,

14  had some affiliation with the Aryan Brotherhood.

15      If you were to hear such evidence, would that prevent

16  you from acting fairly and impartially?

17      THE JUROR:  Perhaps.

18      THE COURT:  All right.  So you think that just hearing

19  of those affiliations might so affect you that you would?

20      THE JUROR:  Maybe one more than the other.

21      THE COURT:  All right.  And which one affects?

22      THE JUROR:  Probably the Aryan Brotherhood.

23      THE COURT:  All right.  And you think that after

24  hearing such evidence it might be difficult for you to be

25  fair and impartial?

1          THE JUROR:  Perhaps, yes.

2          THE COURT:  Thank you for your honesty.

3          You are excused.

4          VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER

5          COURT OFFICER:  Juror Number 68.

6          THE COURT:  Mr. Lemire, good afternoon.

7          THE JUROR:  Good afternoon.

8          THE COURT:  Mr. Lemire did you see that list of

9   potential witnesses?

10          THE JUROR:  Yes, I did.

11          THE COURT:  Did you recognize any names?

12          THE JUROR:  I recognized a few last names.

13          THE COURT:  All right.  Last names only?

14          THE JUROR:  Just last names only.

15          THE COURT:  And if -- well, let me ask you this, if any

16  of those people were to appear and testify in this case, are

17  they people that you actually know on a personal level?

18          THE JUROR:  You mean the people that are on the list?

19          THE COURT:  Yes.

20          THE JUROR:  No.

21          THE COURT:  You do not know them?

22          THE JUROR:  I do not know them.

23          I am saying a couple of the last names I do recognize.

24          THE COURT:  They sound familiar?

25          THE JUROR:  They sound familiar.

1          THE COURT:  All right.  We anticipate this case will

2     take us four weeks to complete proceeding from 9:30 in the

3     morning until 4:00 in the afternoon.

4          Bearing in mind that schedule, the importance of this

5     case and our need for good jurors like you, are you

6     available to help us?

7          THE JUROR:  I'm not working anymore so --

8          THE COURT:  I'll take that as a yes.

9          THE JUROR:  Yes.

10         THE COURT:  Have you seen or heard anything about this

11    case in the media or have you discussed it with anyone?

12         THE JUROR:  (Indicating)

13         THE COURT:  Have you or any member of your family ever

14    been the victim of a crime of violence?

15         THE JUROR:  Not a victim.

16         THE COURT:  All right.  Have you or a family ever been

17    accused?

18         THE JUROR:  Yes.

19         THE COURT:  Was that you or someone else in your

20    family?

21         THE JUROR:  My son.

22         THE COURT:  And did a criminal case result from that?

23         THE JUROR:  No.

24         THE COURT:  Was there anything about your son's

25    experience that might make it difficult for you to be fair

1   in this case?

2       THE JUROR:  I don't know.

3       THE COURT:  You think that it could?

4       THE JUROR:  It could.

5       THE COURT:  You are excused.

6       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 69

7       COURT OFFICER:  Juror Number 69.

8       THE COURT:  Ms. Kenney, good afternoon.

9       THE JUROR:  Good afternoon.

10      THE COURT:  Ms. Kenney we anticipate this case is going

11  to take approximately four weeks to complete, proceeding

12  from 9:30 in the morning until 4:00 in the afternoon.

13      Bearing in mind that schedule, the importance of the

14  case and our need for good jurors like you, are you

15  available to help us?

16      THE JUROR:  Yes.

17      THE COURT:  Did you get a chance to read that list of

18  witnesses?

19      THE JUROR:  Yes.

20      THE COURT:  Did you recognize any names?

21      THE JUROR:  No.

22      THE COURT:  Have you seen or heard anything about this

23  case on media reports or have you discussed it with anyone?

24      THE JUROR:  Yes.

25      THE COURT:  And let me ask, first, have you discussed

1  it with anyone?

2       THE JUROR:  Yes.

3       THE COURT:  With whom have you discussed it?

4       THE JUROR:  Family members as it -- when we was first

5  hearing it on the news and stuff.

6       THE COURT:  All right.  And can you tell me,

7  approximately, how long ago it was that you first heard it

8  about it or read about it in news reports?

9       THE JUROR:  I want to say maybe seven, eight months

10  ago.

11      THE COURT:  All right.  And was there anything about

12  the content of what you read or heard or your discussions

13  with family members that you think might prevent you from

14  being a fair and impartial juror?

15      THE JUROR:  No.

16      THE COURT:  Did you raise your card in response to any

17  of my earlier questions?

18      THE JUROR:  No.

19      THE COURT:  Have you or any family member ever been the

20  victim of a crime of violence?

21      THE JUROR:  No.

22      THE COURT:  There may be evidence in this case that one

23  of the co-defendants, Mr. Hall, was affiliated with the

24  Hells Angels Motorcycle Club and that this defendant,

25  Mr. Chalue, was affiliated with the Aryan Brotherhood

1    organization.  If you were to hear that kind of evidence,
2    would that prevent you from being fair and impartial?
3         THE JUROR:  No.
4         THE COURT:  One of the victims in this case, Robert
5    Chadwell, was African American.  Mr. Chalue was Caucasian.
6    Would that evidence affect your ability to be fair and
7    impartial?
8         THE JUROR:  No.
9         THE COURT:  Mr. Chalue has the right to remain silent
10   at his trial.  If he exercises that right and does not
11   testify, would you hold that against him in any way?
12        (Pause)
13        THE JUROR:  I don't know.
14        THE COURT:  All right.  Well, let me ask you this, I
15   instructed you earlier it is the Commonwealth that has the
16   entire burden of proof in this case.  Mr. Chalue has no
17   obligation to submit evidence or even to testify himself.
18   And I would be instructing the jury as to these legal
19   principles again at the end of trial.
20        Do you think you could follow my instructions in that
21   regard or would you hold it against him if he chose not to
22   testify?
23        THE JUROR:  I could follow your regard.
24        THE COURT:  All right.  And one of the things I will be
25   telling you is that if he doesn't testify, you cannot hold

1   that against him.

2        THE JUROR:  No.

3        THE COURT:  Do you think you could follow that

4   instruction?

5        THE JUROR:  Yes, sir.

6        THE COURT:  There may be evidence in this case that the

7   victims' bodies were dismembered and the jury may see

8   graphic photographs.  If you were to hear and see such

9   evidence, would that kind of evidence prevent you from

10   acting fairly and impartially?

11        THE JUROR:  Uh-huh.

12        THE COURT:  You think it would?

13        THE JUROR:  Uh-huh.

14        THE COURT:  You are excused.

15        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 70

16        COURT OFFICER:  Juror Number 70.

17        THE COURT:  Ms. Kenney (sic), good afternoon.

18        THE JUROR:  Good afternoon.

19        THE COURT:  Did you get a chance to look at that list

20   of potential witnesses?

21        THE JUROR:  I did.

22        THE COURT:  Did you recognize any names?

23        THE JUROR:  I did not.

24        THE COURT:  We anticipate this trial may take

25   approximately four weeks to complete proceeding from 9:30 in

1    the morning until 4 o'clock on most days.

2          Bearing in mind that schedule, the importance of the

3    case, and our need for good jurors like you, are you

4    available to help us?

5          THE JUROR:  I am.

6          THE COURT:  Have you seen or heard any media reports of

7    this case or have you discussed it with anyone?

8          THE JUROR:  No, I have not.

9          THE COURT:  Have you or any family member ever been the

10   victim of any crime of violence?

11         THE JUROR:  No.

12         THE COURT:  Did you raise your card in response to any

13   of my earlier questions?

14         THE JUROR:  No.

15         THE COURT:  There may be evidence in this case that one

16   of the co-defendants, Mr. Hall, had some affiliation with

17   the Hells Angels Motorcycle Club and that this defendant,

18   Mr. Chalue, had some affiliation with the Aryan Brotherhood.

19   If you were to hear such evidence, would that evidence

20   prevent you from being a fair and impartial juror?

21         THE JUROR:  No.

22         THE COURT:  Robert Chadwell, one of the victims in this

23   case, was African American.  Mr. Chalue was Caucasian.

24         Would that evidence prevent you from acting fairly and

25   impartially as a juror?

1          THE JUROR:  No.

2          THE COURT:  Mr. Chalue has a right to remain silent at

3     this trial.  If he exercises that right and does not

4     testify, would you hold that against him?

5          THE JUROR:  No.

6          THE COURT:  There may be evidence in this case that the

7     victims' bodies were dismembered and that the jury may see

8     photographs of that, that some would consider graphic in

9     nature.

10         Would that evidence prevent you from being a fair and

11    impartial juror?

12         THE JUROR:  No, but I don't know if it would be easy.

13         THE COURT:  I understand, and I sympathize with that

14    reaction.  Of course, no one want to hear or see that kind

15    of evidence.  My question really is, I think you've already

16    answered, do you think you could put aside any emotional

17    response you might have and judge the facts of the case

18    fairly and impartially?

19         THE JUROR:  I'll say no.

20         I don't know if I am answering that correctly.

21         THE COURT:  All right.  Let me come at it from a

22    slightly different angle.

23         THE JUROR:  Yes, please.  Okay.

24         THE COURT:  One of the things I will be instructing the

25    jurors at the end of the case is that emotion or sympathy,

1    passion or prejudice, can have no role in their

2    deliberations and they are to judge the facts of the case

3    fairly and impartially.

4         Now, understanding you may see the photographs that

5    would be considered graphic or distasteful, do you think you

6    could still follow that instruction and be a fair juror?

7         THE JUROR:  Yes.

8         THE COURT:  Can you think of any reason, whether I have

9    asked about it or not, why you would not be fair and

10   impartial if selected?

11        THE JUROR:  No.

12        THE COURT:  All right.  Bear with me for just a moment.

13        (Pause)

14        THE COURT:  Thank you.  I'm going to ask you to step

15   outside for just a minute.

16        (The juror exited.)

17        MR. CAPELESS:  Before the juror goes, Your Honor, could

18   you just clarify, for the record, I believe at the outset

19   you addressed her as Ms. Kenney, which was the name of the

20   previous juror, just so the record is clear.

21        THE CLERK:  This is Ms. Pandolfi, Your Honor.

22        THE COURT:  All right.  We can bring Ms. Kenney back.

23        COURT OFFICER:  You want Ms. Pandolfi?

24        THE CLERK:  Ms. Pandolfi.

25        THE COURT:  Ms. Pandolfi, I have to apologize, I

1   addressed you as Ms. Kenney.

2       THE JUROR:  Oh.

3       THE COURT:  Ms. Kenney was name of the last juror that

4   came in and I was still looking at her biographical form.

5       THE JUROR:  Okay.

6       THE COURT:  And I wanted, since we are keeping a record

7   of this, I wanted to be clear you are not Ms. Kenney, you

8   are Ms. Pandolfi, but I'm certainly hoping that you are

9   about to tell me none of your answers will change.

