Volume:  II
Pages:  1-206
Exhibits:  None

COMMONWEALTH OF MASSACHUSETTS
BERKSHIRE, SS                    SUPERIOR COURT DEPARTMENT
                                OF THE TRIAL COURT

*******************************
COMMONWEALTH OF MASSACHUSETTS

vs.                                      Docket No:
                                         2011-0140
DAVID T. CHALUE,
*******************************

     JURY TRIAL — IMPANELMENT CONTINUED
     BEFORE THE HONORABLE C. JEFFREY KINDER

**APPEARANCES:**
For the **Commonwealth:**
Berkshire County District Attorney's Office
7 North Street, P.O. Box 1969, Pittsfield, MA  01202
By:  DAVID F. CAPELESS, ASSISTANT DISTRICT ATTORNEY
     PAUL CACCAVIELLO, FIRST ASSISTANT DISTRICT ATTORNEY
     GREGORY BARRY, ASSISTANT DISTRICT ATTORNEY
     JOSEPH PIEROPAN, ASSISTANT DISTRICT ATTORNEY

For the Defendant **DAVID T. CHALUE (2011-0140):**
By:  DONALD W. FRANK, ESQUIRE, FRANK LAW OFFICES, 95 State
Street, Suite 918, Springfield, MA  01103
     BONNIE G. ALLEN, ESQUIRE, 39 Main Street, Suite 8,
Northampton, MA  01060
     and MEREDITH RYAN, ESQUIRE

                                 Hampden Superior Court
                                      50 State Street
                                 Springfield, Massachusetts
                                      April 23, 2014

                    ALICIA  CAYODE  KYLES
                    Official Court Stenographer
                    Registered Merit Reporter

1                          I N D E X

2    Impanelment - continued................................8

3

4

5

6

7

8

9

10   EXHIBITS                                      PAGE

11                   (No exhibits were marked.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (The Court entered at 9:13 a.m.)

2        (The defendant is not present)

3        THE COURT:  Counsel, good morning.

4        Mr. Capeless, I understand you had matters you wanted

5   to address?

6        MR. CAPELESS:  Yes, two things, Your Honor.

7        I have yet to receive any final report from two of the

8   defendant's named expert witnesses, the pathology expert or

9   the cell phone expert.  And I'd like the Court to set the

10  date of Friday that they -- that I receive it.

11       THE COURT:  All right.

12       Mr. Frank?

13       MR. FRANK:  Yes.  I have sent him a cell phone expert

14  report, and I'm not sure what exactly the problem is with

15  that.  And I have sent it to him.  Its's not that

16  complicated.  I sent him pictures and I --

17       THE COURT:  When you say you "sent it to him," you mean

18  to your expert?

19       MR. FRANK:  No, to Mr. Capeless.

20       THE COURT:  To Mr. Capeless.

21       MR. FRANK:  Yes.  And I am not exactly clear what the

22  problem is here.

23       THE COURT:  When did you send it?

24       MR. FRANK:  Didn't know this was going to be an issue.

25  I can't tell you the exact date.

1        (The Defendant entered.)

2        MR. FRANK:  I asked for it sometime ago, weeks ago, and

3   I sent it to him weeks ago.  I can't tell you the exact

4   date.  I'd have to be at my computer to get that.  But I

5   sent it to him via e-mail.  And recently, last week, I had

6   some additional pictures that my cell phone expert intends

7   to use.  I sent it to him.  That report is my cell phone

8   expert's final report.

9        So perhaps he can address that, and then I can address

10  it.  Again, I'm sorry.  I didn't know this was going to be

11  an issue.

12       And as I stated in my supplement -- or my statements to

13  the Court on Friday, having received the forensic and

14  anthropological pictures and color pictures related to the

15  autopsy on the 11th of this month, I sent them to my expert.

16  I think she -- I can't tell you exactly when they got there.

17  But off the top of my head, I can't tell you.  I can tell

18  you we sent them either Friday or Monday, and she was out of

19  town during the course of the week for at least part of the

20  week.

21       And as I said, I anticipate speaking to her today, and

22  she, hopefully, will start attending to and looking at those

23  pictures today and developing the report, hopefully, this

24  week.  I can't say that will happen.  She is going to be

25  examining it this week.  I will say she has already looked

1    at the case, so she's ahead of the game.  I anticipate that

2    she will be ready, but I can't say that I can give you a

3    report today.

4         The Commonwealth has had those pictures forever, and I

5    only learned of them on the -- when I went to the Boston

6    Medical Examiner's laboratory at the end of -- between

7    New Year's and Christmas of last year.

8         I asked for them.

9         THE COURT:  We don't need to re-trace the history.

10        Mr. Capeless, anything you wish to add?

11        MR. CAPELESS:  Yes.  I will just point out that the

12   cell phone report that I got some weeks ago states at the

13   end of it that it is not a complete report, and he intends

14   to supplement it.  If he is saying at this point it is

15   final, then okay.  And there will be nothing further.

16        THE COURT:  Bear with me for just a moment, please.

17        (Pause)

18        THE COURT:  I'm going to enter an order, Mr. Frank.

19   Any expert -- report of an expert that you intend to call be

20   provided to the Commonwealth by next Wednesday the 7th.  And

21   if there is any problem in complying with that, I expect you

22   will bring it to my attention sooner rather than later.

23        MR. FRANK:  Certainly.

24        If I could, Your Honor, along those lines as it applies

25   to all experts, I have yesterday received a report from the

1    DOC regarding Mr. Cashman.  I believe I'm still waiting for

2    the reports from DOC -- I'm -- excuse me -- mental health on

3    Mr. Cashman.  And there is some significant issues that have

4    been raised in that.  I am not asking for a continuance

5    based on that; but I made -- I may be consulting with a

6    medical expert on those.  And I hope to devote myself

7    tomorrow to do that.  But I am concerned that I will not be

8    able to come up with a report that fast.

9         THE COURT:  All right.  I am mindful, of course, that

10   its twenty after 9:00.  We have jurors waiting patiently.

11   These are matters we will likely have the time to address

12   later today.

13        MR. FRANK:  Certainly.

14        THE COURT:  Mr. Capeless, was there something else on

15   your agenda?

16        MR. CAPELESS:  To be very brief, just to clarify,

17   because you -- the decision we got today about request for

18   statements of Mr. Cashman.  In speaking with the officers,

19   apparently what he's referring to some statement about

20   officers having some concern about his reliability came up

21   during an interview with investigators on this case -- which

22   was recorded -- that he has; in which they explain to him,

23   we are asking these questions, we want to make sure that

24   you're not some sort of a plant here on behalf of the

25   defendant, trying to act like you are coming forward to us.

1   And he has that.

2        And this was not part of the -- this was not some sort

3   of interview process for the witness protection program at

4   least as far as ID.

5        THE COURT:  That additional piece of information, does

6   not appear to me, that would modify the order I made

7   yesterday.

8        All right.  I will take a recess, and we'll bring the

9   jurors into the courtroom, and then we will reconvene for

10  purposes of jury selection.

11       (The Court exited at 9:21 a.m.)

12       (* * * * *)

13       (The Court entered at 9:29 a.m.)

14       (The defendant was present.)

15       (The venire was present.)

16       COURT OFFICER:  Hear ye, hear ye.  All persons having

17  anything to do before the Honorable Jeffrey Kinder, Justice

18  of the Superior Court, at the criminal session thereof, now

19  sitting at Springfield for the transaction of criminal

20  business within and for the County of Hampden, draw near,

21  give your attendance, and you shall be heard.

22       God save the Commonwealth of Massachusetts and this

23  Honorable Court.

24       This Court is now in session.

25       You may be seated.

1      THE COURT:  Good morning, ladies and gentlemen.

2      THE JURY:  Good morning.

3      THE COURT:  My name is Jeffrey Kinder.  I'm a Superior

4  Court Judge.  We have some formal business we need to attend

5  to immediately.

6      Ms. Capeless, you may proceed.

7      THE CLERK:  The Court will now continue the impanelment

8  process in a criminal case reached for trial, Commonwealth

9  vs. David T. Chalue, Indictments 2011-140, Counts 10, 11,

10  12, each of those indictments charging the defendant with

11  murder; Indictments 2011-140, Counts 13, 14, 15, each of

12  those indictments charging the defendant with kidnapping;

13  Indictments 2011-140, Counts 16, 17, and 18, each of those

14  indictments charging the defendant with intimidation of a

15  witness or other person.

16      Will all of the jurors please stand and raise your

17  right hands.

18      (The venire was sworn.)

19      THE COURT:  Ladies and gentlemen, I want to welcome you

20  to Courtroom Number Two in the Hampden County Hall of

21  Justice.  For some of you it is likely welcome back.

22      How many of you have been in the building before and

23  participated in the jury selection process?

24      (Pause)

25      THE COURT:  And of that number, how many of you have

1  actually been selected to sit on a jury in a different case

2  previously?

3      (Pause)

4      THE COURT:  And how many of you are here for the very

5  first time, having never participated in this process?

6      (Pause)

7      THE COURT:  For those of you in category three, if you

8  are anxious, having never done this before, you can relax.

9  As long as you can understand English, your life experience

10  and your common sense make you a perfect candidate to be a

11  juror.

12      If you have some emergency scheduling conflict that has

13  recently developed in your own personal life, you will have

14  an opportunity to bring that to my attention, and if you're

15  feeling just generally just inconvenienced by having to be

16  here today, that's not an uncommon reaction to receipt of

17  your summons.  But let me offer a different perspective and

18  ask you to keep this in mind.

19      There are, in our country, only two times when our

20  government calls upon its citizens to come forward and serve

21  in some affirmative capacity.  One is the military draft

22  which, as you know, does not now exist and has not existed

23  since the Vietnam conflict.

24      The only other time we are called upon by our

25  government to come forward and serve is jury service, and in

1  our Commonwealth, that happens once every three years, and

2  then only for one day or one trial, whichever is longer.

3      If you can take a step back from your own personal and

4  professional concerns and think about it from that

5  perspective, I suggest to you that it is a fairly small

6  sacrifice that we all make once every three years to ensure

7  that all of us are afforded the protection of the jury

8  system.

9      That protection has been in existence since our

10  Constitution in the Commonwealth of Massachusetts was

11  ratified well over 200 years ago, making it, by the way, the

12  oldest written Constitution in continuous effect in the

13  world, older even than our U.S. Constitution.  And in that

14  document, there is a provision that says that no person

15  shall be deprived of their liberty or their property but by

16  judgment of their peers.

17      Today, ladies and gentlemen, you are those peers, and

18  people just like you have been called into courthouses all

19  across the Commonwealth for well over 200 years for that

20  very purpose.

21      Now, I want to take a few minutes and explain to you

22  the process that we're going to follow and a little bit more

23  about the case.  I don't want there to be any mystery in the

24  jury selection process.  But before I even make that

25  explanation, let me introduce to you some of the important

1   people that will be assisting me throughout the trial and
2   jury selection process.

3        First, you have already heard from Debbie Capeless.
4   She is seated directly in front of me.  She is the elected
5   Clerk of the Superior Court in Berkshire County.

6        To her right, to your left, is Alicia Cayode Kyles.  As
7   you can see, she is the stenographer, which means she is
8   recording everything that I say, as I say it, by way of
9   keystroke, and she will continue to do that throughout the
10  jury selection and trial.

11       And you have already met some of the Court Officers.
12  Their job is, of course, security and decorum in the
13  courtroom.  But more importantly, during the jury selection
14  process, they will coordinate your movement within the
15  courtroom, so please pay close attention when they tell you
16  when and where to move.

17       Now, I am going to ask a series of questions to
18  everyone in the courtroom.  They are yes-or-no questions.
19  No verbal response is required.  Each of you has been given
20  a card, and on that card, there is a number.  And we're
21  going to use that card in this process in the following way:
22  If your answer to one of my questions is no, you do nothing.
23  If your answer to one of my questions is yes, then I want
24  you to raise your card high enough in the air so that the
25  Court Officers can see it, and hold it there until such time

1    as you hear them announce the number on your card to me, and

2    we will keep a record of it.

3         This is not a test.  There are no right or wrong

4    answers.  The questions are simply designed to determine

5    whether or not you have some personal life experience that

6    might in some way affect your ability to be a fair and

7    impartial juror in this case.

8         When I say hold it high enough so we can see it, I

9    don't mean like this (indicating) because often we can't see

10   beyond the person in front of you.  Hold it nice and high

11   until -- hold it until such time as you hear the number on

12   your card called out.

13        Now, let me give you an example.  In a few moments, I'm

14   going to introduce you to the lawyers who are going to be

15   participating in this trial, and its's important for them,

16   and for me, to know whether or not you know any of them.  So

17   one of the questions I will ask you in a few minutes is

18   whether or not you know any of the lawyers.  And if you do,

19   you will raise your card.  That doesn't necessarily mean you

20   are not a perfectly appropriate juror for this case.  It

21   just means that I need to inquire a little bit further.

22        I sometimes find in this process that jurors are

23   uncertain as to whether or not they should answer a

24   particular question yes or no.

25        Perhaps, for example, they recognize a name, but

they're not sure it's the person they know.  And in their
uncertainty, they choose not to raise their card only to
later determine that the bit of information they had would
have been important for me to know and for the attorneys to
know in the jury selection process.  I tell you that because
I want you to act in an abundance of caution and raise your
card even if you are uncertain so we can address whatever
your uncertainty is.  There is no penalty for bringing
something to our attention that later turns out to be
inconsequential in the jury selection process.

So that's going to be phase one, ladies and gentlemen,
phase one.  I'm going to ask those questions in open court.
Then there's going to be a second phase of the jury
selection process.  After I ask those first questions, I'm
going to take a very brief recess, and you are all going to
file out of the courtroom.  And then we're going to bring
you back into the courtroom, one at a time, and I'm going to
ask some follow-up questions that I have determined are more
appropriately asked in a private setting.

At the time I ask those questions, I also will have
with me the biographical form that each of you has filled
out, and it may be that there are some points on your
biographical form that will prompt another question from me.
For example, if you have previously served as a juror in a
different case, I may ask you about that case and whether or

1   not, ultimately, your prior jury service would have any

2   effect on your ability to act as a fair and impartial juror

3   in this case.

4        That, in the end, is the final question with each of

5   our additional areas of questioning.  That is would this

6   information -- whatever it might be -- have any bearing on

7   your ability to act fairly and impartially?

8        I will also ask you whether or not you responded to any

9   of my earlier questions, that is, the ones I'm about to ask

10   you here in open court.

11        We are not necessarily testing you to see if you can

12   remember which questions you responded to but if you do

13   remember them, it makes the process a little bit more

14   efficient.  So I will ask you did you respond to any of my

15   earlier questions by raising your card, so when you do that,

16   keep in mind what question you responded to.  It might make

17   things go more quickly.

18        Speaking of efficiency, this can be a tedious process,

19   especially when we remove you from the courtroom and begin

20   phase two.  I ask for your patience, and I apologize for any

21   lengthy delay that might occur.  It is an important process,

22   and I would ask you to be respectful of the process.

23        When you are outside of the courtroom, please don't

24   discuss any aspect of this case among yourselves.  You can

25   feel free to talk to each other about anything you would

 1    like except the one thing that brings you all here together,

 2    and that is this very case.  Please do not discuss it in any

 3    way.

 4         The other thing, ladies and gentlemen, I should tell

 5    you is that we are going to hand out to each of you a list

 6    of all the prospective witnesses -- that is, people that

 7    might be called to testify in this trial -- and you will

 8    have them with you to review before you come back into the

 9    courtroom.  And one of the first questions I will ask you is

10    whether or not you had a chance to review that list of

11    witnesses, and, if so, whether or not you recognized any

12    names on that witness list.

13         Now, again, the fact that you may know one of the

14    witnesses does not necessarily mean that you're not a

15    perfectly appropriate juror.  It just means I need to

16    inquire further into the nature of that relationship.

17         So we are about to begin phase one, ladies and

18    gentlemen, which, again, is that series of questions I will

19    ask to all of you.  They are yes-or-no questions.  Your

20    responsibility is to raise your card if and only if your

21    answer to my question is yes.  You do nothing more.  If your

22    answer is no, you do nothing at all.

23         But before I even ask you the questions, I want to give

24    you a brief synopsis of what this case is about because it's

25    important that you know this during the jury selection

1    process.

2           In this criminal case, the Commonwealth alleges that on

3    or about August 28, 2011, the defendant in this case, David

4    Chalue and two other men, Adam Hall and Caius Veiovis,

5    kidnapped and murdered David Glasser, Edward Frampton, and

6    Robert Chadwell in the area of Pittsfield, Massachusetts,

7    Berkshire County, by shooting and stabbing them.

8           It is further alleged that the bodies of Glasser,

9    Frampton, and Chadwell were buried in Becket, Massachusetts,

10   with the assistance of another individual, David Casey.

11          The Commonwealth alleges that these murders were

12   committed to eliminate Glasser, Frampton, and Chadwell as

13   witnesses against Mr. Hall.

14          It is important for you to understand and remember that

15   these charges, which Mr. Chalue denies, are mere

16   allegations.

17          Mr. Chalue is presumed to be innocent.  The

18   Commonwealth has the burden of proving his guilt beyond a

19   reasonable doubt.  Mr. Chalue has no obligation at all to

20   present any evidence in this case or to testify himself.

21          Now, let me turn, ladies and gentlemen, to those

22   questions.

23          I have forgotten to do something that I told you I was

24   about to do, that is, to introduce you to the lawyers who

25   will participate in this case.

1          So let me start with the representatives of the

2     Commonwealth of Massachusetts.  Mr. Capeless, could you

3     introduce yourself and your staff, please.

4          MR. CAPELESS:  Yes, Your Honor.  Thank you.

5          Ladies and gentlemen, good morning.

6          THE JURY:  Good morning.

7          MR. CAPELESS:  I am Berkshire District Attorney David

8     Capeless, and I will be prosecuting this case on behalf of

9     the Commonwealth.  And assisting me at prosecution, First

10    Assistant District Attorney Paul Caccaviello.

11         MR. CACCAVIELLO:  Good morning.

12         MR. CAPELESS:  And Assistant District Attorney Gregory

13    Barry.

14         MR. BARRY:  Good morning.

15         THE JURY:  Good morning.

16         THE COURT:  Mr. Frank, can you introduce yourself, your

17    client, and your colleagues, please.

18         MR. FRANK:  Thank you.

19         Good morning, ladies and gentlemen.  My name is

20    Attorney Donald Frank.  I have a private office in

21    Springfield, Massachusetts.

22         With me and assisting me is Attorney Bonnie Allen.

23         MS. ALLEN:  Good morning.

24         MR. FRANK:  Attorney Meredith Ryan.

25         MS. RYAN:  Good morning.

1        MR. FRANK:  And I represent David Chalue who is seated

2   at the far side.

3        THE DEFENDANT:  Good morning.

4        THE JURY:  Good morning.

5        THE COURT:  Ladies and gentlemen, I am now going to

6   begin to ask those questions.  Let me say for the third

7   time, your responsibility is to raise your card if and only

8   if your answer is yes.  Please listen carefully.

9        Do you know or are you related to the defendant David

10  Chalue or any member of his family?

11       (Pause)

12       COURT OFFICER:  Juror Number 50.

13       THE COURT:  Thank you.

14       Are you employed by or related to any member of the

15  Berkshire County District Attorney's Office?

16       (Pause)

17       THE COURT:  No cards have been raised.

18       Since we are in Hampden County, let me ask a related

19  question.  Are any of you or any member of your family

20  employed by the Hampden County District Attorney's Office?

21       (Pause)

22       THE COURT:  Again, one card has been raised.

23       COURT OFFICER:  Number 34, Your Honor.

24       THE COURT:  Have you or any close relatives or family

25  members been employed by any federal, state, or local law

1   enforcement agency?

2        COURT OFFICER:  Number 30, number 32, number 48, number

3   42, 26, 9, 69, 94, 90, 66, 73, and 54, Your Honor.

4        Number 23, Your Honor.

5        THE COURT:  Thank you.

6        COURT OFFICER:  Jurors number 65, 92, 79, 87, 81, 50,

7   49, 37, 12, 14, 7, and 1.

8        THE COURT:  Would you tend to believe or disbelieve the

9   testimony of a police officer as opposed to the testimony of

10  any other witness simply because that witness is employed as

11  a police officer?

12       (Pause)

13       COURT OFFICER:  Number 48, number 54, number 90, number

14  69, number 61, Your Honor.

15       THE COURT:  Thank you.

16       Do you know or are you related to any of the court

17  personnel, any of the attorneys involved in this case, or

18  anyone associated with any of the attorneys?

19       (Pause)

20       COURT OFFICER:  Number 48, Your Honor.

21       COURT OFFICER:  Number 18.

22       THE COURT:  Thank you.

23       COURT OFFICER:  Number 77 as well, Your Honor.

24       THE COURT:  Thank you.

25       The alleged victims in this case are David Glasser,

1   Edward Frampton, and Robert Chadwell.

2      Do any of you know those individuals or any member of

3   their families?

4      (Pause)

5      THE COURT:  No cards have been raised in response to

6   that question.

7      Do you have any interest or stake whatsoever in this

8   case or its outcome?

9      (Pause)

10      THE COURT:  No cards have been raised.

11      Have you expressed or formed any opinion or judgment in

12   this case?

13      (Pause)

14      THE COURT:  No cards have been raised.

15      Are you aware of any bias or prejudice that you have

16   either for or against the Commonwealth or the defendant?

17      (Pause)

18      COURT OFFICER:  Juror number 92.

19      THE COURT:  Thank you.

20      COURT OFFICER:  Also I have juror number 50, Your

21   Honor.

22      THE COURT:  Thank you.

23      Have you read, seen, or heard anything about this case

24   in the newspapers, radio, television, Internet, or elsewhere

25   or have you discussed it with anyone?

1          (Pause)

2          COURT OFFICER:  Number 20, number 24, 23, 47, 34, 48,

3     30, 32, 90, 94, 77, 88, 63, 69, 59, 57, and 73, Your Honor.

4          COURT OFFICER:  Juror number 65, 92, 67, 93, 70, 52,

5     80, 28, 81, 78, 79, 45, 50, 49, 2, 12, 14, 3, 18, 19, 15, 7,

6     and 1.

7          THE COURT:  Thank you.

8          Is there any reason such as physical problems, language

9     difficulties, religious beliefs, hearing impairment, medical

10    problems, or the like that might prevent you from sitting as

11    a juror in this case?

12         (Pause)

13         COURT OFFICER:  42, 24, 47, and 57, Your Honor.

14         COURT OFFICER:  Jurors number 70, 82, 91, 40, 7, and 1.

15         THE COURT:  Thank you.

16         Ladies and gentlemen, there are certain fundamental

17    constitutional principles that govern this and every other

18    criminal case.  Some of them I have already alluded to.  I

19    want to repeat them, and then ask you a question about them.

20    They are important.  Please listen carefully.

21         The defendant Mr. Chalue is presumed to be innocent of

22    the charges, and he remains innocent unless and until he is

23    proven guilty by the Commonwealth.  The Commonwealth has the

24    burden of proving his guilt beyond a reasonable doubt.  A

25    failure to meet that burden of proof must result in a

1    finding of not guilty.  The defendant is not required to

2    present any evidence, nor is he required in any way to

3    testify himself in this case.

4         If any prospective juror has any difficulty at all in

5    understanding and accepting any of these principles, please

6    raise your card.

7         (Pause)

8         THE COURT:  No cards have been raised in response to

9    that question.

10        Ladies and gentlemen, I am sure that you are all

11   wondering how much time this case would take, and I'm going

12   to tell you that when I bring you back into the courtroom

13   one at a time, and I'm going to ask you whether or not the

14   duration of the trial would pose a substantial hardship for

15   any of you.

16        And you should know that by "substantial hardship," I

17   mean something other than a personal or professional

18   inconvenience which I assume all of you are enduring to some

19   degree simply by having to be here.  I understand that.  We

20   all understand it, and we appreciate it.  There is a

21   difference, however, between an inconvenience and a

22   substantial hardship.

23        So I have now asked those initial questions.  The

24   second phase will be to remove you from the courtroom and

25   bring you back into the courtroom one at a time.  Please

1    bear in mind those things that I will be asking you about.

2    That is, first, whether or not you have read the list of

3    potential witnesses; second, whether or not you answered any

4    of my earlier questions, and then I will have some

5    individual questions for each of you.

6         Please be patient with the process as we will do this

7    as efficiently as I can.

8         I am now in recess.

9         (The Court recessed at 9:52 a.m.)

10        (* * * * *)

11        (The Court entered at 10:00 a.m.)

12        (The defendant was present.)

13        THE COURT:  Mr. Frank, I understand you have an issue

14   you want to discuss.

15        MR. FRANK:  Yes, Judge, with one of the jurors we

16   noticed a copy of the *Republican* in his hands, and it's now

17   in the jury room.  There is a large article in Masslive.  I

18   don't know where it is in the paper, the printed paper,

19   titled, by the way, Aryan Brotherhood something, something,

20   something.

21        My concern is, first of all, I would like to remove

22   that newspaper from that jury room before it gets passed

23   around.  And I think inquiry is going to need to be made as

24   I recall it from the Masslive.

25        THE COURT:  Here's how I will deal with that.

1          First of all, I think it is appropriate we remove any

2    of today's newspapers from the jury room.

3          Second, I think you're mistaken about the headline, at

4    least in the print version.  It does not mention -- at least

5    based on my recollection -- any association with the Aryan

6    Brotherhood.

7          But in any event, what I will do is ask a question of

8    each juror individually whether or not they have seen or

9    heard any media reports or discussed it with anyone, either

10   previously or during the time that they've been waiting to

11   come into the courtroom.

12        MR. FRANK:  And one other additional matter is I

13   noticed today there were a lot of hands on that question

14   regarding somebody who knows something about -- that

15   question.  I assume that relates to media, and we will be

16   inquiring further.

17        I think it will be, also, appropriate during individual

18   voir dire to determine what information they have learned

19   from the print media versus a more generalized question.  I

20   think yesterday's questions didn't deal with that question

21   directly as to what information they have obtained from the

22   media.

23        THE COURT:  I'm not sure I agree with that assessment

24   necessarily, but I will try to deal with that in a thorough

25   fashion, one by one.

1              MR. FRANK:  Thank you.

2              THE COURT:  You can bring the first juror in, please.

3              (Pause)

4              VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 1

5              COURT OFFICER:  Juror Number 1, Mr. Keeley, good

6       morning.

7              THE JUROR:  Good morning.

8              THE COURT:  Did you get a chance to look at that list

9       of witnesses?

10             THE JUROR:  I did.

11             THE COURT:  Did you recognize any names?

12             THE JUROR:  I did, from the state trooper list, sir.

13             THE COURT:  More than one?

14             THE JUROR:  Just one, sir.

15             THE COURT:  Who is that?

16             THE JUROR:  I believe I know Trooper Christopher

17      Donahue.

18             THE COURT:  And in what capacity do you know

19      Mr. Donahue?

20             THE JUROR:  If it's the one I believe it is, we grew

21      up -- when I was a kid, he lived next door, and I was --

22             THE COURT:  That is Chris Donahue, a state trooper, to

23      your knowledge?

24             THE JUROR:  I assume, yes.

25             THE COURT:  And let's assume that witness actually

1    testifies, based on your prior knowledge and relationship

2    with that person, would you tend to place that witness on a

3    different level than other witnesses that might testify in

4    the case?

5         THE JUROR:  Yes, sir.

6         THE COURT:  You are excused.

7         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 2

8         COURT OFFICER:  Juror Number 2.

9         THE COURT:  Good morning.  Is it Ms. Verteramo?

10         THE JUROR:  Yes.

11         THE COURT:  Ms. Verteramo, did you get a chance to look

12    at that list of witnesses?

13         THE JUROR:  Yes.

14         THE COURT:  Did you recognize any names?

15         THE JUROR:  No.

16         THE COURT:  We anticipate the trial of this case will

17    last four weeks, proceeding most days from 9:30 in the

18    morning until 4:00 in the afternoon.  Bearing in mind that

19    schedule, the importance of this case, and our need for good

20    jurors like you, are you available to assist us?

