UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID CHALUE | ) | |
| Petitioner, | ) | |
| v. | ) | Civil No. 3:22-cv-30030-MRG |
| RAYMOND ROYCE[1] | ) | |
| Respondent | ) | |

**ORDER ON RESPONDENT'S MOTION TO DISMISS [ECF No. 30]**

**GUZMAN, J.**

Petitioner David Chalue ("Petitioner" or "Defendant") brings a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his Massachusetts state convictions on three counts each of first-degree murder, kidnapping, and intimidation of a witness. [ECF No. 1]. The Respondent filed an opposition to the petition on February 6, 2023. [ECF No. 30]. For the reasons stated below, the Court **DENIES** the Petitioner's request for habeas relief, and the petition is **DISMISSED**.

**I.    BACKGROUND**

   **A.  Relevant Facts**

---

[1] Pursuant to a transfer under the Interstate Corrections Compact, the petitioner is serving his Massachusetts sentence for first-degree murder in New Jersey. He has named a New Jersey correctional official, Raymond Royce, as the respondent. Where the petitioner is challenging his Massachusetts conviction in the District of Massachusetts, a Massachusetts official is the real party in interest. Therefore, the Court substitutes the Massachusetts Commissioner of Correction, Carol Mici, as the respondent. See, e.g., Gustafson v. Williams, No. 2:09-CV-01225KJDLRL, 2010 WL 1904518, at *4 (D. Nev. May 10, 2010).

The Court incorporates the factual background as stated in Commonwealth v. Chalue, 486 Mass. 847, 848-59 (2021).[2]

## B. Procedural History

The Court incorporates the procedural history of the case as stated in Petitioner's Memorandum. [Pet'r Mem. at 2-5, ECF No. 20].

## II. LEGAL STANDARDS

Since April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") controls habeas review. This Act commands district courts to deny a habeas petition unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on . . . unreasonable [factual] determination[s]." 28 U.S.C. § 2254(d)(1)-(2). For a state court decision to be contrary to Federal law, "it either applies a test that is inconsistent with one announced by the [Supreme] Court or reaches the opposite conclusion on materially indistinguishable facts." Rashad v. Walsh, 300 F.3d 27, 34-35 (1st Cir. 2002). Meanwhile, a decision is unreasonable where "the state court identifi[ed] the correct governing legal principle . . . but unreasonably applie[d] that principle" when viewed objectively. Williams v. Taylor, 529 U.S. 362, 365 (2000). Mere error by the state court is not enough to sustain a petition. McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002). The state court decision must have "some increment of incorrectness beyond error" that is "great enough to make the decision unreasonable in the independent and objective judgment of the federal court" that is reviewing the habeas petition. Id. (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2nd Cir. 2000)). Indeed, "[t]he standard for evaluating the state court's decision is 'highly deferential,' with 'the presumption that state courts know and follow the law' and the requirement that the

---

[2] In reviewing a habeas petition, factual determinations by the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1).

decisions of the state court 'be given the benefit of the doubt.'" Simpson v. Spencer, 372 F. Supp. 2d 140, 145 (D. Mass. 2005) (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

In the same vein, factual determinations by the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The burden is on the petitioner to rebut the presumption of correctness by clear and convincing evidence. Id.; see Teti v. Bender, 507 F.3d 50, 58 (1st Cir. 2007). If the petitioner cannot clear this hurdle, then the state fact findings must be given credit by the habeas court. Rashad, 300 F.3d at 35.

### III. DISCUSSION

The Petitioner raises three grounds for federal habeas relief: (1) the trial judge gave an erroneous Allen dynamite instruction to a lone juror and then to the rest of the jurors concerning the reaching of a unanimous verdict; (2) the trial judge repeatedly allowed admission of irrelevant and prejudicial bad-act evidence; and (3) the prosecutor made several misstatements of evidence, inferences, and emotional appeals in his opening statement and summation. [Pet'r Mem. at 1-2, ECF No. 20].