10      THE JUROR:  None of my answers will change.

11      THE COURT:  Thank you.  I will ask you to step back in

12  the hallway for just a minute.

13      (The juror exited.)

14      THE COURT:  I find her indifferent.

15      MR. CAPELESS:  The Commonwealth is content with this

16  juror, Your Honor.

17      MR. FRANK:  Defense is content.

18      THE COURT:  All right.  Seat number eight, is that

19  correct?

20      THE CLERK:  Yes Your Honor.

21      (The juror entered.)

22      THE COURT:  Ms. Pandolfi, you have been selected to sit

23  as a juror in this case.  You are going to be in seat number

24  eight.  We are not going to begin the trial, so I'm going to

25  excuse you.

1         THE JUROR:  Okay.

2         THE COURT:  And I'm asking you to return not tomorrow

3    morning, but Thursday morning at 9:30, when the trial will

4    commence.

5         THE JUROR:  Okay.

6         THE COURT:  The Court Officers will show you where to

7    report on Thursday.

8         In the meantime, it's important that you not discuss

9    the case with anyone.  You can certainly discuss the fact

10   that you have been selected to sit on the jury and the

11   anticipated time frame.  Beyond that, please don't invite

12   comments by anyone else by disclosing what case it is.

13        THE JUROR:  Okay.

14        THE COURT:  Also, don't conduct any independent

15   investigation of any sort.  Don't observe any media reports.

16   And when you arrive here on Thursday morning, don't discuss

17   it with your fellow jurors until you have had an opportunity

18   to come into the courtroom.  And with that, Ms. Pandolfi,

19   you are excused and we will see you Thursday morning.

20        THE JUROR:  Thank you.

21   VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 73

22   COURT OFFICER:  Juror Number 73.

23        THE COURT:  Ms. Hartman, good afternoon.

24        THE JUROR:  Good afternoon.

25        THE COURT:  Ms. Hartman, did you get a chance to look

1    at that list of names of witnesses?

2         THE JUROR:  (Indicating)

3         THE COURT:  Did you recognize any names?

4         THE JUROR:  No.

5         THE COURT:  Ms. Hartman, we anticipate that this trial

6    will last four weeks, proceeding from 9:30 in the morning

7    until 4:00 in the afternoon.

8         Bearing in mind that schedule, the importance of the

9    case, and our need for good jurors like you, are you

10   available to help us?

11        THE JUROR:  Can you say that again?

12        THE COURT:  Let me ask you, Ms. Hartman, do you have

13   some difficulty understanding English?

14        THE JUROR:  A little bit.

15        THE COURT:  A little bit.

16        English is your second language?

17        THE JUROR:  Yeah.

18        THE COURT:  Were you able to understand my earlier

19   questions that I asked of the entire group?

20        THE JUROR:  Some.

21        THE COURT:  Not all of them?

22        THE JUROR:  Some of them.  (Indicating)

23        THE COURT:  All right.  Thank you.  I think with that

24   understanding, I'm going to excuse you from jury service.

25        THE JUROR:  Okay.

1          THE COURT:  Thank you.

2          (The juror exited.)

3          THE COURT:  Mr. Curtis, can you come back in after

4    you --  I think because it's almost 1:00, and I want to

5    bring the jurors back into the courtroom and give them some

6    instructions before I excuse them for the lunch break we

7    will do that now so we can have the full lunch hour.

8          I will take a brief recess until they are back in

9    courtroom.

10         (The Court exited at 12:48 p.m.)

11         (* * * * *)

12         (The Court entered at 12:51 p.m.)

13         (The defendant was present.)

14         (The venire was present.)

15         THE COURT:  Ladies and gentlemen, I know it's been a

16   long morning.  Thank you for your patience.  I apologize for

17   the delay.

18         As you can see, your number has been reduced

19   significantly.  We have been through a lot of jurors this

20   morning.  And we're prepared to take a lunch break and I

21   wanted to give you some instructions before the lunch break

22   because we're going to resume the jury deliberation -- I'm

23   sorry, jury selection process at two o'clock.

24         During the course of the lunch break, you are free to

25   do what you want except for these restrictions:  Please

1    don't discuss the case among yourselves or with anyone else,

2    you can certainly explain to whomever needs to know you are

3    still involved in the process of jury selection, beyond that

4    say no more.  If you were to comment on the kind of case or

5    the name of the case, that has a way of inviting comment

6    from the people to whom you are disclosing that information

7    and it will be inappropriate for you to consider that.

8    Don't observe any media reports in any way and don't make

9    any effort to investigate the case independently.

10        We will resume at two o'clock.  The Court Officers will

11   show you where to resume at two o'clock.

12        You are now excused.

13        Court is in recess.

14        (The Court exited at 12:52 p.m.)

15        (* * * * *)

16        (The Court entered at 2:04 p.m.)

17        (The defendant was present.)

18        THE COURT:  Good afternoon.  Thank you.

19        Please be seated.

20        Counsel, anything to take up before we continue the

21   process?

22        (Pause)

23        THE COURT:  All right.  We can bring the next juror in,

24   please.

25        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 78

1          COURT OFFICER:  Juror Number 78.

2          THE COURT:  Mr. Forfa, good afternoon.

3          First of all, did you have an opportunity to look at

4     that list of potential witnesses?

5          THE JUROR:  Yes.

6          THE COURT:  Did you recognize any names?

7          THE JUROR:  No.

8          THE COURT:  We anticipate this case, this trial will

9     last approximately four weeks, proceeding from 9:30 in the

10    morning until four o'clock in the afternoon on most days.

11         Bearing in mind that schedule, the importance of the

12    case, and our need for good jurors like you, are you

13    available to help us?

14         THE JUROR:  Sure.

15         THE COURT:  Have you seen or heard anything about the

16    case on any media report?

17         THE JUROR:  No.

18         THE COURT:  Have you discussed the case with anyone?

19         THE JUROR:  No.

20         THE COURT:  Have -- did you respond to any of my

21    earlier questions by raising your card?

22         THE JUROR:  No.

23         THE COURT:  Have you or any close family member ever

24    been the victim of a crime of violence?

25         THE JUROR:  No.

1       THE COURT:  There may be evidence in this case that one

2  of the defendants, Mr. Hall -- one of the co-defendant's

3  that is, had some affiliation with the Hells Angels

4  Motorcycle Club and this defendant, Mr. Chalue, had some

5  affiliation with an organization known as the Aryan

6  Brotherhood.

7       Would such evidence, if you were to hear it, interfere

8  with your ability to be a fair and impartial juror?

9       THE JUROR:  No.

10      THE COURT:  The defendant has an absolute right to

11 remain silent.  And if he exercises that right to remain

12 silent, would you exercise that against him in way?

13      THE JUROR:  No.

14      THE COURT:  One of the victims, Robert Chadwell, was an

15 African American.  The defendant is Caucasian.  Would those

16 facts prevent you from acting as a fair and impartial juror?

17      THE JUROR:  No.

18      THE COURT:  There may be evidence in the case the

19 victims' bodies were dismembered and the jurors may be

20 exposed to photographs that some might consider graphic.

21      If you were to see and hear such evidence, would that

22 prevent you from acting fairly and impartially?

23      THE JUROR:  No.

24      THE COURT:  Can you think of any reason, whether I have

25 asked about it or not, why would you would not be a fair and

1   impartial juror?

2        THE JUROR:  No.

3        THE COURT:  Mr. Forma, you did make some reference on

4   your biographical form to your medical training and

5   something to do with the insurance industry?  I can't quite

6   make it out.

7        I take it the way you have referred to there would not

8   affect your ability to act fairly and impartially in a

9   criminal trial such as this one?

10        THE JUROR:  No.

11        THE COURT:  Meaning it would not?

12        THE JUROR:  It would not.

13        THE COURT:  Thank you.

14        I'm going to ask you to step outside for just a minute.

15        THE JUROR:  Okay.

16        (The juror exited.)

17        THE COURT:  I find him indifferent.

18        MR. CAPELESS:  Commonwealth is content with this juror,

19   Your Honor.

20        (Pause)

21        MR. FRANK:  Judge, regarding the part three question

22   depending on the case, my medical -- I'm reading it.  It's a

23   little hard to read, I want to make sure for the record it's

24   clear.

25        THE COURT:  All right.

1       MR. FRANK:  My medical training something --

2       THE COURT:  Education.

3       MR. FRANK:  -- as well as training with insurance

4  industry may influence my decision as a juror.

5       And you asked him -- you asked him -- I believe he said

6  in a criminal case it would not; but I think that given his

7  statements, further questioning regarding that would make a

8  difference.

9       There is medical testimony and it may be disputed.

10      THE COURT:  All right.  Is there a question you would

11  like me to ask specifically?

12      MR. FRANK:  Yes, I would like you to ask him

13  specifically what is it he meant, in what way might his

14  medical training affect his decision making.

15      THE COURT:  All right.  I will ask that question.

16      MR. FRANK:  Thank you.

17      (The juror entered.)

18      THE COURT:  Mr. Forma, I want to ask you a followup

19  question, if I could.

20      The disclosure that you did make regarding your medical

21  training, can you articulate for us or elaborate a little

22  bit more on the concern you were expressing there?

23      THE JUROR:  Basically, just depending on the case,

24  certain facts, because of my medical training, certain

25  things, specifically with medical injuries and things of

1    that nature may have swayed my line of thinking along

2    certain evidence.

3         THE COURT:  All right.  Well, let me say this, it is

4    likely that there will be evidence in this case from medical

5    examiners or potentially other medical experts who will

6    offer opinions regarding cause of death or certain blows --

7         THE JUROR:  Sure.

8         THE COURT:  -- certain trauma.

9         Do you think you would be able to follow my instruction

10   regarding considering that evidence in an objective way --

11        THE JUROR:  Certainly.

12        THE COURT:  -- and considering only what you see and

13   hear in the courtroom?

14        THE JUROR:  Certainly.

15        THE COURT:  All right.  Thank you.

16        (The juror exited.)

17        THE COURT:  Again, I find him indifferent.

18        Mr. Capeless.

19        MR. CAPELESS:  Commonwealth remains content, Your

20   Honor.

21        THE COURT:  Mr. Frank?

22        MR. FRANK:  Defendant content.

23        THE COURT:  All right.  Very well, Juror Number 9.

24        (The juror entered.)

25        THE COURT:  Mr. Forma, we are going to seat you as

1    Juror Number 9, which means you have been selected as a

2    juror in this case.

3        We actually are not going to start the trial until

4    Thursday morning.  Not tomorrow morning, Thursday morning at

5    9:30.

6        The Court Officers will show you where to report on

7    Thursday.

8        In the interim, please don't discuss the case with

9    anyone, except, I understand you may want to share with your

10   employer or family members that you have been selected to

11   sit as a juror and the anticipated duration.  Beyond that,

12   please say no more.