21         THE JUROR:  I am a student in college.  I do have

22    classes Tuesdays to Thursdays.

23         THE COURT:  Where do you attend college?

24         THE JUROR:  STCC right now.

25         THE COURT:  And are you near the end of the semester?

1       THE JUROR:  Yes.  I get out May 8 -- May 8.

2       THE COURT:  You still have classes and finals

3   remaining?

4       THE JUROR:  (Indicating)

5       THE COURT:  You have to say yes or no.

6       THE JUROR:  Yes.  Sorry.

7       THE COURT:  And would it be a hardship for you to miss

8   those classes?

9       THE JUROR:  Yes.

10      THE COURT:  You are excused.

11      THE JUROR:  Thank you.

12      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 3

13      COURT OFFICER:  Juror Number 3.

14      THE COURT:  Ms. Decaro, good morning.

15      THE JUROR:  Good morning.

16      THE COURT:  Did you get a chance to look at that list

17  of witnesses?

18      THE JUROR:  Yes, I did.

19      THE COURT:  Did you recognize any names?

20      THE JUROR:  No.

21      THE COURT:  We anticipate the trial of this case will

22  last four weeks, proceeding each day from 9:30 until 4:00.

23  Bearing in mind that schedule, the importance of this case,

24  and our need for good jurors like you, are you available to

25  help us?

1       THE JUROR:  Well, I'm recovering from breaking both of

2   my legs.  I have good days and bad days.  Some days I don't

3   walk so good.

4       THE COURT:  As you might imagine, what -- most of what

5   will be required of you here is sitting.  Do you take pain

6   medication?

7       THE JUROR:  No, I will not.

8       THE COURT:  All right.  Is it -- are you uncomfortable

9   when you are sitting?

10      THE JUROR:  Yeah.  My legs get really stiff.

11      THE COURT:  If you are given an opportunity to get up

12  and move around from time to time, does that help?

13      THE JUROR:  A little bit.

14      THE COURT:  All right.  Is there any other reason other

15  than the concern you've already mentioned why you would be

16  unavailable to assist us?

17      THE JUROR:  The only other thing is I have -- is my

18  husband works out of state, and I have a small farm, and I'm

19  responsible to take care of all of the animals.

20      THE COURT:  All right.  So your husband works out of

21  state on a regular basis?

22      THE JUROR:  Yes.

23      THE COURT:  Would it be a hardship for you to have to

24  care for or find someone else to care for your animals?

25      THE JUROR:  I would have to find someone to take care

1    of them.

2        THE COURT:  And is that something you could do or would

3    that pose an economic hardship?

4        THE JUROR:  I would have to pay someone to come up and

5    take care of the farm.

6        THE COURT:  You are excused.

7        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 4

8        COURT OFFICER:  Juror Number 4.

9        THE COURT:  Mr. Hanifan, good morning.

10       THE JUROR:  Good morning.

11       THE COURT:  Let me ask, did you get a chance to look at

12   that list of witnesses?

13       THE JUROR:  I did.

14       THE COURT:  Did you recognize any names?

15       THE JUROR:  No.

16       THE COURT:  We anticipate the trial of this case will

17   last approximately four weeks, proceeding from 9:30 in the

18   morning until 4:00 each day.  Bearing in mind that schedule,

19   the importance of this case, and our need for good jurors

20   like you, are you available to help us?

21       THE JUROR:  Yes.

22       THE COURT:  Have you or any member of your family ever

23   been the victim of a crime of violence?

24       THE JUROR:  No.

25       THE COURT:  Did you raise your card in response to any

1  of my earlier questions?

2       THE JUROR:  No.

3       THE COURT:  You haven't seen or heard anything about

4  this case or discussed it with anyone?

5       THE JUROR:  No.

6       THE COURT:  How about during the time you were out

7  since you were last in the courtroom waiting, did you

8  discuss it with anyone or see any media reports?

9       THE JUROR:  No.

10      THE COURT:  There may be evidence in this case that one

11 of the co-defendants, Mr. Hall, had some affiliation with

12 the Hells Angels Motorcycle Club, and that this defendant,

13 Mr. Chalue, had some affiliation with the Aryan Brotherhood

14 organization.  If you were to hear such evidence, would that

15 evidence prevent you from acting fairly and impartially?

16      THE JUROR:  No.

17      THE COURT:  One of the victims in this case, Robert

18 Chadwell, was African American.  The defendant is Caucasian.

19 Would those facts prevent you from acting fairly and

20 impartially in this case?

21      THE JUROR:  No.

22      THE COURT:  The defendant has an absolute right to

23 remain silent.  If he exercises that right and does not

24 testify, would you hold that against him in any way?

25      THE JUROR:  No.

1        THE COURT:  There may be evidence in this case that the

2   bodies of the victims were dismembered, and the jury may be

3   exposed to graphic photographs regarding that evidence.  If

4   you were to see or hear such evidence, would that prevent

5   you from acting as a fair and impartial juror?

6        THE JUROR:  No.

7        THE COURT:  Can you think of any other reason, whether

8   I have asked about it or not, why you would not be fair and

9   impartial if selected?

10        THE JUROR:  No.

11        THE COURT:  All right.  If I could ask you just to step

12   out in the hallway, Mr. Hanifan, for just a minute.

13        THE JUROR:  Okay.

14        (The juror exited.)

15        THE COURT:  Find him indifferent.

16        MR. CAPELESS:  The Commonwealth challenges this juror,

17   Your Honor.

18        THE COURT:  Very well.

19        Mr. Hanifan, thank you for your service.

20        You have been excused.

21        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 6

22        COURT OFFICER:  Juror Number 6.

23        THE COURT:  Mr. Velez, good morning.

24        THE JUROR:  Good morning.

25        THE COURT:  Did you get a chance to look at that list

1    of witnesses?

2          THE JUROR:  Yes.

3          THE COURT:  Did you recognize any names?

4          THE JUROR:  No.

5          THE COURT:  We anticipate the trial of this case will

6    last approximately four weeks, proceeding each day from 9:30

7    until 4:00.  Bearing in mind that schedule, the importance

8    of this case, and our need for good jurors like you, are you

9    available to help us?

10         THE JUROR:  Four weeks?

11         THE COURT:  Four weeks, roughly.

12         THE JUROR:  No.

13         THE COURT:  Why is that?

14         THE JUROR:  Work.

15         THE COURT:  All right.  As I'm sure you can imagine,

16   most of the people sitting here today have some employment.

17   Is there something in particular about your work that would

18   pose a substantial hardship for you if you had to miss it?

19         THE JUROR:  Not that I know of.

20         THE COURT:  Would there be an economic hardship for

21   you?

22         THE JUROR:  Yes.

23         THE COURT:  There would be?

24         THE JUROR:  Yes.

25         THE COURT:  Are you telling me your employer, Smith and

1    Wesson, would not pay you?

2        THE JUROR:  I'm not sure.

3        THE COURT:  You don't know?

4        THE JUROR:  No.

5        THE COURT:  You're excused.

6        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 7

7        COURT OFFICER:  Juror Number 7.

8        THE COURT:  Ms. Burroughs?

9        THE JUROR:  Yes.

10       THE COURT:  Good morning.

11       THE JUROR:  Good morning.

12       THE COURT:  Did you get a chance to look at that list

13   of witnesses?

14       THE JUROR:  Yes, I did.

15       THE COURT:  Did you recognize any names?

16       THE JUROR:  No.

17       THE COURT:  We anticipate this case will last

18   approximately four weeks, proceeding each day from 9:30

19   until 4:00 in the afternoon.  Bearing in mind that schedule,

20   the importance of this case, and our need for good jurors

21   like you, are you available to help us?

22       THE JUROR:  That depends.  I'm a diabetic, and since

23   I've retired, I've had several reactions because I take the

24   insulin in the morning.  If I'm going to be sitting here,

25   like, every two or three hours I would have to have some

1   juice and stuff like that.  That makes a long day for me.

2   THE COURT:  I understand.  Well, let me tell you this:

3   We take a break every hour and a half or two hours.

4   THE JUROR:  Okay.

5   THE COURT:  With that understanding, do you think you

6   your diabetes could be kept under control?

7   THE JUROR:  Yes, sure.

8   THE COURT:  All right.  Let me ask you this:  Have you

9   or any member of your family ever been the victim of a crime

10  of violence?

11  THE JUROR:  No.

12  THE COURT:  Did you respond to any of my earlier

13  questions by raising your card?

14  THE JUROR:  Yes, I did.

15  THE COURT:  I see that you have a niece that is a

16  police officer and a brother-in-law that is a police

17  officer?

18  THE JUROR:  Right.

19  THE COURT:  All right.  Is there anything about your

20  relationships with those individuals and their lines of work

21  that you think could impact your ability to act as a fair

22  and impartial juror?

23  THE JUROR:  To be honest, I don't know if I will be a

24  fair and impartial juror.

25  THE COURT:  Why is that?

 1           THE JUROR:  I -- because I live with my niece, and I

 2   know her, and I kind of lean towards what the police have to

 3   say.

 4           THE COURT:  Thank you for your honesty.

 5           You are excused.

 6           VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 8

 7           COURT OFFICER:  Juror Number 8.

 8           THE COURT:  Good morning, ma'am.  Is it Ms. Gamidov?

 9           THE JUROR:  Gamidov.

10           THE COURT:  Did you get a chance to look at that list

11   of witnesses?

12           THE JUROR:  Yes.

13           THE COURT:  Did you recognize any names?

14           THE JUROR:  No.

15           THE COURT:  All right.  We anticipate the trial of this

16   case will last four weeks, proceeding from 9:30 each morning

17   until 4:00 in the afternoon.  Bearing in mind that schedule,

18   the importance of this case, and our need for good jurors

19   like you, are you available to help us?

20           THE JUROR:  From 9:30 to 4:00?

21           THE COURT:  Correct.

22           THE JUROR:  Every day?

23           THE COURT:  Every day, Monday through Friday.

24           THE JUROR:  For four weeks?

25           THE COURT:  For four weeks.

1          THE JUROR:  Gosh, that's a long time.

2          THE COURT:  The question again is --

3          THE JUROR:  What if something happens during that time:

4    I wouldn't be able to show up for a day.

5          THE COURT:  Well, that would be a problem.

6          THE JUROR:  So I would have to be here every day?

7          THE COURT:  Monday through Friday from 9:30 until 4:00.

8          THE JUROR:  No wonder this process takes forever.

9          THE COURT:  You're making me nervous by moving around.

10   Can you stand in one place?

11         THE JUROR:  I'm sorry.

12         THE COURT:  Thank you.

13         THE JUROR:  Yeah, I think I can do that.

14         THE COURT:  Very good.

15         Have you or any member of your family been the victim

16   of a crime of violence?

17         THE JUROR:  No.

18         THE COURT:  Did you raise your hand in response to any

19   of my earlier questions?

20         THE JUROR:  No.

21         THE COURT:  There may be evidence in this case that one

22   of the co-defendants, Mr. Hall, had some affiliation with

23   the Hells Angels Motorcycle Club and that this defendant,

24   Mr. Chalue, had some affiliation with the Aryan Brotherhood.

25         If you were to hear such evidence, would that prevent

1    you from acting fairly and impartially?

2         THE JUROR:  No.

3         THE COURT:  The -- one of the victims in this case,

4    Robert Chadwell, was African American.  The defendant is

5    Caucasian.  Would those facts prevent you from acting fairly

6    and impartially?

7         THE JUROR:  No.

8         THE COURT:  Mr. Chalue has a right to remain silent in

9    this trial.  If he exercises that right and does not

10   testify, would you hold that against him?

11        THE JUROR:  No.

12        THE COURT:  The evidence in this case may include some

13   photographs and other testimony regarding the dismemberment

14   of the bodies of the victims.  If you were to hear and see

15   such evidence, would that prevent you from acting fairly and

16   impartially?

17        THE JUROR:  No.

18        THE COURT:  Can you think of any reason, whether I have

19   asked about it or not, you would not be a fair and impartial

20   juror?

21        THE JUROR:  Not that I can think of.

22        THE COURT:  And you haven't heard or seen anything in

23   the media about this case either before today or during the

24   time that you've been waiting; is that correct?

25        THE JUROR:  I haven't heard anything.

1      THE COURT:  Have you discussed it with anyone?

2      THE JUROR:  No.

3      THE COURT:  All right.  If you could step out in the

4  hallway for just a minute, please.

5      (The juror exited.)

6      THE COURT:  I find her indifferent.

7      MR. CAPELESS:  Judge, on her form, she indicates she is

8  presently attending STCC, and I would ask the Court to

9  inquire about that.  I was expecting she was going to bring

10  that up at the very beginning when she was concerned about

11  the time commitment.

12      THE COURT:  All right.  I will inquire.

13      MR. FRANK:  Judge, before she comes out --

14      THE COURT:  Yes.

15      MR. FRANK:  -- if I may, I thought you were also going

16  to be asking the question regarding tendency to believe an

17  officer over a civilian.  I don't believe you did that.

18      THE COURT:  I did ask that question initially, and I

19  did ask her whether she responded to any of my questions by

20  raising her card, which I'm not inclined to repeat with

21  every witness the way I did yesterday based on your concern

22  without some reason to believe that people inaccurately

23  answered that question when I asked the group.

24      MR. FRANK:  I would say that I believe it was the last

25  witness (sic) who did not raise her hand to that question

1   when asked generally about that and I think she did state

2   that because that person knew an officer, she had a tendency

3   to believe the officer more than another person is another

4   example of that tendency.  It's worth asking.

5       THE COURT:  All right.  I will ask the question.

6       MR. FRANK:  Thank you.

7       (The juror entered.)

8       THE COURT:  Ms. Gamidov, I see from your biographical

9   form, you are an STCC student currently?

10      THE JUROR:  Yes.

11      THE COURT:  Are you missing classes today?

12      THE JUROR:  Yeah, I'm missing my clinical hours.

13      THE COURT:  All right.  And you would miss classes also

14  for the four-week period?  Would you miss other classes?

15      THE JUROR:  I have until May 9 to finish up my clinical

16  hours, and then I graduate May 29.

17      THE COURT:  All right.  So you would be missing --

18  participation in this trial would interfere with your

19  academic schedule; is that right?

20      THE JUROR:  Oh, yeah it would.

21      THE COURT:  You're excused.

22      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 9

23      COURT OFFICER:  Juror Number 9.

24      THE COURT:  Is it Ms. Capeles?

25      THE JUROR:  Yes.

1      THE COURT:  Ms. Capeles, good morning.

2      THE JUROR:  Good morning.

3      THE COURT:  Did you recognize any of the names on that

4  witness list?

5      THE JUROR:  No.

6      THE COURT:  We anticipate the trial of this case will

7  last four weeks, proceeding each day from 9:30 until 4:00.

8  Bearing in mind that schedule, the importance of this case,

9  and our need for good jurors like you, are you available to

10  help us?

11      THE JUROR:  I don't know if my employer would like me

12  to be off.

13      THE COURT:  You work for the Hampden County

14  Correctional Facility?

15      THE JUROR:  Yes.

16      THE COURT:  I'm sure they would make you available.

17      By the way, does your employment at the Hampden County

18  Correctional Facility -- do you think that would interfere

19  with your ability to act as a fair and impartial juror?

20      THE JUROR:  No.

21      THE COURT:  Did you respond to any of my earlier

22  questions by raising your card?

23      THE JUROR:  Yes.

24      THE COURT:  All right.  You recall which ones other

25  than the fact that you work at the jail?

1      THE JUROR:  I do not recall.

2      THE COURT:  All right.  Well, let me ask, do you

3   remember hearing or seeing anything about this case in the

4   media?

5      THE JUROR:  No.

6      THE COURT:  Have you discussed the case with anyone?

7      THE JUROR:  No.

8      THE COURT:  And have you seen or heard any media

9   reports or discussed it while you've been waiting to come in

10  here just now?

11     THE JUROR:  No.

12     THE COURT:  Ms. Capeless, do we have a list of what

13  other questions she might have responded to?

14     THE CLERK:  She only responded to the law enforcement

15  question.

16     THE COURT:  All right.  Thank you.

17     There may be need in this case, Ms. Capeles, that one

18  of the co-defendants, Adam Hall, was affiliated with the

19  Hells Angels Motorcycle Club and this defendant, Mr. Chalue,

20  was affiliated with the Aryan Brotherhood.  If you were to

21  hear such evidence, would that prevent you from acting as a

22  fair and impartial juror?

23     THE JUROR:  No.

24     THE COURT:  Robert Chadwell, one of the victims in this

25  case, was African American.  The defendant is Caucasian.

1    Would that evidence prevent you from acting fairly and

2    impartially?

3          THE JUROR:  No.

4          THE COURT:  Would you tend to believe the testimony of

5    a police officer over the testimony of any other witness

6    simply because he or she was a police officer?

7          THE JUROR:  No.

8          THE COURT:  There may be evidence in this case that the

9    victims' bodies were dismembered, and you might see evidence

10   in the form of photographs that might be considered graphic

11   in nature.  Would that kind of evidence prevent you from

12   acting fairly and impartially?

13         THE JUROR:  No.

14         THE COURT:  Can you think of any other reason, whether

15   I have asked about it or not, why you would not be fair if

16   selected as a juror in this case?

17         THE JUROR:  No.

18         THE COURT:  Thank you.  I'm going to ask you to step

19   out in the hallway.

20         (The juror exited.)

21         THE COURT:  I find her indifferent.

22         MR. CAPELESS:  The Commonwealth is content with this

23   juror, Your Honor.

24         MR. FRANK:  Judge, you didn't ask her the question of

25   the media.

1    THE COURT:  I did.

2    MR. FRANK:  Okay.  I am -- and the other thing is

3  Ms. Allen believes you didn't talk about whether she would

4  have a tendency to believe a police officer.

5    THE COURT:  I would ask both of you to pay a little

6  closer attention.  I asked both of those questions.  Her

7  answer to each was no.

8    Do you wish to exercise a challenge?

9    MR. FRANK:  I wish to also -- I would suggest this is a

10  cause issue, Your Honor, because my client is housed at the

11  Hampden County House of Correction where she is employed.

12  He is under a lot of security there.  He's in seg.  I think

13  it is likely she will come across his name or him at some

14  point during the course of the next month, and I think that

15  that risk is too high.

16    THE COURT:  Your challenge for cause is denied.  She

17  has already said that she doesn't know your client nor has

18  she seen or heard anything about the case.

19    MR. FRANK:  We're going to have to peremptory, Your

20  Honor.

21    THE COURT:  Very well.

22    (The juror was present.)

23    THE COURT:  Ms. Capeles, thank you for your service,

24  you have been excused.

25    VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 10

1        COURT OFFICER:  Juror Number 10.

2        THE COURT:  Good morning, sir.  Is it Mr. Bertier?

3        THE JUROR:  Yes.

4        THE COURT:  Mr. Bertier, did you get a chance to look

5   at that list of witnesses?

6        THE JUROR:  Yes.

7        THE COURT:  Did you recognize any names?

8        THE JUROR:  No.

9        THE COURT:  We anticipate the trial of this case will

10  last approximately four weeks, proceeding from 9:30 in the

11  morning until 4:00 in the afternoon.  Bearing in mind that

12  schedule, the importance of this case, and our need for good

13  jurors like you, are you available to help us?

14       THE JUROR:  Yes.  I do work, though.

15       THE COURT:  Well, as I'm sure you can imagine, most of

16  the people in the building here in your circumstance are

17  employed?

18       THE JUROR:  Yes.

19       THE COURT:  And I guess my question is related to your

20  work, would your absence from work or is it such that it

21  would cause you a substantial hardship in your opinion?

22       THE JUROR:  Yes, but I could do it.

23       THE COURT:  You could do it?

24       THE JUROR:  Yes.

25       THE COURT:  Are you willing to do it?

1          THE JUROR:  Sure.

2          THE COURT:  Would your work obligations distract you in

3    any way if you were selected to sit as a juror?

4          THE JUROR:  No.

5          THE COURT:  All right.

6          Have you or any member of your family ever been the

7    victim of a crime of violence?

8          THE JUROR:  No.

9          THE COURT:  Did you raise your card earlier in response

10   to any of my questions to the entire group?

11         THE JUROR:  No.

12         THE COURT:  There may be evidence in this case that one

13   of the co-defendants, Mr. Hall, had some affiliation with

14   the Hells Angels Motorcycle Club, and that this defendant,

15   Mr. Chalue, had some affiliation with an organization known

16   as the Aryan Brotherhood.  If you were to hear that

17   evidence, would that interfere with your ability to be fair

18   and impartial?

19         THE JUROR:  I really don't know.

20         THE COURT:  It could?

21         THE JUROR:  It could.

22         THE COURT:  You are excused.

23         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 11

24         COURT OFFICER:  Juror Number 11.

25         THE COURT:  Good morning, sir.

1        THE JUROR:  Good morning.

2        THE COURT:  It's Mr. Phillips?

3        THE JUROR:  Yes.

4        THE COURT:  Mr. Phillips, did you recognize any of the

5    names on that witness list?

6        THE JUROR:  No, sir.

7        THE COURT:  Mr. Phillips, we anticipate this case will

8    last approximately four weeks, proceeding from 9:30 in the

9    morning until 4:00 in the afternoon.  Bearing in mind that

10   schedule, the importance of this case, and our need for good

11   jurors like you, are you available to help us?

12       THE JUROR:  Yes, I am.

13       THE COURT:  Have you or any member of your family ever

14   been the victim of a crime of violence?

15       THE JUROR:  No.

16       THE COURT:  Did you respond to any of my earlier

17   questions by raising your card?

18       THE JUROR:  No.

19       THE COURT:  I see that you are -- someone in your

20   family has had some prior experience with the criminal

21   justice system, having been arrested and charged.  Was that

22   you or someone else in your family?

23       THE JUROR:  Myself.

24       THE COURT:  Can you estimate for us approximately how

25   long ago it was?

1      THE JUROR:  It was about twenty-five years ago.

2      THE COURT:  All right.  Was it here in Springfield?

3      THE JUROR:  Yes.

4      THE COURT:  Was it -- and was there a criminal

5  prosecution in this building?

6      THE JUROR:  No.  It was in Westfield.

7      THE COURT:  All right.  And did it result in -- it did,

8  according to your form, result in conviction on the crimes

9  you have listed here?

10      THE JUROR:  Right.

11      THE COURT:  Was there anything about your experience

12  twenty-five years ago that you think might cause you to

13  favor one side over the other in this case or otherwise

14  interfere with your ability to be a fair juror?

15      THE JUROR:  No.

16      THE COURT:  There may be evidence in this case that

17  Mr. Hall, the defendant in this -- I'm sorry, Mr. Hall, the

18  co-defendant, had some affiliation with the Hells Angels

19  Motorcycle Club, and that Mr. Chalue had some affiliation

20  with the Aryan Brotherhood organization.  If you were to

21  hear such evidence, would that interfere with your ability

22  to act fairly and impartially?

23      THE JUROR:  No.

24      THE COURT:  Have you seen or heard anything about this

25  case?

1        THE JUROR:  Just on the news.

2        THE COURT:  On the news?  All right.

3        And how long ago was it that you saw or heard

4   something?

5        THE JUROR:  Last week.

6        THE COURT:  All right.  Was there anything about -- do

7   you recall what the content of the media report was that you

8   saw or heard?

9        THE JUROR:  No.  I wasn't really paying attention to

10  it.

11       THE COURT:  Was there anything about the contents of

12  the media report that you think might affect your ability to

13  be fair and impartial?

14       THE JUROR:  No.

15       THE COURT:  Did you, during the time that you've been

16  waiting, either hear or see anything related to the case or

17  discuss it with anyone?

18       THE JUROR:  No.

19       THE COURT:  Would you tend to believe or disbelieve the

20  testimony of a police officer as opposed to the testimony of

21  any other witness?

22       THE JUROR:  No.

23       THE COURT:  One of the victims in this case, Robert

24  Chadwell, was an African American.  Mr. Chalue is Caucasian.

25  Would those facts affect or interfere with your ability to

1   be fair and impartial?

2         THE JUROR:  No.

3         THE COURT:  The defendant in this case also has an

4   absolute right to remain silent at this trial.  If he

5   exercises that right and does not testify, would you hold

6   that against him in any way?

7         THE JUROR:  If he didn't testify?

8         THE COURT:  If he did not testify.

9         THE JUROR:  Yes, I probably would.

10        THE COURT:  You are excused.

11        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 12

12        COURT OFFICER:  Juror Number 12.

13        THE COURT:  Mr. Garcia, good morning.

14        THE JUROR:  Good morning.

15        THE COURT:  Did you recognize any names on that list of

16   witnesses?

17        THE JUROR:  No.

18        THE COURT:  Did you get a chance to look at the list of

19   witnesses?

20        THE JUROR:  I got a problem hearing.

21        THE COURT:  I see.  Okay.  Let me ask you, were you

22   able to hear my questions earlier?

23        THE JUROR:  Yeah.

24        THE COURT:  Can you hear me now?

25        THE JUROR:  Yes.  Yes.

1        THE COURT:  Did you get a chance to look at that list

2   of witnesses?

3        THE JUROR:  Yes, I did.

4        THE COURT:  Did you recognize any names?

5        THE JUROR:  No.

6        THE COURT:  We anticipate this case will last

7   approximately four weeks to try, proceeding each day from

8   9:30 in the morning until 4:00 in the afternoon.  Bearing in

9   mind that schedule, are you available to help us?

10        THE JUROR:  Yes.

11        THE COURT:  All right.  Do you have -- are you

12   concerned you would have difficulty hearing the witnesses if

13   you were selected as a juror.

14        THE JUROR:  Yes, I did.

15        THE COURT:  All right.  You can hear me okay now?

16        THE JUROR:  Yes.

17        THE COURT:  Are there some things that people have said

18   in the courtroom that you were unable to hear?

19        THE JUROR:  No.  I hear everything, what he said.

20        THE COURT:  All right.  Can you -- if you do not hear

21   something, if you are selected as a juror, would you promise

22   me you will raise your hand?

23        THE JUROR:  Yes.

24        THE COURT:  Okay.  There may be evidence -- did you

25   respond to any of my earlier questions by raising your card?

1         THE JUROR:  Yes, I did.

2         THE COURT:  And do you remember which question?

3         THE JUROR:  No.

4         THE COURT:  Have you seen or heard anything about this

5    case in the media?

6         THE JUROR:  No.

7         THE COURT:  And you work for the City of Springfield;

8    is that correct?

9         THE JUROR:  Yes, I do.

10        THE COURT:  Ms. Capeless, do we have an indication?

11        THE CLERK:  I believe he answered in the affirmative,

12   Your Honor, to the question regarding believing a police

13   officer.

14        THE COURT:  All right.  Would you tend to believe a

15   police officer as opposed to a non-police witness simply

16   because that witness is employed as a police officer?

17        THE JUROR:  Yes.

18        THE COURT:  All right.  You are excused.

19   Thank you.

20        THE JUROR:  Yes.

21   VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 13

22        COURT OFFICER:  Juror Number 13.

23        THE COURT:  Good morning, Mr. Brown.

24        THE JUROR:  Good morning.

25        THE COURT:  Did you recognize any names on that list of

1   witnesses?

2        THE JUROR:  No, sir.

3        THE COURT:  Mr. Brown, we anticipate this case will

4   last approximately four weeks, proceeding each day from 9:30

5   in the morning until four o'clock in the afternoon with some

6   exceptions.  Bearing in mind that schedule, the importance

7   of this case, and our need for good jurors like you, are you

8   available to help us?

9        THE JUROR:  Yes.

10       THE COURT:  Have you or any member of your family ever

11  been the victim of a crime of violence?

12       THE JUROR:  No.

13       THE COURT:  Have you seen or heard anything about this

14  case in the media or have you discussed it with anyone

15  either before today or while you have been here today?