### A. The SJC's Review of the Superior Court's Private Allen Charge to a Lone Minority Juror Was Incorrect But Not Objectively Unreasonable

#### 1. Factual Background

In his first ground for habeas relief, the Petitioner argues that the trial judge administered an impermissible Allen charge to a lone juror that violated the Petitioner's right "to have the jury speak without being coerced." [See Pet'r Mem. at 28 (quoting United States v. Burgos, 55 F.3d 933, 936 (4th Cir. 1995)]. The relevant facts are as follows. On the fourth day of deliberation in the Petitioner's Superior Court trial, the jury sent a note saying that they had reached unanimous verdicts. Chalue, 486 Mass. at 858. The Defendant was pronounced guilty on counts of murder in the first degree,

kidnapping, and witness intimidation. Id. Following the verdict announcement, the Defendant asked the judge to poll the jurors individually. Id. The clerk inquired of the juror in seat one ("Juror No. 1") if she agreed with the verdicts, and she said, "[N]o." Id. The court told the parties it intended to reassemble the jurors and instruct them to resume their deliberations, as it was clear that their verdict was not unanimous, given Juror No. 1's answer at polling. [Pet'r Mem. at 4]. After a brief recess and the judge's denial of the Defendant's oral motion for a mistrial, the judge ordered the jury to resume deliberations. Chalue, 486 Mass. at 858. "Five minutes later," the judge relayed to counsel that Juror No. 1 was "refusing to reenter the deliberation room" and that the judge "planned to call juror no. 1 to sidebar to speak with her." Id. at 858-59. The Defendant objected, but the judge overruled the objection and administered a private modified Tuey-Rodriguez[3] charge to Juror No. 1. [Pet'r Mem. at 4].

> In the exchange at sidebar, the judge said to Juror No. 1, in part,
>
> As I instructed you before, if you have any honestly held feelings about the facts of this case, no one is suggesting that you surrender those feelings, but on the other hand, it is important that you listen to your fellow jurors with an open mind and see if you can come to a unanimous decision, so I'm going to ask that you return to deliberate with them. I know it might be difficult but it is important that you keep an open mind and listen, and again, it's important that you not surrender your feelings if convinced.

Chalue, 486 Mass. at 859. Juror No. 1 responded, "Okay," and agreed to return to deliberations. Id. Defense counsel objected to the colloquy. Id. It is unclear whether other members of the jury were present in the court room during the individual colloquy between the judge and the Juror No. 1, but

---

[3] The Tuey-Rodriguez charge, as established in Commonwealth v. Rodriquez, 364 Mass. 87, 101-102 (1973) is the Massachusetts analog to the federal "Allen charge," which originated in Allen v. United States, 164 U.S. 492, 501 (1896). The charge is an instruction that "is intended for use either as part of the original instructions to the jury or as a supplemental instruction when the jurors appear to be running into difficulty reaching a verdict." Rodriguez, 364 Mass. at 101.

the facts indicate that Juror No. 1 would have realized that she was being singled out by the judge. See id. at 858. After the juror left the courtroom, the full jury resumed deliberations and returned approximately two and one-half hours later asking to be excused for the evening. Id at 859.

The next day, defense counsel renewed his motion for a mistrial and noted that several jurors had indicated displeasure with being asked to deliberate further, pointing out that several jurors besides Juror No. 1 were crying and the foreperson "threw a pencil, slammed his book on a chair, and shook his head when juror no. 1 said that she did not agree with the verdicts." Id. In response to the issues defense counsel raised, the trial judge observed that the jury had not demonstrated it was deadlocked,[4] but instructed the full jury as follows:

> Ladies and gentlemen, I know from my own observations of you yesterday, that some of you had an emotional reaction when the verdict was announced, when you were ordered to resume your deliberations after I determined that the verdict was not unanimous, and then again at the end of the day when I ordered you to return here today for continued deliberations.
>
> You will recall that I earlier instructed you that emotion or sympathy, passion or prejudice, should play no role in your deliberations. I urge you to follow that instruction and remove emotion from your deliberations in an effort to reach a unanimous verdict, if you can do so in good conscience.
>
> Please try to be patient and respectful of the views of your fellow jurors as you work toward that end. I now excuse you to continue your deliberations.

Id. at 859-60.

---

[4] The judge noted that the jury had not stated that they were deadlocked, saying:

> "[W]e have not heard, once, from this jury that they are at an impasse of any kind. They have continued their deliberations after having been sent out yesterday for well over two hours, and when told that they had an option to continue yesterday evening or come back today and resume their deliberations they elected to come back today without suggesting that they were at an impasse."

Chalue, 486 Mass. at 865.