13       THE JUROR:  Yes.

14       THE COURT:  Also, don't conduct any independent

15   investigation of any aspect of the case and disregard any

16   media reports should there be any.  With that, Mr. Forma,

17   you are excused.

18       We will see you Thursday morning at 9:30.

19       THE JUROR:  Thank you.

20       (The juror exited.)

21       MR. CAPELESS:  Your Honor --

22       THE COURT:  Yes.

23       COURT OFFICER:  Juror Number 80.

24       THE COURT:  Hold on.

25       MR. CAPELESS:  -- I realize I should have brought this

1   up before, particularly since we just sat the juror.

2       I had made the Court aware of the situation regarding

3   the death of Mr. Haywood.  We've made inquiry, several of

4   the witnesses, as well as the family members of Mr. Chadwell

5   who had been planning on attending and had attended all of

6   the Hall trial and are planning on attending this trial as

7   well, will be attending the service on Thursday.  It's the

8   Commonwealth's request that we delay the case for one day

9   until Friday.

10      THE COURT:  Are there any people that -- I understand

11  they wish to attend the trial.  Are there any witnesses that

12  would be unavailable on Thursday as a result of the service?

13      MR. CAPELESS:  If they are attending, yes.

14      I'm not sure if I understand.

15      THE COURT:  Well, the family members of --

16      MR. CAPELESS:  Mr. Chadwell.

17      THE COURT:  -- Mr. Chadwell.

18      MR. CAPELESS:  And this extended family as well is very

19  close friends including some of the witnesses.

20      THE COURT:  All right.

21      MR. CAPELESS:  Lester Chadwell was his brother.

22      THE COURT:  I'm remembering now that Lester Chadwell

23  did testify at the trial and I am just wondering whether or

24  not there aren't parts of the trial that we could proceed

25  with on Thursday so as not to waste the day entirely.

1      So let's all think about that.  We have the jurors'

2  numbers, if there is a need to make some adjustments we can

3  do that.

4      MR. CAPELESS:  All right.  Thank you, Your Honor.

5      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 80

6      COURT OFFICER:  Juror Number 80.

7      THE COURT:  Mr. Spear, good afternoon.

8      THE JUROR:  Good afternoon.

9      THE COURT:  Mr. Speer, did you have a chance to look at

10  that list of potential witnesses?

11      THE JUROR:  Yes, I did.

12      THE COURT:  Did you recognize any names?

13      THE JUROR:  No, I did not.

14      THE COURT:  We anticipate that the trial of this case

15  is going to last four weeks starting at 9:30 each morning

16  and ending at four o'clock on most days.

17      Bearing in mind that schedule, and the importance of

18  this case, and our need for good jurors like you, are

19  available to help us?

20      THE JUROR:  Not really.  I'm training for my -- I

21  recently got hired at MassMutual so I am going through

22  training there.

23      If the case needed me, I would be happy to serve.

24      THE COURT:  Well, of course we need every potential

25  juror.  I'm hesitating only because I don't want to put you

1    in a position where you might be suffering some economic

2    hardship as a result of serving on a jury of this case.  Do

3    you think that is a possibility?

4          THE JUROR:  Yes, I would think that.

5          THE COURT:  All right.  You are excused.

6          THE JUROR:  All right.

7          VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 81

8          COURT OFFICER:  Juror Number 81.

9          THE COURT:  Mr. O'Sullivan good afternoon.

10         THE JUROR:  Good afternoon.

11         THE COURT:  Thank you for your patience.

12         Did you get a chance to look at that list of potential

13   witnesses?

14         THE JUROR:  Yes, I did.

15         THE COURT:  Did you recognize any names?

16         THE JUROR:  No.

17         THE COURT:  We anticipate the trial of this case is

18   going to last approximately four weeks, proceeding each day

19   from 9:30 in the morning until 4:00 in the afternoon.

20         Bearing in mind that schedule, the importance of this

21   case and our need for good jurors like you, are you

22   available to help us?

23         THE JUROR:  It would probably be a hardship for me

24   because I'm a commissioned sales person and I'm the only

25   body in my office that -- I'm a mortgage officer.

1       THE COURT:  So if you were not in your office for four

2  weeks, that would be four weeks that you would be without

3  income?

4       THE JUROR:  Right.  Plus I would -- there's nobody in

5  the office that can take over for me either.

6       THE COURT:  And would that cause you a financial

7  hardship?

8       THE JUROR:  Yes, it would.

9       THE COURT:  You are excused.

10      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 83

11      COURT OFFICER:  Juror Number 83.

12      THE COURT:  Ms. Blankenship, good afternoon.

13      THE JUROR:  Good afternoon.

14      THE COURT:  Did you have a chance to look at that list

15  of potential witnesses?

16      THE JUROR:  Uh-huh.

17      THE COURT:  Did you recognize any names?

18      THE JUROR:  No, none.

19      THE COURT:  We anticipate the trial of this case will

20  last approximately four weeks proceeding from 9:30 in the

21  morning until four o'clock in the afternoon on most days.

22      Bearing in mind that schedule, the importance of the

23  case, and our need for good jurors like you, are you

24  available to help us?

25      THE JUROR:  Yes.

1      THE COURT:  All right.  Is there something on your mind

2  that you would like to share?

3      THE JUROR:  I work in a small operating room.  I'm the

4  only surgical tech. in that group, so it would be a hardship

5  for the surgeons and patients that I am involved with.

6      That would be the only thing for me.

7      THE COURT:  I understand it would be a temporary

8  hardship for your co-workers, would it be a financial

9  hardship for you?

10      THE JUROR:  I haven't really thought of that.

11      I'm the major bread winner in our family, so, yes it

12  would.

13      THE COURT:  You are excused.

14      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 85

15      COURT OFFICER:  Juror Number 85.

16      THE COURT:  Mr. Condon, good afternoon.

17      THE JUROR:  Good morning.

18      THE COURT:  Did you get a chance to look at that list

19  of potential witnesses?

20      THE JUROR:  I did.

21      THE COURT:  Did you recognize any names?

22      THE JUROR:  No.

23      THE COURT:  We anticipate the trial of this case will

24  last approximately four weeks, proceeding from 9:30 in the

25  morning until four o'clock on most days.

1          Bearing in mind that schedule, the importance of the

2     case, and our need for good jurors like you, are you

3     available to help us?

4          THE JUROR:  I run a company.  It would be difficult for

5     me.

6          THE COURT:  You say you run a company, you're the vice

7     president at northeast security solutions?

8          THE JUROR:  Yes, I run the day-to-day operations.

9          THE COURT:  So someone stands in for you when you are

10    not there?

11         THE JUROR:  Basically, work just piles up until I get

12    back.

13         THE COURT:  All right.  Well, do you think that if you

14    were selected as a juror, you would be able to devote your

15    attention to what's happening here in the courtroom as

16    opposed to things that you think you perhaps should be doing

17    at work?

18         THE JUROR:  I would catch up a little bit at night.

19         THE COURT:  All right.

20         THE JUROR:  It would be difficult, I could do it.

21         THE COURT:  You could make it work, that was the

22    question?

23         THE JUROR:  Yeah.

24         THE COURT:  All right.  Have you seen or heard anything

25    about this case, media reports, or have you discussed it

1  with anyone?

2      THE JUROR:  Just what they were showing on 22 News

3  about them selecting for a jury today.

4      THE COURT:  And that was a recent report that you saw?

5      THE JUROR:  Yeah.

6      THE COURT:  Was there anything about the content of

7  that report that you think might prevent you from acting as

8  a fair and impartial juror?

9      THE JUROR:  No, they just said they were selecting

10  jurors today.

11      THE COURT:  Have you or any family member ever been the

12  victim of a crime of violence?

13      THE JUROR:  Not of violence, no.

14      THE COURT:  All right.  Have you been a victim of a

15  crime that was nonviolent?

16      THE JUROR:  Yeah, my family -- the company I work for

17  was a victim of arson.

18      THE COURT:  All right.  And did a criminal prosecution

19  result?

20      THE JUROR:  Yes.

21      THE COURT:  Was there anything about that experience

22  that your business has or family business had as a victim of

23  arson that might affect in any way your ability to be a fair

24  and impartial juror in this case?

25      THE JUROR:  I don't believe so.

1    THE COURT:  All right.  There my be evidence in this

2    case that one of the co-defendants, Mr. Hall, had some

3    affiliation with the Hells Angels Motorcycle Club and that

4    this defendant, Mr. Chalue, had some affiliation with the

5    Aryan Brotherhood.

6    If you were to hear such evidence would that prevent

7    you from acting fairly and impartially?

8    THE JUROR:  I don't think so.

9    THE COURT:  Robert Chadwell, one of the victims, was an

10   African American.  Mr. Chalue, the defendant, is Caucasian.

11   Would that fact prevent you from acting fairly and

12   impartially?

13   THE JUROR:  No.

14   THE COURT:  The defendant has a right to, absolute

15   right to remain silent at his trial.  If he exercises that

16   right and does not testify, would you hold that against him

17   in any way?

18   THE JUROR:  It's his right.

19   THE COURT:  There may be evidence in this case that the

20   victims' bodies were dismembered and the jury may be exposed

21   to photographs that are graphic in nature.  Would such

22   evidence prevent you from acting fairly and impartially as a

23   juror?

24   THE JUROR:  I think it would be difficult to look at,

25   but I wouldn't say it would question my judgment.

1       THE COURT:  All right.  Let me summarize what I think
2   you just told me and to make sure I understand.

3       You said it would be difficult to look at, and which
4   I'm sure most jurors would agree with.  And the question
5   really was, would it affect your ability to be fair and
6   impartial?  And I think your answer was no; is that?

7       THE JUROR:  Yeah, correct.

8       THE COURT:  All right.  Is there any other reason,
9   whether I have asked about it or not, why you might not be a
10  fair and impartial juror?

11      THE JUROR:  No, not that I can think of.

12      THE COURT:  Did you respond to any of my earlier
13  questions by raising your card?

14      THE JUROR:  I did not.

15      THE COURT:  All right.  Thank you very much.  If you
16  could step into the hallway for just a minute.

17      (The juror exited.)

18      THE COURT:  I find him indifferent.

19      MR. CAPELESS:  Commonwealth challenges this juror, Your
20  Honor.

21      THE COURT:  Very well.

22      (The juror entered.)

23      THE COURT:  Mr. Condon, thank you for your service.
24  You have been excused.

25      THE JUROR:  Thank you.

1          VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 88

2          COURT OFFICER:  Juror Number 88.

3          THE COURT:  Ms. Martin, good afternoon.

4          THE JUROR:  Hi.

5          THE COURT:  Ms. Martin, did you have a chance to look

6    at that list of potential witnesses?