16       THE JUROR:  No.

17       THE COURT:  There may be evidence in this case that one

18  of the co-defendants, Mr. Hall, had some affiliation with

19  the Hells Angels Motorcycle Club and that this defendant,

20  Mr. Chalue, had some affiliation with an organization known

21  as the Aryan Brotherhood.  If you were to hear evidence of

22  that type, would that prevent you from acting fairly and

23  impartially?

24       THE JUROR:  No.

25       THE COURT:  One of the victims in this case, Robert

1    Chadwell, was African American.  Mr. Chalue is Caucasian.

2    Would those facts prevent you from acting fairly and

3    impartially?

4         THE JUROR:  No.

5         THE COURT:  The defendant, Mr. Chalue, has an absolute

6    right to remain silent.  If he exercises that right and does

7    not testify at this trial, would you hold that against him?

8         THE JUROR:  No.

9         THE COURT:  Would you tend to believe or disbelieve the

10   testimony of a police officer over the testimony of other

11   witnesses?

12        THE JUROR:  No, sir.

13        THE COURT:  The evidence in this case may include

14   photographs or other descriptions of the victims' bodies

15   which were dismembered.  If you were to hear such evidence,

16   would that prevent you from acting as a fair and impartial

17   juror?

18        THE JUROR:  No.

19        THE COURT:  Can you think of any reason why you would

20   not be fair and impartial if you were selected?

21        THE JUROR:  No.

22        THE COURT:  Thank you, Mr. Brown.  I'm going to ask you

23   to stand in the hallway for just a minute.

24        (The juror exited.)

25        THE COURT:  I find him to be indifferent.

1          MR. CAPELESS:  Commonwealth is content with this juror,

2     Your Honor.

3          THE COURT:  Mr. Frank?

4          MR. FRANK:  Judge, I see that he has witnessed an

5     attempted abduction, sexual assault; answered in the

6     negative to several questions that came near that.  I'm

7     asking that he be questioned specifically --

8          THE COURT:  Can we bring Mr. Brown back in.

9          MR. FRANK:  -- about that and also his current or last

10    employer -- he is retired -- if he can give us that.

11         (The juror entered.)

12         THE COURT:  Mr. Brown, I had a couple follow-up

13    questions about your biographical form.  First, were you

14    previously employed in some capacity?  You don't list

15    anything regarding your employer.

16         THE JUROR:  No.  I'm retired.

17         THE COURT:  Okay.  So my question is what did you do

18    when you were working?

19         THE JUROR:  I had various jobs over time; my most

20    recent job, I was a machine operator at STR in Enfield.

21         THE COURT:  All right.  You have also mentioned on your

22    form that you witnessed an attempted abduction or sexual

23    assault.

24         THE JUROR:  I didn't actually witness the abduction or

25    assault; I was with the witness to the defendant leaving the

1  parking lot where this occurred.

2       THE COURT:  How long ago was that?

3       THE JUROR:  It was, like, 2001, 2002.

4       THE COURT:  Were you called to testify?

5       THE JUROR:  Yes.

6       THE COURT:  All right.  Was there anything about that

7  experience as a witness that you think might interfere with

8  your ability to act as a fair and impartial juror in this

9  case?

10       THE JUROR:  No.

11       THE COURT:  Thank you.

12       If you could step out in the hallway, please.

13       (The juror exited.)

14       THE COURT:  I find him indifferent.

15       MR. CAPELESS:  Commonwealth remains content, Your

16  Honor.

17       THE COURT:  Mr. Frank?

18       MR. FRANK:  Challenge, please.

19       THE COURT:  All right.

20       (The juror entered.)

21       THE COURT:  Mr. Brown, thank you for your service.

22       You are excused.

23       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 14

24       COURT OFFICER:  Juror Number 14.

25       THE COURT:  Ms. Santiago, good morning.

1          THE JUROR:  Good morning, sir.

2          THE COURT:  Did you get a chance to look at that list

3     of witnesses?

4          THE JUROR:  Yes, sir.

5          THE COURT:  Did you recognize any names?

6          THE JUROR:  I did, sir.

7          THE COURT:  Who did you recognize?

8          THE JUROR:  Jessica Athas who works for the Department

9     of Corrections.

10         THE COURT:  All right.  Assuming for the moment that

11    Ms. Athas testifies in this case, based on your

12    relationship, would you tend to treat her testimony

13    differently than you might other witnesses?

14         THE JUROR:  No, sir.

15         THE COURT:  What is the nature of your relationship

16    with her?

17         THE JUROR:  My family works for the Department of

18    Corrections so just, you know, more of an acquaintance.

19         THE COURT:  And you have listed parents and a sister,

20    are those the relatives that work for the Department of

21    Corrections?

22         THE JUROR:  Yes, sir.  My sister works for Chicopee

23    Police Department.  However, my stepfather and my aunts work

24    for the Department of Corrections.

25         THE COURT:  Is there anything about those relationships

1    or their lines of work that you think might cause you to

2    favor one side over the other in this case?

3          THE JUROR:  Not at all, sir.

4          THE COURT:  We anticipate this case will last

5    approximately four weeks, proceeding from 9:30 in the

6    morning until 4:00 in the afternoon.  Bearing in mind that

7    schedule, the importance of this case, and our need for good

8    jurors like you, are you available to help us?

9          THE JUROR:  I could be, sir.

10         THE COURT:  All right.  Have you or any member of your

11   family ever been the victim of a crime of violence?

12         THE JUROR:  No, sir.

13         THE COURT:  Other than the family members that you

14   referred to in law enforcement, did you respond to any of my

15   other questions?

16         THE JUROR:  I did.

17         THE COURT:  Which questions?

18         THE JUROR:  I apologize.  Just that one.

19         THE COURT:  Let me ask you, have you seen or heard

20   anything about this case or discussed it with anyone, either

21   before today or while you have been waiting here today?

22         THE JUROR:  I read about it, sir.

23         THE COURT:  In newspaper reports?

24         THE JUROR:  Yes, sir.

25         THE COURT:  When was the last report that you recall

1    reading, roughly?

2         THE JUROR:  A few weeks back.

3         THE COURT:  All right.  And do you recall the contents?

4         THE JUROR:  Just on Masslive.  It was a quick little

5    synopsis; nothing more detailed than what I heard this

6    morning.

7         THE COURT:  All right.  Was there anything about what

8    you read in that report that you think might prevent you

9    from being a fair and impartial juror?

10        THE JUROR:  Not at all, sir.

11        THE COURT:  I see also on your biographical form there

12   was reference to a past arrest.  Was that you or someone

13   else in your family?

14        THE JUROR:  Myself, sir.

15        THE COURT:  Approximately how long ago?

16        THE JUROR:  Approximately six years ago.

17        THE COURT:  Was there a criminal prosecution?

18        THE JUROR:  No, sir.

19        THE COURT:  Was there anything about that experience

20   you think might cause you to favor one side over the other

21   in this case?

22        THE JUROR:  Not at all.

23        THE COURT:  Would you believe or tend to believe, or

24   disbelieve, the testimony of a police officer simply because

25   that witness is employed as a police officer?

1    THE JUROR:  Not at all.

2    THE COURT:  There may be evidence that one of the

3    co-defendants, Mr. Hall, had some affiliation with the Hells

4    Angels Motorcycle Club and this defendant, Mr. Chalue, had

5    some affiliation with the Aryan Brotherhood.  If you were to

6    hear such evidence, would that evidence prevent you from

7    acting fairly and impartially?

8    THE JUROR:  No, sir.

9    THE COURT:  There will be evidence that one of the

10   victims in this case, Robert Chadwell, was African American.

11   The defendant is Caucasian.  Would those facts interfere

12   with your ability to be fair and impartial?

13   THE JUROR:  No, sir.

14   THE COURT:  There may also be evidence that the bodies

15   of the victims in this case were dismembered, and the jurors

16   may be exposed to graphic photographs regarding the bodies.

17   If you were to see and hear such evidence, would that

18   prevent you from acting as a fair and impartial juror?

19   THE JUROR:  No, sir.

20   THE COURT:  The defendant, Mr. Chalue, has a right to

21   remain silent.  If he exercises that right and does not

22   testify, would you hold that against him in any way?

23   THE JUROR:  No, sir.

24   THE COURT:  Is there any other reason, whether I have

25   asked about it or not, why you think you could not be fair

1    if selected as a juror?

2         THE JUROR:  Absolutely not.

3         THE COURT:  All right.  Thank you.

4         I'm going to ask you to step into the hallway for just

5    a moment.

6         THE JUROR:  Okay, sir.

7         (The juror exited.)

8         THE COURT:  Find her indifferent.

9         MR. CAPELESS:  Judge, you did inquire about her

10   mentioning her prior arrest.  But she also puts the word

11   "bogus" with an explanation point after that.

12        I would ask that you inquire why she put that and what

13   she meant.

14        THE COURT:  Are you telling me that her response to

15   that question might have some bearing on whether or not you

16   exercise a challenge?

17        MR. CAPELESS:  Yes, Your Honor.

18        (The juror was present.)

19        THE COURT:  Ms. Santiago, I just want to ask a

20   follow-up question regarding that prior arrest which you

21   describe on your form as bogus.  Can you articulate your use

22   of that term?

23        THE JUROR:  On more than a few occasions, I hear the

24   term "fair and impartial."  I don't think I was treated

25   fairly and impartially at all, and I believe that's part of

1    the justice system.

2         THE COURT:  All right.  Well, as I'm sure you are

3    aware, there are times when people are unfairly accused.

4    Does the fact that you believe you were unfairly accused

5    affect the way that you might view the evidence in this

6    case?

7         THE JUROR:  Not at all.

8         THE COURT:  Thank you.

9         You may step back into the hall.

10        (The juror exited.)

11        THE COURT:  I find her indifferent.

12        MR. CAPELESS:  The Commonwealth challenges the juror,

13   Your Honor.

14        (The juror entered.)

15        THE COURT:  Ms. Santiago, you are excused.

16        Thank you for your service.

17        THE JUROR:  Thank you.

18        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 15

19        COURT OFFICER:  Juror Number 15.

20        THE COURT:  Ms. Robison, good morning.

21        THE JUROR:  Good morning.

22        THE COURT:  Did you recognize any of the names on that

23   list of potential witnesses?

24        THE JUROR:  No, I did not.

25        THE COURT:  We anticipate the trial of this case will

1  last approximately four weeks, proceeding each day from 9:30

2  until 4:00 in the afternoon.  Bearing in mind that schedule,

3  the importance of this case, and our need for good jurors

4  like you, are you available to help us?

5       THE JUROR:  I guess.

6       THE COURT:  All right.  Again, I understand that it

7  would be inconvenient, perhaps, and the question is would it

8  pose a substantial hardship to you?

9       THE JUROR:  No.

10       THE COURT:  Have you seen or heard anything about this

11  case in the media, either today, before today, or have you

12  discussed it with anyone?

13       THE JUROR:  I do remember hearing about it when it

14  happened, and actually, my husband mentioned it last night,

15  seeing it on the news.

16       THE COURT:  In connection with your upcoming jury

17  service?

18       THE JUROR:  No.  Actually that it came on the news.

19       THE COURT:  All right.  Was there anything about what

20  you heard earlier or observed in the media report or your

21  discussion with your husband that you think might prevent

22  you from acting as a fair and impartial juror?

23       THE JUROR:  No.

24       THE COURT:  Have you or any member of your family ever

25  been the victim of a crime of violence?

1        THE JUROR:  No.

2        THE COURT:  Did you respond to any of my earlier

3    questions by raising your card?

4        THE JUROR:  Yes.  I'm trying to remember.  I guess just

5    that I heard about it.

6        THE COURT:  All right.  All right.  And you have

7    already responded to the question as to whether or not that

8    would have any effect on your ability to be fair, and your

9    answer was no, correct?

10        THE JUROR:  Correct.

11        THE COURT:  I see also that you have had some

12    experience with the criminal justice system, first as a

13    juror.  Was that you that sat on a jury?

14        THE JUROR:  No.  My son sat on a jury.

15        THE COURT:  Have you discussed that with him?

16        THE JUROR:  No.

17        THE COURT:  And there's also reference to an arrest.

18    Was that you or someone else in your family?

19        THE JUROR:  Someone else in the family.

20        THE COURT:  And I don't mean to pry, was that a member

21    of your immediate family?

22        THE JUROR:  Yes.  My son was arrested for a DUI.

23        THE COURT:  All right.  And was there anything about

24    that experience that you shared with your son that you think

25    might cause you to favor one side over the other in this

1  case?

2      THE JUROR:  Well, we're still in the midst of that

3  because it has been delayed and delayed.

4      THE COURT:  All right.

5      THE JUROR:  So I don't know, I guess, to answer your

6  question, not specific to that.

7      THE COURT:  All right.  Well, let me ask more

8  generally, is there anything that you think, based on what

9  you now know about this case, that might prevent you from

10  being a fair and impartial juror?

11      THE JUROR:  Not about the case so much, but I do want

12  to say that I have been sitting with my stepson in the

13  courtroom many days over the past year and have heard -- and

14  I had to testify, and they turned things around totally from

15  what I said.  I'm a little angry at the court system right

16  now.

17      THE COURT:  All right.  Well, of course, if you were

18  selected as a juror, you would have the ability to

19  independently judge the facts of this case, and, together

20  with your co-jurors, make decisions about what the facts are

21  and participate in the same system that you found to be --

22  well, that caused you some anger.

23      THE JUROR:  Uh-huh.

24      THE COURT:  Let me ask you this:  Is your experience

25  and the anger that you just expressed such that you think it

1   would interfere with your ability to be a fair and impartial

2   juror in this case?

3         THE JUROR:  I do at this point.

4         THE COURT:  You are excused.

5         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 17

6         COURT OFFICER:  Juror Number 17.

7         THE COURT:  Ms. Nowacki, good morning.

8         THE JUROR:  Hi.  Good morning.

9         THE COURT:  Did you recognize any names on that list of

10   witnesses?

11         THE JUROR:  No, I did not.

12         THE COURT:  We expect this case will take us

13   approximately four weeks to complete, proceeding each day

14   from 9:30 in the morning until roughly 4:00 in the

15   afternoon.  Bearing in mind that schedule, the importance of

16   this case, and our need for good jurors like you, are you

17   available to help us?

18         THE JUROR:  Yes.

19         THE COURT:  Have you or any member of your family ever

20   been accused or a victim of a crime of violence?

21         THE JUROR:  I had a restraining order, based on my

22   ex-husband, approximately around eight years ago.

23         THE COURT:  And that was an order that you sought as

24   the victim?

25         THE JUROR:  Right.

1      THE COURT:  And was there anything about that

2  experience —— that is, being the victim in that case and

3  seeking a restraining order —— that you think might

4  interfere with your ability to be a fair and impartial juror

5  in this case?

6      THE JUROR:  No.

7      THE COURT:  Did you respond to any of my earlier

8  questions by raising your card?

9      THE JUROR:  No, I did not.

10      THE COURT:  Have you seen or heard anything about this

11  case in the media or have you discussed it with anyone,

12  either before today or since you have been here today?

13      THE JUROR:  No, I have not.

14      THE COURT:  Would you tend to believe or disbelieve the

15  testimony of a police officer simply because he or she is a

16  police officer?

17      THE JUROR:  No.

18      THE COURT:  There may be evidence in this case that one

19  of the co—defendants, Mr. Hall, had some affiliation with

20  the Hells Angels Motorcycle Club, and that this defendant,

21  Mr. Chalue, had some affiliation with the Aryan Brotherhood.

22  Would that evidence prevent you from being a fair and

23  impartial juror?

24      THE JUROR:  I don't know anybody with that, so I have

25  no way.

1        THE COURT:  All right.  Well, again, I understand you

2   don't know anybody that is so affiliated, but the question

3   is would hearing that evidence interfere with your ability

4   to be a fair and impartial juror?

5        THE JUROR:  It would not interfere.

6        THE COURT:  All right.  Thank you.

7        Robert Chadwell, one of the victims in this case, was

8   African American.  Mr. Chalue is Caucasian.  Would those

9   facts interfere with your ability to be a fair and impartial

10  juror?

11       THE JUROR:  It will not interfere.

12       THE COURT:  There will be evidence in this case that

13  the bodies of the victims were dismembered and the jury may

14  see graphic photographs.  If you were to see and hear such

15  evidence, would that evidence prevent you from being a fair

16  and impartial juror?

17       THE JUROR:  That wouldn't.

18       THE COURT:  The defendant, Mr. Chalue, has an absolute

19  right to remain silent.  If he exercises that right and

20  chooses not to testify at this trial, would you hold that

21  against him in any way?

22       THE JUROR:  No, I would not.

23       THE COURT:  Is there any other reason, whether I have

24  asked about it or not, why you think you would not be a fair

25  and impartial juror if you were selected?

1          THE JUROR:  No.

2          THE COURT:  All right.  Thank you, Ms. Nowacki.

3          If you could step in the hallway for just a minute.

4          (The juror exited.)

5          THE COURT:  I find her indifferent.

6          MR. CAPELESS:  The Commonwealth is content with this

7     juror, Your Honor.

8          MR. FRANK:  Defense is content.

9          THE COURT:  Very well.

10         (The juror entered.)

11         THE COURT:  Ms. Nowacki, you have been selected to sit

12    as a juror in this case.  You are going to be in seat number

13    eleven.  We're actually not going to start the trial -- we

14    began the process yesterday.  We're actually going to begin

15    the trial on Friday.

16         So in a moment, I'm going to excuse you and ask you to

17    return on Friday morning at 9:30.  The Court Officers will

18    show you where to report, but it's important I give you

19    these instructions before you leave here today.

20         Please do not discuss the case with anyone except the

21    fact that you have been selected to sit as a juror in a

22    criminal case.  Beyond that, I ask that you say no more.  Do

23    not observe any media reports of the case, if there are any.

24    And please do not make any effort to independently

25    investigate the case in any way.  And don't communicate with

1   anyone by way of Facebook or other posting announcing that

2   you are a juror.

3         With that, Ms. Nowacki, you are excused, and I will see

4   you Friday morning at 9:30.

5         THE JUROR:  Okay.  Thank you.

6         THE COURT:  Thank you.

7         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 18

8         THE COURT:  Mr. Brower, good morning.

9         THE JUROR:  Good morning.

10        THE COURT:  Do I have the name correct, Mr. Brower?

11        THE JUROR:  Yes.

12        THE COURT:  Did you recognize any names on that list of

13   witnesses?

14        THE JUROR:  Yes.

15        THE COURT:  Who did you recognize?

16        THE JUROR:  Richard Williams.

17        THE COURT:  How do you know Mr. Williams?

18        THE JUROR:  He's a friend and I coach with him.

19        THE COURT:  If Mr. Williams were to testify in this

20   case -- well, let me ask you this:  Where does the

21   Mr. Williams that you are friends with live?

22        THE JUROR:  Is that his exact address?

23        THE COURT:  I want to make sure -- Richard Williams is

24   a common name.  I am trying to figure out if this Richard

25   Williams is the same one.

1      THE JUROR:  It is Springfield, Massachusetts.  You want

2  me to tell you his exact address?  43 Pearson Drive, I

3  believe.

4      THE COURT:  All right.

5      Mr. Capeless, is it the same Richard Williams?

6      MR. FRANK:  It is very likely the same.

7      THE COURT:  All right.  Well, let me ask you this,

8  Mr. Brower:  If this witness -- actually, Mr. Williams -- is

9  called to testify in this case, based on your relationship

10  with him, would you tend to treat his testimony differently

11  than you would the testimony of other witnesses?

12      THE JUROR:  I think it would affect my ability to be

13  fair.

14      THE COURT:  You are excused.

15      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 19

16      COURT OFFICER:  Juror Number 19.

17      THE COURT:  Ms. Brunelle, good morning.

18      THE JUROR:  Good morning.

19      THE COURT:  Did you recognize any names on that list of

20  witnesses?

21      THE JUROR:  No.

22      THE COURT:  We anticipate the trial of this case will

23  last approximately four weeks, proceeding from 9:30 in the

24  morning until 4:00 in the afternoon on most days.  Bearing

25  in mind that schedule, the importance of this case, and our

1    need for good jurors like you, are you available to help us?

2          THE JUROR:  I am the legal guardian of a five-year-old,

3    of my granddaughter, and I don't have any other family

4    nearby, so I am responsible for her care.  She's in school

5    during the day, but I am responsible for her before and

6    after school.  The hours are going to be a problem.  My

7    husband and I own our own business.  It's not like he can

8    step out of it to assist with the day care.

9          THE COURT:  All right.  So as a result, would that pose

10   family or economic hardship for you?

11         THE JUROR:  Both.

12         THE COURT:  You are excused.

13         THE JUROR:  Thank you.

14   VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 20

15   COURT OFFICER:  Juror Number 20.

16         THE COURT:  Good morning, sir.  Is it Mr. Laux?

17         THE JUROR:  Laux.

18         THE COURT:  Mr. Laux, did you recognize any names on

19   that list of witnesses?

20         THE JUROR:  No, I did not.

21         THE COURT:  We anticipate the trial of this case will

22   last approximately four weeks, proceeding each day from 9:30

23   until 4:00, roughly.  Based on that schedule, the importance

24   of this case, and our need for good jurors like you, are you

25   available to help us?

1          THE JUROR:  Yes.

2          THE COURT:  Have you seen or heard anything about this

3   case in any media reports or have you discussed it with

4   anyone?

5          THE JUROR:  I believe I've seen it on channel 40 and

6   Masslive.com.

7          THE COURT:  All right.  Can you tell us, roughly, how

8   long ago it was that you observed those reports?

9          THE JUROR:  It didn't seem that long ago, because I can

10  still remember the names.  I'm not sure.  Maybe a week or

11  two.

12         THE COURT:  Do you remember anything about the content

13  of the report?

14         THE JUROR:  Pretty much what you said during the --

15         THE COURT:  In the opening here?

16         THE JUROR:  Yes.

17         THE COURT:  That is the nature of the charges?

18         THE JUROR:  Correct.  Correct.

19         THE COURT:  And was there anything about the media

20  reports that you have observed that you think might prevent

21  you from acting as a fair and impartial juror?

22         THE JUROR:  No.

23         THE COURT:  Have you discussed the case with anyone

24  aside from those media reports?

25         THE JUROR:  Just members of the family.

1          THE COURT:  Members of your family?

2          THE JUROR:  Yeah.

3          THE COURT:  Was there anything about those discussions

4     you think might affect your ability to be a fair and

5     impartial juror?

6          THE JUROR:  No.

7          THE COURT:  Have you or any member of your family ever

8     been the victim of a crime of violence?

9          THE JUROR:  No.

10         THE COURT:  Did you respond to any of my earlier

11    questions by raising your card?

12         THE JUROR:  The one about hearing.

13         THE COURT:  Knowing?

14         THE JUROR:  Yeah, seeing or hearing it.

15         THE COURT:  Was that the only one?

16         THE JUROR:  That was the only one.

17         THE COURT:  All right.  Would you tend to believe or

18    disbelieve the testimony of a police officer simply because

19    he or she is a police officer?

20         THE JUROR:  No.

21         THE COURT:  There may be evidence in this case that one

22    of the co-defendants, Mr. Adam Leo Hall, had some

23    affiliation with the Hells Angels Motorcycle Club, and

24    Mr. Chalue, the defendant in this case, had some affiliation

25    with the Aryan Brotherhood.  If you were to hear such

1   evidence, would that prevent you from acting fairly and

2   impartially?

3         THE JUROR:  Most likely not.

4         THE COURT:  All right.  Are you confident of that?  You

5   said "most-likely not."

6         THE JUROR:  I don't see a reason why it would.

7         THE COURT:  All right.  Well, let me ask you this, one

8   of the reasons, I will be instructing all of the selected

9   jurors that they cannot consider that evidence as evidence

10  of the defendant's character.

11        Do you think you could follow that instruction?

12        THE JUROR:  Yes.

13        THE COURT:  Mr. Chalue has a right to remain silent.

14  If he exercised that right in this trial and does not

15  testify, would you hold that against him?

16        THE JUROR:  No.

17        THE COURT:  One of the victims in this case, Robert

18  Chadwell, was African American.  Mr. Chalue is Caucasian.

19  Would those facts prevent you from acting fairly and

20  impartially?

21        THE JUROR:  No.

22        THE COURT:  There may be evidence in this case that the

23  victims' bodies were dismembered.  If you were to hear such

24  evidence or see photographs of that evidence, would that

25  evidence prevent you from being a fair and impartial juror?

1        THE JUROR:  No.

2        THE COURT:  Can you think of any reason, whether I have

3    asked about it or not, why you would not be fair and

4    impartial if selected?

5        THE JUROR:  No.  I could be fair and impartial.

6        THE COURT:  All right.  Thank you.

7        I am going to ask you to step in the hallway, please.

8        (The juror exited.)

9        THE COURT:  I find him indifferent.

10       MR. CAPELESS:  The Commonwealth is content with this

11   juror, Your Honor.

12       MR. FRANK:  Challenge, please.

13       THE COURT:  All right.

14       (The juror entered.)

15       THE COURT:  Mr. Laux, thank you for your service.

16   You have been excused.

17       THE JUROR:  Thank you.

18   VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 21

19       COURT OFFICER:  Juror Number 21.

20       THE COURT:  Good morning.  Is it Mr. Stamm?

21       THE JUROR:  Yup.

22       THE COURT:  Mr. Stamm, did you recognize any names on

23   that list of witnesses?

24       THE JUROR:  No, sir.

25       THE COURT:  All right.  I see you are a junior in

1  college?

2       THE JUROR:  Yup.

3       THE COURT:  Are you missing class today?

4       THE JUROR:  No.  I don't have classes on Wednesdays.

5       THE COURT:  All right.  The semester continues, though;

6  is that correct?

7       THE JUROR:  Uh-huh.

8       THE COURT:  If you were selected to sit on a jury that

9  starts Friday and lasts for four weeks, would that pose an

10  academic hardship for you?

11       THE JUROR:  I would have -- I have finals during that,

12  yes.

13       THE COURT:  Missing those finals, I assume, would be

14  problematic?

15       THE JUROR:  Yes.

16       THE COURT:  You are excused.

17       THE JUROR:  Thank you.

18       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 22

19       COURT OFFICER:  Juror Number 22.

20       THE COURT:  Good morning, sir.

21       THE JUROR:  Good morning.

22       THE COURT:  Is it Mr. Thieme?

23       THE JUROR:  Thieme.

24       THE COURT:  Mr. Thieme, did you recognize any names on

25  that list of witnesses?

1          THE JUROR:  Yeah, I seen one.

2          THE COURT:  What name?

3          THE JUROR:  Michael Carriveau.

4          THE COURT:  Let's -- how do you know that person?

5          THE JUROR:  I used to work with him.

6          THE COURT:  Were you friendly with that person?

7          THE JUROR:  Yeah, I was friends with him.

8          THE COURT:  Let's assume for the moment that he

9    testifies.  Do you think, based on your relationship with

10   him, you would tend to treat his testimony differently than

11   that of other witnesses?

12         THE JUROR:  No, I wouldn't.

13         THE COURT:  All right.  You think you could treat his

14   testimony in the same fair and impartial way that I will

15   instruct you to treat all witnesses?

16         THE JUROR:  Yes, I think so.

17         THE COURT:  Have you seen or heard anything about this

18   case in the media?

19         THE JUROR:  No, I haven't, Your Honor.

20         THE COURT:  Have you discussed it with anyone?

21         THE JUROR:  No.

22         THE COURT:  Have you or any member of your family ever

23   been the victim of a crime of violence?