The jury left the court room at 9:26 a.m. and returned at 2:35 p.m. with unanimous verdicts of guilty on all charges. Id. at 860. At defense counsel's request, the trial judge again ordered the clerk to poll the jury, and all jurors affirmed that the verdicts were theirs. Id.

On appeal, the Supreme Judicial Court of Massachusetts ("SJC") ruled that the Superior Court's private Tuey-Rodriguez charge to the lone minority juror was erroneous for two reasons. First, the SJC reasoned that the scenario "reasonably might lead a juror to question even honestly held beliefs" where the trial judge conducted an individual colloquy with Juror No. 1 knowing she was a hold-out juror, and the Juror No. 1 would have been aware that the trial judge knew her position when the jurors were polled. See Chalue, 486 Mass. at 862 (citing United States v. Sae-Chua, 725 F.2d 530, 532 (9th Cir. 1984) (giving modified Allen charge was reversible error where judge knew identity of sole dissenting juror and juror was aware that judge possessed that knowledge)). Second, the SJC took issue with the trial judge's instruction to Juror No. 1 to keep an open mind and see whether the jury as a whole could come to a unanimous decision, noting that such language was a prototypical element of the Tuey-Rodriquez charge, and the instruction implied that a mistrial was undesirable or that the minority juror should reconsider her view in light of the majority. Id. at 862, 862 n. 16 (citing United States v. Zabriskie, 415 F.3d 1139, 1147 n.11 (10th Cir. 2005)). Therefore, the SJC concluded that the indicia of coercion present in the trial judge's language rendered it improper for the judge to give the lone juror the instruction in isolation. See Chalue, 486 Mass. at 862.

Although the trial judge erred in the handling of the hold-out juror instruction, the SJC found that the instruction was not so coercive as to require reversal of the Defendant's convictions because the juror instruction "did not influence the jury or had but very slight effect" for two reasons. See id. at 862 (quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994)). First, the SJC found that the Defendant was not prejudiced because the short colloquy with the juror was conducted at sidebar and

6

was a restrained and brief exchange. Id. The SJC compared the Defendant's case to United States v. Zabriskie, which held that it was impermissibly coercive to selectively and privately give an Allen charge to a hold-out juror. Id.; see Zabriskie, 415 F.3d 1139. The SJC distinguished Zabriskie by noting the instruction there was lengthy, repetitive, and "heavy-handed." Chalue, 486 Mass. at 863-64. Second, the SJC reasoned that the improper instruction in the Defendant's case was not prejudicial because the jury continued to deliberate for a substantial amount of time following the trial judge's exchange with Juror No. 1. Id. at 864. Further, the SJC remarked on the "difficult position in which the judge found himself," noting that at the time the trial judge conducted the colloquy, the jury had not indicated previously that they were deadlocked and "it would have been inappropriate to deliver the traditional Tuey-Rodriguez charge to the full jury." Id. at 865. In other words, the SJC considered the discretion of the trial judge and the totality of the factors the judge encountered.

Taken together, the SJC determined for the aforementioned reasons, the trial judge's instruction was erroneous, but that the Petitioner was not prejudiced because the juror instruction "did not influence the jury or had but very slight effect." See Chalue, 486 Mass. at 862.

2. **Analysis**

The Court agrees with the SJC that the Superior Court judge's sidebar colloquy with Juror No. 1 was erroneous, but it does not endorse the SJC's conclusion that the error was not prejudicial to the Petitioner. See Chalue, 486 Mass. at 862-63. Here, the Superior Court judge knew the identity of the lone minority juror and the targeted Tuey-Rodriguez charge to her was coercive where the juror "could interpret the charge as directed specifically at [her]." United States v. Ajiboye, 961 F.2d 892, 894 (9th Cir. 1992). Further, this Court would interpret the import of Zabriskie differently, namely, finding that the facts of the lone juror instruction in Zabriskie were more similar to the facts in the case at hand than the SJC stated, and, therefore, the trial judge's instruction in Petitioner's case was

7

both erroneous and prejudicial. See Zabriskie 415 F.3d at 1143 (finding prejudice where the trial judge questioned the hold-out juror in an isolated setting, questioned the juror about whether he could follow the instructions, whether he could reexamine his own views, and whether he could participate with an open mind).