7          THE JUROR:  I did.

8          THE COURT:  Did you recognize any names?

9          THE JUROR:  No.

10         THE COURT:  Have you seen or heard any reports, media

11   reports regarding this case?

12         THE JUROR:  I did this morning on the news.

13         THE COURT:  All right.  Was there anything about the

14   content of the report that you think would affect your

15   ability to sit as a fair and impartial juror?

16         THE JUROR:  No.

17         THE COURT:  Have you discussed the case with anyone?

18         THE JUROR:  No.

19         THE COURT:  All right.  You're certain of that?  You

20   look puzzled.

21         THE JUROR:  Well, we just discussed what happened real

22   quick on like what we seen on the news.  They said it was a

23   Hells Angels deal or something like that, and that was about

24   it.

25         THE COURT:  All right.  And when you say "we" you're

1    referring to?

2         THE JUROR:  My boyfriend.

3         THE COURT:  All right.  And was there anything about

4    the content of that discussion that you think might affect

5    your ability to fairly and impartially listen to the

6    evidence?

7         THE JUROR:  No.

8         THE COURT:  We anticipate this trial will last

9    approximately four weeks proceeding from 9:30 in the morning

10   until four o'clock in the afternoon on most days.

11        Bearing in mind that schedule, the importance of the

12   case, and our need for good jurors like you, are you

13   available to help us?

14        THE JUROR:  I -- my main concern is I'm a nurse's aide

15   and I take care of a man whose quadraplegic Monday through

16   Friday at 9:00 a.m. and I'm not sure if he has a backup or

17   not.  That's only my main concern, but other than that I

18   would be available.

19        I don't know what to do about that.

20        THE COURT:  And how long is it you have been working

21   for that particular patient?

22        THE JUROR:  A little over a year.

23        THE COURT:  Do you know what he was doing before you

24   saw him?

25        THE JUROR:  He had another lady, but she's not there

1   anymore.

2        THE COURT:  All right.  So you don't know whether or

3   not he has other arrangements?

4        THE JUROR:  He knew I was coming to jury duty and he

5   didn't -- we didn't really say anything, you know, he

6   just -- we just -- he didn't really say anything about it.

7        THE COURT:  All right.  All right.  Well, let's put

8   that question aside for just a moment.

9        THE JUROR:  Sure.

10       THE COURT:  Have you or any family member or close

11  friend ever been the victim of a crime of violence?

12       THE JUROR:  No.

13       THE COURT:  There may be evidence in this case that one

14  of the co-defendants, Mr. Hall, was a member of the Hells

15  Angels Motorcycle Club and that this defendant, Mr. Chalue,

16  had some affiliation with the Aryan Brotherhood.

17       If you were to hear such evidence, would that evidence

18  prevent you from being a fair and impartial juror?

19       THE JUROR:  No.

20       THE COURT:  Robert Chadwell, one of the victims in this

21  case was African American.  The defendant, Mr. Chalue, is

22  Caucasian.

23       Do those facts prevent you from -- would those facts

24  prevent you from being a fair and impartial juror?

25       THE JUROR:  No.

1          THE COURT:  Mr. Chalue has an absolute right to remain

2    silent during the course of this trial.  If he exercises

3    that right and does not testify, would you hold that against

4    him in any way?

5          THE JUROR:  No.

6          THE COURT:  There may be evidence in this case that the

7    victims' bodies were dismembered and the jury may be exposed

8    to photographs that some might consider graphic in nature.

9          If you were to see and hear such evidence, would that

10   prevent you from being a fair and impartial juror?

11         THE JUROR:  No.

12         THE COURT:  Can you think of any other reason, whether

13   I have asked about it or not, why you could not be a fair

14   and impartial juror?

15         THE JUROR:  No.

16         THE COURT:  Thank you.

17         Did you respond to any of my earlier questions by

18   raising your card?

19         THE JUROR:  No.

20         THE COURT:  I see that you or someone in your family

21   had some traffic incident long ago?

22         THE JUROR:  Uh-huh.

23         THE COURT:  Anything about those experiences that would

24   in any way affect your ability to be a fair and impartial

25   juror in this case?

1        THE JUROR:  No.

2        THE COURT:  Thank you.  If you could step out into the

3   hallway for just a second.

4        (The juror exited.)

5        THE COURT:  I find her indifferent.

6        (Pause)

7        MR. CAPELESS:  Judge, I just raise the concern about

8   this issue as to whether or not, you know, her client is

9   going to have somebody fill in.

10       She said she didn't even know about today and if she

11  gets picked we start the trial and she finds out, you know,

12  they're scrambling, she may be distracted.  I don't know if

13  you can inquire further about that.

14       THE COURT:  All right.  Mr. Frank, do you share

15  Mr. Capeless' concern?

16       MR. FRANK:  I do.

17       THE COURT:  Then to eliminate that potential problem,

18  since you both raise the concern, rather than spending

19  additional time, I'm prepared to excuse her.

20       Any objection, Mr. Capeless?

21       MR. CAPELESS:  No, Your Honor.

22       THE COURT:  Mr. Frank?

23       MR. REARDON:  Your Honor, frankly, we like her and we

24  would like her.  I don't want her excused.  I think that it

25  may be a matter of having her to make a phone call to

1   Stavros, her employer.

2       THE COURT:  I'm going to make a decision today, so I

3   will call her in and ask followup questions, if that's what

4   you would like me to do.

5       MR. FRANK:  Please.

6       THE COURT:  Is that your request?

7       MR. FRANK:  Yes.

8       (The juror entered.)

9       THE COURT:  Ms. Martin, thank you for your patience.  I

10  wanted to ask --

11      THE JUROR:  Of course.

12      THE COURT:  I wanted to ask you a follow-up question

13  regarding your personal care attendant responsibilities.

14      If you were chosen to sit as a juror in this case,

15  would your obligations at work distract you from your

16  attention to the evidence?

17      THE JUROR:  No.

18      THE COURT:  All right.  And do you think if you were

19  chosen, that you could focus on the task at hand, that is

20  the evidence in this case and put your professional

21  responsibilities to the side?

22      THE JUROR:  Yes.

23      THE COURT:  All right.  Thank you.  If you could stand

24  in the hallway.

25      THE JUROR:  Sure.

1          (The juror exited.)

2          THE COURT:  I find her indifferent.

3          MR. CAPELESS:  The Commonwealth challenges this juror,

4     Your Honor.

5          (The juror entered.)

6          THE COURT:  Ms. Martin, thank you for your service.

7          You have been excused.

8          THE JUROR:  Thank you.

9          VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 89

10         COURT OFFICER:  Juror Number 89.

11         THE COURT:  Ms. Bianchi, good afternoon.

12         THE JUROR:  Good afternoon.

13         THE COURT:  Did you have a chance to look at that list

14    of potential witnesses?

15         THE JUROR:  I did.

16         THE COURT:  Did you recognize any names?

17         THE JUROR:  I did not.

18         THE COURT:  We anticipate the trial of this case may

19    last approximately four weeks beginning at 9:30 each day and

20    proceeding until four o'clock, with some variations.

21         Bearing in mind the importance of this case and our

22    need for good jurors like you, are you available to help us?

23         THE JUROR:  My concern is I am currently undergoing

24    some medical tests that are not conclusive.  I have been to

25    an out-patient, my doctor a couple of times.  We are doing

1    blood work.  I may be scheduled for a procedure next week.

2    That's my main concern.  Separate from that, my work does

3    require a fair amount of travel, which I already put on hold

4    because of this.  So those are just honest concerns that I

5    do have with the duration of the trial.

6         THE COURT:  All right.  Well, let me start with concern

7    number two, that is your professional concerns.

8         Are they such that you think you would either suffer an

9    economic hardship or would otherwise be distracted from your

10   work as a juror?

11        THE JUROR:  In the economic hardship and all, as you

12   know my company is very good about that.  We have, though,

13   in my department just had an employee come back who was on

14   Grand Jury for three months.  So we have had a little bit of

15   setback there.  It's more the attention because of the role

16   that I do have of being out that long.  I do have to admit,

17   I would do my best, but it would be a very anxious situation

18   for me.

19        THE COURT:  So it sounds as if you think there's some

20   potential that you might be distracted?

21        THE JUROR:  Yes.  It would be hard for me to have my

22   mind off of what's going on in my department based on some

23   recent transitions in organizational changes.

24        THE COURT:  You are excused.

25        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 90

1          COURT OFFICER:  Juror Number 90.

2          THE COURT:  Mr. Ford, good afternoon.

3          THE JUROR:  Good afternoon.

4          THE COURT:  Did you have a chance to look at that list

5   of potential witnesses?

6          THE JUROR:  Yes, I did.

7          THE COURT:  Did you recognize any names?

8          THE JUROR:  The only name I noticed was Glasser whose

9   also my attorney.  I wasn't sure if he was related in any

10  way.

11         THE COURT:  All right.  Quite certain that the answer

12  is no.

13         THE JUROR:  Okay.

14         THE COURT:  But if that changes, I will certainly let

15  you know.  You're talking about the Glasser you know is your

16  lawyer?

17         THE JUROR:  Correct.  Correct.

18         THE COURT:  Have you seen or heard any media reports

19  regarding this case?

20         THE JUROR:  Yes.

21         THE COURT:  What was the most recent report that you

22  heard?

23         THE JUROR:  One of them was on trial recently.

24         THE COURT:  All right.  And was there anything about

25  the content of what you heard or read that you think might

1  affect your ability to be a fair and impartial juror in this

2  case?

3      THE JUROR:  Yes.

4      THE COURT:  How so?

5      THE JUROR:  What happened to the victims.

6      THE COURT:  All right.  And you think that your ability

7  to act fairly and impartially may be affected by what you

8  already know?

9      THE JUROR:  Correct.

10     THE COURT:  You are excused.

11     VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 91

12     COURT OFFICER:  Juror Number 91.

13     THE COURT:  Mr. Shepherd, good afternoon.

14     THE JUROR:  Good afternoon, sir.

15     THE COURT:  Did you look at that list of potential

16 witnesses?

17     THE JUROR:  Yes.

18     THE COURT:  Did you recognize any names?

19     THE JUROR:  No witnesses.

20     THE COURT:  Were there other names you recognized in

21 connection with this case in any way?

22     THE JUROR:  I did recognize the two Springfield Police

23 Officer's names.

24     THE COURT:  That were on the witness list?

25     THE JUROR:  No one on the witness list that I

1   recognized.

2       THE COURT:  All right.  So what Springfield Police

3   Officers' names are you referring to?

4       THE JUROR:  Officer Santiago and Vargas, Hector.

5       THE COURT:  All right.  These are people that you know?

6       THE JUROR:  Yes.

7       THE COURT:  I see.  I'm sorry.  Anything about your

8   relationship with those police officers that you think might

9   affect your ability to be fair and impartial in this case?

10      THE JUROR:  I don't think so.

11      THE COURT:  All right.  In what capacity do you work

12  with them?