24         THE JUROR:  No.

25         THE COURT:  We expect the trial of this case will last

1    approximately four weeks, proceeding from 9:30 in the
2    morning until 4:00 each day.  Bearing in mind that schedule,
3    the importance of this case, and our need for good jurors
4    like you, are you available to help us?
5        THE JUROR:  That's probably -- the inconvenience.  It
6    will be too long probably.
7        THE COURT:  I understand it will be inconvenient.  The
8    question is whether or not it would pose some sort of
9    substantial hardship to you that would be different than the
10   inconvenience it would pose to all jurors.
11       Can you think of one?
12       THE JUROR:  What was that, Your Honor?  I'm sorry.
13       THE COURT:  Well, do you believe that participating in
14   this trial for four weeks would be a substantial hardship?
15       THE JUROR:  Yes.
16       THE COURT:  All right.  And why do you think that?
17       THE JUROR:  I don't know.  It just --
18       THE COURT:  I see that you are a temporary employee at
19   Yankee Candle.
20       THE JUROR:  I used to be.  I got laid off from there.
21       THE COURT:  So you're not working now?
22       THE JUROR:  No, I'm not.
23       THE COURT:  So it wouldn't be your job that causes you
24   any concern?
25       THE JUROR:  No.

1          THE COURT:  Just the other things that you would be

2    doing day-to-day?

3          THE JUROR:  My family and everything like that.

4          THE COURT:  All right.  Well, let me ask you this -- or

5    tell you this:  There may be evidence in this case that one

6    of the co-defendants, Mr. Hall, had some affiliation with

7    the Hells Angels Motorcycle Club and that this defendant,

8    Mr. Chalue, had some affiliation with the Aryan Brotherhood.

9    If you were to hear such evidence, would that prevent you

10   from being a fair juror?

11         THE JUROR:  Would that bother me from being a fair

12   juror?

13         THE COURT:  Would it prevent you from being fair and

14   impartial?

15         THE JUROR:  No.

16         THE COURT:  Would you tend to believe or disbelieve the

17   testimony of a police officer simply because that witness is

18   employed as a police officer?

19         THE JUROR:  No, that wouldn't.

20         THE COURT:  All right.  One of the victims in this

21   case, Robert Chadwell, was African American.  The defendant,

22   Mr. Chalue, is Caucasian.  Would those facts prevent you

23   from being fair and impartial?

24         THE JUROR:  No.  That has nothing to do with it.

25         THE COURT:  All right.  There may be evidence presented

1    in this case that the bodies of the victims were dismembered

2    and you may be exposed to photographic evidence that some

3    people might consider graphic in nature.  If you were to see

4    and hear such evidence, would that interfere with your

5    ability to be a fair and impartial juror?

6        THE JUROR:  No, that wouldn't bother me.

7        THE COURT:  As I mentioned earlier, Mr. Chalue has a

8    right to remain silent at this trial.  If he exercises that

9    right and does not testify, would you hold that against him

10   in any way?

11       THE JUROR:  Yeah, I probably would hold that against

12   him.

13       THE COURT:  Thank you.  You are excused.

14       THE JUROR:  Thank you.

15       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 23

16       COURT OFFICER:  Juror Number 23.

17       THE COURT:  Ms. Benoit, good morning.

18       THE JUROR:  Good morning.

19       THE COURT:  Did you recognize any names on that list of

20   witnesses?

21       THE JUROR:  Yes, I did.

22       THE COURT:  Who did you recognize?

23       THE JUROR:  Trooper Christopher Dolan who works with

24   Massachusetts crime.

25       THE COURT:  All right.  Let's assume that Trooper Dolan

1    testifies.  Based on your relationship with Mr. Dolan or

2    your knowledge of him, would you tend to treat his testimony

3    differently than you would the testimony of other witnesses?

4         THE JUROR:  Knowing him, knowing his character, I would

5    certainly believe what he says is true.

6         THE COURT:  You are excused.

7         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 24

8         COURT OFFICER:  Juror Number 24.

9         THE COURT:  Ms. Cabrera, good morning.

10        THE JUROR:  Good morning.

11        THE COURT:  Ms. Cabrera, I see on your biographical

12   form that you have concerns of -- some concerns about your

13   family members?

14        THE JUROR:  Yes.

15        THE COURT:  Can you tell me what those are?

16        THE JUROR:  Actually, my brother was sentenced last

17   Monday, the 14th, and I was coming here, and the way, I

18   think the way the case went through -- so what they say

19   about him, I don't like it.

20        THE COURT:  All right.  So you think your brother was

21   treated unfairly?

22        THE JUROR:  Yes.

23        THE COURT:  And do you think that experience that you

24   shared with your brother might affect the way you view the

25   evidence in this case?

1        THE JUROR:  Yes, because I was, in my mind, I have four

2    kids.  They are on vacation now, and I have a

3    seventeen-year-old daughter taking care with my mother -- I

4    take care of my mom all of the time.

5        THE COURT:  Thank you.

6        You are excused.

7        THE JUROR:  Thank you.

8        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 26

9        COURT OFFICER:  Juror Number 26.

10        THE COURT:  Ms. Loney, good morning.

11        THE JUROR:  Good morning.

12        THE COURT:  Did you recognize any names on that list of

13    witnesses?

14        THE JUROR:  No, I did not.

15        THE COURT:  I see that you have a number of family

16    members who are involved in various aspects of law

17    enforcement?

18        THE JUROR:  Yes.

19        THE COURT:  Can you tell us the relationships?  I mean,

20    you have categories of employers here, but I am not sure who

21    does what.

22        THE JUROR:  A nephew and brother-in-law are attorneys.

23        THE COURT:  All right.

24        THE JUROR:  The brother-in-law who's an attorney used

25    to be assistant state's attorney in Connecticut.

1        THE COURT:  In Connecticut.  All right.

2        THE JUROR:  I have a nephew who is a lieutenant in a

3   prison in Niantic, Connecticut, who is also working on the

4   FBI task force.  I have a nephew who is a detective.  I

5   think I covered them all.

6        THE COURT:  All right.  Thank you.

7        And let me ask you this:  Is there anything about your

8   relationships with those individuals or their lines of work,

9   your knowledge of it, that you think might cause you to

10  favor one side over the other in this case?

11       THE JUROR:  No.

12       THE COURT:  It is likely that there will be many law

13  enforcement officers testifying in this case.  Would you

14  believe or tend to believe the testimony of a police officer

15  simply because he or she is employed as police officer?

16       THE JUROR:  No.

17       THE COURT:  We anticipate the trial of this case will

18  last approximately four weeks, proceeding each day from 9:30

19  until 4:00.  Bearing in mind that schedule, the importance

20  of this case, and our need for good jurors like you, are you

21  available to help us?

22       THE JUROR:  Is there any way of knowing if it goes

23  longer than four weeks?  I am looking at the financial

24  aspect of it.

25       THE COURT:  Four weeks is our best estimate.  It's

1    always possible that it could be a lot shorter; it could be

2    a little longer.  One of the things we can't predict with

3    any accuracy is how long the jury will deliberate once they

4    have the case.

5        With that understanding, do you believe it would cause

6    a substantial hardship to sit as a juror?

7        THE JUROR:  It wouldn't if it were, like, four weeks.

8        THE COURT:  And if it went beyond four weeks, can you

9    describe the hardship that --

10       THE JUROR:  Well, I'm a widow, and I have a substantial

11   mortgage.  My husband's life insurance policy was small.  He

12   was out of work three years before he got sick, and then so,

13   you know, we got behind in things, but I'm all caught up

14   now.  But I just worry if I don't get my full pay, you know,

15   what would happen.

16       THE COURT:  You are employed now?

17       THE JUROR:  I have a good job, but I work thirty hours

18   a week, but I make a good hourly pay.

19       THE COURT:  And your concern is that if you missed your

20   work for the period of time we're discussing, it might be an

21   economic hardship for you?

22       THE JUROR:  The four weeks wouldn't, but if it went

23   longer, I do have a little bit in the bank but that's

24   because I dipped into my 401K.

25       THE COURT:  Let me ask you a few follow-up questions.

1   Have you or any member of your family ever been a victim of

2   a crime of violence?

3         THE JUROR:  No.  I'm sorry.  Wait.  My grandmother.

4   But it was a long time ago, and she was mugged in Hartford,

5   and she was okay.  That's it.  No trial.

6         THE COURT:  Would your knowledge of that experience

7   affect in any way your ability to be fair and impartial in

8   this case?

9         THE JUROR:  No.

10        THE COURT:  Have you seen or heard anything about this

11   case in the media or have you discussed it with anyone?

12        THE JUROR:  No.

13        THE COURT:  There may be evidence in this case that one

14   of the co-defendants, Mr. Hall, had some affiliation with

15   the Hells Angels Motorcycle Club, and that the defendant in

16   this action, Mr. Chalue, had some affiliation with the Aryan

17   Brotherhood.  If you were to hear such evidence, would that

18   interfere with your ability to be fair and impartial?

19        THE JUROR:  I don't think so, no.

20        THE COURT:  All right.  One of the victims in this

21   case, Robert Chadwell, was African American.  Mr. Chalue is

22   Caucasian.  Would those facts prevent you from being fair

23   and impartial?

24        THE JUROR:  No.

25        THE COURT:  Mr. Chalue has a right to remain silent at

1    his trial.  If he exercises that right and does not testify,

2    would you hold that against him in any way?

3         THE JUROR:  No.

4         THE COURT:  There may be evidence in this case that the

5    victims' bodies were dismembered and the jurors may be

6    exposed to graphic photographs of that evidence.  If you

7    were to hear and see such evidence, would that prevent you

8    from acting as a fair and impartial juror?

9         THE JUROR:  No.

10        THE COURT:  Can you think of any other reason, whether

11   I have asked about it or not, why you would not be fair and

12   impartial?

13        THE JUROR:  No.

14        THE COURT:  Thank you.  I'm going to ask you to step

15   out in the hallway for just a moment.

16        (The juror exited.)

17        THE COURT:  Find her indifferent.

18        MR. CAPELESS:  Commonwealth is content with this juror,

19   Your Honor.

20        MR. FRANK:  Judge, I'm concerned, and I suggest cause

21   that she said if it went beyond four weeks, my sense of --

22   in summary of what she said, it would be a -- finances would

23   be a factor if it went beyond four weeks.  And that is the

24   scenario we are trying to avoid here.  I think she should be

25   excused.

1          THE COURT:  And you're making a challenge for cause?

2          MR. FRANK:  I am.

3          THE COURT:  That is denied.

4          You wish to exercise a peremptory challenge?

5          MR. FRANK:  Yes.

6          THE COURT:  Okay.

7          (The juror entered.)

8          THE COURT:  Ms. Loney, thank you for your service.

9          You have been excused.

10         THE JUROR:  Thank you very much.

11         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 28

12         COURT OFFICER:  Juror Number 28.

13         THE COURT:  Mr. Gagnon, good morning.

14         THE JUROR:  Good morning.

15         THE COURT:  Did you recognize any names on that witness

16    list?

17         THE JUROR:  I'm sure I know a few of them just by first

18    names.  I don't usually know people -- I only know last

19    (sic) names.

20         THE COURT:  Why are you a -- besides the fact that this

21    is a Berkshire County case, why are you assuming you know

22    someone's --

23         THE JUROR:  Well, my son lives in Pittsfield.  I know

24    some -- I have been there.  I know some people up there.

25         THE COURT:  But you didn't recognize any names?

1      THE JUROR:  Like I said, not last names.  I don't know

2  many people by their last names.

3      THE COURT:  Well, one of the follow-up questions was

4  about to be if you know someone that ends up testifying in

5  this case, do you think that you would treat their testimony

6  differently than others, but you can't -- tell me who you

7  know or how well you know them?

8      THE JUROR:  No, I can't.  Like I said --

9      THE COURT:  All right.  We anticipate this case will

10  take four weeks to complete, proceeding each day from 9:30

11  until 4:00.  Would a trial of that duration pose a

12  substantial hardship for you?

13      THE JUROR:  I'm not sure.  I don't think so on a

14  personal level.  I mean, my day care --

15      THE COURT:  You're excused.

16      THE JUROR:  Thank you.

17      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 29

18      COURT OFFICER:  Juror Number 29.

19      THE COURT:  Ms. Engel, good morning.

20      THE JUROR:  Good morning.

21      THE COURT:  Did you recognize any name on that list of

22  witnesses?

23      THE JUROR:  No, I did not.

24      THE COURT:  We expect this case will take four weeks to

25  complete, proceeding each day from 9:30 until 4:00, roughly.

1    Bearing in mind that schedule, the importance of this case,

2    and our need for good jurors like you, are you available to

3    help us?

4         THE JUROR:  I would be, but I have -- my husband's at

5    home, is seventy-six years old, and he's not healthy, and he

6    can't go out at all.  I take him to doctors' appointments,

7    but he doesn't go out at all, only to the doctors.  And it

8    would be a little difficult.

9         THE COURT:  I take it you are his primary caretaker?

10        THE JUROR:  Yes.

11        THE COURT:  So if you were absent from the home from

12   9:30 until 4:00 for four weeks, Monday to Friday, would that

13   pose a hardship for you and your husband?

14        THE JUROR:  It would, yes.

15        THE COURT:  You are excused.

16        THE JUROR:  Thank you.

17        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 30

18        COURT OFFICER:  Juror Number 30.

19        THE COURT:  Mr. Joaquim -- sir --

20        THE JUROR:  Good morning.

21        THE COURT:  -- I'm having a little difficulty reading

22   your last name.

23        THE JUROR:  Pedro.

24        THE COURT:  Mr. Pedro?

25        THE JUROR:  Yes.

1  THE COURT:  Mr. Pedro, did you recognize any names on

2 that list of witnesses?

3  THE JUROR:  Yeah.  There was a state trooper named

4 Mathurin.  He was in the Air Force Reserve with me.

5  THE COURT:  And let's assume, for a moment, that that

6 one does testify in this case.  Do you think, based on your

7 relationship with him, you would tend to treat his testimony

8 differently than that of other witnesses?

9  THE JUROR:  No.  I would just listen to whatever the

10 person has to say.

11  THE COURT:  All right.  We anticipate this case will

12 last approximately four weeks, proceeding each day from 9:30

13 in the morning until 4:00 in the afternoon.  Bearing in mind

14 that schedule, the importance of this case, and our need for

15 good jurors like you, are you available to help us?

16  THE JUROR:  Yeah.

17  THE COURT:  Have you or any member of your family ever

18 been the victim of a crime of violence?

19  THE JUROR:  No.

20  THE COURT:  Have you seen or heard anything about this

21 case in the media or have you discussed it with anyone?

22  THE JUROR:  I have heard of it in the media, yeah.

23  THE COURT:  All right.  And do you recall how long ago

24 you read or heard a media report?

25  THE JUROR:  It's been off and on.  I'm not sure the

1  last time.

2      THE COURT:  And do you recall whether it was print or

3  broadcast media?

4      THE JUROR:  It was broadcast.

5      THE COURT:  Do you recall, generally speaking, the

6  contents of the report that you heard?

7      THE JUROR:  It was just there was a murder and there

8  was different people, you know, different situations that

9  happened.

10     THE COURT:  All right.  Was there anything about the

11 contents of the report that you heard that you think might

12 prevent you from being a fair and impartial juror?

13     THE JUROR:  No, no.

14     THE COURT:  Would you tend to treat the testimony of a

15 police officer differently than the testimony of any other

16 witness simply because he or she is a police officer?

17     THE JUROR:  I would look at everything.  I just listen,

18 you know.

19     THE COURT:  All right.  And if I were to instruct you

20 that you should treat the testimony of each witness the

21 same, could you follow that instruction?

22     THE JUROR:  Yes.

23     THE COURT:  There may be evidence in this case that one

24 of the co-defendants, Mr. Hall, had some affiliation with

25 the Hells Angels Motorcycle Club, and that Mr. Chalue had

1    some affiliation with the Aryan Brotherhood.  If you were to

2    hear such evidence, would that evidence prevent you from

3    being a fair and impartial juror?

4         THE JUROR:  I would listen to all of the information.

5         THE COURT:  I understand that.  Let me ask it again a

6    let's suggest -- assuming you would hear it, listening to

7    all of the evidence, would that prevent you from being fair?

8         THE JUROR:  No.

9         THE COURT:  One of the victims in this case, Robert

10   Chadwell, was African American.  Mr. Chalue is Caucasian.

11   Would those facts prevent you from being a fair juror?

12        THE JUROR:  No.

13        THE COURT:  The defendant, Mr. Chalue, has an absolute

14   right to remain silent.  If he exercises that right and does

15   not testify, would you hold that against him in any way?

16        THE JUROR:  No.

17        THE COURT:  The evidence in this case may include some

18   testimony regarding the fact that the victims' bodies were

19   dismembered, and you may be exposed to some photographs of

20   that evidence.  If you were to hear and see such evidence,

21   would that prevent you from being a fair juror?

22        THE JUROR:  No, it wouldn't.

23        THE COURT:  All right.  Can you think of any other

24   reason, whether I've asked about it or not, why you would

25   not be fair if selected?

1          THE JUROR:  No.

2          THE COURT:  All right.  Thank you.

3          I'm going to ask you to step in the hallway -- oh, can

4    I ask you one other question?

5          THE JUROR:  Yes, sir.

6          THE COURT:  I see that you were on the Department of

7    Defense police.  Are you still working in that capacity?

8          THE JUROR:  No.  I still work for the government but

9    I'm not in that capacity right now.

10         THE COURT:  All right.  And is there anything about

11   your prior experience in law enforcement that you think

12   might cause you to favor one side over the other?

13         THE JUROR:  I just go by the rules, whatever

14   information I get, and I listen, you know.

15         THE COURT:  So do I understand, then, that you would

16   not favor one side over the other?

17         THE JUROR:  That's correct.

18         THE COURT:  All right.  Did you raise your card in

19   response to any questions that I asked other than that?

20         THE JUROR:  No, I did not.

21         THE COURT:  Thank you, Mr. Pedro.

22         (The juror exited.)

23         THE COURT:  Find him indifferent.

24         MR. CAPELESS:  The Commonwealth is content with this

25   juror, Your Honor.

1          MR. FRANK:  Challenge.

2          THE COURT:  All right.

3          (The juror entered.)

4          THE COURT:  Mr. Pedro, thank you for your service this

5     morning.

6          You have been excused.

7          THE JUROR:  All right.  Thank you very much.

8          VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 31

9          COURT OFFICER:  Juror Number 31.

10          THE COURT:  Mr. Tyler, good morning.

11          THE JUROR:  Hello.

12          THE COURT:  Did you recognize any name on that list of

13     witnesses?

14          THE JUROR:  No, I didn't.

15          THE COURT:  I see from your biographical form that you

16     are or someone in your family was arrested, and you believe

17     they were falsely arrested.  Was that you or someone else?

18          THE JUROR:  That was me.

19          THE COURT:  All right.  And did a criminal case

20     actually proceed from that?

21          THE JUROR:  It went to trial.

22          THE COURT:  All right.  Was there some sort of

23     conviction?

24          THE JUROR:  No -- well, I got probation violation for

25     being arrested.

1    THE COURT:  I don't mean to pry.  What was the nature

2    of the charge you got arrested for?

3    THE JUROR:  I got pulled over for a breaking and

4    entering, for something I didn't do.

5    THE COURT:  Was there anything about that experience

6    that you think might cause you to favor one side over the

7    other in this case?

8    THE JUROR:  Honestly, yes.  I have a little thing about

9    the S.P.D. right now.

10   THE COURT:  You are excused.

11   VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 32:

12   COURT OFFICER:  Juror Number 32.

13   THE COURT:  Is it Ms. Manos?

14   THE JUROR:  Yes.

15   THE COURT:  Ms. Manos, good morning.

16   THE JUROR:  Good morning.

17   THE COURT:  Did you -- I'm sorry.  Did you have a

18   chance to read that list of witnesses?

19   THE JUROR:  I did.

20   THE COURT:  Did you recognize any names?

21   THE JUROR:  No, I did not.

22   THE COURT:  The trial of this case, we anticipate, will

23   last approximately four weeks, proceeding each day from 9:30

24   in the morning until 4:00 in the afternoon.  Bearing in mind

25   that schedule, the importance of this case, and our need for

1   good jurors like you, are you available to help us?

2         THE JUROR:  Yes.

3         THE COURT:  Have you or any member of your family ever

4   been the victim of a crime of violence?

5         THE JUROR:  No.

6         THE COURT:  Have you ever seen or heard anything about

7   this case in media reports?

8         THE JUROR:  Yes.

9         THE COURT:  Did you see something today or on a prior

10  occasion?

11        THE JUROR:  Prior occasions.

12        THE COURT:  Can you estimate for us approximately how

13  long ago it was?

14        THE JUROR:  Roughly three years ago.

15        THE COURT:  Was it print or broadcast media or both?

16        THE JUROR:  Broadcast media.

17        THE COURT:  What do you recall, if you recall, hearing

18  on that report?

19        THE JUROR:  All I did hear was that three people were

20  murdered and that they were found in Becket, and that's all

21  I heard.

22        THE COURT:  And is there anything about the contents of

23  that report that you think might interfere with your ability

24  to be a fair and impartial juror?

25        THE JUROR:  No.

1        THE COURT:  Have you ever discussed the case with

2   anyone?

3        THE JUROR:  No.

4        THE COURT:  Would you tend to believe or disbelieve the

5   testimony of a police officer simply because he or she is

6   employed as a police officer?

7        THE JUROR:  Disbelieve.

8        THE COURT:  I'm sorry?

9        THE JUROR:  I would disbelieve -- not believe them just

10  because they are a police officer.

11       THE COURT:  You would -- in other words, if any police

12  officer came in the courtroom and testified, you would

13  automatically disbelieve them?

14       THE JUROR:  No, not necessarily.  I just don't think

15  their opinion is greater than others.

16       THE COURT:  Well, let me explore that a little bit.

17  One of the things that I will be instructing the jurors is

18  that they should evaluate the testimony of each witness

19  independently and that they should judge the witnesses'

20  credibility independently.  It sounded to me, based on your

21  initial response, as if based on some personal experience,

22  you would tend to disbelieve police officers as a result of

23  their employment.  Is that accurate?

24       THE JUROR:  I don't know how to explain it.  I just

25  come from -- my father is a police officer, and I don't

1  always believe that their decision or what they do is

2  correct.

3       THE COURT:  All right.  Does your father know that?

4       THE JUROR:  Yes.  Unfortunately, he doesn't agree

5  but --

6       THE COURT:  All right.  Well, it sounds to me like you

7  have developed in your life experience some scepticism of

8  police officers as a category of people; is that fair?

9       THE JUROR:  Yeah.

10      THE COURT:  All right.  You are excused.

11      THE JUROR:  Thank you.

12      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 33

13      COURT OFFICER:  Juror Number 33.

14      THE COURT:  Ms. Grimaldi, good morning.

15      THE JUROR:  Good morning.

16      THE COURT:  Did you recognize any names on that list?

17      THE JUROR:  No, I did not.

18      THE COURT:  We anticipate the trial of this case will

19  last approximately four weeks, proceeding from 9:30 in the

20  morning until 4:00 each day.  Bearing in mind that schedule,

21  the importance of this case, and our need for good jurors

22  like you, are you available to help us?

23      THE JUROR:  I'm starting a new job next week.  I'm also

24  leaving for North Carolina next Friday for a wedding and an

25  extended vacation.  After that, I'm fine but --

1      THE COURT:  Well, let me ask you this:  It sounds like,

2  on a personal level, you have a lot on your plate in the

3  next several weeks and missing either the vacation or the

4  job, beginning of your job, would pose a hardship for you;

5  is that fair?

6      THE JUROR:  Yes.

7      THE COURT:  You are excused.

8      THE JUROR:  All right.  Thank you.

9  VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 34

10  COURT OFFICER:  Juror Number 34.

11      THE COURT:  Ms. Hillman, good morning.

12      THE JUROR:  Hi.  Good morning.

13      THE COURT:  Did you recognize any names on that list?

14      THE JUROR:  No, I didn't.

15      THE COURT:  Ms. Hillman, we anticipate that the length

16  of this trial will be approximately four weeks, proceeding

17  from 9:30 in the morning until 4:00 each day.  Bearing in

18  mind that schedule, the importance of this case, and our

19  need for good jurors like you, are you available to help us?

20      THE JUROR:  No, because my mother is dying.  She is in

21  the hospital, and they only gave her one month to live.

22  That's all.  So I can't -- can't do it.  I need to spend

23  time with my mom.

24      THE COURT:  And she's hospitalized now?

25      THE JUROR:  She is in the nursing home.  They only gave

1   her a month to live.

2       THE COURT:  All right.  I'm sorry to hear that.  I wish

3   you and your mother good luck.

4       You are excused.

5       THE JUROR:  Okay.  Thank you.

6       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 35

7       COURT OFFICER:  Juror Number 35.

8       THE COURT:  Good morning.  Is it Ms. Donahue?

9       THE JUROR:  Yes.

10      THE COURT:  Ms. Donahue, did you recognize any names on

11  that list of witnesses?

12      THE JUROR:  No, I did not.

13      THE COURT:  We anticipate, Ms. Donahue, that this case

14  will take approximately four weeks to complete, proceeding

15  each day from 9:30 in morning until 4:00 in the afternoon.

16  Bearing in mind that schedule and the importance of this

17  case and our need for good jurors like you, are you

18  available to help us?

19      THE JUROR:  To be quite honest with you, sir, I'm an

20  office supervisor of a very busy medical practice.  For me

21  to be gone for four weeks would be pretty bad, and I have

22  new staff starting on Monday.  I'm supposed to train them.

23      THE COURT:  Well, let me ask you:  Do you think your

24  professional obligations would distract you if you were

25  selected to sit on a jury -- a trial of this duration?

1          THE JUROR:  They certainly would.

2          THE COURT:  You are excused.

3          THE JUROR:  Thank you.

4          VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 37

5          COURT OFFICER:  Juror Number 37.

6          THE COURT:  Ms. Roberts, good morning.

7          THE JUROR:  Good morning.

8          THE COURT:  Did you recognize any names on that list?

9          THE JUROR:  No.

10         THE COURT:  We anticipate the trial of this case will

11    last approximately four weeks, each day proceeding from 9:30

12    until 4:00.  Bearing in mind that schedule, the importance

13    of this case, and our need for good jurors like you, are you

14    available to help us?

15         THE JUROR:  Not really.  I have a two-year-old and a

16    four-year-old.  It's hard to find day care.

17         THE COURT:  All right.  You have listed Noble Hospital

18    as your current employer?

19         THE JUROR:  Yes.

20         THE COURT:  So are you gone from the house each day?

21         THE JUROR:  I just work on the weekends.

22         THE COURT:  I see.  So during the week, you are the

23    primary caretaker for your children?

24         THE JUROR:  Yes.

25         THE COURT:  Would it be either a family or economic

1  hardship for you to be absent from the home during the week

2  for four weeks?

3       THE JUROR:  It may be a family but even that's hard;

4  even today it was hard to find someone.

5       THE COURT:  So you don't know if you would be able to

6  find someone?

7       THE JUROR:  Yeah.

8       THE COURT:  And you said the ages of your children are

9  two and four?

10      THE JUROR:  Yes.

11      THE COURT:  You are excused.

12      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 40

13      COURT OFFICER:  Juror Number 40.

14      THE COURT:  Good morning, ma'am.

15      THE JUROR:  Good morning.

16      THE COURT:  Did you recognize any names on that list of

17  witnesses?

18      THE JUROR:  No.

19      THE COURT:  All right.  We anticipate the trial of this

20  case will last for four weeks, proceeding each day from 9:30

21  in the morning until 4:00 in the afternoon.  Bearing in mind

22  that schedule and the importance of this case and our need

23  for good jurors like you, are you available to help us?

24      THE JUROR:  I don't think so.

25      THE COURT:  Why is that?

1        THE JUROR:  I don't think so, my English good enough to

2   understand exactly.

3        THE COURT:  Did you have difficulty understanding my

4   presentation earlier this morning?

5        THE JUROR:  Some of the stuff I just get, like, okay.

6        THE COURT:  All right.  So some of the questions you

7   did not understand?

8        THE JUROR:  No, I understand or no, but like I also

9   have four kids at home.

10        THE COURT:  Let's stick with the language barrier at

11   first.

12        Are you concerned you might not understand some of the

13   testimony?