While the Court believes the SJC ruling on this issue was incorrect, mere incorrectness does not warrant habeas relief. The Supreme Court has made clear that the question before federal courts when analyzing a challenged state court application of clearly established federal law is not whether the federal courts consider the state court's application incorrect but rather whether the application is "also objectively unreasonable." Rompilla v. Beard, 545 U.S. 374, 377 (2005) (quoting Wiggins v. Smith, 539 U.S. 510, 520-21 (2003)). The Supreme Court expounded on this principle in Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003), noting:

> It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous. [(citation and quotation marks omitted)]. We have held precisely the opposite: "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams v. Taylor, 529 U.S. 362, 411 (2000). Rather, that application must be objectively unreasonable. Id. at 409.

To be objectively unreasonable, a state court's ruling must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Shoop v. Hill, 586 U.S. 45, 48 (2019) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

Here, while the Court disagrees with the SJC's ruling on the juror instruction issue, the Court finds that the SJC's application of Supreme Court precedent was not objectively unreasonable. The Court acknowledges the ambiguities of whether there is a clearly established law from Supreme Court precedent on jury coercion issues, but finds that Lowenfield v. Phelps suffices to set the standard

applicable here. See 484 U.S. 231 (1988). Lowenfield overall dictates that courts should engage in a totality-of-the-circumstances analysis when considering whether a jury instruction was coercive. Id. at 250. While the SJC did not explicitly state it was engaging in a totality-of-the-circumstances analysis per Lowenfield, it clearly did consider the totality of the circumstances, including the context in which the instruction was delivered, the exact language used by the judge, the length of time the jury took to deliberate after the instruction was given, and the judge's potential considerations in light of a complicated issue. The SJC's analysis was not an objectively unreasonable application of Lowenfield. That this Court may have ruled differently on the issue only indicates fair-minded disagreement, not the high bar of objective unreasonableness. See Shoop, 586 U.S. at 48. Therefore, the Petitioner is not entitled to habeas relief on Ground One.

### B. The Petitioner Is Not Entitled To Relief On His Claim That The Trial Judge Impermissibly Permitted Prior-Bad-Act Evidence To Be Admitted

As his second ground for relief, the Petitioner argues that the SJC unreasonably rejected his claims that the trial judge wrongly permitted certain evidence to be introduced. More specifically, the Petitioner challenges the trial judge's decision to permit the prosecution to introduce evidence of his affiliation with the Aryan Brotherhood, evidence of his codefendant's possession of certain weapons, and anatomical drawings depicting amputations. [Pet'r Mem. at 47-61]. The Petitioner's arguments fail for the reasons stated in Respondent's memorandum.

First, errors in applying state law do not provide a basis for federal habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); see also Pulley v. Harris, 465 U.S. 37, 41 (1984). In Estelle, the Supreme Court "reemphasize[d] that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," such as here, where the SJC applied state law to its review of the trial court's evidentiary

9

rulings. See Chalue, 486 Mass. at 867-72. Second, habeas review under § 2254 is not appropriate where there is no clearly established Supreme Court precedent that squarely addresses the issue raised by the petitioner. Jenkins v. Bergeron, 824 F.3d 148, 152–53 (1st Cir. 2016) ("[i]f the federal law is not clearly established by the United States Supreme Court, then per force the state court decision cannot be either contrary to or an unreasonable application of clearly established federal law." (quoting Likely v. Ruane, 642 F.3d 99, 102 (1st Cir. 2011)); Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam) (citations omitted). As the Respondent notes, Estelle v. McGuire is the closest the Supreme Court has come to addressing the type of claim Petitioner raises. See Estelle, 502 U.S. 62. But in Estelle, the Court expressly declined to reach the issue. 502 U.S. at 75, n.5 ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").

Regarding the Petitioner's argument that the challenged evidentiary rulings were so fundamentally unfair that they independently violate due process, the Court finds that the SJC reasonably and correctly rejected that claim. See) Chalue, 486 Mass. at 867-72. With the lack of clear Supreme Court precedent on state evidentiary rulings, the Petitioner must show that the SJC's rejection of his claim was an unreasonable application of the "broader fair-trial principle." Lyons v. Brady, 666 F.3d 51, 56 (1st Cir. 2012) (quoting Coningford v. Rhode Island, 640 F.3d 478, 485 (1st Cir. 2011). The Petitioner is correct that relief under § 2254 may be triggered where the state court's application of state law was "so arbitrary or capricious as to constitute an independent due process . . . violation." Coningford, 640 F.3d at 484 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990). However, to ground habeas relief, a "misbegotten evidentiary ruling" must result "in a fundamentally unfair trial" Coningford, 640 F.3d at 484 (citing Montana v. Egelhoff, 518 U.S. 37, 43 (1996)). In his memorandum, the Petitioner acknowledges that "the category of infractions that violate 'fundamental