13      THE JUROR:  I'm a paramedic for City of Springfield,

14  part of American Medical Response.

15      THE COURT:  I see.  Did you respond to any other

16  questions that I asked of the entire group earlier?

17      THE JUROR:  Yes.

18      THE COURT:  Do you recall which ones?

19      THE JUROR:  Excuse me?

20      THE COURT:  Do you recall which ones?

21      THE JUROR:  One about working for law enforcement

22  agency.

23      THE COURT:  All right.

24      THE JUROR:  I worked for sheriff's county agency out

25  west.

1    THE COURT:  And was there anything about your work in

2   that capacity that might cause you to favor one side over

3   the other?

4    THE JUROR:  I tend to have a lot of respect for the

5   police and their abilities to be truthful.

6    THE COURT:  All right.  And let me ask you, when I

7   asked that question earlier, if anyone thought that they

8   would tend to believe or disbelieve the testimony of a

9   police officer as opposed to other witnesses, my

10   recollection is that you did not raise your hand.

11    THE JUROR:  I answered no, yes; because I kind of had

12   to think about that a little bit.

13    THE COURT:  All right.  Well, as you stand here right

14   now and do you think you would tend to elevate the testimony

15   of police officers at this trial over the testimony of other

16   lay witnesses?

17    THE JUROR:  I think I would, Your Honor.

18    THE COURT:  You are excused.

19    THE JUROR:  Thank you.

20    (The juror exited.)

21    MR. FRANK:  Judge, before the next potential juror

22   comes through --

23    THE COURT:  Hold on just a minute, Mr. Curtis.

24    MR. FRANK:  Yes.  By my count that's the third

25   potential juror whose indicated in a more intimate setting

1   that they would tend to elevate the testimony of a police

2   officer.  I would now ask that question be re-asked in this

3   setting.

4           THE COURT:  I will do so.

5           MR. FRANK:  Thank you.

6           VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 93

7           COURT OFFICER:  Juror Number 93.

8           THE COURT:  Mr. Reed, good afternoon.  Good afternoon.

9           THE JUROR:  Good afternoon, Your Honor.

10          THE COURT:  Did you have an opportunity to look at that

11   list of witnesses?

12          THE JUROR:  I did, sir.

13          THE COURT:  Did you recognize any names?

14          THE JUROR:  No, I did not.

15          THE COURT:  We anticipate this case will last

16   approximately four weeks, proceeding from 9:30 in the

17   morning until four o'clock in the afternoon.

18          Bearing in mind that schedule, the importance of the

19   case, and our need for good jurors like you, are you

20   available to help us?

21          THE JUROR:  Can I say something that's not related to

22   your questions?

23          THE COURT:  You can, but let's start with the answer to

24   my question first, and then I will move on to your concern.

25          THE JUROR:  Okay.  What was it again?

1          THE COURT:  The case --

2          THE JUROR:  Am I available 9:00 to 4:00?

3          THE COURT:  Yes.

4          THE JUROR:  Yes.

5          THE COURT:  All right.  Now your concern?

6          THE JUROR:  You know, I thought it was going to be, you

7   know, somebody robs a convenience store, but I don't know if

8   I could, you know, be comfortable sending somebody to prison

9   for the rest of their life.

10          THE COURT:  Well, let me just take a step back and make

11  sure you understand that your role as juror would be to

12  determine what the facts are.  You would not be involved in

13  the decision as to what the penalty should be, should there

14  be a penalty required.

15          Are you telling me that given the nature of the case,

16  you do not think you would be fair and impartial?

17          THE JUROR:  I don't think I could.

18          THE COURT:  You're excused.

19          VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 94

20          COURT OFFICER:  Juror Number 94.

21          THE COURT:  Mr. Ross, good afternoon.

22          THE JUROR:  Hello.

23          THE COURT:  Did you have an opportunity to look at that

24  list of witnesses?

25          THE JUROR:  Yes.

1        THE COURT:  Did you recognize any names?

2        THE JUROR:  No.

3        THE COURT:  We anticipate this case will last

4    approximately four weeks proceeding 9:30 in the morning

5    until four o'clock in the afternoon, with certain

6    exceptions.

7        Bearing in mind that schedule, the importance of the

8    case and our need for good jurors like you, are you

9    available to help us?

10       THE JUROR:  Unfortunately I have a vacation already

11   paid for in two weeks.

12       THE COURT:  You are excused.

13       THE JUROR:  Thank you.

14   VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 95

15   COURT OFFICER:  Juror Number 95.

16       THE COURT:  Mr. DiSanto, good afternoon.

17       THE JUROR:  Hi.

18       THE COURT:  Did you have on opportunity to look at that

19   list of witnesses?

20       THE JUROR:  Yes.

21       THE COURT:  Did you recognize any names?

22       THE JUROR:  No.

23       THE COURT:  I see from your biographical form that you

24   have strong religious beliefs.  Is there anything about

25   those beliefs that you think would interfere with your

1    ability to be a fair and impartial juror?

2         THE JUROR:  The only thing that comes to mind is if all

3    of the evidence isn't presented, for whatever reason, there

4    are certain things that get withheld, it would bother my

5    conscious.

6         THE COURT:  All right.  And is that tied to religious

7    views?

8         THE JUROR:  Yes.

9         THE COURT:  Let me ask you this question.  Ultimately,

10   if you were selected as a juror, you would be called upon

11   collectively with the other jurors to determine what the

12   facts in this case are.

13        And I would be advising you as to how you determine the

14   credibility of certain witnesses.  And that emotion or

15   sympathy, passion or prejudice, should have no role in your

16   objective determination of the facts.  Do you think you

17   could follow that instruction?

18        THE JUROR:  Yes.

19        THE COURT:  Have you seen or heard anything about this

20   case on the media?

21        THE JUROR:  In the news.

22        THE COURT:  All right.  Was there anything about the

23   content of what you heard or saw in media reports that you

24   think might interfere with your ability to be fair and

25   impartial?

1          THE JUROR:  No.

2          THE COURT:  Have you or any member of your family ever

3     been the victim of a crime of violence?

4          THE JUROR:  No.

5          THE COURT:  Did you respond to any of my earlier

6     questions by raising your card?

7          THE JUROR:  Yes.

8          THE COURT:  Do you recall which ones?

9          You know somebody in law enforcement, I see from your

10    form?

11         THE JUROR:  Yes, but not on that list.

12         THE COURT:  And your wife's cousin works for the

13    Westfield Police Department.  Anything about your

14    relationship with that person that might cause you to favor

15    one side over the other?

16         THE JUROR:  (Indicating)

17         THE COURT:  Sorry.  We have to record your answer.

18         THE JUROR:  No.

19         THE COURT:  Was that the only question you responded

20    to, that is the law enforcement relationship?

21         THE JUROR:  I believe you read off the religious as

22    well.

23         THE COURT:  All right.

24         I also asked -- Ms. Capeless, do we have a record of --

25         THE CLERK:  It was that question, all encompassing

1    question, religious beliefs.

2        THE COURT:  Thank you.

3        There -- well, let me turn to the religious belief

4    question.  I don't want to put you in a position where you

5    are feeling some pressure because of your spiritual or

6    religious views to make a determination one way or another.

7        Do you think there's a possibility that your personal

8    feelings in that regard might influence your decision

9    making?

10       THE JUROR:  Yes.

11       THE COURT:  You are excused.

12       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 96

13       COURT OFFICER:  Juror Number 96.

14       THE COURT:  Mr. Durfee, good afternoon.

15       THE JUROR:  Hi.  Good afternoon.

16       THE COURT:  Did you get a chance to look at that list

17   of witnesses?

18       THE JUROR:  Yes, I did.

19       THE COURT:  Did you recognize any names?

20       THE JUROR:  No, I didn't.

21       THE COURT:  We anticipate the trial of this case will

22   last approximately four weeks proceeding from 9:30 in the

23   morning until 4:00 in the afternoon.

24       Bearing in mind that schedule, the importance of the

25   case, and our need for good jurors like you, are you

1    available to help us?

2         THE JUROR:  Yeah, I can probably help.

3         THE COURT:  All right.

4         THE JUROR:  That's a lot of time.

5         THE COURT:  It is a lot of time.  We realize it's a

6    burden on almost everyone that comes through the door, which

7    is the reason we ask the question.  But I take it from your

8    response that you're prepared to make whatever personal

9    adjustments are necessary?

10        THE JUROR:  Yes.

11        THE COURT:  All right.  Thank you.

12        Have you seen or heard anything about the case in any

13   media reports?

14        THE JUROR:  Just a little bit in the newspaper.  I just

15   recall a little bit of the events, that's about it.

16        THE COURT:  Was that a recent report?

17        THE JUROR:  No.

18        THE COURT:  Can you estimate for us approximately how

19   long ago it was?

20        THE JUROR:  Maybe six months, something like that.

21        THE COURT:  Is there anything --

22        THE JUROR:  Another trial.

23        THE COURT:  Was there anything about the content of the

24   report that you think might prevent you from acting as a

25   fair and impartial juror in this case?

1       THE JUROR:  None.

2       THE COURT:  Have you or any family member ever been the

3 victim of a crime of violence?

4       THE JUROR:  No.

5       THE COURT:  Did you respond to any of my earlier

6 questions by raising your card?

7       THE JUROR:  No.

8       THE COURT:  Would you tend to believe or disbelieve the

9 testimony of a police officer as opposed to the testimony of

10 any other witness?

11       THE JUROR:  Can you repeat that?

12       THE COURT:  Yes.

13       Would you tend to believe or disbelieve the testimony

14 of a police officer as opposed to the testimony of any other

15 witness simply because that witness is employed as a police

16 officer?

17       THE JUROR:  No.

18       THE COURT:  There may be evidence in this case that one

19 of the co-defendant's, Mr. Hall, had some affiliation with

20 the Hells Angels Motorcycle Club, and that this defendant

21 Mr. Chalue had some affiliation with an organization known

22 as the Aryan Brotherhood.

23       Would that kind of evidence prevent you from acting as

24 a fair and impartial juror?

25       THE JUROR:  No.

1        THE COURT:  Robert Chadwell, one of the victims in this

2   case was an African American.  The defendant is Caucasian.

3   Would those facts prevent you from acting fairly and

4   impartially?

5        THE JUROR:  No.

6        THE COURT:  The defendant has an absolute right to

7   remain silent.  If he exercises that right and does not

8   testify at this trial, would you hold that against him in

9   any way?

10       THE JUROR:  No.

11       THE COURT:  There may be evidence in this case that the

12  victims' bodies were dismembered.  And the jury may be

13  exposed to photographs that some might consider graphic

14  regarding that evidence.  If you were to hear and see such

15  evidence, would that evidence prevent you from acting fairly

16  and impartially?

17       THE JUROR:  No.

18       THE COURT:  Can you think of any other reason, whether

19  I asked about it or not, why you would not be fair and

20  impartial if selected?