14        THE JUROR:  Yeah.

15        THE COURT:  You are excused.

16        THE JUROR:  Thank you.

17        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 41

18        COURT OFFICER:  Juror Number 41.

19        THE COURT:  Ms. Ballard, good morning.

20        THE JUROR:  Good morning.

21        THE COURT:  Did you recognize any names on that list of

22   witnesses?

23        THE JUROR:  I did not.

24        THE COURT:  You are a college sophomore?

25        THE JUROR:  Yes.

1        THE COURT:  Is your semester ongoing?

2        THE JUROR:  Yes.

3        THE COURT:  Are you missing -- or let me ask it this

4   way:  If you were to get involved in a trial scheduled to

5   last four weeks, would you be missing classes and finals?

6        THE JUROR:  Yes.

7        THE COURT:  You are excused.

8        THE JUROR:  Thank you.

9        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 42

10       COURT OFFICER:  Juror Number 42.

11       THE COURT:  Ms. Hill, good morning.

12       THE JUROR:  Good morning.

13       THE COURT:  Did you recognize any names on that list of

14   witnesses?

15       THE JUROR:  Yes.  Sergeant Michael Hill.  That's my

16   ex-brother-in-law.

17       THE COURT:  Your ex-brother-in-law?

18       THE JUROR:  Yes.

19       THE COURT:  Let's assume for a moment that he testifies

20   in this case.  Do you think, based on your relationship with

21   him, you might treat his testimony differently than that of

22   other witnesses?

23       THE JUROR:  No.  I haven't even seen him in, like,

24   twenty years.  I don't really know him.

25       THE COURT:  All right.  We anticipate the trial of this

1    case will last four weeks, proceeding each day from 9:30 in

2    the morning until 4:00 in the afternoon.  Bearing in mind

3    that schedule, the importance of this case, and our need for

4    good jurors like you, are you available to help us?

5          THE JUROR:  Yes.

6          THE COURT:  All right.  Have you or any member of your

7    family ever been the victim of a crime of violence?

8          THE JUROR:  No, I don't think so.

9          THE COURT:  All right.  I see that you have some family

10   members who were arrested and charged.  Can you tell us what

11   that family member was charged with?

12         THE JUROR:  I am not positive.  I believe he was

13   charged with, probably, domestic violence and killing a

14   snake.

15         THE COURT:  All right.  Is there anything about that

16   experience that you lived through with your brother that you

17   think might cause you to favor one side over the other in

18   this case?

19         THE JUROR:  No.  I didn't -- didn't go to the court or

20   anything.

21         THE COURT:  All right.  I see you also sat on a jury

22   six years ago?

23         THE JUROR:  Yes.

24         THE COURT:  What kind of case was that?

25         THE JUROR:  It was a biker gang that beat somebody up

1   for something.

2       THE COURT:  Let me ask you a question about that.

3   There will likely be evidence in this case that one of the

4   co-defendants, Mr. Hall, had some affiliation with the Hells

5   Angels Motorcycle Club, and that this defendant, Mr. Chalue,

6   had some affiliation with the Aryan Brotherhood.  Based on

7   your life experience, including that prior service as a

8   juror, do you think if you were to hear such evidence, it

9   could prevent you from being a fair and impartial juror?

10      THE JUROR:  No.

11      THE COURT:  One of the victims in this case, Robert

12  Chadwell, was African American.  Mr. Chalue is Caucasian.

13  Would those facts prevent you from being fair and impartial?

14      THE JUROR:  No.

15      THE COURT:  Mr. Chalue has a right to remain silent in

16  this trial.  If he exercises that right and does not

17  testify, would you hold that against him in any way?

18      THE JUROR:  No.

19      THE COURT:  Let me go back to that jury service for

20  just a moment.  Was that case tried here in this building?

21      THE JUROR:  Yes.

22      THE COURT:  And did the jury reach a verdict in the

23  case?

24      THE JUROR:  Yes.

25      THE COURT:  What was the verdict?

1        THE JUROR:  Guilty.

2        THE COURT:  Was there anything about that experience

3   that -- as a juror that you think might affect your ability

4   to be fair in this case?

5        THE JUROR:  No.

6        THE COURT:  There may be evidence in this case that the

7   victims' bodies were dismembered and photographs may be

8   introduced.  Is there anything about that kind of evidence

9   that would prevent you from being a fair and impartial

10  juror?

11       THE JUROR:  No.

12       THE COURT:  Can you think of any reason, whether I have

13  asked about it or not, why you would not be fair and

14  impartial if selected?

15       THE JUROR:  No.

16       THE COURT:  Did you raise your card in response to any

17  of my questions that I asked of the entire group?

18       THE JUROR:  Yes.

19       THE COURT:  And do you remember what the question was?

20       THE JUROR:  Yes.  One was if you know -- if you're

21  related to anybody in the police force.

22       THE COURT:  Yes.

23       THE JUROR:  My sister is also a police officer.

24       THE COURT:  Your sister is?

25       THE JUROR:  Yeah.

1      THE COURT:  Let me ask again about that.

2      THE JUROR:  Go ahead, yup.

3      THE COURT:  Is there anything about your sister's line

4  of work or your relationship with her that you think might

5  cause you to favor one side over the other in this case?

6      THE JUROR:  No.

7      THE COURT:  All right.  The next point was?

8      THE JUROR:  The other one I just want to let you know

9  I'm a little hard of hearing.

10      THE COURT:  All right.  Have you been able to hear my

11  questions here?  It seems like you have been able to hear

12  me.

13      THE JUROR:  Yes.

14      THE COURT:  Were you able to hear my presentation

15  earlier?

16      THE JUROR:  Yes, except if somebody coughs or

17  something, I won't know what you said.

18      THE COURT:  All right.  Well, thank you for bringing

19  that to my attention.

20      If you're having difficulty -- first, if you're

21  selected as a juror and you find yourself having difficulty

22  hearing, would you promise me you will raise your hand and

23  let me know?

24      THE JUROR:  Yes.

25      THE COURT:  All right.  Now, finally, have you seen or

1   heard anything about this case in the media reports or have

2   you discussed it with anyone?

3        THE JUROR:  No.

4        THE COURT:  Thank you.

5        I'm going to ask you to step out for just a minute.

6        THE JUROR:  Okay.

7        (The juror exited.)

8        THE COURT:  I find her indifferent.

9        MR. CAPELESS:  The Commonwealth is content with this

10   juror, Your Honor.

11        MR. FRANK:  If -- Your Honor, if I may just have one

12   second.

13        THE COURT:  You may.

14        (Off-the-record discussion with defense counsel and the

15   defendant.)

16        THE COURT:  Mr. Curtis, just so you know, I'm going to

17   take a break after we deal with this witness (sic).

18        (Pause)

19        MR. FRANK:  Challenge.

20        THE COURT:  Very well.

21        (The juror entered.)

22        THE COURT:  Ms. Hill, thank you for your service this

23   morning.

24        You have been excused?

25        THE JUROR:  Oh, okay.  Thank you.

1          (The juror exited.)

2          THE COURT:  Counsel, we will take a fifteen-minute

3     recess.

4          (The Court exited at 11:29 a.m.)

5          (* * * * *)

6          (The Court entered at 11:46 a.m.)

7          (The defendant was present.)

8          THE COURT:  Bring the next juror in, please.

9          (Pause)

10         MR. FRANK:  While we are waiting for that juror, if we

11    can confirm the peremptories we have left.

12         THE CLERK:  I have the defendant has five remaining and

13    the Commonwealth has seven.

14         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 43

15         COURT OFFICER:  Juror Number 43.

16         THE COURT:  Mr. Mathes, good morning.

17         THE JUROR:  Good morning, sir.

18         THE COURT:  Did you recognize any names on that witness

19    list?

20         THE JUROR:  No, sir.

21         THE COURT:  We anticipate the trial of this case will

22    last four weeks, proceeding each day from 9:30 in the

23    morning until 4:00 in the afternoon.  Bearing in mind that

24    schedule, the importance of this case, and our need for good

25    jurors like you, are you available to help us?

1       THE JUROR:  Yes, sir.

2       THE COURT:  Have you or any member of your family ever

3  been the victim of a crime of violence?

4       THE JUROR:  No, sir.

5       THE COURT:  Did you raise your card in response to any

6  of my earlier questions today?

7       THE JUROR:  No, sir.

8       THE COURT:  Have you seen or heard anything about this

9  case in any media reports?

10      THE JUROR:  No, sir.

11      THE COURT:  Have you ever discussed it with anyone?

12      THE JUROR:  No, sir.

13      THE COURT:  There may be evidence in this case that

14  Mr. Hall, one of the co-defendant's, had some affiliation

15  with the Hells Angels Motorcycle Club, and this defendant,

16  Mr. Chalue, had some affiliation with the Aryan Brotherhood.

17  If you were to hear such evidence, would that evidence

18  prevent you from being a fair and impartial juror?

19      THE JUROR:  No, sir.

20      THE COURT:  One of the victims in this case, Robert

21  Chadwell, was an African American.  The defendant,

22  Mr. Chalue, is Caucasian.  Would that evidence prevent you

23  from being a fair and impartial juror?

24      THE JUROR:  No, sir.

25      THE COURT:  The defendant, Mr. Chalue, has an absolute

1    right to remain silent.  If he exercises that right and does

2    not testify in this trial, would you hold that against him

3    in any way?

4         THE JUROR:  No, sir.

5         THE COURT:  The evidence in this case may include

6    photographs or testimony regarding the fact that the

7    victims' bodies were dismembered.  If you were to see and

8    hear such evidence, would that prevent you from being a fair

9    and impartial juror?

10        THE JUROR:  No, sir.

11        THE COURT:  Can you think of any reason, whether I

12   asked about it or not, why you would not be fair if selected

13   as a juror in this case?

14        THE JUROR:  No, sir.

15        THE COURT:  Thank you.

16        If you could step out for just a minute.

17        THE JUROR:  Yes, sir.

18        THE COURT:  Hold on one minute.  Can I ask one more

19   question I forgot?

20        Would you tend to believe or disbelieve the testimony

21   of a police officer simply because he is a police officer?

22        THE JUROR:  No, sir.

23        THE COURT:  Thank you.

24        (The juror exited.)

25        THE COURT:  Find him indifferent.

1     MR. CAPELESS:  The Commonwealth challenges this juror,

2 Your Honor.

3     THE COURT:  All right.

4     (The juror entered.)

5     THE COURT:  Mr. Mathes, thank you for your service.

6     You are excused.

7     THE JUROR:  Yes, sir.

8     VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 45

9     COURT OFFICER:  Juror Number 45.

10    THE COURT:  Mr. Wynn, good morning.

11    THE JUROR:  Good morning.

12    THE COURT:  Did you recognize any names on that list of

13 witnesses?

14    THE JUROR:  I did not, Your Honor.

15    THE COURT:  All right.  We anticipate the trial of this

16 case will last approximately four weeks, each day proceeding

17 from 9:30 in the morning until 4:00 in the afternoon.

18 Bearing in mind that schedule, the importance of this case,

19 and our need for good jurors like you, are you available to

20 help us?

21    THE JUROR:  Not including personal or professional

22 matters, you said?

23    THE COURT:  Well, if you believe that you have a

24 substantial hardship for some reason, this would be the time

25 to tell me.

1           THE JUROR:  Just employment, Your Honor.

2           THE COURT:  All right.  And you work at Two Rivers

3    Burrito Company?

4           THE JUROR:  That's correct.

5           THE COURT:  What do you do?

6           THE JUROR:  I'm a family business.  I help my two

7    brothers run the shop.

8           THE COURT:  All right.  If you were absent -- what

9    hours do you work?

10          THE JUROR:  I work -- usually work 1:00 to close, Your

11   Honor.

12          THE COURT:  1:00 in the afternoon until closing time at

13   night?

14          THE JUROR:  Yes, correct.

15          THE COURT:  And if you were to miss, for a period of

16   four weeks, Monday through Friday, from 1:00 until 4:00,

17   would that pose a substantial hardship for you?

18          THE JUROR:  The business, yes.

19          THE COURT:  Would it cause an economic hardship for

20   you?

21          THE JUROR:  Yes.

22          THE COURT:  You are excused.

23          THE JUROR:  Thank you, sir.

24          VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 47

25          COURT OFFICER:  Juror Number 47.

1        THE COURT:  Ms. Sole, good morning -- it is still

2   morning.  Good morning.

3        Did you recognize any names on that list of witnesses?

4        THE JUROR:  Hi.

5        No.  I'm not sure.  I don't think so.  I noticed one

6   name -- I don't think it's my cousin because it said North

7   Adams -- Jason Lemieux.

8        THE COURT:  What was the name?

9        THE JUROR:  Jason Lemieux.

10       THE COURT:  And your Jason Lemieux, that is your cousin

11   does not live in North Adams?

12       THE JUROR:  No.  He lives in Meredith or Meriden.

13       THE COURT:  I take it, then, you do not recognize any

14   names?

15       THE JUROR:  No.

16       THE COURT:  We anticipate the trial of this case will

17   last four weeks, proceeding each day from 9:30 in the

18   morning until approximately 4:00 in the afternoon.  Bearing

19   in mind that schedule, the importance of this case, and our

20   need for good jurors like you, are you available to help us?

21       THE JUROR:  I think it would be difficult for me to do

22   that.

23       THE COURT:  Can you tell me why?

24       THE JUROR:  I have a couple of things.  One is I'm a

25   teacher, school teacher.  Next -- we have our MCAS coming up

1    May 5th and 7th.  I have to get my kids ready next week.  It

2    has to be done by licensed teachers.  It will put the school

3    district in a difficult situation.  My evaluation is based

4    on my students' success of that test.  And then the second

5    thing is I recently just broke my tooth, and I'm going to a

6    specialist in West Hartford for an implant tomorrow at 3:00.

7         THE COURT:  All right.  Well, we're actually not going

8    to be in session tomorrow, so let me put that aside.

9         But let me ask you this:  Do you think that as a result

10   of your professional obligations, if you were selected to

11   sit on the jury, that you would be distracted?

12        THE JUROR:  In terms of my other obligations?

13        THE COURT:  Yes.

14        THE JUROR:  Correct.

15        THE COURT:  You are excused.

16        THE JUROR:  Thank you.

17        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 48

18        COURT OFFICER:  Juror Number 48.

19        THE COURT:  Ms. Sanchez, good morning.

20        THE JUROR:  Good morning.

21        THE COURT:  Did you recognize any names on that list of

22   witnesses?

23        THE JUROR:  Yes, sir, several.

24        THE COURT:  All right.  Can you tell me the names that

25   you recall recognizing?

1          THE JUROR:  Sergeant Christopher Sanchez.

2          THE COURT:  All right.  Is he related to you?

3          THE JUROR:  He's my son.

4          Trooper David Sanford who works with my son.

5          THE COURT:  All right.  Now, let me ask you a question

6     before you even go further.  If those witnesses were to

7     testify in this case, do you believe you would be able to

8     treat their testimony in the same way as other witnesses?

9          THE JUROR:  No.

10         THE COURT:  You are excused.

11         THE JUROR:  Thank you.

12         MR. CAPELESS:  Your Honor, can I just raise a point

13    because of stipulations we've agreed to.

14         COURT OFFICER:  Juror Number 49.

15         THE COURT:  Can you hold for just a minute.  I'm sorry,

16    sir.

17         We will be with you in just a minute.

18         (The juror exited.)

19         MR. CAPELESS:  A number of witnesses will not be

20    testifying, we don't expect, and Trooper Sanchez was one of

21    them.

22         THE COURT:  All right.  So there may be an issue -- I

23    would just ask if I might inquire who we expect to testify?

24    I have assumed -- without knowing there was a possibility --

25    that everyone on your list might testify.  If you can tell

1    me that they will not, then that might ease the burden here,

2    so I will turn to you if that comes up.

3         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 49

4         COURT OFFICER:   Juror Number 49.

5         THE COURT:  Mr. McCarthy, thank you for your patience.

6         Did you get a chance to look at that list of witnesses?

7         THE JUROR:  Yes.

8         THE COURT:  Did you recognize any names?

9         THE JUROR:  No.

10        THE COURT:  The trial of this case we anticipate will

11   last approximately four weeks, proceeding each day from 9:30

12   in the morning until approximately 4:00 with certain

13   exceptions.  Bearing in mind that schedule, the importance

14   of this case, and our need for good jurors like you, are you

15   available to help us?

16        THE JUROR:  Yes.

17        THE COURT:  Have you or any member of your family ever

18   been the victim of a crime of violence?

19        THE JUROR:  Yes.

20        THE COURT:  Was that you or someone else?

21        THE JUROR:  My wife.

22        THE COURT:  I don't mean to pry but did a criminal case

23   arise from that?

24        THE JUROR:  It was stopped before it got that far.

25        THE COURT:  How long ago was it?

1           THE JUROR:  It was thirteen years ago.

2           THE COURT:  Was there anything about that experience

3    you shared or discussed with your wife that you think might

4    cause you to favor one side over the other in this case?

5           THE JUROR:  I do not think so.

6           THE COURT:  All right.  Have you seen or heard anything

7    about this case in the media or have you discussed it with

8    anyone?

9           THE JUROR:  I've seen stuff a long time ago, I think,

10   when it had first occurred because I read Masslive here and

11   there.

12          THE COURT:  All right.

13          THE JUROR:  But I do not really know.

14          THE COURT:  Let me ask you if you recall anything about

15   the contents of the report that you read?

16          THE JUROR:  No, I do not.

17          THE COURT:  Was there anything about the report that

18   you recall seeing that you think might interfere with your

19   ability to be fair and impartial?

20          THE JUROR:  I do not.

21          THE COURT:  Would you tend to believe the testimony of

22   a police officer simply because he is employed as a police

23   officer?

24          THE JUROR:  No, I do not -- I would not.

25          THE COURT:  There may be evidence in this case that

1    Mr. Hall, one of the co-defendants, had some affiliation
2    with the Hells Angels Motorcycle Club, and this defendant,
3    Mr. Chalue, had some affiliation with the Aryan Brotherhood.
4    If you were to hear such evidence, would that evidence
5    prevent you from acting fairly and impartially?
6         THE JUROR:  No, it would not.
7         THE COURT:  Robert Chadwell, one of the victims in this
8    case, was African American.  The defendant is Caucasian.
9    Would those facts prevent you from acting fairly and
10   impartially?
11        THE JUROR:  No, it would not.
12        THE COURT:  Mr. Chalue has a right to remain silent in
13   this trial.  If he exercises that right and does not
14   testify, would you hold that against him in any way?
15        THE JUROR:  I would not.
16        THE COURT:  There may be evidence in this case that the
17   victims' bodies were dismembered, and the jury may be
18   exposed to photographs of the conditions of the bodies.
19   Would exposure to such evidence prevent you from being a
20   fair juror?
21        THE JUROR:  I don't believe so.
22        THE COURT:  Can you think of any other reason, whether
23   I asked about it or not, why you would not be fair and
24   impartial?
25        THE JUROR:  No, I do not.

1      THE COURT:  I see you have a second cousin that is a

2   Springfield Police Officer?

3      THE JUROR:  Correct.

4      THE COURT:  Is there anything about the nature of his

5   line of work or her line of work or your relationship with

6   your second cousin that you think might cause you to favor

7   one side over the other?

8      THE JUROR:  No.  It had asked if there was somebody but

9   it's not somebody that I really have interaction with.

10      THE COURT:  All right.  And you also served on a jury

11   before.  Did the jury in that other case reach a verdict?

12      THE JUROR:  We did.

13      THE COURT:  What was that verdict?

14      THE JUROR:  Not guilty.

15      THE COURT:  And did you respond by raising your card to

16   any of my earlier questions other than the one relating to

17   law enforcement officers that might be family members?

18      THE JUROR:  No.

19      THE COURT:  Thank you very much.

20      If I could ask you to step out for just a minute.

21      (The juror exited.)

22      THE COURT:  Find him indifferent.

23      MR. CAPELESS:  The Commonwealth is content with this

24   juror, Your Honor.

25      MR. FRANK:  We have him recorded as having raised his

1    hand for having read, seen, or heard -- discussed the case.

2         THE COURT:  Well, I did ask him that question, and he

3    did respond to it.

4         MR. FRANK:  He did?  If I may have just one moment.

5         (Off-the-record discussion with defense counsel and the

6    defendant.)

7         MR. FRANK:  Content.

8         THE COURT:  Very well.

9         (The juror entered.)

10        THE COURT:  Mr. McCarthy, you have been selected to sit

11   as juror in this case.  You're going to be in seat number

12   twelve.

13        THE JUROR:  Okay.

14        THE COURT:  We are actually not going to begin the

15   trial until Friday, so in a moment, I'm going to excuse you,

16   and the Court Officers will explain when and where to report

17   on Friday.

18        THE JUROR:  Okay.

19        THE COURT:  But it's important that you understand that

20   between now and Friday, you should not observe any media

21   reports of the case, you should not conduct any independent

22   investigation, including any sort of electronic research

23   regarding the case, and you should not discuss it with

24   anyone except to explain to those that need to know --

25   friends or family members or your employer -- you have been

1    selected to sit on a jury and the anticipated duration.

2    Beyond that, I ask you say no more.

3         THE JUROR:  Okay.

4         THE COURT:  We will see you Friday morning at 9:30.

5         THE JUROR:  Okay.

6         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 50:

7         COURT OFFICER:  Juror Number 50.

8         THE COURT:  Mr. Gay, good morning.

9         THE JUROR:  Good morning, sir.

10        THE COURT:  Did you notice or recognize any of the

11   names of potential witnesses?

12        THE JUROR:  On the witness list, a couple of names

13   sounded familiar, but I really don't know them.

14        THE COURT:  You are not certain?

15        THE JUROR:  I'm not certain, correct.

16        THE COURT:  Do you recall which names looked familiar?

17        THE JUROR:  From the air wing of the Mass. State

18   Police, Jeffrey -- can't remember his last name.  I actually

19   had met him a couple of times.

20        THE COURT:  Let's just assume for the sake of

21   discussion that that witness is called, do you think, based

22   on your relationship with that witness, you would treat his

23   testimony any differently than you would treat the testimony

24   of any other witness?

25        THE JUROR:  No.

1          THE COURT:  Was there any other name you recognized?

2          THE JUROR:  On the list, no.

3          THE COURT:  All right.  Well, that would be the only

4     place where you would see -- did you recognize any other

5     names?

6          THE JUROR:  I thought you were referring to any of the

7     attorneys or the defendant.

8          THE COURT:  All right.  Well, that's a fair point.

9          Did you raise your card when I asked that question

10    earlier?

11         THE JUROR:  I did, sir.

12         THE COURT:  Tell me who you know and how you know him?

13         THE JUROR:  Actually, I knew the defendant.  I used to

14    work for the Key program back in early '80s.  I met David

15    there.  Also I'm a police officer in Chicopee.  I've run

16    across reports with his name on it.  If you want me to get

17    specific, I could, sir.

18         THE COURT:  Well, I'm not certain I need you to do

19    that.

20         THE JUROR:  Okay.

21         THE COURT:  But based on your knowledge of Mr. Chalue

22    and your personal and professional past involvement with

23    him, do you think it would be difficult to be a fair and

24    impartial juror?

25         THE JUROR:  Think it might be.

1        THE COURT:  Thank you for your honesty.

2        You are excused.

3        THE JUROR:  Thank you.

4        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 51

5        COURT OFFICER:  Juror Number 51.

6        THE COURT:  Good afternoon.  Is it Ms. Milledge?

7        THE JUROR:  Milledge.

8        THE COURT:  Did you recognize any names on the list of

9   witnesses?

10       THE JUROR:  No.

11       THE COURT:  We anticipate the trial of this case will

12   last approximately four weeks, proceeding each day from 9:30

13   until 4:00 in the afternoon.  Bearing in mind that schedule,

14   the importance of this case, and our need for good jurors

15   like you, are you available to help us?

16       THE JUROR:  Yes.

17       THE COURT:  Have you or any member of your family ever

18   been the victim of a crime of violence?

19       THE JUROR:  No.

20       THE COURT:  Have you seen or heard anything about this

21   case in the media or have you discussed it with anyone?

22       THE JUROR:  No.

23       THE COURT:  Would you tend to believe or disbelieve the

24   testimony of a police officer simply because he or she is a

25   police officer?

1     THE JUROR:  No.

2     THE COURT:  There may be -- let me ask you this:  Did

3  you respond to any of my earlier questions by raising your

4  card?

5     THE JUROR:  I didn't.

6     THE COURT:  I'm looking at your biographical form and

7  there are some areas that are left blank, so I just want to

8  make certain I understand those.

9     There is a section listed "experience with the law"

10  that says "do you have any such experience, yes or no"?  You

11  haven't checked anything, which I assume means you don't

12  have any.

13     THE JUROR:  I don't have any, no.

14     THE COURT:  All right.  Thank you.  And there's nothing

15  in the area of your spouse, which I assume means you're not

16  married?

17     THE JUROR:  Divorced.

18     THE COURT:  Thank you.

19     Can you tell me what type of work your ex-husband was

20  in?

21     THE JUROR:  He was a machine operator.  I don't

22  remember where.

23     THE COURT:  All right.  Thank you.

24     There may be evidence in this case that one of the

25  co-defendants, Mr. Hall, had some affiliation with the Hells

1    Angels Motorcycle Club, and that this defendant, Mr. Chalue,

2    had some affiliation with the Aryan Brotherhood.  If you

3    were to hear such evidence, would that evidence prevent you

4    from acting fairly and impartially in the case?

5         THE JUROR:  I don't think so.

6         THE COURT:  One of the victims was African American.

7    Mr. Chalue is Caucasian.  If you were to hear such evidence,

8    would that evidence prevent you from being a fair and

9    impartial juror?

10        THE JUROR:  No.

11        THE COURT:  The defendant, Mr. Chalue, has an absolute

12   right to remain silent in this trial.  If he exercises that

13   right and does not testify, would you hold that against him

14   in any way?

15        THE JUROR:  No.

16        THE COURT:  There may be evidence in this case that the

17   victims' bodies were dismembered, and you may see

18   photographs of that evidence.  If you were to see and hear

19   such evidence, would that prevent you from being a fair and

20   impartial juror?

21        THE JUROR:  I don't think so.

22        THE COURT:  All right.  Is there any other reason,

23   whether I have asked about it or not, why you would not be

24   fair and impartial if selected?

25        THE JUROR:  No.

1          THE COURT:  Thank you, Ms. Milledge.

2          I'm going to ask you to step out in the hallway for

3    just a second.

4          THE JUROR:  All right.

5          (The juror exited.)

6          THE COURT:  I find her indifferent.

7          MR. CAPELESS:  The Commonwealth is content with this

8    juror, Your Honor.

9          MR. FRANK:  Content, Your Honor.

10         THE COURT:  All right.  Very well.

11         (The juror entered.)

12         THE COURT:  Mrs. Milledge, you have been selected to

13   sit as a juror in this case.  You're going to be in seat

14   number thirteen.

15         Is that correct?

16         THE CLERK:  Yes, Your Honor.

17         THE COURT:  We're actually not going to start the trial

18   today, so in a minute, I'm going to excuse you and ask you

19   to return on Friday morning at 9:30.  The Court Officers

20   will show you where to report.

21         But before I do that, I want to give you some

22   cautionary instructions.

23         First, between now and next Friday -- this coming

24   Friday rather -- please don't discuss the case with anyone.

25   You can certainly explain that you have been selected to sit

1    as juror in a criminal case and the anticipated duration.

2    Beyond that, I order you to say no more.

3        Second, don't conduct any independent investigation

4    about the case in any way, including any sort of electronic

5    research.  And third, and finally, please do not observe any

6    media reports of the case, should there be any.

7        With that, Ms. Milledge, you are excused, and I will

8    see you Friday morning at 9:30.

9        THE JUROR:  All righty.

10   VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 52

11   COURT OFFICER:  Juror Number 52.

12   THE COURT:  Ms. Bisner, good afternoon.

13   THE JUROR:  Hi.

14   THE COURT:  Did you recognize any names on that list of

15   witnesses?