10

fairness' [is defined] very narrowly." [Pet'r Mem. at 47 (quoting Dowling v. United States, 493 U.S. 342, 352 (1990))]. "To be a constitutional violation, a state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible." Lyons, 666 F.3d at 56 (quoting Petrillo v. O'Neill, 428 F.3d 41, 44, n.2 (1st Cir. 2005)).

The SJC reasonably and correctly rejected the Petitioner's claim where it applied state law that is consistent with federal evidentiary standards.[5] The Petitioner may disagree with the ruling, but the SJC did weigh any unfair prejudice to Chalue against the probative value of admitting the contested evidence, as required by federal law. The SJC agreed with the Commonwealth that the Aryan Brotherhood evidence was both relevant and admissible for two non-propensity purposes: "to show how Hall induced Casey to help bury the remains and to establish the credibility of testimony from several jailhouse informants." Chalue, 486 Mass. at 867. While the SJC did find that one piece

---

[5] The Respondent correctly explains this principle in his memorandum:

> The SJC explained that, while so-called prior bad act evidence may not be introduced to demonstrate a defendant's bad character, it is admissible if relevant for a non-propensity purpose. Chalue, 486 Mass. at 866, citing Commonwealth v. Crayton, 470 Mass. 228, 249 (2014). See Mass. G. Evid. § 404(b) (2020). This recitation of state law is consistent with the federal evidentiary standard. See Fed. R. Evid. 404(b). The court also recognized the well-established state law tenet that, even if such evidence is relevant for a proper purpose, it will not be admitted if a judge determines that its probative value is outweighed by a risk of unfair prejudice to the defendant. Chalue, 486 Mass. at 866. The state evidentiary standard is, again, consistent with its federal counterpart. See Fed. R. Evid. 403. The SJC's application of these state laws to assess the admission of the challenged evidence was sound, in conformity with federal evidentiary principles, and, therefore, consistent with due process. See Robertson v. Ryan, United States District Court Civil Action No. 16-cv-1609-ADB, 2019 WL 2501491 at *8 (June 17, 2019) (noting that while Federal Rules of Evidence are inapplicable in state proceedings, some courts have relied on them by analogy in assessing a due process habeas claim related to admission of prior bad act evidence because "a court can conclude that a petitioner received due process if the state court's evidentiary ruling would also have been proper under the Federal Rules of Evidence").

[Resp't Mem. at 38, ECF No. 30].

of the Aryan Brotherhood evidence "crossed the line into being unduly prejudicial[,]" the court concluded that the error itself was not prejudicial due to its minimal influence on the jury. Id. at 869.

Regarding the photographs of certain weapons found in the Petitioner's co-defendant's apartment, the SJC held that "the judge properly admitted most of the photographs of weapons, although it was error to admit evidence of the bat with nails and the hatchet. This error, however, was not prejudicial." Chalue, 486 Mass. at 872. The SJC found photographs of a machete and a cleaver were admissible because those weapons could have been used in the crime, but the trial judge erred in allowing photographs of a spiked baseball bat and hatchet because a forensic witness stated the injuries of the victims were not consistent with cuts from those two weapons. Id. at 872-73. This admission was not prejudicial because there was other ample evidence from which the jury could find "that the defendant had access to potential tools of dismemberment." Id. at 873.

Regarding the anatomical drawings depicting amputations, the SJC found the drawings were admissible against the Defendant for two noncharacter purposes: the state of mind and motive of his coventurer in the crime. Id. at 870-71. Evidence of the coventurer's state of mind and motive was relevant because it "put the killing into the context of a narrative that was comprehensible to the jury and was relevant to the purpose of the joint venture." Id. at 871 (quoting Commonwealth v. Fernandes, 427 Mass. 90, 95 (1998)). The SJC weighed prejudice to the Defendant, and reasonably concluded that the drawings were correctly admitted.