21       THE JUROR:  No.

22       THE COURT:  You have mentioned on your biographical

23  form that you once before sat on a jury in a criminal case.

24  Can you estimate for us approximately how long ago that was?

25       THE JUROR:  Three or six years, I can't remember.

1    Maybe three years.

2         THE COURT:  Was it here in Hampden County?

3         THE JUROR:  It was at the Chicopee --

4         THE COURT:  Chicopee District Court?

5         THE JUROR:  Yes.

6         THE COURT:  And do you recall the nature of the case?

7         THE JUROR:  Yes, it was just a scuffle outside of a bar

8    and someone was knifed and --

9         THE COURT:  Did the jury reach a verdict in that case?

10        THE JUROR:  Yes.

11        THE COURT:  What was the verdict?

12        THE JUROR:  It was innocent.

13        THE COURT:  Was there anything about that experience

14   that you think might affect your ability to be fair and

15   impartial on this case?

16        THE JUROR:  No.

17        THE COURT:  Thank you.  I'm going to ask you to step

18   out in the hallway for just a second.

19        (The juror exited.)

20        THE COURT:  I find him indifferent.

21        MR. CAPELESS:  Commonwealth is content with this juror

22   Your Honor.

23        (Pause)

24        MR. FRANK:  Content.

25        THE COURT:  All right.  Thank you.  If we can bring

1    back Mr. Durfee, please.

2         (The juror entered.)

3         COURT OFFICER:  Mr. Durfee, you have been selected to

4    sit as a juror in this case.  You're going to be in seat

5    number ten.

6         The trial is actually not going to start until Thursday

7    morning, so the Court Officers will explain to you where you

8    report on Thursday morning at 9:30.

9         In the meantime, please don't discuss the case with

10   anyone or conduct any independent investigation in any way.

11   Please disregard any media reports, and when you arrive on

12   Thursday morning, don't discuss any aspect of this case with

13   the other jurors.

14        With that, Mr. Durfee, thank you for your time and

15   attention today.  You are excused until Thursday morning.

16        THE JUROR:  You're welcome.

17        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 97

18        COURT OFFICER:  Juror Number 97.

19        THE COURT:  Mr. Zagrodnik; is that correct?

20        THE JUROR:  Yes.

21        THE COURT:  Good afternoon.

22        THE JUROR:  Hi.

23        THE COURT:  Did you have a chance to look at that list

24   of potential witnesses?

25        THE JUROR:  Yes.

1        THE COURT:  Did you recognize any names?

2        THE JUROR:  No.

3        THE COURT:  We anticipate that the trial of this case

4   will last approximately four weeks proceeding from 9:30 in

5   the morning until four o'clock in the afternoon.

6        Based on that schedule, the importance of the case and

7   our need for good jurors like you, are you available to help

8   us?

9        THE JUROR:  I'm available, but I won't be happy.

10       THE COURT:  All right.  Well, tell me a little bit

11  about your concern.

12       THE JUROR:  I work five different jobs.  I work -- I'm

13  a personal care attendant for somebody; I'm a merchandiser;

14  I work for so many different companies and the -- it would

15  be an imposition, but if it had to be, it had to be.

16       THE COURT:  Let me ask you this question, would your

17  service on a trial of this time for four weeks cause you a

18  economic hardship?

19       THE JUROR:  Yes.

20       THE COURT:  You are excused.

21  VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 98

22  COURT OFFICER:  Juror 98.

23       THE COURT:  Ms. Laskowski, good afternoon.

24       THE JUROR:  Good afternoon.

25       THE COURT:  Did you have a chance to look at that list

1   of witnesses?

2          THE JUROR:  Yes, I did.

3          THE COURT:  Do you recognize any names?

4          THE JUROR:  No, I did not.

5          THE COURT:  We anticipate the trial of this case will

6   last approximately four weeks, proceeding from 9:30 in the

7   morning until four o'clock in the afternoon.  Bearing in

8   mind that schedule, the importance of this case our need for

9   good jurors like you, are you available to help us?

10         THE JUROR:  I wouldn't be possible for me to do it

11  because I have to take care of too many elderly people and

12  too many children.

13         THE COURT:  All right.  Your biographical form states

14  that you care for elderly and children?

15         THE JUROR:  Yes.

16         THE COURT:  Do you operate your own business in that

17  regard?

18         THE JUROR:  No, I do not.  I do not get paid for doing

19  any of that.

20         THE COURT:  All right.  So the elderly and children you

21  care for are family members?

22         THE JUROR:  Yes.

23         THE COURT:  And someone else was available to care for

24  them today?

25         THE JUROR:  No.

1          THE COURT:  So --

2          THE JUROR:  I had to leave my nephew with my 80 year

3     old mom and my daughter is home alone.

4          THE COURT:  And would it -- would it cause a hardship

5     for your family if you were selected as a juror in this

6     case?

7          THE JUROR:  Yes.

8          THE COURT:  You are excused.

9          VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 99

10         COURT OFFICER:  Juror Number 99.

11         THE COURT:  Good afternoon, sir.  Is it Mr. Ademi; is

12    that correct?

13         THE JUROR:  Ademi.

14         THE COURT:  Mr. Ademi, did you have a chance to look at

15    that list of witnesses?

16         THE JUROR:  Yes, I did.

17         THE COURT:  Did you recognize any names?

18         THE JUROR:  No.

19         THE COURT:  We anticipate the trial of this case will

20    last approximately four weeks, beginning each day at 9:30

21    and ending at approximately four o'clock.

22         Bearing in mind that schedule, and the importance of

23    this case, and our need for good jurors like you, are you

24    available to help us?

25         THE JUROR:  Yes.

1      THE COURT:  Have you read or heard anything about this
2  case?  Any media reports?
3      THE JUROR:  No.
4      THE COURT:  Have you discussed it with anyone?
5      THE JUROR:  No.
6      THE COURT:  Did you raise your card in response to any
7  of my earlier questions?
8      THE JUROR:  No, I didn't.
9      THE COURT:  Have you or any family member ever been the
10  victim of a crime of violence?
11      THE JUROR:  No.
12      THE COURT:  Would you tend to believe the testimony of
13  a police officer as opposed to the testimony of any other
14  witness, simply because the witness is a police officer?
15      THE JUROR:  Yes.
16      THE COURT:  You are excused.
17      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 100
18      COURT OFFICER:  Juror Number 100.
19      THE COURT:  Mr. Bodman, good afternoon.
20      THE JUROR:  Hi.
21      THE COURT:  Did you have a chance to look at that list
22  of witnesses?
23      THE JUROR:  Yes.
24      THE COURT:  Did you recognize any names?
25      THE JUROR:  No.

1       THE COURT:  We anticipate that the trial of this case

2  will last approximately four weeks, proceeding from 9:30 in

3  the morning until 4:00 in the afternoon.

4       Bearing in mind that schedule, the importance of the

5  case and our need for good jurors like you, are you

6  available to help us?

7       THE JUROR:  I don't think so.

8       My wife has cancer.  I have appointments scheduled in

9  Boston and D'Amour Center here.

10      THE COURT:  All right.  I take it you are her primary

11  caretaker?

12      THE JUROR:  Yes.

13      THE COURT:  You are excused.  Good luck.

14      THE JUROR:  Thank you.

15      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 102

16      COURT OFFICER:  Juror Number 102.

17      THE COURT:  Ms. Wylie, good afternoon.

18      THE JUROR:  Good afternoon.

19      THE COURT:  Did you recognize any of the names on the

20  witness list?

21      THE JUROR:  No, I did not.

22      THE COURT:  We anticipate the trial of this case will

23  last approximately four weeks, proceeding 9:30 in the

24  morning until four o'clock most days.

25      Bearing in mind that schedule, the importance of this

1    case, and our need for good jurors like you, are you

2    available to help us?

3        THE JUROR:  Not -- I work in a school.  I'm a teacher.

4        THE COURT:  All right.  I assume someone is standing in

5    for you today?

6        THE JUROR:  I'm on vacation, school vacation.

7        THE COURT:  And I assume that you -- there are

8    substitutes available?

9        THE JUROR:  Yes.

10       THE COURT:  Would your service on this jury cause you

11   an economic hardship of any kind?

12       THE JUROR:  No.

13       THE COURT:  Would you be distracted by your

14   professional responsibilities if you were seated on the

15   jury?  In other words, could you devote your attention to

16   what would be happening here in the courtroom?

17       THE JUROR:  More or less.

18       THE COURT:  Well, it's important that I'm confident in

19   your response.  "More or less" doesn't really quite cut it.

20   It would have to be more, rather than less.

21       Do you think could you do that?

22       THE JUROR:  Yeah.

23       THE COURT:  I don't want to put you in a position where

24   you think you're not going to be able to devote your full

25   attention to this.  If the answer is no, I can accept that.

1   Is that your answer?

2        THE JUROR:  It is actually.

3        THE COURT:  You're excused.

4        THE JUROR:  Thank you.

5        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 104

6        COURT OFFICER:  Juror Number 104.

7        THE COURT:  Ms. Barrett, good afternoon.

8        THE JUROR:  Good afternoon.

9        THE COURT:  Did you recognize any of the names on that

10   witness list?

11        THE JUROR:  No.

12        THE COURT:  We anticipate the trial of this case will

13   last approximately four weeks, proceeding each day from 9:30

14   in the morning until 4:00 in the afternoon.

15        Bearing in mind that schedule, the importance of this

16   case, and our need for good jurors like you, are you

17   available to help us?

18        THE JUROR:  Not with that schedule.  That would be very

19   difficult.

20        THE COURT:  All right.  Can you explain to me your

21   concern?

22        THE JUROR:  I'm a single mother.  I'm the sole provider

23   of transportation for my daughter to and from school and

24   things like that.

25        THE COURT:  How old is your daughter?

1        THE JUROR:  She's nine.

2        THE COURT:  You are excused.

3        THE JUROR:  Thank you.

4        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 106

5        THE JUROR:  Number 106.

6        THE COURT:  Good afternoon.  Is it Mr. LeFebvre.

7        THE JUROR:  LeFebvre.

8        THE COURT:  I see that you are a police commissioner in

9  West Springfield?

10        THE JUROR:  Yes.

11        THE COURT:  Anything about your role in that capacity

12  that you think might cause you to favor one side over the

13  other in this case?

14        THE JUROR:  Not necessarily.

15        THE COURT:  All right.  Well, are you confident of

16  that?

17        THE JUROR:  Yeah.

18        THE COURT:  The reason I ask the question is because

19  there will be, no doubt, many police officers who testify in

20  this case, and if you thought, as a result of your role,

21  that you would tend to favor the testimony of police

22  officers or disfavor the testimony of police officers, then

23  that would be an important disqualifying factor.

24        Do you think that based upon your personal experience

25  you would tend to believe or disbelieve the testimony of a

1  police officer over other witnesses?