16   THE JUROR:  Not that I know of.

17   THE COURT:  We anticipate, Ms. Bisner, the trial of

18   this case will last approximately four weeks, proceeding

19   each day from 9:30 in the morning until 4:00 in the

20   afternoon.  Bearing in mind that schedule, the importance of

21   this case, and our need for good jurors like you, are you

22   available to help us?

23   THE JUROR:  The only issue is I'm also a professor at a

24   local college and need to be available for students that are

25   graduating this semester.

1          THE COURT:  When you say "be available for students,"
2   what do you mean?
3          THE JUROR:  I need to complete the curriculum, grade
4   their homework, do the grading.
5          THE COURT:  All right.  And how often do you teach?
6          THE JUROR:  Once a week.
7          THE COURT:  What day?
8          THE JUROR:  Tuesdays.
9          THE COURT:  All right.  What time is the class?
10         THE JUROR:  6:00 p.m.
11         THE COURT:  6:00 p.m.
12         And you reside in West Springfield?
13         THE JUROR:  Uh-huh.
14         THE COURT:  So if you were -- if you finished
15  responsibilities here in the courthouse by 4:00, you could
16  certainly arrive there in time, correct?
17         THE JUROR:  I could.
18         THE COURT:  All right.  Let me ask you this:  Have you
19  or any member of your family ever been the victim of a crime
20  of violence?
21         THE JUROR:  I filed a restraining order in the past.
22         THE COURT:  All right.  I don't mean to pry, but let me
23  simply ask you whether or not that experience, you think,
24  might cause you to favor one side over the other in this
25  case?

1        THE JUROR:  No.

2        THE COURT:  Have you seen or heard anything about this

3   case in the media?

4        THE JUROR:  Yes.

5        THE COURT:  Approximately how long ago?

6        THE JUROR:  When it happened.

7        THE COURT:  In 2011?

8        THE JUROR:  Yes.

9        THE COURT:  And do you recall the content of the report

10  at all?

11       THE JUROR:  Yeah, some of it, yes.

12       THE COURT:  All right.  And was it anything more than I

13  have described here in the courtroom today?

14       THE JUROR:  Yes.

15       THE COURT:  Can you tell me what you remember hearing?

16       THE JUROR:  I remember, you know, the details of the

17  crime, the association with different various groups.

18       THE COURT:  All right.  And would the contents of that

19  report that you recall reading or hearing interfere with

20  your ability to be a fair and impartial juror?

21       THE JUROR:  Yes.

22       THE COURT:  You are excused.

23       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 54

24       COURT OFFICER:  Juror Number 54.

25       THE COURT:  Good afternoon, ma'am.

1       THE JUROR:  Hi.

2       THE COURT:  Did you recognize any names on that list of

3  witnesses?

4       THE JUROR:  No.

5       THE COURT:  We anticipate that the trial of this case

6  will last approximately four weeks, proceeding each day from

7  9:30 in the morning until 4:00 in the afternoon.  Bearing in

8  mind that schedule, the importance of this case, and our

9  need for good jurors like you, are you available to help us?

10      THE JUROR:  I could.

11      THE COURT:  All right.  Have you or any member of your

12 family ever been the victim of a crime of violence?

13      THE JUROR:  I don't think so -- I was held up at

14 gunpoint once -- twice.  It was working in a convenience

15 store.

16      THE COURT:  That probably qualifies.

17      THE JUROR:  Okay.

18      THE COURT:  So let me inquire about that.

19      THE JUROR:  Right.

20      THE COURT:  Do you recall whether or not a criminal

21 prosecution arose as a result of those incidents?

22      THE JUROR:  No.  One of them, they never caught.  And

23 the other one was really stoned out, and I don't know what

24 happened to it.  I was never called.

25      THE COURT:  All right.  Was there anything about those

1   experiences that you think might cause you to favor one side
2   over the other in this case?
3        THE JUROR:  I don't think so.  This was a long time ago
4   and I barely remembered it until you -- until you asked.
5        THE COURT:  All right.
6        Did you respond to any of my earlier questions by
7   raising your card?
8        THE JUROR:  Yes.
9        THE COURT:  All right.  Do you recall which question
10  you responded to?
11       THE JUROR:  One of them was would I accept the
12  testimony of a police officer -- I forget exactly how you
13  phrased it.  I said yes, I would.
14       THE COURT:  All right.  So do you mean by your response
15  that you would tend to believe the testimony of a police
16  officer simply because he or she is a police officer?
17       THE JUROR:  Well, yeah.  I would think of it as expert
18  witness, like, their training and whatever makes them a good
19  witness.
20       THE COURT:  Thank you.
21       You are excused.
22       THE JUROR:  Okay.
23       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 56
24       COURT OFFICER:  Juror Number 56.
25       THE COURT:  Ms. Hunte-Powell, is that correct?

1        THE JUROR:  Yes.

2        THE COURT:  Good afternoon.

3        THE JUROR:  Good afternoon.

4        THE COURT:  Did you recognize any names on that list of

5    witnesses?

6        THE JUROR:  No.

7        THE COURT:  We anticipate that the trial of this case

8    will last approximately four weeks, proceeding each day from

9    9:30 in the morning until 4:00 in the afternoon.  Bearing in

10   mind that schedule, the importance of this case, and our

11   need for good jurors like you, are you available to help us?

12       THE JUROR:  I don't think so, because I have an

13   appointment to do an operation on my eye, and I am meeting

14   with the surgeon on the 30th which is next Monday.

15       THE COURT:  You're scheduled to have an operation on

16   your eye?

17       THE JUROR:  Yeah, cataracts.

18       THE COURT:  And you have an appointment on the 30th

19   regarding that?

20       THE JUROR:  Yes.

21       THE COURT:  And do you know yet when the surgery will

22   be?

23       THE JUROR:  That's when I will know when the surgery

24   will be, when I go in.

25       THE COURT:  And it might be sometime in May, is that

1  possible?

2       THE JUROR:  Yes.

3       THE COURT:  All right.  You are excused.

4       THE JUROR:  Thank you.

5       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 57

6       COURT OFFICER:  Juror Number 57.

7       THE COURT:  Mr. Auclair, good afternoon.

8       THE JUROR:  Hi.

9       THE COURT:  Did you recognize any names on that list of

10  witnesses?

11       THE JUROR:  No, I didn't.

12       THE COURT:  We anticipate, Mr. Auclair, that the trial

13  of this case will last approximately four weeks, proceeding

14  each day from 9:30 in the morning until 4:00 in the

15  afternoon, roughly.  Bearing in mind that schedule, the

16  importance of this case, and our need for good jurors like

17  you, are you available to help us?

18       THE JUROR:  I'm available mentally, but physically,

19  there's no way I could do this.

20       THE COURT:  All right.  Why don't you tell me why that

21  is?

22       THE JUROR:  A couple months back, I got put on

23  disability.  I've got -- my back is totally destroyed.  I

24  sit for fifteen minutes and then I have to stand for fifteen

25  minutes.  The only time I can get away with not moving is

1   when I'm laying down.  I got arthritis, bursitis, bulging

2   disc, and on top of it --

3       THE COURT:  Let me interrupt with a question.  I'm

4   sorry to interrupt.

5       THE JUROR:  Can't sit.  That's all.

6       THE COURT:  And when you do sit for extended periods of

7   time, are you in pain?

8       THE JUROR:  Yes.  I start spasming.  Friday I have my

9   next appointment at the pain clinic.

10      THE COURT:  I wish you good luck.

11      You are excused.

12      THE JUROR:  Thank you, sir.

13      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 58

14      COURT OFFICER:  Juror Number 58.

15      THE COURT:  Mr. Peterson, good afternoon.

16      THE JUROR:  Good afternoon.

17      THE COURT:  Did you recognize any names on that list of

18  witnesses?

19      THE JUROR:  I did not, sir.

20      THE COURT:  We anticipate the trial of this case will

21  last approximately four weeks, proceeding each day from 9:30

22  in the morning until 4:00 in the afternoon.  Bearing in mind

23  that schedule, the importance of this case, and our need for

24  good jurors like you, are you available to help us?

25      THE JUROR:  Sure, I guess, yeah.

1      THE COURT:  All right.  I see that you have a father

2  that is or was a police officer?

3      THE JUROR:  Still is currently, yes.

4      THE COURT:  All right.  And you and your spouse were

5  both employed at Westfield DYS?

6      THE JUROR:  Yes.

7      THE COURT:  Is there anything about your own personal

8  background or your father's line of work that you think

9  might cause you to favor one side over the other in this

10  case?

11      THE JUROR:  No, sir.

12      THE COURT:  All right.

13      Did you raise your card in response to any other

14  questions that I asked of the group?

15      THE JUROR:  I did not.

16      THE COURT:  Do you recall ever hearing or seeing

17  anything about this case in media or discussing it with

18  anyone?

19      THE JUROR:  Don't watch the news, sir.

20      THE COURT:  I will take that as a no.

21      THE JUROR:  As a no.

22      THE COURT:  Have you or any family member ever been the

23  victim of a crime of violence?

24      THE JUROR:  Not that I'm aware of.

25      THE COURT:  The -- one of the co-defendants in this

1    case, Mr. Hall, had some affiliation with the Hells Angels

2    Motorcycle Club, and you may hear evidence about that.  This

3    defendant, you may hear evidence, had some affiliation with

4    the Aryan Brotherhood.  If you were to hear such evidence,

5    would that prevent you from acting as a fair and impartial

6    juror?

7         THE JUROR:  No, sir.

8         THE COURT:  One of the victims in this case, Robert

9    Chadwell, was an African American.  Mr. Chalue is Caucasian.

10   Would those facts prevent you from acting fairly and

11   impartially?

12        THE JUROR:  No, sir.

13        THE COURT:  Mr. Chalue has a right to remain silent at

14   his trial, and if he exercises that right at this trial and

15   chooses not to testify, would you hold that against him?

16        THE JUROR:  I would not.

17        THE COURT:  Would you tend to believe the testimony of

18   a police officer simply because he or she is employed as a

19   police officer?

20        THE JUROR:  No.

21        THE COURT:  There may be evidence in this case that the

22   victims' bodies were dismembered, and there may be

23   photographic evidence of that.  If you were exposed to such

24   evidence, would that prevent you from acting fairly and

25   impartially?

1        THE JUROR:  No, sir.

2        THE COURT:  Can you think of any reason, whether I

3   asked about it or not, why you would not be fair if chosen?

4        THE JUROR:  No, sir.

5        THE COURT:  All right.  Thank you, Mr. Peterson.

6        I'm going to ask you -- hold on for just a minute.

7        I see that you or someone in your family was previously

8   charged.  Was that you or someone else?

9        THE JUROR:  That was me.

10        THE COURT:  All right.  Approximately how long ago?

11        THE JUROR:  2001.

12        THE COURT:  All right.  I take it -- it's not clear

13   from the form -- was there a conviction in that case?

14        THE JUROR:  It was continuation without a finding.

15        THE COURT:  All right.  And was there anything about

16   that experience that you think might impact your ability to

17   be a fair and impartial juror in this case?

18        THE JUROR:  Yes, I do.

19        THE COURT:  Tell me a little bit about that.

20        THE JUROR:  I was never arrested, never blood-tested,

21   never -- on-site operation under influence, never any of

22   that.  I actually received the ticket in the mail a week

23   later.

24        THE COURT:  And how is it that you think -- I'm

25   assuming from what -- from what you're saying, you felt that

1   was unfair in the circumstances of your case?

2        THE JUROR:  Correct.

3        THE COURT:  How is it you think that experience -- let

4   me finish the question.

5        THE JUROR:  I'm sorry.

6        THE COURT:  How is it you think that experience would

7   impact your ability to be a fair and impartial juror in this

8   case?

9        THE JUROR:  It probably wouldn't.

10       THE COURT:  All right.  So thinking back on my original

11  question --

12       THE JUROR:  Right.

13       THE COURT:  -- are you confident that that wouldn't

14  affect your ability to be fair in this case?

15       THE JUROR:  Yes.

16       THE COURT:  All right.  Thank you.

17       I'm going to ask you to step out for just a minute.

18       (The juror exited.)

19       THE COURT:  I find him indifferent.

20       MR. CAPELESS:  Commonwealth challenges this juror, Your

21  Honor.

22       (The juror entered.)

23       THE COURT:  Mr. Peterson, thank you for your service.

24  You have been excused.

25       THE JUROR:  Thank you.

1      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 59

2      COURT OFFICER:  Juror Number 59.

3      THE COURT:  Mr. Vazquez, good afternoon.

4      THE JUROR:  Good afternoon.

5      THE COURT:  Did you recognize any names on that list of

6  witnesses?

7      THE JUROR:  No.

8      THE COURT:  We anticipate the trial of this case will

9  last approximately four weeks, proceeding each day from 9:30

10  until 4:00.  Bearing in mind that schedule, the importance

11  of this case, and our need for good jurors like you, are you

12  available to help us?

13      THE JUROR:  Yes.  I just got to work.

14      THE COURT:  Pardon me?

15      THE JUROR:  I just got to work, but yeah.

16      THE COURT:  All right.  Well, let me ask you this:

17  Have you or any member of your family ever been the victim

18  of a crime of violence?

19      THE JUROR:  No.

20      THE COURT:  Have you seen or heard anything about this

21  case in the media or have you discussed it with anyone?

22      THE JUROR:  Very brief.  I've seen it on TV awhile ago.

23      THE COURT:  All right.  When you say "awhile ago," are

24  you talking days or months or weeks?

25      THE JUROR:  Probably months.

1       THE COURT:  Do you recall what you saw or heard?

2       THE JUROR:  I don't at all.

3       THE COURT:  All right.  Is there anything about the

4  report that you think might interfere with your ability to

5  be a fair juror in this case?

6       THE JUROR:  No.

7       THE COURT:  Would you tend to believe the testimony of

8  a police officer simply because he or she is a police

9  officer?

10      THE JUROR:  No.

11      THE COURT:  There may be evidence in this case that one

12  of the co-defendants, Mr. Hall, had some affiliation with

13  the Hells Angels Motorcycle Club, and that this defendant,

14  Mr. Chalue, had some affiliation with the Aryan Brotherhood.

15  If you were to hear such evidence, would that evidence

16  prevent you from acting fairly and impartially as a juror?

17      THE JUROR:  No.

18      THE COURT:  One of the victims in this case, Robert

19  Chadwell, was African American.  The defendant, Mr. Chalue,

20  is Caucasian.  Would those facts prevent you from acting

21  fairly and impartially?

22      THE JUROR:  No.

23      THE COURT:  Mr. Chalue has a right to remain silent in

24  his trial.  If he exercises that right and chooses not to

25  testify, would you hold that against him in any way?

1      THE JUROR:  No.

2      THE COURT:  There may be evidence in this case that the

3  bodies of the victims were dismembered, and the jury may see

4  evidence of that, including photographs.  If you were to see

5  and hear such evidence, would that prevent you from being a

6  fair juror?

7      THE JUROR:  No.

8      THE COURT:  Can you think of any reason why you would

9  not be fair, whether I asked about it or not?

10      THE JUROR:  No.

11      THE COURT:  All right.  Mr. Vazquez, did you respond to

12  any of my earlier questions by raising your card?

13      THE JUROR:  One.

14      THE COURT:  All right.  Do you remember what that was?

15      THE JUROR:  No.

16      THE COURT:  Ms. Capeless, perhaps you can help.

17      We will see if we can recall for you.

18      THE CLERK:  I have that he had a bias, Your Honor.

19      THE COURT:  All right.  I asked a question regarding

20  whether or not any of the potential jurors might have a bias

21  or prejudice in favor or against either side.  And our

22  records reflect that you answered that question.

23      Do you have a bias against or prejudice against --

24      THE JUROR:  Not -- I'm not prejudiced at all.

25      THE COURT:  All right.  Do you, as you stand here

1    today, do you favor either the prosecution or the defense?

2         THE JUROR:  No.

3         THE COURT:  And you don't recall answering that

4    question?

5         THE JUROR:  No.

6         THE COURT:  All right.  Thank you.

7         I'm going to ask you to step out in the hallway for

8    just a second.

9         (The juror exited.)

10        THE COURT:  Counsel, anything before I make a finding?

11        MR. CAPELESS:  Judge, I would -- I do notice that he's

12   a maintenance worker at a housing complex.  He mentioned his

13   job.  I think you ought to ask him whether this might be a

14   financial hardship for him.  I can't imagine he's going to

15   get paid for four weeks while serving on jury service.

16        Secondly, when you asked him about testifying police

17   officer, you only asked if he would tend to believe as

18   opposed to, obviously, disbelieve.

19        THE COURT:  All right.  Bring him back in.

20        (The juror entered.)

21        THE COURT:  Mr. Vazquez, I have two follow-up

22   questions.

23        THE JUROR:  Yes.

24        THE COURT:  The first has to do with your employment.

25   If you were to serve as a juror for four weeks -- well,

1    first of all, can you tell me what your hours are?

2         THE JUROR:  8:00 to 5:00, Monday through Friday.

3         THE COURT:  So if you were to serve as juror for a

4    period of four weeks, obviously you could not be working

5    during those times.  Would that pose a financial hardship

6    for you?

7         THE JUROR:  Yes.

8         THE COURT:  You are excused.

9         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 61

10        COURT OFFICER:  Juror Number 61.

11        THE COURT:  Mr. Claremont, good afternoon.

12        THE JUROR:  Good afternoon, sir.

13        THE COURT:  Thank you for your patience.

14        Did you get a chance to look at that list of witnesses?

15        THE JUROR:  I did, sir.

16        THE COURT:  Did you recognize any names?

17        THE JUROR:  No one at all.

18        THE COURT:  We anticipate the trial of this case will

19   last approximately four weeks, proceeding each day from 9:30

20   in the morning until 4:00 in the afternoon.  Bearing in mind

21   that schedule, the importance of this case, and our need for

22   good jurors like you, are you available to help us?

23        THE JUROR:  Yes, sir.

24        THE COURT:  Have you or any member of your family ever

25   been the victim of a crime of violence?

1        THE JUROR:  No, sir.

2        THE COURT:  Have you seen or heard anything about this

3   case in the media or have you discussed it with anyone?

4        THE JUROR:  No, I haven't, sir.

5        THE COURT:  Would you tend to believe or disbelieve the

6   testimony of a police officer simply because that witness is

7   a police officer?

8        THE JUROR:  Yes, sir.

9        THE COURT:  All right.  Which is it?

10       THE JUROR:  I would tend to believe a police officer.

11       You asked a question about having an officer in the

12   family, and I did -- I incorrectly answered that question.

13       THE COURT:  All right.  And is that -- is that related

14   to your response that you would tend to believe a police

15   officer?

16       THE JUROR:  It is.

17       THE COURT:  You are excused.

18       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 63

19       COURT OFFICER:  Juror Number 63.

20       THE COURT:  Ms. Clearwater, good afternoon.

21       THE JUROR:  Good afternoon.

22       THE COURT:  Thank you for your patience.

23       Did you recognize any names on the witness list?

24       THE JUROR:  I did not, sir.

25       THE COURT:  We anticipate the trial of this case will

1    last approximately four weeks, proceeding each day from 9:30

2    until 4:00.  Bearing in mind that schedule and the important

3    of this case and our need for good jurors like you, are you

4    available to help us?

5        THE JUROR:  I have plans the first week in June.

6        THE COURT:  Okay.

7        THE JUROR:  I just say that we purchased airline

8    tickets and paid several thousand dollars, which is fine.  I

9    just wanted to let you know that.  Sorry.

10       THE COURT:  I am confident your responsibility in this

11   case could be completed by then.

12       What is your actual departure date?

13       THE JUROR:  The 6th of June.

14       THE COURT:  But before that, you are available; is that

15   correct?

16       THE JUROR:  Yes, sir.

17       THE COURT:  Have you or any member of your family ever

18   been the victim of a crime of violence?

19       THE JUROR:  My daughter was assaulted in her -- I

20   believe her sophomore year of college.  She was -- there was

21   another drunk girl who literally knocked her out, and she

22   was fine, and that's it.

23       THE COURT:  All right.  Was there anything about that

24   experience that you shared with your daughter that you think

25   might cause you to favor one side over the other in this

1  case?

2       THE JUROR:  No, sir.

3       THE COURT:  I see also you have a brother and

4  son-in-law involved in corrections and a brother-in-law that

5  is a U.S. Marshal and also your husband is a flight deck

6  officer.

7       THE JUROR:  Yes, sir.

8       THE COURT:  Is there anything about any of those

9  relationships that you think could cause you to favor one

10  side over the other in this case?

11       THE JUROR:  No, Your Honor.

12       THE COURT:  Would you tend to believe or disbelieve the

13  testimony of a police officer simply because that witness is

14  employed as a police officer?

15       THE JUROR:  No, Your Honor.

16       THE COURT:  There may be evidence in this case that one

17  of the co-defendants, Mr. Hall, had some affiliation with

18  the Hells Angels Motorcycle Club, and that this defendant,

19  Mr. Chalue, had some affiliation with the Aryan Brotherhood.

20       Would that evidence, were you to hear it, interfere

21  with your ability to be a fair and impartial juror?

22       THE JUROR:  No, Your Honor.

23       THE COURT:  One of the victims in this case, Robert

24  Chadwell, was an African American.  The defendant is

25  Caucasian.  Would those facts prevent you from acting fairly

1    and impartially?

2         THE JUROR:  No, Your Honor.

3         THE COURT:  Mr. Chalue has a right to remain silent in

4    his own trial.  If he exercises that right and chooses not

5    to testify, would you hold that against him?

6         THE JUROR:  No, sir.

7         THE COURT:  There may be evidence in this case that the

8    victims' bodies were dismembered, and the jury may see some

9    photographic evidence of that.  If you were to be exposed to

10   such evidence, would that prevent you from acting fairly and

11   impartially?

12        THE JUROR:  No, Your Honor.

13        THE COURT:  Can you think of any reason, whether I

14   asked about it or not, why you would not be fair if

15   selected?

16        THE JUROR:  No, sir.

17        THE COURT:  I see that you were once a witness in a

18   case -- two civil cases.  Was there anything about your

19   experience in that regard that you think might affect your

20   ability to be fair and impartial in this case?

21        THE JUROR:  No, Your Honor.

22        THE COURT:  Thank you very much, Ms. Clearwater.

23        I'm going to ask you to step out for just a minute.

24        THE JUROR:  Okay.

25        (The juror exited.)

1        THE COURT:  Find her indifferent.

2        MR. CAPELESS:  The Commonwealth is content with this

3   juror, Your Honor, although I don't -- I don't recall if you

4   asked her if she has heard or seen anything about this

5   because I think she responded in the positive to that; at

6   least I had it marked that way.

7        THE COURT:  To be certain, I will ask her again.

8        If you could bring her back.

9        Before we do that -- before I do that, Mr. Frank, is

10  there anything beyond that you would like me to ask her?

11       MR. FRANK:  Yes.  Her brother and son are in the

12  corrections.  I would like to know where.

13       THE COURT:  Okay.

14       MR. FRANK:  Along with the U.S. Marshals, there is some

15  activity in this case from the U.S. Marshals Office.

16       (The juror entered.)

17       THE COURT:  Ms. Clearwater, a couple of follow-up

18  questions.  Your brother and son-in-law that are in working

19  in corrections, where are they employed?

20       THE JUROR:  My brother has been retired for about six

21  years.  He was Enfield, Connecticut corrections.

22       My son-in-law works in the Ludlow facility.

23       THE COURT:  All right.  And I take it you've had no

24  conversations with your son-in-law regarding this case?

25       THE JUROR:  Oh, no, sir.

1          THE COURT:  And your brother-in-law that is a U.S.
2   Marshal, where is he employed?
3          THE JUROR:  Washington, D.C.
4          THE COURT:  Have you -- excuse me if I asked you this
5   earlier but I want to make certain.
6          THE JUROR:  Sure.
7          THE COURT:  Have you had any conversations about this
8   case with anyone or have you observed or heard any media
9   reports of the case?
10          THE JUROR:  I believe it was at least a year or so ago,
11   or maybe even longer, because when you gave the date of
12   2011, I was surprised.  It seemed like I had read about it
13   or heard about it previous to that.  But I think it was
14   around the time of the actual incident.  So other than that,
15   I've never discussed it.
16          I heard a few gasps in the crowd today.  I had no idea.
17   This is my first ever jury experience so I had no idea what
18   to expect.
19          THE COURT:  Well, let me ask a couple follow-up
20   questions.  Do you recall if it was a print or broadcast
21   media report?
22          THE JUROR:  It would have been probably something on
23   the television that I heard.
24          THE COURT:  All right.  And do you recall the contents
25   of the report?

1        THE JUROR:  No, just the reporting of it, you know,

2   that it had actually happened.

3        THE COURT:  And was there anything about the contents

4   of the report that you think might interfere with your

5   ability to be fair?

6        THE JUROR:  No, Your Honor.

7        THE COURT:  Thank you very much.

8        You may step out again for just a minute.

9        THE JUROR:  Sure.

10       (The juror exited.)

11       THE COURT:  Find her indifferent.

12       MR. CAPELESS:  The Commonwealth is content with this

13   juror, Your Honor.

14       MR. FRANK:  Judge, I would challenge for cause, once

15   again, because she has a close relative who is a Ludlow

16   correctional officer where the defendant is housed, and I

17   think that poses a great risk of information seeping.

18       THE COURT:  All right.  Well, there is no information

19   before me that she has had any discussions with her relative

20   that is in corrections, and I obviously will instruct them

21   that she should have no communication of any kind.

22       I'm not sure there is any information before me other

23   than that employment status upon which I could allow your

24   challenge for cause, so it is noted but denied.

25       (Off-the-record discussion with defense counsel and the

1   defendant.)

2        MR. FRANK:  Challenge her, Judge.

3        THE COURT:  Very well.

4        (The juror entered.)

5        THE COURT:  Ms. Clearwater, thank you for your service.

6        You have been excused.

7        THE JUROR:  Thank you.

8        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 65

9        COURT OFFICER:  Juror Number 65.

10       THE COURT:  Mr. Gay, good morning -- good afternoon,

11  rather.

12       THE JUROR:  Hello.

13       THE COURT:  Did you recognize any names on that witness

14  list?

15       THE JUROR:  No, I did not.

16       THE COURT:  We anticipate, Mr. Gay, that the trial of

17  this case will last approximately four weeks, proceeding

18  from 9:30 in the morning until 4:00 in the afternoon.

19  Bearing in mind that schedule, the importance of this case,

20  and our need for good jurors like you, are you available to

21  help us?

22       THE JUROR:  I'm actually in school right now.

23       THE COURT:  You are?

24       THE JUROR:  In HCC.  I already paid tuition, and I

25  would not like to miss classes unless it was absolutely

1   necessary.

2        THE COURT:  You are excused.

3        (The juror exited.)

4        MR. FRANK:  Judge, I believe we just met his father.

5        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 66

6        THE COURT:  Mr. Holbrook --

7        COURT OFFICER:  Juror Number 66.

8        THE COURT:  Mr. Holbrook, good afternoon.

9        Did you recognize any of the names on the witness list?

10       THE JUROR:  None of the names looked familiar, no.

11       THE COURT:  All right.  We anticipate the trial of this

12  case will last approximately four weeks, proceeding each day

13  from 9:30 in the morning until 4:00 in the afternoon.

14  Bearing in mind that schedule, the importance of this case,

15  and our need for good jurors like you, are you available to

16  help us?

17       THE JUROR:  Yup.  The only thing I have during that

18  time is a wedding anniversary.  That's the only thing I have

19  during that next four weeks.

20       THE COURT:  All right.  I don't want to pry, and I

21  don't want to interfere with your anniversary.  When is that

22  exactly?

23       THE JUROR:  May 1st.

24       THE COURT:  All right.  And obviously, the trial will

25  be ongoing at that time.  Do you have any plans to travel or

1   to be out of the county at that time?