Taken together, the SJC reasonably applied evidentiary rules when considering whether to admit the contested evidence and the defendant was not prejudiced, let alone prejudiced to the extent that the trial judge violated his fundamental constitutional rights. Accordingly, Ground Two cannot be a basis for habeas relief.

    C.    **The Petitioner is Not Entitled to Habeas Relief on Ground Three**

The Petitioner argues that he is entitled to habeas relief because the prosecutor in his trial made several misstatements of evidence, inferences, and emotional appeals in his opening statement and summation. [Pet'r Mem. at 1-2]. Specifically, the Petitioner challenges the prosecutor's statements in "opening and closing remarks that misstated the evidence, argued inferences with no basis in the record, suggested he had knowledge of facts not in evidence, and attempted to excite the jury's passion and prejudice." Chalue, 486 Mass. at 876.

Here the Court agrees entirely with the Respondent's reasoning and finds that the Petitioner is not entitled to habeas relief on Ground Three for the reasons stated in the Respondent's memorandum [Resp't Mem. at 46-60]. In particular, as with Grounds One and Two, the SJC reasonably and correctly rejected Petitioner's claims of prosecutorial misconduct within a reasonable application of Supreme Court law. The Court notes again, "[t]he standard for evaluating the state court's decision is 'highly deferential,' with 'the presumption that state courts know and follow the law' and the requirement that the decisions of the state court 'be given the benefit of the doubt.'" Simpson, 372 F. Supp. 2d at 145 (quoting Woodford, 537 U.S. at 24). Finding no error in how the SJC ruled on the Petitioner's claims, and in light of the strong deference afforded to the state court's decision, habeas relief is inappropriate on Ground Three.

Secondly, specifically regarding the Petitioner's challenge to the prosecutor's opening statement, where defense counsel did not object to the prosecutor's opening at trial and the SJC engaged in a "miscarriage of justice" review, the Court finds that the SJC's ruling rested on Massachusetts' contemporaneous objection rule, which the First Circuit has held is "an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts." Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010) (collecting cases). "Federal habeas review of a particular claim is precluded in circumstances in which a state prisoner

has defaulted on that claim in state court by virtue of an independent and adequate state procedural rule," unless he can demonstrate cause and prejudice, or actual innocence. Id. (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). For the reasons stated by the Respondent, the Petitioner has not shown cause or prejudice, nor has he asserted actual innocence. Accordingly, the Petitioner is not entitled to habeas relief regarding the prosecutor's opening statement for this additional reason.

## IV.    CERTIFICATE OF APPEALABILITY

The statute governing appeals of final orders in habeas corpus proceedings provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a "substantial showing," a petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Muller v. Goguen, 385 F. Supp. 3d 121, 130 (D. Mass. 2019) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted)). "To meet the debatable-among-jurists-of-reason standard the petitioner must prove 'something more than the absence of frivolity or the existence of mere good faith.'" United States v. Cintron, 281 F. Supp. 3d 241, 242 (D. Mass. 2017) (quoting Miller-El v. Cockrell, 537 U.S. 322, 338 (2003)). In ruling on an application for a COA, a district court must indicate which specific issues satisfy the "substantial showing" standard. 28 U.S.C. § 2253(c)(3).

The Court denies the COA with respect to all grounds because the Petitioner cannot demonstrate that reasonable jurists would debate whether the SJC's application of Supreme Court precedent was objectively unreasonable or was based on unreasonable factual determinations. See 28 U.S.C. § 2254(d)(1)-(2). With each ground, the SJC reasonably applied the correct tests that were consistent with Supreme Court precedent. See Rashad, 300 F.3d at 34-35; Williams, 529 U.S. at 365.

Although the Court found error in the SJC's conclusion on Ground One, the SJC's determination was not objectively unreasonable. The Supreme Court and First Circuit have made clear that mere error by the state court is not enough to sustain a petition. See Lockyer, 538 U.S. at 75–76; McCambridge, 303 F.3d at 36. Moreover, the standard for issuance of a COA examines this Court's review of the habeas petition, not the state court's review of the underlying grounds for the petition. Accordingly, the Petitioner has not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the Court declines to issue a COA.

## V.  CONCLUSION

For the reasons stated above, the petition for habeas corpus is **DISMISSED**.

**SO ORDERED.**

Dated: March 24, 2025

                                                      /s/ Margaret R. Guzman
                                                      Margaret R. Guzman
                                                      United States District Judge