2      THE JUROR:  I think I can remain neutral.

3      THE COURT:  All right.  Did you recognize the names of

4  any witnesses on the witness list?

5      THE JUROR:  No, I didn't.

6      THE COURT:  We anticipate the trial of this case will

7  last four weeks, proceeding each day from 9:30 in the

8  morning until 4:00 in the afternoon.

9      Bearing in mind that schedule, the importance of the

10  case, and our need for good jurors like you, are you

11  available to help us?

12      THE JUROR:  Yeah, if I call -- I suppose.  I have my

13  own business.  I have -- you know, it's a busy time of year

14  for me, but --

15      THE COURT:  All right.  Well, ultimately, we would want

16  to select someone for the jury that whatever their

17  profession is they could devote full time and attention to

18  what happens here in the courtroom.  Do you think that you

19  would be a distracted by your personal or professional

20  responsibilities if you were seated as a juror for four

21  weeks?

22      THE JUROR:  Oh, yeah.

23      THE COURT:  You are excused.

24      THE JUROR:  Thank you.

25      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 107

1          COURT OFFICER:  Juror Number 107.

2          THE COURT:  Mr. Wojnilowicz, is that correct?

3          THE JUROR:  Yes.

4          THE COURT:  Good afternoon, sir.

5          THE JUROR:  Good afternoon.

6          THE COURT:  Did you recognize any of the witnesses on

7    that list?

8          THE JUROR:  No.

9          THE COURT:  The trial of this case -- are you able to

10   hear me?

11         THE JUROR:  I have a hard time.  I'm deaf in one ear.

12         THE COURT:  Were you able to hear the questions that I

13   asked earlier?

14         THE JUROR:  Some of them I did.

15         THE COURT:  Some of them you did not?

16         THE JUROR:  Right.

17         THE COURT:  I'm concerned that some of the witnesses in

18   this trial may not speak as loudly as I am right now.  Do

19   you think that given your hearing impairment it would be

20   difficult for you to hear everything that happens?

21         THE JUROR:  I think so because I have a hard time with

22   my consonants F, Hs, Ps, 8 they all sound the same to me.  I

23   hear noises, but I can't determine what the words are.

24         THE COURT:  All right.  Thank you.  You are excused.

25         THE JUROR:  Thank you very much.

1        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 108

2        COURT OFFICER:  Juror Number 108.

3        THE COURT:  Mr. Boliski, good afternoon.

4        THE JUROR:  Hi.

5        THE COURT:  Did you have an opportunity to review that

6   list of witnesses?

7        THE JUROR:  I did.

8        THE COURT:  Did you recognize any names?

9        THE JUROR:  No, I did not.

10       THE COURT:  We anticipate the trial of this case will

11  last four weeks, proceeding each day from 9:30 until four

12  o'clock.

13       Bearing in mind that schedule, the importance of the

14  case, and our need for good jurors like you, are you

15  available to help us?

16       THE JUROR:  I don't think so.

17       THE COURT:  Why is that?

18       THE JUROR:  Because I'm almost, basically, a single

19  dad.  I don't have that much time to miss that much work to

20  do that.

21       THE COURT:  Would it cause you an economic hardship?

22       THE JUROR:  Yes, it would.

23       THE COURT:  Thank you.  You are excused.

24       THE JUROR:  Thank you.

25       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 109

1        COURT OFFICER:  Juror Number 109.

2        THE COURT:  Ms. Jacinto, good afternoon.

3        THE JUROR:  Good afternoon.

4        THE COURT:  Did you recognize any of the names on the

5   witness list?

6        THE JUROR:  No, Your Honor.

7        THE COURT:  We anticipate this case will take

8   approximately four weeks to complete, proceeding each day

9   from 9:30 until four o'clock.

10        Bearing in mind that schedule, the importance of this

11   case, and our need for good jurors like you, are you

12   available to help us?

13        THE JUROR:  Yes.

14        THE COURT:  Have you seen or heard anything about this

15   case in any media reports?

16        THE JUROR:  No.

17        THE COURT:  Have you discussed it with anyone?

18        THE JUROR:  No.

19        THE COURT:  Did you respond to any of my earlier

20   questions by raising your card?

21        THE JUROR:  No.

22        THE COURT:  Have you or any family member ever been the

23   victim of a crime of violence?

24        THE JUROR:  No.

25        THE COURT:  Would you believe or disbelieve the

1    testimony of a police officer just because that witness is

2    employed as a police officer?

3          THE JUROR:  No.

4          THE COURT:  There may be evidence in this case that one

5    of the co-defendants, Mr. Hall, had some affiliation with

6    the Hells Angels Motorcycle Club and this defendant, Mr.

7    Chalue, had some affiliation with an organization known as

8    the Aryan Brotherhood.

9          Would that evidence, should you hear it, interfere with

10   your ability to be fair and impartial?

11         THE JUROR:  No.

12         THE COURT:  Robert Chadwell, one of the victims in this

13   case, was African American.  The defendant is Caucasian.

14   Would those facts interfere with your ability to be fair and

15   impartial?

16         THE JUROR:  No.

17         THE COURT:  The defendant has an absolute right to

18   remain silent.  If he exercises that right and does not

19   testify in this trial, would you hold that against him?

20         THE JUROR:  I'm sorry.  Can you repeat the question?

21         THE COURT:  Yes.  Mr. Chalue, the defendant, has a

22   constitutional right to remain silent at his own trial.

23         If he exercises that right and chooses not to testify,

24   would you hold that against him in any way?

25         THE JUROR:  Yes.

1      THE COURT:  You would?

2      THE JUROR:  (Indicating)

3      THE COURT:  You are excused.

4      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 111

5      COURT OFFICER:  Juror Number 111.

6      THE COURT:  Ms. Monserrat, good afternoon.

7      THE JUROR:  Good afternoon.

8      THE COURT:  Did you have a chance to look at that list

9  of witnesses?

10     THE JUROR:  Yes.

11     THE COURT:  Did you recognize any names?

12     THE JUROR:  No.

13     THE COURT:  We anticipate the trial of this case will

14 last approximately four weeks, proceeding each day from 9:30

15 in the morning until four o'clock in the afternoon.

16     Bearing in mind that schedule, the importance of this

17 case, and our need for good jurors like you, are you

18 available to help us?

19     THE JUROR:  Well, I work in a school as a teacher aide,

20 but --

21     THE COURT:  You are a teacher's aide?  So the classes

22 would go on even if you were not present?

23     THE JUROR:  Yes.

24     THE COURT:  Would your absence from work cause you any

25 economic hardship that you think would distract you?

1        THE JUROR:  Probably.  I have a daughter in college and
2   all of that.
3        THE COURT:  All right.  And are you telling me that you
4   would -- your employer would not pay you?
5        THE JUROR:  I'm not sure how they handle this.  I'm not
6   sure.
7        THE COURT:  I see that your uncle is a police officer
8   in Puerto Rico?
9        THE JUROR:  Yes.
10       THE COURT:  Do you believe -- well, would your
11  relationship with your uncle cause to you favor one side
12  over the other in this case?
13       THE JUROR:  I don't think so.
14       THE COURT:  Would you tend to believe the testimony of
15  a police officer over other witnesses?
16       THE JUROR:  Not necessarily, I need to listen to both
17  sides.
18       THE COURT:  All right.  Have you or any member of your
19  family ever been the victim of a crime of violence?
20       THE JUROR:  No.
21       THE COURT:  I know we already talked about your uncle
22  in Puerto Rico, was there any other question you responded
23  to?
24       THE JUROR:  No.
25       THE COURT:  All right.  There may be evidence in this

1    case that one of the defendants, Mr. Hall, had some

2    affiliation with the Hells Angels Motorcycle Club and that

3    this defendant, Mr. Chalue, had some affiliation with an

4    organization known as the Aryan Brotherhood.

5        Would that evidence interfere with your ability to

6    remain a fair and impartial juror?

7        THE JUROR:  No.

8        THE COURT:  Robert Chadwell, one of the victims in this

9    case, was African American.  The defendant, Mr. Chalue, is

10   Caucasian.  Would those facts interfere with your ability to

11   be fair and impartial?

12       THE JUROR:  No.

13       THE COURT:  Mr. Chalue has a right to remain silent.

14   If he chooses to exercise that right and does not testify in

15   this trial, would you hold that against him in any way?

16       THE JUROR:  No.

17       THE COURT:  There may be evidence in this case that the

18   bodies of the victims were dismembered and the jury may see

19   photographs that are graphic in nature.  If you were to hear

20   and see such evidence, would that prevent you from acting as

21   a fair and impartial juror?

22       THE JUROR:  I don't think so.

23       THE COURT:  All right.  Is there any other reason why

24   you would not be fair and impartial if you were selected --

25   whether I asked about it or not?

1      THE JUROR:  No, I don't think so.

2      THE COURT:  All right.  All right.  I'm going to ask

3   you to stand in the hallway for just a moment.

4      THE JUROR:  Sure.

5      (The juror exited.)

6      THE COURT:  I find her indifferent.

7      MR. CAPELESS:  The Commonwealth is content with this

8   juror, Your Honor.

9      MR. FRANK:  Judge, it may be that the day is getting

10   late.  I didn't hear any questions regarding the restraining

11   order and the serving as a juror.

12      THE COURT:  All right.  You are correct.  I failed to

13   ask those questions.  Before I bring her back in, is there

14   anything else you would like me to ask her?

15      MR. FRANK:  The other problem is I don't recall if she

16   would believe the testimony of a police officer.

17      THE COURT:  I did ask that.

18      MR. FRANK:  Okay.

19      (The juror entered.)

20      THE COURT:  Ms. Monserrat, I'm sorry, but I neglected

21   to ask you a couple of questions from your biographical form

22   on which you disclose that you served as a juror once

23   previously.

24      THE JUROR:  It was in the federal court.

25      THE COURT:  In federal court?

1    THE JUROR:  Yes.

2    THE COURT:  Here in Springfield?

3    THE JUROR:  Yes.

4    THE COURT:  Was it a criminal case?  Was the person

5  charged with a crime, do you know?

6    THE JUROR:  Yes, it was, but it wasn't like murder or

7  anything like that.  It was something different.

8    THE COURT:  And did the jury reach a verdict in that

9  case?

10    THE JUROR:  Yes.

11    THE COURT:  What was the verdict?

12    THE JUROR:  It was guilty.

13    THE COURT:  All right.  Was there anything about that

14  experience that you think might affect your ability to be a

15  fair juror in this case?

16    THE JUROR:  I don't think so.  It was something

17  completely different.

18    THE COURT:  All right.  You also made reference to a

19  restraining order.  Was that a restraining order you sought

20  against someone else?