2        THE JUROR:  Not that I'm aware of, Your Honor.

3        THE COURT:  All right.  Well, bearing in mind your

4   responsibility that day here will be from 9:30 until 4:00.

5   Obviously, after 4:00, you are on your own.  Any reason you

6   couldn't do that on that day?

7        THE JUROR:  No.

8        THE COURT:  Have you or any member of your family ever

9   been the victim of a crime of violence?

10        THE JUROR:  Not that I can recall, no.

11        THE COURT:  Have you seen or heard anything about this

12   case in media reports or have you discussed it with anyone?

13        THE JUROR:  No.

14        THE COURT:  There may be evidence in this case that one

15   of the co-defendants, Mr. Hall, had some affiliation with

16   the Hells Angels Motorcycle Club, and that this defendant,

17   Mr. Chalue, had some affiliation with the Aryan Brotherhood.

18   Would that evidence, were you to hear it, interfere with

19   your ability to be a fair and impartial juror?

20        THE JUROR:  No.

21        THE COURT:  One of the victims in this case, Robert

22   Chadwell, was an African American.  Mr. Chalue is Caucasian.

23   Would those facts interfere with your ability to be fair and

24   impartial?

25        THE JUROR:  No.

1        THE COURT:  Mr. Chalue has a right to remain silent in

2    his trial.  If he exercises that right and does not testify

3    in this case, would you hold that against him?

4        THE JUROR:  No.

5        THE COURT:  Would you tend to believe or disbelieve the

6    testimony of a police officer simply because he's employed

7    as a police officer?

8        THE JUROR:  No.

9        THE COURT:  There may be evidence in this case that the

10   bodies of the victims were dismembered and the jurors may be

11   exposed to photographic evidence of that.  If you were to

12   see and hear such evidence, would that prevent you from

13   being a fair juror?

14       THE JUROR:  No.

15       THE COURT:  Can you think of any reason why you would

16   not be fair if selected?

17       THE JUROR:  None that I can think of, no.

18       THE COURT:  All right.  Did you respond to any of my

19   earlier questions by raising your card?

20       THE JUROR:  Yes.

21       THE COURT:  Do you recall which ones?

22       THE JUROR:  Do I know anyone that's on the police force

23   or something along those lines.  Yes.

24       THE COURT:  And who is it that you know?

25       THE JUROR:  My father-in-law.

1      THE COURT:  Is a police officer?

2      THE JUROR:  Yes.

3      THE COURT:  Is retired or still working?

4      THE JUROR:  Still working.

5      THE COURT:  Where does he work?

6      THE JUROR:  In Springfield.

7      THE COURT:  What is his name?

8      THE JUROR:  Veredus Thaddeus [phonetic].

9      THE COURT:  Is there anything about your relationship

10  with him or his line of work that might cause you to favor

11  one side over the other in this case?

12     THE JUROR:  No.

13     THE COURT:  Thank you very much, Mr. Holbrook.

14     If you could just step out in the hallway for a minute.

15     (The juror exited.)

16     THE COURT:  I find him indifferent.

17     MR. CAPELESS:  Commonwealth is content with this juror,

18  Your Honor.

19     (Off-the-record discussion with defense counsel and the

20  defendant.)

21     MR. FRANK:  Content.

22     THE COURT:  Very well.

23     (The juror entered.)

24     THE COURT:  Mr. Holbrook, you have been selected to sit

25  as a juror in this case.  We're actually not going to start

1    the trial today.  So in a minute, I'm going to excuse you

2    and ask you to come back not tomorrow but Friday morning

3    when we will begin the trial.  The Court Officers will show

4    you where to report on Friday morning.

5         In the meantime, it's important that you not discuss

6    the case with anyone.  You can certainly explain to family

7    members or employers that you have been selected to sit on a

8    jury and the anticipated duration.  Beyond that, I ask that

9    you say no more.

10        Further, please don't independently investigate any

11   aspect of this case including any sort of electronic

12   research, and do not observe any media reports should there

13   be any.

14        Thank you.  We will see you on Friday morning at 9:30.

15        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 67:

16        COURT OFFICER:  Juror Number 67.

17        THE COURT:  Is it Ms. Gauthier?

18        THE JUROR:  Yes.

19        THE COURT:  Good afternoon.

20        THE JUROR:  Good afternoon.

21        THE COURT:  Did you recognize any names on that list?

22        THE JUROR:  No.

23        THE COURT:  We anticipate the trial of this case will

24   last approximately four weeks, proceeding each day from 9:30

25   in the morning until 4:00 in the afternoon with some

1   exceptions.  Bearing in mind that schedule, the importance

2   of this case, and our need for good jurors like you, are you

3   available to help us?

4        THE JUROR:  I am.

5        THE COURT:  Have you or any family member ever been the

6   victim of a crime of violence?

7        THE JUROR:  No.

8        THE COURT:  Have you ever seen or heard any media

9   reports related to this case or have you discussed it with

10  anyone?

11       THE JUROR:  I have not seen anything, but my boyfriend

12  had mentioned that they're picking jurors for the case, and

13  I don't know if this is the one.

14       THE COURT:  And was that a conversation you had

15  recently based on your receipt of a summons to be here

16  today?

17       THE JUROR:  That was just yesterday.

18       THE COURT:  All right.  And can you tell me or share

19  with us the contents of what your boyfriend told you?

20       THE JUROR:  He just said they were trying to pick

21  jurors for a case that had to do with the Hells Angels.

22       THE COURT:  All right.  And was there anything about

23  the contents of his statement to you that you think might

24  interfere with your ability to be fair to both sides?

25       THE JUROR:  No.

1          THE COURT:  Let me follow up on that a little bit.

2     There may be evidence in this case that one of the

3     co-defendants, Mr. Hall, had some affiliation with the Hells

4     Angels Motorcycle Club, and that this defendant, Mr. Chalue,

5     had some affiliation with the Aryan Brotherhood.  If you

6     were to hear such evidence, would that prevent you from

7     acting as a fair and impartial juror?

8          THE JUROR:  No.

9          THE COURT:  Robert Chadwell, one of the victims in this

10    case, was an African American.  The defendant is Caucasian.

11    Would those facts prevent you from being a fair and

12    impartial juror?

13         THE JUROR:  No.

14         THE COURT:  Did you raise your card in response to any

15    of my earlier questions?

16         THE JUROR:  Just the one that I heard about.

17         THE COURT:  From your boyfriend?

18         THE JUROR:  Right.

19         THE COURT:  The defendant, Mr. Chalue, has an absolute

20    right to remain silent at this trial.  If he exercises that

21    right and chooses not to testify, would you hold that

22    against him in any way?

23         THE JUROR:  No.

24         THE COURT:  There may be evidence in this case that the

25    victims' bodies were dismembered, and the jury may hear

1  testimony and see photographs regarding that.  If you were

2  to be exposed to such evidence, would that evidence prevent

3  you from being a fair and impartial juror?

4       THE JUROR:  No.

5       THE COURT:  Can you think of any reason, whether I

6  asked about it or not, why you would not be fair if

7  selected?

8       THE JUROR:  No.

9       THE COURT:  Thank you very much.

10      If you could step back in the hallway for just a

11 minute.

12      THE JUROR:  Sure.

13      (The juror exited.)

14      THE COURT:  Find her indifferent.

15      MR. CAPELESS:  Judge, I don't recall you asking her

16 about police witnesses.

17      THE COURT:  I think you are correct, Mr. Frank.  Before

18 I ask -- I bring her back in, anything you would like me to

19 ask?

20      MR. FRANK:  No.

21      THE COURT:  Okay.

22      (The juror entered.)

23      THE COURT:  Ms. Gauthier, I neglected to ask you one

24 question.  Would you tend to believe or disbelieve the

25 testimony of a police officer simply because that witness is

1    employed as a police officer?

2         THE JUROR:  No.

3         THE COURT:  Thank you.

4         (The juror exited.)

5         THE COURT:  I find her indifferent.

6         MR. CAPELESS:  The Commonwealth is content with this

7    juror, Your Honor.

8         MR. FRANK:  Content.

9         THE COURT:  Very well.

10        (The juror entered.)

11        THE COURT:  Ms. Gauthier, you have been selected to sit

12   as a juror in this case.  You're going to be in seat number

13   fifteen.

14        We're actually not going to start the trial today, so

15   in a minute, I'm going to excuse you, and the Court Officers

16   will tell you where to return on Friday at 9:30.

17        THE JUROR:  Okay.

18        THE COURT:  Between now and then, it is important that

19   you not discuss the case with anyone.  You can certainly

20   explain to family and employers that you have been selected

21   to sit on a jury, that it is a criminal case, the

22   anticipated duration.  Beyond that, I order you to say no

23   more.

24        Second, disregard any media reports, should there be

25   any, and don't attempt any independent research, including

1    any sort of electronic research, of anything you have heard
2    about this case.
3        With that, Ms. Gauthier, thank you for your time here
4    today.  We will see you Friday morning at 9:30.
5        THE JUROR:  Okay.  Thank you.
6        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 68
7        COURT OFFICER:  Juror Number 68.
8        THE COURT:  Mr. Duquette, good afternoon.
9        THE JUROR:  Good afternoon.
10       THE COURT:  Did you recognize any names on that list of
11   witnesses?
12       THE JUROR:  No, sir, I did not.
13       THE COURT:  Mr. Duquette, we anticipate that the trial
14   of this case will last approximately four weeks, proceeding
15   each day from 9:30 in the morning until 4:00 in the
16   afternoon.  Bearing in mind that schedule, the importance of
17   this case, and our need for good jurors like you, are you
18   available to help us?
19       THE JUROR:  Yes, sir, I am.
20       THE COURT:  Have you or any family member ever been the
21   victim of a crime of violence?
22       THE JUROR:  My daughter was a victim of a sexual
23   assault when she was about ten years old.  I went to court
24   with that, sir.
25       THE COURT:  Was there anything about that experience

1  that you shared with your daughter that you think might

2  cause you to favor one side over the other in this case?

3          THE JUROR:  No, sir, there is not.

4          THE COURT:  All right.  Have you seen or heard anything

5  about this case on media reports or discussed it with

6  anyone?

7          THE JUROR:  No, Your Honor, I have not.

8          THE COURT:  Did you raise your card in response to any

9  of my earlier questions?

10         THE JUROR:  No, sir, I did not.

11         THE COURT:  There may be evidence in this case that one

12 of the co-defendants, Mr. Hall, had some affiliation with

13 the Hells Angels Motorcycle Club, and that this defendant,

14 Mr. Chalue, had some affiliation with the Aryan Brotherhood.

15 If you were to hear such evidence, would that evidence

16 prevent you from being a fair and impartial juror?

17         THE JUROR:  No, sir, I do not believe so.

18         THE COURT:  Robert Chadwell, one of the victims in this

19 case, was an African American.  Mr. Chalue is Caucasian.

20 Would those facts prevent you from acting fairly and

21 impartially as a juror?

22         THE JUROR:  No.

23         THE COURT:  Mr. Chalue has a right to remain silent at

24 his trial.  If he were to exercise that right and not

25 testify at his trial, would you hold that against him in

1    some way?

2        THE JUROR:  No.

3        THE COURT:  There may be evidence in this case that the

4    victims' bodies were dismembered.  You may hear testimony or

5    see photographs regarding that.  If you were to see that

6    kind of evidence, would that prevent you from being fair and

7    impartial?

8        THE JUROR:  No, Your Honor.

9        THE COURT:  Can you think of any reason, whether I

10   asked about it or not, why you would not be fair if selected

11   as a juror in this case?

12       THE JUROR:  No, sir, I cannot.

13       THE COURT:  Would you tend to believe or disbelieve the

14   testimony of a police officer simply because they are a

15   police officer?

16       THE JUROR:  No, sir.

17       THE COURT:  I see that you testified -- or I'm sorry --

18   that you acted as a juror once before in Federal Court.  Was

19   there anything about that experience that you think might

20   interfere with your ability to be fair in this case?

21       THE JUROR:  No, sir, I do not.

22       THE COURT:  Thank you, Mr. Duquette.

23       If you could step out in the hallway for just a moment.

24       (The juror exited.)

25       THE COURT:  I find him indifferent.

1      MR. CAPELESS:  The Commonwealth is content with this

2  juror, Your Honor.

3      MR. FRANK:  Challenge.

4      THE COURT:  Very well.

5      (The juror entered.)

6      THE COURT:  Mr. Duquette, thank you for your service

7  here today.

8      You have been excused.

9      THE JUROR:  Thank you.

10      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 69

11      COURT OFFICER:  Juror Number 69.

12      THE COURT:  Is it Mr. Doty?  Is that correct?

13      THE JUROR:  Yes.

14      THE COURT:  Good afternoon.

15      THE JUROR:  Good afternoon.

16      THE COURT:  Did you see or recognize any of the names

17  on that witness list?

18      THE JUROR:  One name.

19      THE COURT:  What was that?

20      THE JUROR:  Shane Parrott.

21      THE COURT:  All right.  How do you know Shane Parrott?

22      THE JUROR:  I'm a salesman.  I used to work -- I call

23  on convenience stores and different types of stores, and I

24  believe I know -- the father is either Ray or Mark Parrott.

25  They have a store in Pittsfield.

1          THE COURT:  All right.  Do we anticipate, counsel, that

2     Mr. Parrott will testify?

3          MR. CAPELESS:  Yes, Your Honor.

4          THE COURT:  All right.

5          Then let me ask you, Mr. Doty, how well you know

6     Mr. Parrott?

7          THE JUROR:  It's been a few years since I've seen him.

8     I was in his store fairly often.  I wouldn't consider him a

9     good friend of mine but a very good customer.  We got to be

10    very friendly over the years.

11         THE COURT:  Well, let me put it to you this way:  It is

12    probable that Mr. Parrott will testify in this case.  If you

13    were to hear Mr. Parrott's testimony, do you think, based on

14    your prior relationship with him, you might tend to treat

15    his testimony differently than that of other witnesses?

16         THE JUROR:  No.

17         THE COURT:  All right.  Have you seen or heard anything

18    about this case on media reports?

19         THE JUROR:  Yes.

20         THE COURT:  Can you tell me what you heard and when you

21    recall hearing it?

22         THE JUROR:  I heard it back initially when it first

23    came out, and, actually, most recently, watched it this

24    morning in the Springfield newspaper and some details about

25    the case itself and the juror selection itself.

1     THE COURT:  All right.  Was there anything about the

2     contents of the articles -- article that you read this

3     morning that you think could interfere with your ability to

4     act as a fair and impartial juror?

5     THE JUROR:  I don't think so.

6     THE COURT:  All right.  We anticipate that the trial of

7     this case will last approximately four weeks, proceeding

8     each day from 9:30 in the morning until 4:00 in the

9     afternoon.  Bearing in mind that schedule and the importance

10     of this case and our need for good jurors like you, are you

11     available to help us?

12     THE JUROR:  Yes.

13     THE COURT:  All right.  Have you or any member of your

14     family ever been the victim of a crime of violence?

15     THE JUROR:  No.

16     THE COURT:  There may be evidence in this case that one

17     of the co-defendants, Mr. Hall, had some affiliation with

18     the Hells Angels Motorcycle Club, and that Mr. Chalue had

19     some affiliation with the Aryan Brotherhood.  If you were to

20     hear such evidence, would that prevent you from acting as a

21     fair and impartial juror?

22     THE JUROR:  No, I don't believe so.

23     THE COURT:  Robert Chadwell, one of the victims in this

24     case, was African American.  Mr. Chalue is Caucasian.  Would

25     those facts prevent you from acting as a fair and impartial

1  juror?

2       THE JUROR:  No.

3       THE COURT:  Mr. Chalue has a right to remain silent in

4  this trial.  If he exercises that right and chooses not to

5  testify, would you hold that against him in any way?

6       THE JUROR:  No.

7       THE COURT:  There may be evidence in this case that the

8  bodies of the victims were dismembered.  If you were to see

9  photographs of that evidence or hear testimony regarding

10 that, would that prevent you from acting fairly and

11 impartially?

12      THE JUROR:  No.  It's hard to answer that, no.

13      THE COURT:  Let me rephrase that.  I think we are all

14 aware of the fact that no one wants to be exposed to that

15 kind of evidence, and it's not uncommon for people to have

16 an emotional reaction to seeing or hearing such evidence.

17      My question is not whether or not would you have an

18 emotional reaction, but whether or not you could put aside

19 any emotional reaction and judge the evidence fairly and

20 impartially.

21      Do you think you could do that?

22      THE JUROR:  Yes.

23      THE COURT:  Can you think of any reason, whether I

24 asked about it or not, why you would not be a fair and

25 impartial juror, if chosen?

1        THE JUROR:  None.

2        THE COURT:  I don't recall whether or not I asked you

3   if you had responded to any of my earlier questions by

4   raising your card.  Did you?

5        THE JUROR:  Yes, three.

6        THE COURT:  All right.  One, I assume, had to do with

7   the publicity?

8        THE JUROR:  Yes.  Right.

9        THE COURT:  What were the others?

10        THE JUROR:  Cousins -- first cousin is a Springfield

11   police officer, former Springfield police, Milton and Robert

12   Doty.

13        THE COURT:  Anything about those relationships that you

14   think might cause you to favor one side over the other in

15   this case?

16        THE JUROR:  Well, which led into my other yes.

17        THE COURT:  Which was?

18        THE JUROR:  Would I tend to favor more favorably law

19   enforcement?

20        THE COURT:  All right.  The question was whether or not

21   you would tend to believe the testimony of a police officer

22   as opposed to another witness, and you early -- you are

23   telling me you earlier answered yes?

24        THE JUROR:  Yes.

25        THE COURT:  And you believe that, that you would tend

1   to elevate their testimony --

2        THE JUROR:  Yes.

3        THE COURT:  All right.  Thank you for your honesty.

4   You are excused.

5        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 70:

6        COURT OFFICER:  Juror Number 70.

7        THE COURT:  Mr. Bachetti, good afternoon.

8        Mr. Bachetti, I see from your biographical form you had

9   some past experiences with the criminal justice system.  Was

10  there anything about those experiences that you think might

11  interfere with your ability to be fair to both sides in this

12  case?

13       THE JUROR:  No, Judge.

14       THE COURT:  All right.  I infer that your only

15  involvement was as a juror; is that correct?

16       THE JUROR:  Yes, sir.

17       THE COURT:  Did the jury reach a verdict in those

18  cases?

19       THE JUROR:  Yes.

20       THE COURT:  Can you tell us what that verdict was?

21       THE JUROR:  It's awhile back -- guilty.

22       THE COURT:  All right.  Mr. Bachetti, did you recognize

23  any names on that witness list?

24       THE JUROR:  Yes, sir.

25       THE COURT:  Which names?

1        THE JUROR:  Mass. State Trooper Christopher Donahue in

2    the crime scene division.

3        THE COURT:  Mr. Capeless, will that witness testify?

4        MR. CAPELESS:  I don't believe so.  I don't expect

5    Trooper Donahue will testify.

6        THE COURT:  Was that the only name you recognized?

7        THE JUROR:  Yes.

8        THE COURT:  All right.  We anticipate, Mr. Bachetti,

9    that this case will last approximately four weeks,

10   proceeding each day from 9:30 in the morning until 4:00 in

11   the afternoon.  Bearing in mind that schedule, the

12   importance of this case, and our need for good jurors like

13   you, are you available to help us?

14       THE JUROR:  Except for me to be very truthful, I have

15   MS in my spine.  And I try today.  I came to be a good

16   soldier.  I don't know.  It's sitting in there.  I have

17   seizures and stuff, so I don't want to make a scene -- I

18   don't know if I could be able to do it.

19       THE COURT:  All right.  Well, let me ask you this:  As

20   a result of your physical condition, are you in pain when

21   you sit for long periods of time?

22       THE JUROR:  Yes.

23       THE COURT:  You are excused.

24       THE JUROR:  Sorry.

25       THE COURT:  That's all right.

1    VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 71

2    COURT OFFICER:  Juror Number 71.

3    THE COURT:  Is it Ms. Quesnel?

4    THE JUROR:  Quesnel.

5    THE COURT:  Good afternoon.

6    Did you recognize any names on that list of witnesses?

7    THE JUROR:  No.

8    THE COURT:  We anticipate that this case will take

9    approximately four weeks to complete, proceeding from 9:30

10   in the morning until 4:00 in the afternoon, Monday through

11   Friday.  Bearing in mind that schedule and the importance of

12   this case and our need for good jurors like you, are you

13   available to help us?

14   THE JUROR:  I am a public school teacher, and I have

15   children on IEP, so to be away from them for four weeks, I

16   feel that that could affect because of the inconsistency of

17   my not being there.

18   THE COURT:  Would someone stand in your stead in that

19   four-week period?

20   THE JUROR:  They could get a substitute, but they don't

21   know the children like I do, and given it's the end of the

22   year --

23   THE COURT:  Right.  Well, let me ask you this:  To some

24   extent, is your job performance evaluated based on the

25   performance of the children?

1      THE JUROR:  Not as of right now, no.

2      THE COURT:  All right.  Thank you for your honesty.

3      The second question is do you think, if you were

4 sitting here for four weeks would your job responsibilities

5 distract you?

6      THE JUROR:  Yes.

7      THE COURT:  You are excused.

8      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 73

9      COURT OFFICER:  Juror Number 73.

10     THE COURT:  Good afternoon, sir.

11     THE JUROR:  Good afternoon.

12     THE COURT:  Is it Mr. Gervickas?

13     THE JUROR:  Gervickas.

14     THE COURT:  Gervickas.

15     THE JUROR:  Yes.

16     THE COURT:  Did you get a chance to look at that list

17 of potential witnesses?

18     THE JUROR:  Yes, I did.

19     THE COURT:  Did you recognize any potential names?

20     THE JUROR:  No, I do not.

21     THE COURT:  We anticipate the trial of this case will

22 last approximately four weeks, proceeding each day from 9:30

23 in the morning until 4:00 in the afternoon.  Bearing in mind

24 that schedule, the importance of this case, and our need for

25 good jurors like you, are you available to help us?

1          THE JUROR:  Unfortunately, no.  I have a stress test,
2     and I have heart issues.  But the stress test is, like, a
3     week and a half away back of the hospital.  That's it.
4          THE COURT:  All right.  So you would -- what time is
5     your appointment?
6          THE JUROR:  I'd have to look at my schedule.  Probably
7     8:30 or 9:00 in the morning.
8          THE COURT:  All right.  And does your condition
9     otherwise -- would it otherwise prevent you from sitting as
10    a juror for an extended period of time?
11         THE JUROR:  Not that I know of.
12         THE COURT:  I think, in an abundance of caution, rather
13    than force everyone to take a day off during that stress
14    test, I think we will excuse you.
15         Thank you for your service here today.
16         THE JUROR:  Thank you, Your Honor.
17         (The juror exited.)
18         COURT OFFICER:  There is no answer on Juror Number 76,
19    Your Honor.
20         THE COURT:  All right.  Let's make a note of that and
21    make certain that we reach out to that juror and determine
22    why they were not here.
23         And let's go to Juror Number 77.
24         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 77
25         COURT OFFICER:  Juror Number 77.

1    THE COURT:  Ms. Barghout, good afternoon.

2    THE JUROR:  Hi.  How are you?

3    THE COURT:  Good afternoon.

4    Counsel, I should disclose to you that Ms. Barghout is

5 a former neighbor of mine in Wilbraham.  I don't think that

6 would have any bearing on her ability to act as a fair and

7 impartial juror, but I thought I should let you know that.

8    Ms. Barghout, I have to ask you some follow-up

9 questions.

10    THE JUROR:  Okay.

11    THE COURT:  Let me start with this:  Did you get a

12 chance to look at that list of witnesses?

13    THE JUROR:  Yes, I did.

14    THE COURT:  Did you recognize any names?

15    THE JUROR:  I did not.

16    THE COURT:  We anticipate the trial of this case will

17 last approximately four weeks, proceeding each day from 9:30

18 in the morning until 4:00 in the afternoon.  Bearing in mind

19 that schedule, the importance of this case, and our need for

20 good jurors like you, are you available to help us?

21    THE JUROR:  Yes.

22    THE COURT:  Have you or any member of your family ever

23 been the victim of a crime of violence?

24    THE JUROR:  No.

25    THE COURT:  Have you seen or heard anything about this

1    case in media reports or have you discussed it with anyone?

2         THE JUROR:  I haven't discussed it with anyone, but I

3    believe I have heard about it, but vaguely.

4         THE COURT:  All right.  And do you recall if it was

5    print or broadcast media that you heard?

6         THE JUROR:  Broadcast.

7         THE COURT:  Was there anything about the content of

8    that report that you think might interfere with your ability

9    to be a fair and impartial juror?

10        THE JUROR:  No, I don't think so.

11        THE COURT:  There may be evidence in this case that one

12   of the co-defendants, Mr. Hall, had some affiliation with

13   the Hells Angels Motorcycle Club, and that this defendant,

14   Mr. Chalue, had some affiliation with the Aryan Brotherhood.

15   If you were to hear such evidence, would that prevent you

16   from being a fair and impartial juror?

17        THE JUROR:  No, I don't think so.

18        THE COURT:  One of the victims in this case, Robert

19   Chadwell, was African American, and Mr. Chalue is Caucasian.

20   Would that evidence interfere with your ability to be fair

21   and impartial?

22        THE JUROR:  No.

23        THE COURT:  Mr. Chalue has a right to remain silent.

24   If he exercises that right and does not testify, would you

25   hold that against him in any way?

1        THE JUROR:  No.

2        THE COURT:  Did you, Ms. Barghout, raise your card in

3   response to any of my earlier questions?

4        THE JUROR:  I did.  Two of them.  One, just if we knew

5   anyone in the court, which was you.  That's why I raised it.

6        THE COURT:  All right.

7        THE JUROR:  And then the other one was if we had heard

8   about this case at all, and I had vaguely --

9        THE COURT:  And you've already addressed that?

10       THE JUROR:  Right.

11       THE COURT:  There may be evidence in this case that the

12  bodies of the victims were dismembered, and the jury may see

13  evidence, including photographs, regarding that.  If you

14  were to see and hear such evidence, would that prevent you

15  from acting fairly and impartially?

16       THE JUROR:  No.

17       THE COURT:  Can you think of any reason, whether I have

18  asked about it or not, why you would not be fair and

19  impartial if selected?

20       THE JUROR:  No, I don't think so.

21       THE COURT:  All right.  Would you tend to believe or

22  disbelieve the testimony of a police officer simply because

23  he or she is a police officer?

24       THE JUROR:  No.

25       THE COURT:  Thank you.

1       I'm going to ask you to step out for just a minute,

2   Ms. Barghout.

3       (The juror exited.)

4       THE COURT:  I find her indifferent.

5       MR. CAPELESS:  The Commonwealth is content with this

6   juror, Your Honor.

7       (Off-the-record discussion with defense counsel and the

8   defendant.)

9       MR. FRANK:  Challenge, Your Honor.

10      THE COURT:  Very well.

11      (The juror entered.)

12      THE COURT:  Ms. Barghout, thank you for your service

13  here this morning.

14      You have been excused.

15      THE JUROR:  Okay.  Thank you.

16      (The juror exited.)

17      THE COURT:  We will do one more prospective juror and

18  then take the lunch break.

19      VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 78

20      COURT OFFICER:  Juror Number 78.

21      THE COURT:  Good afternoon, ma'am.

22      THE JUROR:  Good afternoon.

23      THE COURT:  Is it Ms. Rheaume?

24      THE JUROR:  Rheaume.

25      THE COURT:  Did you recognize any of the witnesses on

1    that witness list?

2         THE JUROR:  No.

3         THE COURT:  We anticipate the trial of this case will

4    last approximately four weeks, proceeding each day from 9:30

5    in the morning until 4:00 in the afternoon.  Bearing in mind

6    that schedule, the importance of this case, and our need for

7    good jurors like you, are you available to help us?

8         THE JUROR:  Yes.

9         THE COURT:  Have you or any family member ever been the

10   victim of a crime of violence?

11        THE JUROR:  No.

12        THE COURT:  Have you seen or heard anything about this

13   case in the media or have you discussed it with anyone?