21    THE JUROR:  My ex-husband.

22    THE COURT:  Was the restraining order issued?

23    THE JUROR:  Yes.

24    THE COURT:  Was there anything about that experience

25  with the court system that you think might affect your

1   ability to be a fair and impartial juror?

2        THE JUROR:  No.

3        THE COURT:  Thank you.  I'm going to ask you to step

4   out one more time.

5        (The juror exited.)

6        THE COURT:  Again, I find her indifferent.

7        MR. CAPELESS:  The Commonwealth remains content with

8   this jurors, Your Honor.

9        THE COURT:  Thank you.  Mr. Frank?

10       MR. FRANK:  We'd exercise a preemptory, Your Honor.

11       THE COURT:  All right.  Very well.

12       (The juror entered.)

13       THE COURT:  Ms. Monserrat, thank you for your service.

14   You are excused.

15       THE JUROR:  Okay.  Thank you.

16       (The juror exited.)

17       THE COURT:  Mr. Curtis, I take it we have no more

18   jurors?

19       COURT OFFICER:  There's no more jurors today, Your

20   Honor.

21       THE COURT:  Ms. Capeless, we now have ten; is that

22   correct?

23       THE CLERK:  That's correct, Your Honor.

24       THE COURT:  All right.  Let's revisit this issue of the

25   schedule of the case later this week.

1          I'm of two minds, actually.  I'm sympathetic with the

2     fact that many people involved in the case would like to

3     attend the service.  However, I'm also mindful in a case of

4     four week's duration it's important to push forward if at

5     all possible.  So what I'm inclined to suggest,

6     Mr. Capeless, is that we go forward with aspects of the case

7     that are ready to go, which would obviously include my

8     precharge, opening statements and whatever evidence you're

9     able to put on.

10         Is there a reason not to proceed in that fashion?

11         MR. CAPELESS:  Yes, because of the family.  As opposed

12    to, you know, witnesses who might be family members or

13    friends who would be attending the service, the family

14    members would not be able to attend the opening of the trial

15    and that is my concern.

16         THE COURT:  All right.  I am sympathetic to that.  My

17    recollection is, and I may be wrong about this, but my

18    recollection is that those family members did not attend the

19    entirety of the last trial; is that correct?

20         MR. CAPELESS:  They were here pretty much every day.

21         THE COURT:  All right.  I stand corrected.

22         MR. CAPELESS:  They were here for a lot of it.  I can't

23    say every day, a lot.

24         THE COURT:  But you're communicating to me it is their

25    desire to be here for the opening statements and the initial

1    presentation?

2         MR. CAPELESS:  That is, Your Honor.

3         THE COURT:  Mr. Frank, do you wish to be heard on what

4    is Mr. Capeless' motion to continue the trial for a day so

5    that the evidence could start on Friday?

6         MR. FRANK:  Judge, my client is very anxious to get

7    this moving and we would like to move forward as

8    expeditiously as possible.

9         THE COURT:  Despite the fact that you today moved to

10   continue the entire trial?

11        MR. FRANK:  For the absence of -- because I don't have

12   certain evidence, Your Honor, not because my client's family

13   can't make it, et cetera.

14        THE COURT:  I think that the motion to continue, which

15   I denied, does undercut to some extent the concern that you

16   expressed over a one-day delay, so I'm going to, given the

17   unexpected nature of the memorial service and funeral, and

18   the desire of the family members who would like to be here

19   for the beginning of the trial, I'm going to allow the

20   Commonwealth's request for what is a temporary delay which

21   will mean, of course, Mr. Curtis that we're going to have to

22   contact those witnesses -- I'm sorry, those jurors who have

23   been selected, to inform them that their obligation now is

24   to return on Friday morning at 9:30, rather than Thursday.

25        Anything else that we can take up today?

1      I do anticipate that we should complete the jury
2  selection process tomorrow, Mr. Capeless.
3      Any logistical concerns or other matter that you think
4  we should address today?
5      MR. CAPELESS:  I would just inform the Court that I
6  filed with the Clerk today, this afternoon at two o'clock, a
7  memorandum regarding -- it would be, basically, in the form
8  of say a motion in limine regarding statements of the
9  defendant.  Commonwealth is intending to offer them in its
10 case in chief from the previous hearing.
11     I obviously don't intend to argue it now, counsel had
12 just been given a copy of it.  I just want to let the Court
13 be aware of it.
14     THE COURT:  I have it before me.  I have not read it,
15 but what I understand is that it refers to alleged
16 statements by the defendant that would be offered through
17 cooperating witnesses Letalien and Cashman?
18     MR. CAPELESS:  No, Your Honor, this relates to his
19 testimony -- the defendant's testimony at the pretrial
20 hearing regarding the searches of the cells in which he
21 testified that, on cross-examination, that he had made the
22 notes that were on the so-called novel, that various notes,
23 specifically the notes about the rats, and that he wrote the
24 kite.  And that the Commonwealth would intend to introduce
25 that in its case in chief.

1        THE COURT:  Well, I am at somewhat of a disadvantage

2   not having read it.  In what format -- as I'm thinking out

3   loud now -- in what format would you be offering those

4   statements?  In other words, through what witness or what

5   vehicle would you communicate that to the jury?

6        MR. CAPELESS:  A witness who was present in the

7   courtroom and heard them.

8        THE COURT:  All right.  And have you selected that

9   witness as of yet?

10       MR. CAPELESS:  Yes.

11       THE COURT:  And that would be?

12       MR. CAPELESS:  That would be Investigator Briggs.

13       THE COURT:  All right.

14       MR. CAPELESS:  Or it could be Lieutenant Foley for

15   that.  Lieutenant Foley was sequestered for that.

16       THE COURT:  I'm on notice.  Mr. Frank is on notice.

17   And we will deal with this at appropriate time.

18       Mr. Frank, anything on behalf of the defendant?

19       MR. FRANK:  Yes, Judge.  There are several -- there are

20   several ex parte motions.

21       THE COURT:  I will act on those.

22       I think there was a typographical error in one, the

23   number was 500, but it contained a comma between the five

24   and the zero, which led me to believe you meant to

25   communicate 5,000.

1        MR. FRANK:  Is that on the investigator?

2        THE COURT:  Yes.

3        MR. FRANK:  That is 5,000.  Thank you.

4        And, by the way, on the other fee motion I asked for

5   750 and 500 will take care of that.

6        I think we have actually spoken to that.

7        THE COURT:  I will act on those this afternoon.

8        MR. FRANK:  Thank you.

9        And there is a second motion, Your Honor, which we

10   discussed briefly at the beginning of the day regarding

11   obtaining information from state actors, at this point from

12   state actors in regards to the polygraph test.

13        THE COURT:  All right.  Well, we have a minute, what I

14   understood the request to be, was for discovery of any

15   statements of Mr. Chalue's in the possession of the

16   Commonwealth related to the administration of the polygraph

17   examination; is that correct?

18        MR. FRANK:  Mr. Cashman, but yes.

19        THE COURT:  All right.

20        MR. FRANK:  You said Mr. Chalue.  It's Mr. Cashman.

21        THE COURT:  I meant Mr. Cashman, I'm sorry.

22        MR. FRANK:  I understand.

23        THE COURT:  Are there any such statements,

24   Mr. Capeless?

25        MR. CAPELESS:  There are are no such statements that we

1  are in possession of.

2      As I read the motion, the defendant is asking the

3  Commonwealth to create reports or statements, which I don't

4  think that, quite frankly, the Court has the authority to

5  order it to do.  If we have them, I would turn them over.

6  Any statements that we have, I will turn over.

7      THE COURT:  And of course, obviously --

8      MR. CAPELESS:  Or reports relating to statements.

9      THE COURT:  And, of course, the Commonwealth has a

10  continuing duty to disclose any exculpatory information or

11  other impeachment information.

12      I'm not inclined, and I don't think I ever have

13  required the Commonwealth to produce reports that are not

14  pre-existing.

15      Mr. Frank, do you wish to be heard further?

16      MR. FRANK:  Yes.  In support of the motion, Your Honor,

17  I've attached a polygraph exam, what the officer -- some

18  officer administering the test, I believe, states that there

19  is a concern that Mr. Cashman is -- I'm sorry.  I don't have

20  the exact language, but somehow going to sabotage or hurt --

21  help the defendant or something along those lines.

22      That indicates to me there has been some conversation

23  between an actor who knows enough about the case and I would

24  suggest that's only state actors or state agents who know

25  enough about the case to be concerned about Mr. Chalue.

1        And I would suggest also that if it's exculpatory, they
2   don't get around providing me a statement of that by saying
3   we have a written report.  If it's exculpatory and it causes
4   them to be concerned that Mr. Cashman is going to sabotage
5   the case, I'm entitled to have a report drafted, if that's
6   what it is.
7        THE COURT:  Well, I think that Mr. Capeless will agree
8   that if it was exculpatory he would have to communicate that
9   to you, whether it preexisted or not.
10       The motion is taken under advisement.
11       Anything else that we should take up today?
12       MR. FRANK:  That's what I have, Your Honor.  Thank you.
13       THE COURT:  All right.  See you tomorrow morning at
14  nine o'clock.
15       MR. FRANK:  Judge, I'm sorry, I know we're off record,
16  there is also motion regarding clothing allowance and --
17       THE COURT:  Among the motions I have?
18       MR. FRANK:  Among the motions and delivery of clothes.
19  I think I can do that through the state.
20       THE COURT:  All right.  Thank you.
21       MR. FRANK:  Thank you.
22       (The Court exited at 3:11 p.m.)
23       (* * * * *)
24
25

1        **C E R T I F I C A T I O N**

2        I, ALICIA CAYODE KYLES, REGISTERED PROFESSIONAL

3   REPORTER, REGISTERED MERIT REPORTER, OFFICIAL COURT

4   STENOGRAPHER, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE

5   AND ACCURATE TRANSCRIPT FROM THE RECORD OF THE COURT

6   PROCEEDINGS IN THE ABOVE ENTITLED MATTER.

7        I, ALICIA CAYODE KYLES, FURTHER CERTIFY THAT THE

8   FOREGOING IS IN COMPLIANCE WITH THE ADMINISTRATIVE OFFICE OF

9   THE TRIAL COURT DIRECTIVE ON TRANSCRIPT FORMAT, RESERVING MY

10  RIGHT TO PROVIDE AN ELECTRONIC COPY, WHEN REQUESTED, AT THE

11  COPY RATE AS PROVIDED BY THE STATUTE IN CHAPTER 221: SECTION

12  88, AS AMENDED.

13       I, ALICIA CAYODE KYLES, FURTHER CERTIFY THAT I NEITHER

14  AM COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE

15  PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN, AND

16  FURTHER THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED

17  IN THE OUTCOME OF THE ACTION.

18

19

20  ALICIA CAYODE KYLES, RPR, RMR, OCR

21  Dated:  December 15, 2014

22  50 State Street

23  Springfield, Massachusetts  01103

24  413-748-7624

25