14        THE JUROR:  I did.  I read about it in the paper.  I

15   never discussed it with anyone.

16        THE COURT:  All right.  Was the report that you read

17   recent or some time ago?

18        THE JUROR:  I believe it was some time ago.

19        THE COURT:  Do you recall anything about the contents

20   of the report that you read?

21        THE JUROR:  Yes.  I remember it -- something about

22   Becket because I had been in Becket around that time, and I

23   remember seeing something about Becket.  That was pretty

24   much what I remember about it.

25        THE COURT:  I did mention in my comments this morning

1    that there will be evidence that there were allegations that

2    the bodies were buried in Becket.  Do you recall anything

3    regarding the contents of your report that exceeded what I

4    explained this morning?

5          THE JUROR:  No.

6          THE COURT:  And was there anything about the content of

7    the report itself that you think might interfere with your

8    ability to be fair to both sides?

9          THE JUROR:  No.

10         THE COURT:  Did you raise your card in response to any

11    of my earlier questions other than the fact --

12         THE JUROR:  Just that one, other than the fact that I

13    had seen it or read it.

14         THE COURT:  All right.  There may be evidence in this

15    case that one of the co-defendants, Mr. Hall, had some

16    affiliation with the Hells Angels Motorcycle Club and that

17    Mr. Chalue, the defendant in this case, had some affiliation

18    with the Aryan Brotherhood.  If you were to hear and see

19    such evidence, would that prevent you from acting fairly and

20    impartially?

21         THE JUROR:  No.

22         THE COURT:  One of the victims in this case, Robert

23    Chadwell, was African American.  Mr. Chalue is Caucasian.

24    Would those facts prevent you from acting fairly and

25    impartially?

1          THE JUROR:  No.

2          THE COURT:  Mr. Chalue has a right to remain silent in

3     his trial.  If he exercises that right and does not testify,

4     would you hold that against him in any way?

5          THE JUROR:  No.

6          THE COURT:  There may be evidence in this case that the

7     victims' bodies were dismembered, and the jury may see

8     photographic evidence regarding that.  If you were to see

9     and hear such evidence, would that prevent you from acting

10    fairly and impartially?

11         THE JUROR:  No.

12         THE COURT:  Can you think of any reason, whether I have

13    asked about it or not, why you would not be fair if

14    selected?

15         THE JUROR:  No.

16         THE COURT:  Would you tend to believe or disbelieve the

17    testimony of a police officer simply because he is employed

18    as a police officer?

19         (Pause)

20         THE JUROR:  I think either --

21         THE COURT:  Let me ask it this way:  One of the things

22    I will be instructing all of the jurors is that they should

23    treat the testimony of each witness the same, and they

24    should independently evaluate each witness.  And I would

25    explain to the jury in greater deal how they should evaluate

1     the credibility of the witnesses.

2          Do you think you could follow that instruction whether

3     the witness is a police officer or someone that is a lay

4     witness?

5          THE JUROR:  Yes.

6          THE COURT:  All right.  Thank you.

7          I'm going to ask you to step out in the hallway.

8          THE JUROR:  Thank you.

9          (The juror exited.)

10         THE COURT:  I find Ms. Rheaume to be indifferent.

11         MR. CAPELESS:  The Commonwealth is content with this

12    juror, Your Honor.

13         (Off-the-record discussion with defense counsel and the

14    defendant.)

15         MR. FRANK:  Content.

16         THE COURT:  Very well.

17         (The juror entered.)

18         THE COURT:  Ms. Rheaume, you have been selected to sit

19    as a juror in this case.  We are actually not going to start

20    the trial today.  You're going to be in seat number sixteen.

21    The Court Officers will show you where to report on Friday,

22    which is when we are going to begin the case, not tomorrow

23    morning, but Friday morning at 9:30.

24         In the interim, please do not discuss the case with

25    anyone except to explain as may be necessary the fact that

1   you have been selected to sit on a jury and the anticipated

2   duration.

3       Don't observe any media reports, should there be any,

4   and's please do not attempt to independently investigate the

5   case in any way, including doing any electronic research.

6       Thank you for your patience.  We will see you on Friday

7   morning at 9:30.

8       THE JUROR:  Okay.  Thank you.

9       (The juror exited.)

10      THE COURT:  Counsel, let me raise an issue.

11      I have contemplated earlier today selecting seventeen

12  just to allow for slippage so that if all sixteen express no

13  difficulty in continuing, I will simply excuse the seventeen

14  jurors when we begin on Friday.  But it has been my

15  experience that oftentimes, after thinking about things,

16  jurors raise issues that might be a problem for their

17  continued service.

18      So I want to give you the chance to weigh in on that

19  proposal.  It would mean, of course, coming back after lunch

20  and continuing with the remaining jurors to select one

21  additional.

22      Mr. Capeless, do you wish to be heard?

23      MR. CAPELESS:  The Commonwealth is content with that

24  suggestion, Your Honor.

25      THE COURT:  Mr. Frank?

1        MR. FRANK:  My only concern is we had anticipated and

2   have used our challenges in anticipation of sixteen.

3        THE COURT:  Have you exhausted all challenges?

4        MR. FRANK:  No, we have not.

5        THE COURT:  And I understand that we may not.  I don't

6   know that we will with the seventeenth juror.  However, I

7   will give you seventeen challenges.

8        Are you opposed to my proposal?

9        MR. FRANK:  No.

10        THE COURT:  All right.  If we could bring the jurors

11   back in, please.

12        (Pause)

13        (The venire entered at 1:06 p.m.)

14        THE COURT:  Ladies and gentlemen, I want to thank you

15   for your patience.  I know it's a tedious process and

16   because you are at the end of the line, you have suffered

17   the most among the jurors, and I appreciate that.

18        We are nearing the end of the process.  We are not yet

19   there.  I am going to excuse you, take a lunch break, and

20   ask you to return at 2:00 for the purpose of completing the

21   process which I think we will be able to do in fairly short

22   order.

23        During the lunch break, I am ordering you not to have

24   any discussions with anyone about the case.  Please do not

25   discuss with anyone what limited information you have heard

1   thus far today.  Don't conduct any independent research,

2   including any electronic research, and please do not observe

3   any media reports, should there be any.

4        With that understanding, we will see you at 2:00.  The

5   Court Officers will show you where to report.

6        Thank you ladies and gentlemen.

7        (The venire exited at 1:08 p.m.)

8        THE COURT:  Counsel, we will see you at 2:00.

9        (The Court exited at 1:08 a.m.)

10       (* * * * *)

11       (The Court entered at 2:06 p.m.

12       (The defendant was present.)

13       THE COURT:  Thank you.  Please be seated.

14       All right.  Counsel, anything before we bring the next

15   juror in?

16       (Pause)

17       THE COURT:  All right.  You may do so.

18       (Pause)

19       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 79

20       COURT OFFICER:  Juror Number 79.

21       THE COURT:  Ms. Daniels, good afternoon.

22       THE JUROR:  Good afternoon.

23       THE COURT:  Thank you for your patience thus far.

24       Did you get a chance to look at that list of potential

25   witnesses?

1          THE JUROR:  I did.

2          THE COURT:  Did you recognize any names?

3          THE JUROR:  No.

4          THE COURT:  We anticipate the trial of this case will

5    last approximately four weeks, beginning each day at 9:30

6    and ending at 4:00.  Bearing in mind that schedule, the

7    importance of this case, and our need for good jurors like

8    you, are you available to help us?

9          THE JUROR:  Yes.

10         THE COURT:  Have you or any member of your family ever

11   been the victim of a crime of violence?

12         THE JUROR:  I'm sure somewhere down the line.

13         THE COURT:  Is there one that you can think of?

14         THE JUROR:  No.

15         THE COURT:  All right.

16         Is there anything -- assuming that there are such

17   instances out there -- is there anything about that that

18   might cause you to favor one side over the other?

19         THE JUROR:  No.

20         THE COURT:  Have you read, seen, or heard anything

21   about this case in media reports?

22         THE JUROR:  Yes, on the news.

23         THE COURT:  All right.  When was the most recent news

24   report that you observed, roughly?

25         THE JUROR:  Maybe the past week or so.

1       THE COURT:  All right.  And had you seen reports prior
2  to that as well?

3       THE JUROR:  Not that I can remember.

4       THE COURT:  All right.  What do you recall about the
5  contents of that report?

6       THE JUROR:  I just remember that there were three
7  people killed.  I remember Pittsfield.  That's pretty much
8  it.

9       THE COURT:  All right.  Was there anything about that
10  content that you think might interfere with your ability to
11  act as a fair and impartial juror?

12       THE JUROR:  No.

13       THE COURT:  Did you raise your hand in response to any
14  of my earlier questions?

15       THE JUROR:  Yes.

16       THE COURT:  Do you recall which ones other than the
17  media reports question?

18       THE JUROR:  Family members working.

19       THE COURT:  In law enforcement?

20       THE JUROR:  (Indicating)

21       THE COURT:  Can you tell me who those family members
22  are and what their current role is?

23       THE JUROR:  I have a distant cousin.  You want his
24  name?

25       THE COURT:  If you could speak up just a little bit.  I

1    just need to know the relationship and the line of work.

2          THE JUROR:  I have a distant cousin working as a

3    corrections officer.

4          THE COURT:  All right.  Anything about that

5    relationship that might cause you to favor one side over the

6    other?

7          THE JUROR:  No.

8          THE COURT:  And was that the only other question that

9    you raised your card in response to?

10          THE JUROR:  That and the media reports, yes.

11          THE COURT:  Would you tend to believe or disbelieve the

12    testimony of a police officer simply because that witness is

13    employed as a police officer?

14          THE JUROR:  No.

15          THE COURT:  There may be evidence in this case that one

16    of the co-defendants, Mr. Hall, had some affiliation with

17    the Hells Angels Motorcycle Club, and that this defendant,

18    Mr. Chalue, had some affiliation with the Aryan Brotherhood.

19    If you were to hear such evidence, would that interfere with

20    your ability to act fairly and impartially?

21          THE JUROR:  No.

22          THE COURT:  One of the victims in this case, Robert

23    Chadwell, was African American.  Mr. Chalue is Caucasian.

24    Would these facts interfere with your ability to act fairly

25    and impartially?

1      THE JUROR:  No.

2      THE COURT:  Mr. Chalue has a right to remain silent in

3  this trial.  If he exercises that right and does not

4  testify, would you hold that against him in any way?

5      THE JUROR:  No.

6      THE COURT:  There may be evidence in this case that the

7  victims' bodies were dismembered, and the jury may be

8  exposed to testimony and photographic evidence regarding

9  that.  If you were to see and hear such evidence, would that

10  prevent you from acting fairly and impartially?

11      THE JUROR:  No.

12      THE COURT:  Can you think of any reason, whether I

13  asked about it or not, why you might not be impartial and

14  fair if selected as a juror?

15      THE JUROR:  No.

16      THE COURT:  I see that you make reference to having

17  been served with a court order in the past.  Was there

18  anything about that experience that you think might cause

19  you to favor one side over the other in this case?

20      THE JUROR:  No.  No.

21      THE COURT:  Thank you.

22      I'm going to ask you to step out into the hallway for

23  just a minute, please.

24      THE JUROR:  Thank you.

25      (The juror exited.)

1      THE COURT:  It appears to me I forgot to ask her if she

2   knows any witnesses.  Did I ask that question?  I don't

3   believe I did.

4      Before we bring her back in, anything else?

5      MR. FRANK:  Yes, Judge.  She has children ages four and

6   one.  And I'd ask if you could ask her if she's considered

7   how she will handle that situation.

8      THE COURT:  If she says she's available to sit for four

9   weeks, does it matter how she handles her children

10  situation?

11     MR. FRANK:  I only say that because we have had a

12  number of people who have failed to consider situations

13  regarding work.  Better safe than sorry on that issue.

14     THE COURT:  All right.  I'm not inclined to ask that

15  question, but let's bring Ms. Daniels back in.

16     (The juror entered.)

17     THE COURT:  I thought, perhaps incorrectly, that I

18  hadn't asked you about the list of witnesses, but I did ask

19  you that, did I not?

20     THE JUROR:  Yes, you did.

21     THE COURT:  And you didn't know any?

22     THE JUROR:  No, I didn't.

23     THE COURT:  All right.  Thank you very much.

24     (The juror exited.)

25     THE COURT:  Find her indifferent.

1        MR. CAPELESS:  The Commonwealth is content with this

2   juror, Your Honor.

3        (Pause)

4        MR. FRANK:  Challenge, Your Honor.

5        THE COURT:  Very well.

6        (The juror entered.)

7        THE COURT:  Ms. Daniels, thank you for your service

8   today.

9        You have been excused.

10       THE JUROR:  Thank you.

11       VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 80

12       COURT OFFICER:  Juror Number 80.

13       THE COURT:  Ms. Flores, good afternoon.

14       THE JUROR:  Good afternoon, sir.

15       THE COURT:  Did you get a chance to look at that list

16   of potential witnesses?

17       THE JUROR:  I did.

18       THE COURT:  Did you recognize any names?

19       THE JUROR:  I did not.

20       THE COURT:  We anticipate the trial of this case will

21   last approximately four weeks, proceeding from 9:30 in the

22   morning until approximately 4:00 the afternoon.  Bearing in

23   mind that schedule, the importance of this case, and our

24   need for good jurors like you, are you available to help us?

25       THE JUROR:  Yes.

1      THE COURT:  Have you or any member of your family ever
2   been the victim of a crime of violence?
3      THE JUROR:  No.
4      THE COURT:  Have you seen or heard any media reports
5   regarding this case or discussed it with anyone?
6      THE JUROR:  Yes.
7      THE COURT:  And did you discuss it with someone or
8   media reports or both?
9      THE JUROR:  Media reports when it first came out and
10   then today, it's in the paper.
11      THE COURT:  Did you read today's article?
12      THE JUROR:  Uh-huh.
13      THE COURT:  Was there anything about the content of
14   that article that you recall that goes beyond what I've
15   described here in the courtroom?
16      THE JUROR:  No.
17      THE COURT:  Was there anything about the contents of
18   the media reports that you think would interfere with your
19   ability to be fair and impartial?
20      THE JUROR:  Your previous article would, when it first
21   came out.
22      THE COURT:  And tell me what you recall about the
23   previous article.
24      THE JUROR:  It seemed very strong that the accused had
25   done a horrible crime to these three people.

1     THE COURT:  And you think, based on your recollection

2  of the contents of that article, it would be difficult for

3  you to be fair to Mr. Chalue in this trial?

4     THE JUROR:  It would be, sir.

5     THE COURT:  You are excused.  Thank you.

6     VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 81

7     COURT OFFICER:  Juror Number 81.

8     THE COURT:  Mr. Giard, is that the correct

9  pronunciation?

10     THE JUROR:  Yes, it is.

11     THE COURT:  Good afternoon.

12     Did you recognize any names on that list of witnesses?

13     THE JUROR:  I did, sir.

14     THE COURT:  Who would those be?

15     THE JUROR:  Lieutenant Joseph McDyer, went to the

16  police academy with him.

17     THE COURT:  All right.  Mr. Capeless, do you anticipate

18  that that witness would be called?

19     MR. CAPELESS:  No, Your Honor.

20     THE COURT:  Did you recognize any other names?

21     THE JUROR:  No, I didn't.

22     THE COURT:  Was there -- you're currently a police --

23  now -- were a police officer in the Town of East Longmeadow

24  from 1980 to 1985; is that right?

25     THE JUROR:  That's correct.

1      THE COURT:  Is there anything about your experience in

2    that regard that you think might interfere with your ability

3    to be fair to both sides in this case?

4      THE JUROR:  No, sir.

5      THE COURT:  Did you respond to any of the other

6    questions that I asked earlier by raising your card?

7      THE JUROR:  It was just the bit about this morning

8    before I was leaving, I did see on the news that this case

9    was coming up.

10      THE COURT:  Do you recall hearing or seeing any media

11   reports before this morning?

12      THE JUROR:  A long time ago.  It's just been -- drifted

13   back and forth.

14      THE COURT:  All right.  Let me ask if there's anything

15   about the content of either of those media reports that you

16   think might prevent you from acting fairly and impartially?

17      THE JUROR:  No, sir.

18      THE COURT:  We anticipate this case will take four

19   weeks to complete, proceeding each day from 9:30 in the

20   morning until 4:00 in the afternoon.  Bearing in mind that

21   schedule and the importance of this case and our need for

22   good jurors like you, are you available to help us?

23      THE JUROR:  Yes, sir.

24      THE COURT:  Have you or any family member ever been the

25   victim of a crime of violence?

1      THE JUROR:  No, sir.

2      THE COURT:  Would you tend to believe, based on your

3  experience, or disbelieve the testimony of a police officer

4  as opposed to any other witness simply because of their

5  employment status as a police officer?

6      THE JUROR:  No, sir.

7      THE COURT:  There may be evidence in this case that one

8  of the co-defendants, Mr. Hall, had some affiliation with

9  the Hells Angels Motorcycle Club, and that this defendant,

10  Mr. Chalue, had some affiliation with the Aryan Brotherhood.

11  If you were to hear such evidence, would that prevent you

12  from acting fairly and impartially?

13      THE JUROR:  No, sir.

14      THE COURT:  One of the victims in this case, Robert

15  Chadwell, was African American, and the defendant is

16  Caucasian.  Would that evidence tend to -- or would it

17  interfere with your ability to act fairly and impartially?

18      THE JUROR:  No, sir.

19      THE COURT:  Mr. Chalue has a right to remain silent at

20  this trial.  If he exercises that right and does not

21  testify, would you hold that against him in any way?

22      THE JUROR:  No, sir.

23      THE COURT:  There may be evidence that in this case,

24  the bodies of the victims were dismembered, and the jurors

25  may hear evidence regarding that and see photographic

1    evidence regarding that.  Would such evidence interfere with

2    your ability to be a fair and impartial juror?

3         THE JUROR:  No, sir.

4         THE COURT:  Can you think of any other reason, whether

5    I have asked about it or not, why you would not be fair and

6    impartial if selected?

7         THE JUROR:  No, sir.

8         THE COURT:  Thank you, Mr. Giard.

9         If you could step out in the hallway for just a minute.

10        (The juror exited.)

11        THE COURT:  Find him indifferent.

12        MR. CAPELESS:  The Commonwealth is content with this

13   juror.

14        THE COURT:  Thank you.

15        MR. FRANK:  Challenge.

16        THE COURT:  Very well.

17        (The juror entered.)

18        THE COURT:  Mr. Giard, thank you for your service here

19   today.

20        You have been excused.

21        THE JUROR:  Thank you.

22        VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 82

23        COURT OFFICER:  Juror Number 82.

24        THE COURT:  Is it Mr. Alvarado?

25        THE JUROR:  Yes.

1          THE COURT:  Good afternoon.

2          Did you recognize any names from that list of

3     witnesses?

4          THE JUROR:  No.

5          THE COURT:  We anticipate, Mr. Alvarado, that this

6     trial will last four weeks, proceeding each day from 9:30 in

7     the morning until 4:00 in the afternoon.  Bearing in mind

8     that schedule, the importance of this case, and our need for

9     good jurors like you, are you available to help us?

10         THE JUROR:  I have to say something.

11         THE COURT:  All right.

12         THE JUROR:  It's a little bit hard for me to understand

13    the way the English because my English -- it's just a little

14    bit -- the English I use is most for the work, you know.

15         THE COURT:  Yes.

16         THE JUROR:  And in this level, it's a little bit

17    high -- hard for me.

18         THE COURT:  I understand.

19         Did you have some difficulty understanding my

20    presentation earlier this morning?

21         THE JUROR:  Yes, yes.

22         THE COURT:  All right.  Thank you very much.

23    You are excused.

24         THE JUROR:  Thank you.

25         VOIR DIRE EXAMINATION OF PROSPECTIVE JUROR NUMBER 83

1          COURT OFFICER:  Juror Number 83.

2          THE COURT:  Ms. Beaudry, good afternoon.

3          THE JUROR:  Good afternoon.

4          THE COURT:  Did you recognize any names from that list

5   of potential witnesses?

6          THE JUROR:  I did not.

7          THE COURT:  We anticipate the trial of this case will

8   last approximately four weeks, proceeding each day from 9:30

9   in the morning until 4:00 in the afternoon.  Bearing in mind

10  that schedule, the importance of this case, and our need for

11  good jurors like you, are you available to help us?

12         THE JUROR:  Yes.

13         THE COURT:  Have you or any family member ever been the

14  victim of a crime of violence?

15         THE JUROR:  No.

16         THE COURT:  Have you ever seen or heard any media

17  reports regarding this case or discussed it with anyone?

18         THE JUROR:  I haven't.

19         THE COURT:  Would you tend to believe or disbelieve the

20  testimony of a police officer as opposed to any other

21  witness simply because that witness is a police officer?

22         THE JUROR:  No.

23         THE COURT:  There may be evidence in this case that one

24  of the co-defendants, Mr. Hall, had some affiliation with

25  the Hells Angels Motorcycle Club.  In addition, there may be

1     some evidence that Mr. Chalue, the defendant, had some

2     affiliation with the Aryan Brotherhood.  If you were to hear

3     such evidence, would it interfere with your ability to

4     remain fair and impartial as a juror?

5           THE JUROR:  No.

6           THE COURT:  One of the victims in this case, Robert

7     Chadwell, was African American.  Mr. Chalue is Caucasian.

8     Would those facts prevent you from acting fairly and

9     impartially?

10          THE JUROR:  No.

11          THE COURT:  Mr. Chalue has a right to remain silent at

12    his trial.  If he exercised that right in this trial and

13    chose not to testify, would you hold that against him in any

14    way?

15          THE JUROR:  No.

16          THE COURT:  There may be evidence in this case that the

17    victims' bodies were dismembered.  If you were to hear or

18    see evidence regarding that, would that interfere with your

19    ability to be fair and impartial?

20          THE JUROR:  No, I don't think so.

21          THE COURT:  Let me follow-up with a question about

22    that.  It's likely you would see photographic evidence

23    regarding the condition of the bodies.  Many people would

24    have an emotional response to observing that.  One of the

25    things I would be explaining to the jurors is that they

1    should disregard emotion or sympathy and judge the facts

2    fairly and impartially.

3        Do you think you could follow that instruction after

4    viewing such photographs?

5        THE JUROR:  I think so.

6        THE COURT:  Can you think of any reason, whether I

7    asked about it or not, why you would not be fair and

8    impartial if selected as a juror?

9        THE JUROR:  I can't.

10       THE COURT:  All right.  Thank you, Ms. Beaudry.

11       If you could step back in the hallway for just a

12   minute.

13       Oh, can I stop you for one more minute.

14       I overlooked a couple of things on your biographical

15   form.  First, I see you worked in a law firm for eleven

16   years?

17       THE JUROR:  Yes.

18       THE COURT:  What was the nature of the practice of the

19   lawyers for whom you worked?

20       THE JUROR:  It was mostly estate work and guardianship

21   matters.

22       THE COURT:  Was there anything about your employment in

23   that regard that might interfere with your ability to act as

24   a fair juror in this case?

25       THE JUROR:  No.

1          THE COURT:  There's also reference to you and someone
2     in your family having been convicted of a criminal offense.
3     Was that you or someone else?
4          THE JUROR:  That was me.
5          THE COURT:  How long ago did that occur?
6          THE JUROR:  That was 2009.
7          THE COURT:  All right.  And were the two different
8     crimes referenced there part of the same criminal episode?
9          THE JUROR:  No.
10         THE COURT:  They were different?
11         THE JUROR:  Right.
12         THE COURT:  And was there anything about those episodes
13    that -- or that experience that you think might cause you to
14    favor one side or the other in this case?
15         THE JUROR:  No.
16         THE COURT:  Thank you.
17         You can now step out in the hallway.
18         (The juror exited.)
19         THE COURT:  I find her indifferent.
20         MR. CAPELESS:  Could I just have one moment, Your
21    Honor?
22         THE COURT:  You may.
23         (Pause)
24         MR. CAPELESS:  Commonwealth is content with this juror.
25         THE COURT:  Mr. Frank?

1       MR. FRANK:  Content.

2       THE COURT:  Very well.

3       (The juror entered.)

4       THE COURT:  Ms. Beaudry, you have been selected to sit

5   as a juror in this case.  You are going to be juror number

6   seventeen.

7       The trial is not going to begin until Friday.  So in a

8   minute, I'm going to excuse you and ask you to return on

9   Friday morning at 9:30.  The Court Officers will explain to

10  you where it is you are to report.

11      In the interim, please don't discuss the case with

12  anyone.  You can certainly explain that you've been selected

13  as a juror in a criminal case and the anticipated duration,

14  but beyond that, please say no more.

15      Second, don't conduct any independent investigation of

16  the case or any electronic research of any kind.  And

17  finally, should there be any media reports, please disregard

18  those.

19      With that, Ms. Beaudry -- first of all, do you

20  understand those instructions?

21      THE JUROR:  Yes.

22      THE COURT:  We will see you Friday morning at 9:30.

23  Thank you.

24      (The juror exited.)

25      THE COURT:  Counsel, we now have seventeen prospective

1    jurors.  Is there anything that either of you would like to

2    raise before we adjourn for the day?

3         MR. FRANK:  Your Honor, I understand that we're going

4    to be starting to take evidence on Friday.  And just so I

5    know -- I would like some -- I would like to anticipate the

6    general area that the District Attorney is going into, if

7    it's -- he's already announced that they'll be starting, I

8    believe, with the family and perhaps New York evidence.  If

9    it's beyond that, if I could get some notice on that, it

10   would be, make for --

11        THE COURT:  In the last trial, there was an agreement,

12   as I recall, that Mr. Capeless would give notice to you,

13   Mr. Frank, and/or defense counsel, and defense counsel

14   would, in turn, give notice to Mr. Capeless of the

15   anticipated list of witnesses for the following day.

16        Any reason we can't follow that policy in this case,

17   Mr. Capeless?

18        MR. CAPELESS:  No, Your Honor.

19        THE COURT:  All right.  I will assume the two of you

20   can work that out.

21        MR. FRANK:  Thank you very much.

22        THE COURT:  Anything else on behalf of the

23   Commonwealth?

24        MR. CAPELESS:  No.

25        THE COURT:  We will see you Friday morning at 9:30.

1          MR. FRANK:  Judge, I will be filing -- I thought I had

2    filed a motion for clothing allowance.  If I can do that

3    through your clerk so I can take care of that aspect, I

4    would appreciate it.

5          THE COURT:  You may do so.

6          (The Court exited at 2:25 p.m.)

7          (* * * * *)

1                    **C E R T I F I C A T I O N**

2        I, ALICIA CAYODE KYLES, REGISTERED PROFESSIONAL

3    REPORTER, REGISTERED MERIT REPORTER, OFFICIAL COURT

4    STENOGRAPHER, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE

5    AND ACCURATE TRANSCRIPT FROM THE RECORD OF THE COURT

6    PROCEEDINGS IN THE ABOVE ENTITLED MATTER.

7        I, ALICIA CAYODE KYLES, FURTHER CERTIFY THAT THE

8    FOREGOING IS IN COMPLIANCE WITH THE ADMINISTRATIVE OFFICE OF

9    THE TRIAL COURT DIRECTIVE ON TRANSCRIPT FORMAT, RESERVING MY

10   RIGHT TO PROVIDE AN ELECTRONIC COPY, WHEN REQUESTED, AT THE

11   COPY RATE AS PROVIDED BY THE STATUTE IN CHAPTER 221: SECTION

12   88, AS AMENDED.

13       I, ALICIA CAYODE KYLES, FURTHER CERTIFY THAT I NEITHER

14   AM COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE

15   PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN, AND

16   FURTHER THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED

17   IN THE OUTCOME OF THE ACTION.

18

19

20   ALICIA CAYODE KYLES, RPR, RMR, OCR

21   Dated:  December 18, 2014

22   50 State Street

23   Springfield, Massachusetts  01103

24   413-748-7624

25